# Exhibit 7

NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff, v. EXPRESSTRAK, L.L.C., Defendant.

Civil Action No. 02-1773 (RBW)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2006 U.S. Dist. LEXIS 67642

September 21, 2006, Decided
September 21, 2006, Filed

**SUBSEQUENT HISTORY:** Partial summary judgment granted by *AMTRAK v. ExpressTrak, L.L.C., 2006 U.S. Dist. LEXIS 74922 (D.D.C., Oct. 16, 2006)*

**PRIOR HISTORY:** *Amtrak v. Expresstrak, L.L.C., 233 F. Supp. 2d 39, 2002 U.S. Dist. LEXIS 23244 (D.D.C., 2002)*

**COUNSEL:** [*1] For NATIONAL RAILROAD PASSENGER CORPORATION, a corporation organized under the Rail Passenger Service Act, Plaintiff: John Payton, Ariel B. Waldman, Kalea Seitz Clark, Ryan Patrick Phair, Samir C. Jain, WILMER CUTLER PICKERING HALE & DORR LLP, Washington, DC.

For EXPRESSTRAK, LLC, a Delaware limited liability company, Defendant: John G. DeGooyer, Philip A. Nacke, Steven C. Lambert, FOLEY & LARDNER, Washington, DC.

For NATIONAL RAILROAD PASSENGER CORPORATION, a corporation organized under the Rail Passenger Service Act, Counter Defendant: John Payton, Ryan Patrick Phair, Samir C. Jain, WILMER CUTLER PICKERING HALE & DORR LLP, Washington, DC; Jack McKay, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, DC.

**JUDGES:** REGGIE B. WALTON, United States District Judge.

**OPINION BY:** REGGIE B. WALTON

**OPINION:**

### MEMORANDUM OPINION

The plaintiff brings this action alleging that the defendant breached certain lease agreements that provided for the defendant's use of the plaintiff's railcars as a result of the defendant's failure to make the required lease and interest payments to the plaintiff. Second Amended Complaint ("Compl.") P P 1; 42-43. Currently before the Court is the plaintiff's motion [*2] for leave to submit a substitute expert witness report after the expiration of the deadline designated by the Court for filing such reports Scheduling Order of August 15, 2005; December 8, 2005 Minute Order. For the reasons set forth below, the Court grants the plaintiff's motion. The plaintiff requests that this Court afford it leave to substitute the expert witness report of Douglas Golden for the report of Stanley Wlotko, previously submitted by the plaintiff on January 23, 2006, because the plaintiff contends that it has recently discovered issues regarding the credibility of Wlotko. Plaintiff's Motion For Leave To Submit Expert Report After the Deadline (" Pl.'s Mem.") at 1. According to the plaintiff, during and after the taking of Wlotko's deposition, it became apparent that answers given by Wlotko during the deposition were inaccurate. Pl.' s Mem. at 2. For instance, the defendant's counsel repeatedly asked Wlotko whether he had "ever been terminated from a position of employment," and whether he had "ever been asked to resign from a position." Pl.' s Mem., Exhibit (" Ex.") B (Deposition of Stanley Wlotko) ("Wlotko Dep.") at 66, 86. Wlotko responded to these questions in the [*3] negative. Id. However, later in the deposition, after repeated questioning by the defendant's counsel, Wlotko acknowledged that his prior answers had been inaccurate and that he had in fact been asked to resign from Rail America due to alleged expense account irregularities. left Rail America the same day he was asked to resign, and that he was also asked to resign from a position at Union

Case 1:05-cv-02115-CKK   Document 29-8   Filed 02/05/2007   Page 3 of 5

Page 2
2006 U.S. Dist. LEXIS 67642, *

Pacific. Id. at 87. The plaintiff also contends that after the deposition was taken, it discovered that Wlotko provided inaccurate responses in his deposition regarding his educational and personal background, including his arrest history. Pl.'s Mem. at 2.

The defendant objects to the plaintiff's motion for leave to substitute the report of Wlotko with the expert witness report of Douglas Golden after the filing deadline on the grounds that: (1) the new expert's opinion contains a lower fair market value of the railcars that results in a drastic increase in the valuation of the plaintiff's liquidated damages claim (Opposition of Defendant ExpressTrak, L.L.C. To Plaintiff's Motion For Leave To Submit Expert Report After The Deadline (" Def.'s Opp'n.") at 5-8); (2) the defendant will have [*4] to incur additional expense and expend additional time preparing to depose the plaintiff's new expert (Def.'s Opp'n. at 12-14); and (3) the substitution would further delay the litigation of the case, id. at 14-15.

A scheduling order issued pursuant to *Federal Rule of Civil Procedure 16(b)* ("*Rule 16(b)*") "is intended to serve 'as the unalterable road map (absent good cause) for the remainder of the case.'" *Olgyay v. Soc'y For Envtl. Graphic Design, Inc., 169 F.R.D. 219, 220 (D.D.C. 1996)* (citation omitted). *Rule 16(b)* provides that "a [scheduling] [order] shall not be modified except upon a showing of good cause and by leave of the district judge ...." *Fed. R. Civ. P. 16(b)*; see also LCvR 16.4; *Olgyay, 169 F.R.D. at 219.* "*Rule 16(b)*' s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may [therefore] modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *DAG Enters., Inc., v. Exxon Mobil Corp., 226 F.R.D. 95, 105 (D.D.C. 2005)* [*5] (quoting *Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)*); see also *O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004)*; *Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)*; *Bradford v. DANA Corp., Inc., 249 F.3d 807, 809 (8th Cir. 2001)*; *Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).* The focus of the "good cause" inquiry is on the moving party's reasons for seeking the modification of the scheduling order; therefore, "[i]f that party is not diligent, the inquiry should end." *DAG ,226 F.R.D. at 105* (quoting *Johnson, 975 F.2d at 609*).

Here, the defendant contends that the plaintiff was not diligent because it relied on a third party, Railroad Industries, Inc. (" Railroad Industries"), to hire Wlotko and waited until less than two to three weeks prior to the expert disclosure filing deadline to seek the service of Wlotko.

Def.' s Opp'n. at 11. The Court cannot agree with the defendant's position for the following reasons.

First, the defendant's representation that Wlotko was retained [*6] by Railroad Industries, a company for which he is a consultant, is based on Wlotko's deposition testimony. Wlotko Dep. at 95. However, although Wlotko's name was provided to the plaintiff by Railroad Industries, the plaintiff has presented evidence that it was counsel for the plaintiff who actually retained Wlotko and counsel sent Wlotko a letter confirming the terms of his retention. Pl.'s Reply Mem., Ex. E. Second, the defendant's assertion that the plaintiff's failure to retain Wlotko until two to three weeks before the expert witness report deadline would expire is additional evidence of the plaintiff's lack of diligence is also unpersuasive. "Central to [the] required showing of diligence is whether the movant discharged [its] obligation under *Rule 16* to collaborate with the district court in managing the case." *Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999)* (citing *In re San Juan Dupont Plaza Hotel Fire Litig., 111 F.3d 220, 228 (1st Cir. 1997)).* Generally, parties are required to participate from the outset in creating a workable *Rule 16(b)* scheduling order and then to diligently attempt to adhere to that schedule throughout [*7] the subsequent course of the litigation. *Jackson, 186 F.R.D. at 607* (citation omitted). Here, in accordance with the scheduling order, the plaintiff timely filed its expert witness report by January 23, 2006. The plaintiff has also closely adhered to the other components of the scheduling order throughout the course of the litigation.

In addition to assessing whether a plaintiff has assisted the Court in creating a workable *Rule 16(b)* order, some courts require a plaintiff to demonstrate diligence under *Rule 16*' s "good cause" standard, by showing that its "noncompliance with a *Rule 16* deadline occurred ..., notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the *Rule 16* scheduling conference." Id. (citing *Johnson, 975 F.2d at 609*). In this case, the plaintiff relied on Wlotko's expert witness report until his deposition was taken, during which and following the deposition it was revealed that he had provided inaccurate information regarding his personal, professional, and educational background. There is no evidence in the record [*8] that the plaintiff had reasons to doubt Wlotko's credentials or his recommendation by Railroad Industries prior to the expiration of the expert witness disclosure deadline. n1 Moreover, the Court is not convinced that if the plaintiff had hired Wlotko before it did that it would have definitely discovered the information

Case 1:05-cv-02115-CKK    Document 29-8    Filed 02/05/2007    Page 4 of 5

Page 3
2006 U.S. Dist. LEXIS 67642, *

about his false representations before the discovery was made.

> n1 The plaintiff represents that Railroad Industries is a reputable railroad consulting firm with over twenty years experience in the railroad consulting business and that its services include the provision of expert witness testimony. Pl.' s Mem. at 4.

Some courts also consider the "possible prejudice to the party opposing the modification." *Inge, 281 F.3d at 625* (citation omitted); see also *Reliance Ins. Co. v. Louisiana Land & Exploration Co., 110 F.3d 253, 257 (5th Cir. 1997)*. However, the existence or degree of prejudice to the party opposing modification as an additional reason for denying [*9] a motion to modify a scheduling order, has "not ultimately [been considered by courts as] determinative." *DAG, 226 F.R.D. at 110*; see also *Johnson, 975 F.2d at 609* (citing *Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985))*. As noted above, the defendant contends that it would be prejudiced by the post-deadline submission of the new expert report because (1) the plaintiff is presenting a new theory for determining the fair market valuation of the railcars, (2) it would be subjected to expending additional time and money conducting discovery and otherwise additional costs related to litigating this case, and (3) the resolution of this case would be further delayed. However, the cases on which the defendant relies in support of its argument that it would be prejudiced by the substitution of Golden's expert witness report are inapposite. In DAG Enterprises Inc. v. Exon Mobil Corp., five months after the close of expert discovery and the filing of Daubert n2 motions, the plaintiffs moved for leave to seek additional discovery and redraft their expert witness reports in order to respond to a defense raised in [*10] a Daubert motion relating to their profit margins. n3

*226 F.R.D. at 100-01*. The DAG court noted that granting the plaintiffs' motion would "instigate a new cycle of expert discovery" because the plaintiffs would be resubmitting multiple expert reports "premised upon a completely different theory of damages calculation." *Id. at 101, 110*. The defendants would then need to respond with the submission of additional expert witness reports, and an entirely new round of depositions would need to be conducted. *Id. at 110*. The instant case is distinguishable from DAG in several respects. Unlike *DAG*, where the plaintiffs sought to resubmit multiple new expert witness reports, the plaintiff here seeks to submit only one new expert witness report, which addresses a single issue in this case. n4 Also, contrary to the defendant's contention, the plaintiff is not raising new theories or legal issues by substituting reports, as both the original and proposed substitute reports relate to the plaintiff's liquidated damages claim and utilize the same methodology to calculate the fair market value of the refrigerated railcars in determining [*11] the plaintiff's liquidated damages. n5

> n2 *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*.

> n3 Specifically, the plaintiffs wanted to discard their old profit margins altogether, rely on entirely new values premised upon a completely different theory for calculating their damages, and draft new reports incorporating the new data. *DAG, 226 F.R.D. at 101*.

> n4 This issue -the value of the plaintiff's liquidated damages claim -requires the calculation of the fair market value of the refrigerated railcars. Pl.' s Mem. at 5; Def.' s Opp'n. at 3.

> n5 In contrast, in DAG, the plaintiffs initially relied on the projected profit margin DAG would have earned on hypothetical future sales at petroleum stations that were part of the defendants' divestiture assets. *226 F.R.D. at 98*. The plaintiffs' damages experts assumed that the combined supplier/distributor margin listed in the Divestiture Asset Bid Book ("Bid Book"), which was provided by Exxon Mobil Corporation to potential bidders during the divestiture process, accurately represented the margins DAG would have earned as a distributor. Id. However, when the defendants' expert pointed out that the plaintiffs' expert's reliance on the Bid Book margins was a mistake and would result in the plaintiffs' damages model yielding zero damages, the plaintiffs sought to rely, after the expert report filing deadline had expired, on data concerning the actual performance of the petroleum stations in the post-acquisition period for calculating their damages. Id. The DAG court determined that granting the plaintiffs' motion would result in the plaintiffs resubmitting multiple expert reports "premised upon a completely

Case 1:05-cv-02115-CKK   Document 29-8   Filed 02/05/2007   Page 5 of 5

Page 4
2006 U.S. Dist. LEXIS 67642, *

different theory of damages calculation." *Id. at 101, 110*. Hence, the plaintiffs in DAG sought to change the methodology used to calculate their damages, whereas, in the present action, the plaintiff is relying on the same methodology for calculating the fair market value of the railcars.

[*12]

Similarly, *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955 (2d Cir. 1997)* is not on point. In Softel, the Second Circuit upheld the district court's decision to preclude a party from using a new expert. *Id. at 963*. The district court had granted the plaintiff leave to substitute a new expert for its former expert and had given the plaintiff a specific deadline by which it needed to submit the new reports so that the overall case schedule would not be disrupted. *Id. at 961*. One day prior to the deadline, the plaintiff sought extra time to file the report, which the district court denied because the plaintiff gave no plausible justification for failing to meet the deadline and because of "potentially significant shifts in theory." *Id. at 961-63*. In contrast to what transpired in Softel, the plaintiff timely filed its original expert report; thus, the plaintiff's need to substitute its expert report occurred after complying with the scheduling order. Further, both the original and substitute expert reports address the calculation of the fair market valuation of the railcars based [*13] on the same methodology. n6 Since Wlotko's credibility has been seriously damaged as a result of the plaintiff's discovery that he provided inaccurate information as to his professional, educational, and personal background, it is likely that the plaintiff's ability to establish the true value of its liquidated damages claim will be significantly impaired if it has to rely on Wlotko's testimony. Therefore, the potential prejudice to the plaintiff is substantial. The potential prejudice faced by the movant is sometimes also considered by courts when determining "good cause." See *DAG, 226 F.R.D. at 111* (citation omitted). Here, if the Court denies the plaintiff the opportunity to substitute its expert witness, the plaintiff would potentially sustain a substantial prejudice. As noted above, since Wlotko's credibility has been seriously damaged as a result of the plaintiff's discovery that he provided inaccurate information as to his professional, educational, and personal background, it is likely that the plaintiff's ability to establish the true value of its liquidated damages claim at trial will be significantly impaired if it has to rely on Wlotko's testimony. And, [*14] the plaintiff's liquidated damages claim is central to this litigation. Thus, the substantial risk of unfairness to the plaintiff because of Wlotko's dishonesty more than adequately supports the substitution of Golden as its witness. Based on the foregoing reasons, the plaintiff's Motion for Leave to Submit Expert Report After the Deadline is **GRANTED**. n7

---

n6 Both experts determined fair market value by assessing the physical condition and age of the cars through an onsite inspection, consulted with lessors and other industry participants to determine market demand (the availability of cars for lease and purchase), and considered specific offers for leasing and purchasing the cars. Def.' s Mem., Ex. 2; Pl.' s Mem., Ex. A.

n7 Upon the defendant's request, the Court will afford it the opportunity to depose Golden if his deposition has not yet been taken or otherwise put itself in the position to challenge Golden's potential testimony.

---

**SO ORDERED** this 21st day of September, 2006. n8

---

n8 An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

---

[*15]

REGGIE B. WALTON

United States District Judge