# EXHIBIT "A"



# COZEN
# O'CONNOR
ATTORNEYS

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**David J. Groth**
Direct Phone  215.665.2056
Direct Fax    215.701.2056
dgroth@cozen.com

January 15, 2007

**(via facsimile/regular mail)**
Norman H. Brooks, Jr., Esquire
Marks, O'Neill, O'Brien & Courtney
913 North Market Street, #800
Wilmington, DE  19805

Re:   St. Paul Mercury Insurance Company, as Subrogee of Gallaudet
University v. Capitol Sprinkler Inspection, Inc., et al.
Case No. 1:05CV02115
Our File No.:  134164

Dear Mr. Brooks:

In response to your e-mails of January 12, 2007, I would like to make the following observations in anticipation of any untimely "formal motion" Capitol Sprinkler may decide to belatedly file before our pretrial conference with Judge Kollar-Kotelly on January 31, 2007.

1.     Since the very beginning of discovery in this case, your office has taken a very cavalier approach to the discovery deadlines set by the Court, which have already been extended at defendant Capitol Sprinkler's request.

(a)  As I pointed out in my e-mail, attached as Exhibit "1", to Mr. Anderson of your office on October 16, 2006, defendant Capitol Sprinkler has been late in meeting the pleading and discovery deadlines set by the Court and/or by the applicable federal rules since our Scheduling Conference with the Court on April 5, 2006.

(b)  More specifically, with regard to expert disclosures, on October 16, 2006, defendant Capital Sprinkler filed a motion, attached hereto as Exhibit "2", to get a three-week extension to properly disclose its expert(s), specifically writing in its own motion that it needed to "supplement [its] expert disclosures that are required to be served today but did not include a complete statement of all opinions to be expressed and the basis and reasons therefore."  Opposing counsel did not object to this requested extension, but my e-mail of October 16, 2006 did inform you that plaintiff would not agree to any further extensions.

(c)  Judge Kollar-Kotelly entered an Order on October 24, 2006 giving defendant Capitol Sprinkler exactly what it asked for; an extension from October 15, 2006 to November 6, 2006 to serve its "expert reports"; and giving third-party defendant until November 27, 2006 to serve its expert reports; and giving plaintiff until December 8, 2006 to serve any rebuttal report with all discovery to end by January 5, 2007.  See attached Minute Entry Order dated October 24, 2006.

(d)  When defendant Capitol Sprinkler again failed to serve its expert reports by the new deadline of November 6, 2006, I sent you a letter dated November 9, 2006, attached hereto as Exhibit "4", in which I confirmed that Capitol Sprinkler had not met the new expert deadline of November 6, 2006.  I also communicated my intention to object to any attempt by Capitol Sprinkler to offer expert testimony at trial as a result of its failure to meet the new deadline.  You never responded to my letter in any way, and you never supplemented Capitol Sprinkler's initial disclosure of Mr. Davidson's name as an expert, despite the fact that I arranged for you to take the deposition of Mr. Aller of Gallaudet on October 26, 2006, and for Mr. Davidson to inspect the physical evidence and the loss site that same day.  Nor did you request any further extensions from the Court.

(e)  Between November 6, 2006 and the end of discovery on January 5, 2007, your office did nothing further to comply with the Court's expert discovery deadlines.  Because defendant Capitol Sprinkler failed to properly serve expert reports by November 6, 2006,  third-party defendant Guest Services did not serve any expert reports by the November 27, 2006 deadline set by the Court, and plaintiff did not obtain any rebuttal expert by the December 8, 2006 deadline set by the Court.

2.    Even at the January 10, 2007 mediation with Magistrate Judge Kay, you initially seemed to be oblivious to the fact that your office failed to comply with the extended expert discovery deadline set by the Court.  It was not until Magistrate Judge Kay agreed that, without any expert testimony, defendant Capitol Sprinkler had large gaps in the proof of any of its alleged defenses, did it apparently sink in that you would have to bring this issue before the Court during our January 31, 2007 pretrial conference with Judge Kollar-Kotelly.  Magistrate Judge Kay stated that he would probably like to meet with the parties again after Judge Kollar-Kotelly addressed the issue during that conference, because of the impact it would have on the settlement evaluations by the parties if the trial judge does not agree to again extend the expert discovery deadline at the request of defendant Capitol Sprinkler.

3.    Your January 12, 2007 e-mail stating that Mr. Davidson's letter dated January 12, 2007 (over two months after the extended discovery deadline given to defendant Capitol Sprinkler by Judge Kollar-Kotelly in her Order of October 24, 2006, not to mention seven days after the final discovery deadline), "expresses the same opinions in letter form that were previously produced," and "updates" your earlier written disclosures from October 16, 2006, is curious for a number of reasons. First, in your own Motion for Extension of the expert discovery deadline dated October 16, 2006, you admitted to the Court that your previous written expert submission was inadequate and required supplementation. The Court gave you until November 6, 2006 to do so, but you completely ignored that deadline. Secondly, your contention that the "updated" letter of Mr. Davidson dated January 12, 2007 constitutes a proper supplementation of your October 16, 2006 submission, or that it complies with requirements of Rule 26, is preposterous. Even a cursory review of Mr. Davidson's letter reveals that it adds almost nothing to the inadequate October 16, 2006 written submission; that it does not even contain "expert opinions", but merely a recitation of alleged facts; and that there is no specific factual support cited for alleged violations of NFPA 25 and 72, let alone the disclosure of the exact provisions of those standards which were allegedly violated. For example, NFPA 72 is approximately 240 pages and contains hundreds of different provisions, yet Mr. Davidson's letter fails to cite a single, specific provision.

4.    Your offer now to allow opposing counsel to depose Mr. Davidson for your own benefit, at this late date, after the Court ordered deadline for all discovery has passed, after the mediation with Magistrate Kay during which he questioned your ability to prove a defense without expert testimony, and after you ignored the Court's prior Order regarding expert discovery to the prejudice of the opposing parties, is way too little, way too late.

In summary, your office did virtually nothing to conduct any discovery in this case until a deadline approached. Then there was a flurry of activity by your office, but apparently not enough to enable defendant Capitol Sprinkler to prove any defense to plaintiff's claim, or to prove its own third-party claim, without the submission of an untimely "update" by Mr. Davidson on January 12, 2007. You could have filed a motion for an additional extension for discovery at any time between November 6, 2006 and January 5, 2007, but chose not to do so, most likely because you knew opposing counsel would certainly oppose it and because you would be unable to show "good cause" to further extend the deadline. Instead, your office did nothing.

Under these circumstances, I do not believe that there is any justification for Judge Kollar-Kotelly to permit defendant Capitol Sprinkler to further delay this litigation by reopening discovery. This case was ordered by the trial judge to be ready for trial by January 5, 2007. Should you file a formal motion to delay this matter further, plaintiff

January 15, 2007
Page 4

will oppose it as set forth above, and with additional examples of defendant Capitol Sprinkler's willful failure to comply with existing Court Orders regarding pretrial discovery in this case.

Very truly yours,

COZEN O'CONNOR

BY:   DAVID J. GROTH

DJG/slw
enclosure

cc:   Stephen A. Horvath, Esquire

PHILADELPHIA\2939529\1  134164.000

# EXHIBIT "1"

## Groth, David

**To:**     Andersen, Eric M.

**Cc:**     Eric Stravitz; SHorvath@vadctriallaw.com

**Subject:** RE: St. Paul Mercury Ins. Co v. Capital Sprinkler Inspection, C.A. No. 1:05cv02115: motion for an extension to serve expert report


As we discussed today, I will not object to the defendant's requested expert disclosure extension until November 6, 2006, although it should not be termed a "joint" request. As I informed you, I have previously given your office a 2 week extension to answer the complaint, a 2+ week extension to file Rule 26 Disclosures, an 11 week extension to answer plaintiff's written discovery requests, and a 4 week extension to produce defendant's employees to be deposed due to the unavailability of attorneys in your office, not the unavailability of the witnesses. Then, Mr. Brooks gave me a hard time when I requested an extension of plaintiff's expert disclosure, not due to any delays or inactivity occasioned by my office, but resulting from the delays caused by your office cited above. Also, I will not agree to any further extension of the defendant's expert disclosure disclosure deadline for any reason, whether or not your office completes the discovery it desires. As Mr. Horvath stated in his recent letter, the depositions your office scheduled for today certainly could not have be used by your experts to support their opinions and conclusions for their reports which were also due today. Consequently, the defendant's attempts to schedule those depositions today certainly provides no basis for any requested extension of the defendant's expert disclosure deadline. Finally, as I informed you by telephone today, and by correspondence last week, I do not represent Gallaudet University which is not a party in this case. Consequently, you should consider attempting to subpoena any information you require from the university if I am unable to secure it for you myself, especially given the state of upheaval on the campus at the present time as reported in the media.


Please let me know if you have any questions regarding the above.

---

**From:** Andersen, Eric M. [mailto:EAndersen@mooclaw.com]
**Sent:** Monday, October 16, 2006 11:55 AM
**To:** Groth, David
**Subject:** St. Paul Mercury Ins. Co v. Capital Sprinkler Inspection, C.A. No. 1:05cv02115: motion for an extension to serve expert report

Mr. Groth,

We are planning today to file a motion for an extension of time to serve our expert report 3 weeks from today. Do you oppose this request for an extension?

Regards,

**************************************************
Eric M. Andersen
Marks O'Neill O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, DE 19801
302-658-6538
Fax: 302-658-6537

# EXHIBIT "2"

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as Subrogee of Gallaudet University | CASE NUMBER: 1:05-CV-02115 |
| Plaintiff | |
| vs. | |
| CAPITOL SPRINKLER INSPECTION, INC | |
| Defendant | |
| vs. | |
| GUEST SERVICES, INC. | |
| Third-Party Defendant | |

## MOTION FOR EXTENTION OF TIME TO SERVE RULE 26(a)(2)(B) DISCLOSURES

Capital Sprinkler Inspection, Inc. ("Capital") moves this Court for an extension of time to serve disclosure of expert testimony required by Federal Rule of Civil Procedure 26(a)(2)(B) until November 6, 2006.

### STATEMENT OF POINTS AND AUTHORITIES

1.     On April 5, 2006, the Court held the Rule 16(a) Pre-Trial Conference and issued a minute order requiring Capital to serve expert testimony in the form required in Rule 26(a)(2)(B) on Saturday, October 15, 2006.

2.     Capital is seeking to extend the deadline to serve its expert report because depositions of key fact witness have not been taken. The key witnesses are two former employees of Guest Services, Inc. ("Guest") and the corporate designees of Guest and Gallaudet University.

{DE067632.1}

3.    On July 13, 2006, St. Paul Mercury Ins. Co. ("St. Paul") told Capital that Terrence Hubbard was a former employee of Guest and was not responding to Guest's request to take his deposition. See Exhibit A. On August 11, 2006, Capital requested from St. Paul Mr. Hubbard's last known address. See Exhibit B. St. Paul has yet to respond.

4.    On July 17, 2006, Capital requested dates in which David Hamm, a former employee of Guest, would be available to testify. Guest responded with the last known address of Mr. Hamm. See Exhibit C.

5.    On October 9, 2006, Capital noticed the depositions for October 16, 2006 of Terrance Hubbard, David Hamm and corporate designees for Gallaudet University (the subrogor of St. Paul) and Guest. See Docket Entry No. 22.

6.    On October 11, 2006, counsel for St. Paul responded to the notice of depositions by letter stating that the university was not their client and that due to bomb threats, student sit-ins and other unrest, he was having trouble contacting the university administration to schedule the deposition of the designee for the university. See Exhibit D.

7.    On October 12, 2006, Guest indicated that the depositions noticed could not be held on October 16, 2006 but can be held within the next two weeks. See Exhibit E.

8.    "The court may modify the scheduling order at any time upon a showing of good cause." LCvR 16.4.

9.    Capital hereby moves the Court for an extension of three weeks to allow it one additional week after the four depositions have been completed in order to

{DE067632.1}

supplement Capital Sprinklers' expert disclosures that are required to be served today but

did not include a complete statement of all opinions to be expressed and the basis and

reasons therefore.

               **MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.**


               \s\ Donald R. Kinsley
               Donald R. Kinsley (Bar ID No. 432998)
               Michael T. Hamilton (Bar ID No. 474233)
               913 N. Market Street, Ste. 800
               Wilmington, DE  19801

Dated:  October 16, 2006

# EXHIBIT "3"

**Groth, David**

| | |
|---|---|
| **From:** | DCD_ECFNotice@dcd.uscourts.gov |
| **Sent:** | Tuesday, October 24, 2006 1:19 PM |
| **To:** | DCD_ECFNotice@dcd.uscourts.gov |
| **Subject:** | Activity in Case 1:05-cv-02115-CKK-AK ST. PAUL MERCURY INSURANCE COMPANY v. CAPITOL SPRINKLER INSPECTION INC "Order on Motion for Extension of Time to" |

\***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### District of Columbia

Notice of Electronic Filing

The following transaction was received from SM, entered on 10/24/2006 at 1:19 PM and filed on 10/24/2006

| | |
|---|---|
| **Case Name:** | ST. PAUL MERCURY INSURANCE COMPANY v. CAPITOL SPRINKLER INSPECTION INC |
| **Case Number:** | 1:05-cv-2115 |
| **Filer:** | |
| **Document Number:** | |

**Docket Text:**
MINUTE ENTRY ORDER (paperless) granting [23] Motion for Extension of Time as to Rule 26(a)(2)(B) Disclosures. Accordingly, Capitol Sprinkler shall serve its expert reports on or before November 6, 2006; Opponent's expert reports shall be served on or before November 27, 2006; and replies, if any, shall be filed on or before December 8, 2006. All discovery shall be completed by January 5, 2007. The status hearing shall remain set for January 31, 2007, at 9:00 a.m. Signed by Judge Colleen Kollar-Kotelly on October 24, 2006. (SM)

The following document(s) are associated with this transaction:

**1:05-cv-2115 Notice will be electronically mailed to:**

Norman H. Brooks , Jr    nbrooks@mooclaw.com

David J. Groth    dgroth@cozen.com

Stephen Anthony Horvath    shorvath@tbmhjlaw.com,

Wayne F. Johnson , Jr    fjohnson@mooclaw.com

Donald Robert Kinsley    dkinsley@mooclaw.com

10/24/2006

# EXHIBIT "4"



# COZEN
# O'CONNOR
ATTORNEYS

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-1508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

David J. Groth
Direct Phone 215.665.2056
Direct Fax    215.701.2056
dgroth@cozen.com

November 9, 2006

**(via Facsimile/Regular Mail)**

Norman H. Brooks, Jr., Esquire
Marks, O'Neill, O'Brien & Courtney
913 North Market Street, #800
Wilmington, DE  19805

Re:   St. Paul Mercury Insurance Company, as Subrogee of Gallaudet
      University v. Capitol Sprinkler Inspection, Inc., et al.
      Case No. 1:05CV02115
      Our File No.:  134164

Dear Mr. Brooks:

According to the Order entered by Judge Colleen Kollar-Kotelly on October 25, 2006, defendant Capitol Sprinkler's Rule 26(a)(2)(B) expert disclosure was due no later than November 6, 2006.  Since it is now November 9, 2006 and I have received no such disclosure from defendant Capitol Sprinkler, it is my position that defendant Capitol Sprinkler should not be permitted to offer any expert testimony at the trial of this case and plaintiff will move to preclude any such testimony which defendant Capitol Sprinkler may attempt to offer.

As you are aware, plaintiff did not object to your requested extension of the deadline for the disclosure of defendant's expert witnesses which was eventually granted by the Court.  However, as I indicated in my email to Eric Andersen of your office in response to his email of October 16, 2006, plaintiff would not agree to any further extensions of defendant's expert disclosure deadline for any reason, whether or not your office completed any additional discovery it desired.  Since that time, plaintiff has produced a witness, Mr. Aller, who was most knowledgeable regarding the topics which the defendant wanted to inquire about.  I also arranged for an inspection of the

November 9, 2006
Page 2

physical evidence retrieved from the loss site, as well as a tour of the campus by you and Mr. Davidson, defendant's retained expert. Consequently, there is nothing which defendant Capitol Sprinkler has requested from the plaintiff that has not been provided to you in a timely manner.

In addition, as you are aware, Capitol Sprinkler's purported disclosure of expert testimony under Rule 26(a)(2)(B), which you served on or about October 16, 2006, is wholly inadequate under the provisions of that Rule to constitute any expert disclosure whatsoever.

Please do not hesitate to contact me if you have any questions concerning the foregoing.

Thanking you for your attention to this matter, I am

Very truly yours,

COZEN O'CONNOR

BY:    DAVID J. GROTH

DJG/slw

cc:    Stephen A. Horvath, Esquire
       Eric Stravitz, Esquire

PHILADELPHIA\2846497\1  134164.000

# EXHIBIT "B"

# DAVIDSON ASSOCIATES

## CONSULTING ENGINEERS

FIRE PROTECTION • MECHANICAL • CODE CONSULTATION

January 12, 2007

Mr Norman H Brooks, Jr
Attorney
Marks, O'Neill, O'Brien and Courtney, P C
Suite 800
913 North Market Street
Wilmington, DE 19801

Re:    Gallaudet University v. Capitol Sprinkler Inspection, Inc    Sprinkler Leakage Loss

Dear Mr. Brooks:

Please allow this to supplement the opinions I expressed earlier, as set forth in Capitol Sprinkler Inspection, Inc. disclosure dated October 16, 2006. Davidson Associates was asked to address the issue regarding the sprinkler leakage loss that occurred at the Kellogg Conference Center facility on the campus of Gallaudet University, 800 Florida Avenue, NE, Washington, DC on January 25, 2003.

Davidson Associates reviewed the available depositions, reports, shop drawings, contracts and experts report in order to address the issue of the sprinkler leakage loss and the roles of Capitol Sprinkler Inspection. Inc., Gallaudet University and Guest Services, Inc, in the loss. Since my initial opinions, I inspected pertinent portions of the facility, and sat in on the deposition of Gary Aller, taken October 26, 2006. Today, I reviewed the deposition testimony of Plaintiff's liability expert, Kenneth R McLauchlan, taken January 5, 2007. Mr. McLauchlan's testimony gives me no cause to change my opinions.

## FINDINGS

It is industry practice, in accordance with the fire, building and property maintenance codes requirements, that semi-annual inspections are not sufficient and the property owner or his representative is required to conduct weekly, monthly, quarterly, semi-annual, annual, three year interval and five year interval inspections, testing and maintenance procedures for water-based fire protection systems. This includes the inspection, testing and maintenance of the dry pipe sprinkler systems, and related equipment including "low point drains (drum drips)".

My review of the above noted material indicates that the following event occurred prior to the January 25, 2003 incident:

1. Gallaudet University ("Gallaudet") and Guest Services, Inc. ("Guest") failed to grant Capital access to the drum drip in the guest suite during the January 9, 2003 inspection to allow it to drain any water that may have existed in the sprinkler pipe, in violation of NFPA 25.

Mr. Norman H. Brooks, Jr.
Attorney
Marks, O'Neill, O'Brien and Courtney, P.C.
Re:     Gallaudet University v. Capital Sprinkler Inspection, Inc.   Sprinkler Leakage Loss
Page No. 2

My review of the above noted material indicates that the following events occurred during the January 25, 2003 incident:

1.  Upon the alarm being set off, Gallaudet and Guest failed to re-transmit the Kellogg Conference Center facility's sprinkler system water flow alarm to the municipal fire service, in violation of NFPA 72.
2.  Because Gallaudet failed to immediately notify the fire service of the alarm, inordinate amounts of water were discharged throughout the building which caused damages well in excess of the foreseeable damages proximately resulting from a system failure with water discharge
3.  Because Gallaudet and Guest on-site personal could not turn off the appropriate sprinkler system control valve in a timely fashion (per Capt Tate's incident report it took nearly two hours to turn off the water) inordinate amounts of water was discharged throughout the building which caused damages well in excess of the foreseeable damages proximately resulting from a system failure with water discharge.

It is Davidson Associates' engineering opinion at this date with a high degree of professional engineering certainty that the Gallaudet and Guest's personal:

1.  Did not grant Capital access to the drum drip located in the ceiling of Suite 5200 during the January 9, 2003 inspection.
2.  Did not notify or retransmit to the municipal fire department the Kellogg Conference Center's sprinkler system water flow alarm.
3.  Were not familiar with the Kellogg Conference Center sprinkler systems and related system control valves and did not know the appropriate sprinkler system control valve to turn off in order to prevent additional water discharge from the system.

These events resulted in inordinate amounts of water being discharged throughout the building which caused damages well in excess of the foreseeable damages proximately resulting from a system failure with water discharge.

Davidson Associates reserves the right to supplement this report if additional information becomes available at a later date.

Respectfully yours,

Davidson Associates

James S. Davidson, Jr., P. E.

# EXHIBIT "C"

**Groth, David**

From:       Brooks Jr., Norman H [nbrooks@mooclaw.com]
Sent:       Friday, January 12, 2007 6 40 PM
To:         Stephen Horvath
Cc:         Groth, David
Subject:    RE: St. Paul Mercury Ins. Co. a/s/o Gallaudet U. v. Capitol Sprinkler v. Guest Services

I do not agree with your assessment. I am out of the office at a CLE JAG conference next week. If need be, I will file a formal motion when I return. Mr. Davidson is available for deposition. Please let me know if you would like to arrange for same should the court find his opinions acceptable. NHB

Norman H. Brooks, Jr., Esq.
913 N.Market Street, Suite 800
Wilmington, DE 19801
(302) 658-6538
F (302) 658-6537
nbrooks@mooclaw.com


From: Stephen Horvath [mailto:SHorvath@vadctriallaw.com]
Sent: Friday, January 12, 2007 5:23 PM
To: Brooks Jr., Norman H.; Groth, David
Subject: RE: St. Paul Mercury Ins. Co. a/s/o Gallaudet U. v. Capitol Sprinkler v. Guest Services

I cannot agree that the report from Davidson, which does not comply with the requirements of the Rules, is a discovery response. I will require a formal discovery response. Not only does the document come too late, but it still does not contain the factual basis to support the opinions, nor have the "opinions" been completely stated.

I note that despite being told on two separate occasions that the report had been done and previously sent to me, this "report" was dated today, long after it was to have been provided and was sent to me after the close of business, on the Friday before a three day weekend, and after the mediation conference.

Please let me know if you intend to file a motion to reopen discovery and to obtain leave to call Davidson as an expert. I will be opposing any such request.


Stephen Horvath
Trichilo, Bancroft, McGavin, Horvath & Judkins, P.C.
3920 University Drive
P.O. Box 22
Fairfax, VA 22038
(703) 385 1000 (office)
(703) 385-1555 (fax)

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

1/15/2007

# EXHIBIT "D"

*Westlaw.*

2006 WL 1491316                                                                Page 1
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
**(Cite as: 2006 WL 1491316 (N.D.Ill.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Timothy FINWALL, Plaintiff,
v.
CITY OF CHICAGO, Martin Garcia, Dion Boyd,
and Mary Boswell, Defendants.
**No. 04 C 4663.**

May 31, 2006.

**Background:** Arrestee filed suit against city and city police officers, claiming that he was falsely arrested. Defendants moved to bar plaintiff's expert witnesses for failure to comply with expert witness disclosure requirements.

**Holdings:** The District Court, Jeffrey Cole, United States Magistrate Judge, held that:

(1) exclusion of testimony of expert in eyewitness identification and testimony of criminologist was warranted by plaintiff's untimely disclosure of their expert reports;

(2) exclusion of testimony of automotive mechanic was warranted by plaintiff's untimely disclosure of mechanic's expert report and by incompleteness of report; and

(3) exclusion of testimony of clinical psychologist was warranted by plaintiff's untimely disclosure of psychologist's expert report.
Motion granted.

**[1]** Federal Civil Procedure ⚙1278

170Ak1278 Most Cited Cases

Where a party does not timely file expert reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose; sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of expert discovery rule was either justified or harmless. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.

**[2]** Federal Civil Procedure ⚙1261

170Ak1261 Most Cited Cases

Under Local Rules of the Northern District of Illinois, a deadline for discovery means that discovery must be completed by that date; thus, it would be inappropriate and untimely under the local rules to serve a discovery request on the eve of the discovery deadline, because there would not be adequate time in which to complete discovery. Local Rule 16.1, Standing Order Establishing Pretrial Procedure.

**[3]** Federal Civil Procedure ⚙1261

170Ak1261 Most Cited Cases

Under Local Rules of the Northern District of Illinois, it is inappropriate to provide expert reports so near to the close of discovery that the other side can neither depose the expert nor engage a rebuttal expert of its own. Local Rule 16.1.

**[4]** Federal Civil Procedure ⚙1278

170Ak1278 Most Cited Cases

**[4]** Federal Civil Procedure ⚙1636.1

170Ak1636.1 Most Cited Cases

Local rule's requirement that parties attempt to resolve disputes before they may apply to the court for resolution of the problem applies to motions to compel discovery and production of documents, not to motions to bar expert witnesses for untimely disclosure of expert reports pursuant to civil procedure rule authorizing such sanction. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.; Local Rule 37.2.

**[5]** Federal Civil Procedure ⚙1278

170Ak1278 Most Cited Cases

Late disclosure of expert reports is not harmless within the meaning of discovery rule authorizing sanction of exclusion of expert testimony for such late disclosure simply because there is time to reopen discovery before trial. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.

**[6]** Federal Civil Procedure ⚙1278

170Ak1278 Most Cited Cases

Exclusion of testimony of expert in eyewitness identification and testimony of criminologist was warranted by plaintiff's untimely disclosure of their expert reports, where reports were provided on the afternoon of what was effectively the last day of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

expert discovery, leaving no time for depositions by defendants, or engagement of rebuttal experts, without any substantial justification by plaintiff of the untimely disclosure. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.; Local Rules 16.1, 37.2.

**[7] Federal Civil Procedure** ☞1274
170Ak1274 Most Cited Cases
A complete expert report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor; it must not be sketchy, vague or preliminary in nature. Fed.Rules Civ.Proc., Rule 26(a)(2), 28 U.S.C.A.

**[8] Federal Civil Procedure** ☞1274
170Ak1274 Most Cited Cases
Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions. Fed.Rules Civ.Proc., Rule 26(a)(2), 28 U.S.C.A.

**[9] Federal Civil Procedure** ☞1278
170Ak1278 Most Cited Cases
Exclusion of testimony of automotive mechanic was warranted by plaintiff's untimely disclosure of mechanic's expert report and by incompleteness of report, where report was provided to defendants less than a week before close of expert discovery, leaving no time for scheduling of depositions or engaging rebuttal experts; moreover, report did not identify the particular result the expert reached, let alone the "how" or the "why." Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.; Local Rules 16.1, 37.2.

**[10] Federal Civil Procedure** ☞1278
170Ak1278 Most Cited Cases
Exclusion of testimony of clinical psychologist was warranted by plaintiff's untimely disclosure of psychologist's expert report, where report was produced two weeks before expert discovery deadline and was not complete until just five business days before the deadline, leaving no time for defendants to obtain a rebuttal expert; moreover, plaintiff offered no excuse or justification for lateness of psychologist's examination of plaintiff which resulted in the untimely disclosure. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.; Local Rules 16.1, 37.2.

Jonathan I. Loevy, Arthur R. Loevy, Mark Reyes, Michael I. Kanovitz, Loevy & Loevy Chicago, IL, for Plaintiff.

Alec Meacham Macausland, Sara L. Ellis, Torreya Lyn Hamilton City of Chicago, Department of Law, Donald Raymond Zoufal, Eileen Ellen Rosen, City of Chicago, Law Department Corporation Counsel, Marcel S. Benavides, City of Chicago, Richard Thomas Sikes, Jr., Catherine A. Miller, Rachel Elisabeth Anne Atterberry, Freeborn & Peters Chicago, IL, for Defendants.

***MEMORANDUM OPINION AND ORDER***

JEFFREY COLE, Magistrate Judge.

**INTRODUCTION**
" 'We live in a world of deadlines.... The practice of law is no exception."
Raymond v. Ameritech Corp., 442 F.3d 600 (7th Cir.2006)
*1 Throughout the range of the law, there are time limits imposed on litigants at every stage of the case: some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to deadlines do so at substantial peril to their and their clients' interests. Even a day's delay can be fatal. Raymond, 442 F.3d at 600; Reales v. Consolidated Rail Corp., 84 F.3d 993, 996 (7th Cir.1996). [FN1] Indeed, as Judge Easterbrook has warned, ignoring deadlines is the surest way to lose a case. United States v. Golden Elevator, Inc., 27 F.3d 301, 302 (7th Cir.1994). See also Harris v. Owens-Corning Fiberglass Corp. ., 102 F.3d 1429, 1433 (7th Cir.1996).

Adherence to deadlines for disclosure of expert witnesses and their reports under Rule 26(a)(2) is especially important. Nonetheless, according to the City of Chicago, the plaintiff has ignored the expert discovery deadlines set by Judge Manning and is unapologetic for its flagrant noncompliance. Not surprisingly, the City of Chicago has moved to bar the testimony of four expert witnesses of the plaintiff. See Rule 37(c)(1) Federal Rules of Civil Procedure.

**I.
BACKGROUND**
Plaintiff filed the underlying suit on July 15, 2004, claiming that he was falsely arrested by the defendants. The allegation arises out of events occurring on March 24, 2001 and April 5, 2001. On the 24th, a man allegedly approached a girl and asked her if she wanted to go on a field trip. On April 5th, a man allegedly approached a girl, asked her if she wanted candy, and grabbed her arm. The plaintiff became a suspect in both of these incidents, was

2006 WL 1491316                                                          Page 3
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
(Cite as: 2006 WL 1491316 (N.D.Ill.))

arrested, and prosecuted for child abduction. His trial resulted in an acquittal. (*Complaint,* ¶ 40). Plaintiff claims that Chicago Police officers manipulated information in their report in order to facilitate his arrest. (*Plaintiff's Response to Defendants' Motion to Bar,* at 2-4). In support of his case, plaintiff has tendered four expert witnesses: John Edward Mundt, Ph.D., a licensed clinical psychologist; Wayne Anderson, an automotive mechanic; Dr. Solomon Fulero, an expert in eyewitness identification; and Paul Palumbo, a criminologist. (*Defendants' Motion to Bar,* Exs. D-H). The defendants have moved to bar the opinions of those four expert witnesses for plaintiff's failure to comply with the disclosure requirements of Rule 26(a)(2) in a timely manner.

### A.
### The Discovery Schedule

Judge Manning set the initial timetable for discovery on February 18, 2005. Fact discovery was to close on September 1, 2005, and expert discovery was to close October 1, 2005. (*Defendants' Motion to Bar,* Ex. A (Dkt.# 29)). The parties jointly sought an extension of these deadlines on July 27, 2005, and, on August 2, 2005, Judge Manning revisited her scheduling order and granted what she described as a "generous extension" of the fact and expert discovery cutoffs. She allowed fact discovery to be extended until November 25, 2005, and expert discovery to January 15, 2006. Judge Manning made it clear that the court would "not entertain further requests for extensions" and admonished counsel to "ensure that discovery is completed by the cut off." (*Defendants' Motion to Bar,* Ex. B (Dkt.# 35)). This schedule was amended, ever so slightly, pursuant to the agreement of the parties on November 22, 2005, when Judge Manning permitted a very limited extension covering just three additional fact discovery depositions to be completed before December 16, 2005. (*Defendants' Motion to Bar,* Ex. C, (Transcript of 11/22/05)). In that proceeding, counsel for the plaintiff assured the court that this final extension would not push back any of the other deadlines, including the expert discovery deadline of January 15, 2006. (*Id.*) Judge Manning then referred all further supervision of discovery matters, rulings on nondispositive pretrial motions, and participation in settlement discussions to me.

### B.
### Plaintiff's Production of His Expert Witness Reports

*2 The plaintiff did not manage to make his expert witness disclosures until over a month later. On December 28, 2005, twelve business days prior to the expert discovery deadline, defendants received

psychologist John Mundt's expert report via facsimile. (*Plaintiff's Response to Defendants' Motion to Bar,* at 5). Plaintiff does not dispute that Dr. Mundt's report did not include his *curriculum vitae,* a prior list of cases in which he was employed as an expert, or a reference to rate of compensation for services--all of which are required under Rule 26(a)(2)(B). (*Defendants' Motion to Bar,* at 2; *Plaintiff's Response to Defendants' Motion to Bar,* at 5; Ex. A).

In the cover letter to the Mundt report, plaintiff promised Dr. Mundt's *CV* would be coming soon, but made no mention of the fee schedule or case list. Plaintiff also suggested that dates for a deposition might be discussed. On January 6, 2006, five business days before the close of expert discovery, defendants received a fax of Dr. Mundt's *curriculum vitae* and a copy of an invoice for his services but, to date, it is undisputed that defendants have not yet received a list of prior cases in which he gave expert opinions or testimony. (*Defendants' Motion to Bar,* at 2; *Plaintiff's Response to Defendants' Motion to Bar,* at 9-10). According to plaintiff, this is because Dr. Mundt has never served as an expert in any case over the last four years.

Also in the cover letter to Dr. Mundt's report, plaintiff indicated that he anticipated producing other expert reports by January 6th, but none were forthcoming by that date. The next report defendants received was Wayne Anderson's report, on January 9, 2005, less than a week before the close of expert discovery. (*Defendants' Motion to Bar,* at 2). Mr. Anderson's report consisted of an invoice, a resumé, and a one-paragraph letter written by Mr. Anderson. Mr. Anderson proposed to give an opinion regarding the paint finishes on cars fading in the sun, although he admitted that "[n]o one can say exactly how much color fade would occur." (*Defendants' Motion to Bar,* Ex. F, at 1). There was no listing of prior cases in which Mr. Anderson acted as an expert witness. Then, on the afternoon of Friday, January 13th--one day before the close of expert discovery--the defendants received two additional expert witness reports, from Solomon Fulero and Paul Palumbo. Dr. Fulero criticized the techniques the defendants employed in assembling eye-witness testimony in plaintiff's case, and Mr. Palumbo offered a general critique of the defendants' investigation.

### C.
### The Parties' Positions

The defendants have several objections to these disclosures, not the least of which being their

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

untimeliness. The defendants submit that it was incumbent upon the plaintiff to disclose his experts with sufficient time remaining in discovery to allow for the defendants to depose them. The unexplained lateness of the disclosures plainly did not leave sufficient time for that to be done. In addition, the defendants argue that the expert reports are incomplete: in various aspects. Mr. Mundt's report does not include a list of cases in which he has testified. According to the defendants, Mr. Anderson's opinions are not clear from his report, and he fails to adequately detail how he arrived at whatever opinions he might have. Mr. Fulero's report, the defendants complain, is unsigned and also fails to adequately identify the data upon which he relied to form his opinions. The defendants have similar problems with Mr. Palumbo's report. (*Defendants' Motion to Bar*, at 6-10). As such, they ask that all four experts be barred from testifying under Rule 37(c)(1).

*3 The plaintiff is unapologetic and offers no excuse for what appear to be the intentionally late disclosures. Indeed, he goes so far as to actually blame the defendant--although the claimed misconduct has absolutely nothing to do with the timing of the disclosures. Reduced to its essentials, the argument is that so long as the disclosures were made by the January 15th deadline they were timely. The argument concludes with the extraordinary contention that even if they were not untimely, the testimony cannot be excluded because there is ample time before the trial for the witnesses to be deposed. If accepted, this argument would reduce Rule 37 to a dead echo and would empower a party, not the court, to set expert discovery deadlines.

## II.
## ANALYSIS

[1] Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Thus, where a party does not timely file expert reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir.2000). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir.2005); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th

Cir.1998). Expert reports must be submitted at least 90 days before trial or at the time and in the sequence directed by the court. Rule 26(a)(2)(C).

## A.
## A Discovery Deadline Requires That All Discovery Be Completed By That Date

[2][3] In setting the discovery schedule, Judge Manning could not have been clearer: she told counsel, in no uncertain terms, that discovery had to be completed by the deadline of January 15, 2006. If that were not clear enough, the Local Rules of the Northern District of Illinois also provide with exacting specificity that a deadline for discovery means that discovery must be *completed by that date*. Local Rule 16.1, Standing Order Establishing Pretrial Procedure, [FN2] *See also FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627 (7th Cir.2005)(stressing importance of compliance with the Local Rules). Thus it would be inappropriate and untimely under our local rules to serve a discovery request on the eve of the discovery deadline, because there would not be adequate time in which to complete discovery. *See Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir.1994)(court did not abuse its discretion by granting defendants a protective order where plaintiff failed to request discovery until nine days before the cutoff, violating Standing Order); *In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527, 531 (N.D.Ill.2005)(collecting cases). It would be similarly inappropriate to provide expert reports so near to the close of discovery that the other side could neither depose the expert nor engage a rebuttal expert of its own. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D.Ill.2005).

*4 Recognizing that courts must have the authority to enforce discovery deadlines, numerous cases have approved exclusion orders by district courts where expert reports were not provided until nearly the close of discovery. For example, the Seventh Circuit upheld the district court's barring of the testimony of an expert witness identified just two days before the deadline. *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295-96 (7th Cir.1993). In *Smith v. Union Pacific R. Co.*, 168 F.R.D. 626, 629 (N.D.Ill.1996), the defendant identified its expert six weeks before the close of discovery, but did not provide a report until the day discovery closed. Judge Shadur noted that the district court's Standing Order clearly required each party to complete all the preconditions to an opposing party's discovery in time to permit that opposing party to take care of his, her or its discovery needs before the close-of-discovery date. *Id.* at 629. Because the plaintiff could not have deposed the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1491316                                                                    Page 5
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
**(Cite as: 2006 WL 1491316 (N.D.Ill.))**

expert without violating Rule 26(b)(4) and the district court's standing order, the court barred the testimony of the defense expert under 37(c)(1).

The court faced a similar situation in *Rick v. Toyota Indus. Equipment Co., a Div. of Toyota Motor Sales, U.S.A., Inc.,* No. 93-1331, 1994 WL 484633, *3 (N.D.Ill. Sept.2, 1994), where the plaintiff did not identify his expert until the last business day of discovery. The court applied the Standing Order to preclude consideration of expert testimony on summary judgment. In so doing, the court indicated that to correct the situation that plaintiff's tardiness had created would require the court to reopen discovery and to allow plaintiff's counsel to disrupt the orderly process of the litigation in such a way would not be appropriate. 1994 WL 484633, *4. Rather than allow the plaintiff to usurp the handling of the case, the court excluded the expert witness testimony from the record on summary judgment.

Expert testimony was also barred under like circumstance in *Verotix Systems, Inc. v. Ann Taylor, Inc.,* No. 02-8639, 2004 WL 2066889 (N.D.Ill. Aug.24, 2004), where the court rejected Verotix's argument--the very argument the plaintiff advances here--that it was free to disclose experts at any time up to the close of discovery. The court explained that common sense had to be employed: "[o]bviously, if the court ordered discovery to be completed by a certain date, notification to the opposing party of an expert on the last day of discovery ... would not leave the opposing party with sufficient time to conduct appropriate discovery relating to the disclosed expert." 2004 WL 2066889, *5.

Oblivious to the rules of this court and to the wealth of precedent prohibiting the course of conduct so blithely pursued by his counsel, the plaintiff insists that there is no rule or case law that required him to provide his expert reports any sooner than the last day of discovery. Even if one were to excuse the lack of knowledge of cases and rules boasted by the plaintiff, common sense would have dictated that the plaintiff's counsel's casual approach to their discovery obligations was inappropriate and essentially precluded the deposition of the experts--under Rule 26(b)(4)(A), within the discovery deadline since the defendants could not depose plaintiff's experts until they received their reports--and prohibited the defendants from engaging a rebuttal expert until after discovery had closed. *Verotix Systems. Compare Proffitt v. Ridgway,* 279 F.3d 503, 508 (7th Cir.2002)(Posner, J.)("We cannot find a case on point but common sense and analogy carry the day.").

[FN3]

*5 Unwilling to accept the slightest responsibility for its violations of Judge Manning's deadlines and of the local rules of this court, the plaintiff incredibly seeks to shift the focus to the defendants. The argument apparently runs this way: all the difficulties could have been resolved by a phone call from the defendants. The argument--if it can be called that--is demonstrably wrong.

[4] Local Rule 37.2's requirement that parties attempt to resolve disputes before they may apply to the court for resolution of the problem applies to motions to compel discovery and production of documents, not to motions to bar expert witnesses pursuant to Rule 37(c)(1). [FN4] The defendants are not seeking any discovery, they are asking that plaintiff be sanctioned for his failure to provide the required expert reports in a timely fashion. The sanction is automatic unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach,* 419 F.3d at 639; *Salgado,* 150 F.3d at 742.

Moreover, a phone call would have changed nothing. The harm had occurred at the time of the late disclosures, and the bell could not be unrung. A call would simply have signaled the defendants' capitulation to the reordering of the discovery schedule necessitated by the plaintiff's rule and discovery closure violations. Local Rule 37.2 did not obligate the defendants to be the hapless victims of the plaintiff's unapologetic disobedience to Judge Manning's discovery schedule. The argument that having failed to consult with them before filing their motion to bar precludes consideration of the motion is a *non sequitur* and calls to mind "George Jacques Danton's famous phrase--*l'audace, encore de l'audace, toujours de l'audace* (audacity, more audacity, always audacity)...." *United States v. Walsh,* 700 F.2d 846, 850 (2d Cir.1983)(parenthesis in original).

Even if Local Rule 37.2 were applicable under the circumstances presented here, a phone call would have accomplished nothing, and thus, the doctrine of futility, which is as applicable in the context of Local Rule 37.2 as it is in any other, *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. at 356 (collecting cases), excused the failure to call. The futility of a phone call-- even if one were required--is further illustrated by the fact that even with the notice provided by the defendants' motion--filed February 9, 2006-- plaintiff has still not completed Mr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Anderson's report, and did not indicate that Dr. Mundt has not testified as an expert in the last four until he filed his responsive brief.

Perhaps the most uninformed aspect of the plaintiff's presentation is the contention that even if the disclosures were untimely they must be tolerated because there is plenty of time before trial for the defendants to hire expert witnesses and depose the plaintiff's experts. (*Plaintiff's Response to Defendants' Motion to Bar*, at 8). The argument essentially restructures the Federal Rules of Civil Procedure and makes discovery deadlines set by the court irrelevant. The sole test is now whether there is time to depose the experts *after* discovery has closed. But that is not the scheme of the Federal Rules of Civil Procedure.

*6 [5] Under the Federal Rules of Civil Procedure, it is the court's prerogative--indeed, its duty--to manage its caseload and enforce deadlines. *Reales v. Consolidated Rail Corp.,* 84 F.3d 993, 996 (7th Cir.1996). It is not the right of a party who chooses not to comply with those deadlines to be able to restructure them at will. Nor is it the prerogative of the violator to require his victim to accept his largesse in the form of allowing discovery to proceed after the deadline set for the close of discovery by the court. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery. *See Rick,* 1994 WL 484633, *3 (rejecting reopening discovery as a curative); *Aon Risk Services, Inc. of Illinois v. Shetzer,* No.01-7813, 2002 WL 1989466, *6 (N.D.Ill. Aug.27, 2002)(rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial; all discovery was required to be completed before the extended discovery); *Gregory v. Oliver,* No. 00-5984, 2002 WL 31972165, *1 (N.D.Ill.Dec.27, 2002)(opportunity to depose expert does not make up for inadequate expert report).

Under Rule 37(c)(1), a party must show "substantial justification" for failing to disclose information required by Rule 26(a). In the instant case, the plaintiff has shown no, let along substantial, justification for its disregard of the local rules and its obligations under Judge Manning's discovery orders. [FN5]

## B.
## The Plaintiff's Export Reports Were Untimely And/Or Incomplete
[6] Clearly, then, the expert testimony of both Dr.

Fulero and Mr. Palumbo must be barred. Their reports were provided on the afternoon of January 13th-- which was effectively the last day of discovery, the 15th being a Sunday. It is beyond debate that this left no time for depositions or discovery regarding their reports, or engaging rebuttal experts.

Mr. Anderson's report was provided to defendants just four days earlier with the same effective consequence: there was no time for assimilation and study of the report and for the scheduling of depositions and the hiring and/or analysis of rebuttal experts. And, to date, Mr. Anderson's report remains facially incomplete. There is no list of cases in which he has testified as an expert as required by Rule 26(a)(2)(B), a shortcoming for which the plaintiff neither apologizes nor offers an explanation. (*Plaintiff's Response to Defendants' Motion to Bar*, at 6, 10-11). In short, his report is not only untimely, it remains incomplete, even in the wake of the defendants' present motion.

[7][8] But Mr. Anderson's report suffers from greater flaws than a missing list of cases. Under Rule 26(a), expert reports must be "detailed and complete." Rule 26 Advisory Committee's note. A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor. *Salgado,* 150 F.3d at 742 n. 6. It must not be "sketchy, vague or preliminary in nature." Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions. *Id.* The reason, of course, that experts must substantiate their opinions is that an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the judicial process. *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir.1997).

*7 [9] Measured by this standard, Mr. Anderson's report flunks. It expresses no opinion--certainly not one that will be helpful to the jury as required by Rule 702, Federal Rules of Evidence. Here is what the report says on the subject matter about which Mr. Anderson proposes to testify:

I have been asked about color fade on a 1992 Honda.... There are a couple of things to consider when talking about color fade. The first is whether the car was parked in a shaded area, as in a garage or under a canopy. If the car was covered most of the time the fade would have been minimal. If the car was parked outside a majority of the time in the sun, there will be a color fade. No one can say

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1491316                                                                    Page 7
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
**(Cite as: 2006 WL 1491316 (N.D.Ill.))**

exactly how much color fade would occur. I will say that under extreme conditions, ... the paint will fade badly. I have seen a green car after 10 years of being in the sun look almost light grey from all of the oxidation of the paint.

(*Memorandum of Law in Support of Defendants' Joint Motion to Bar,* Ex. F, at 2).

The plaintiff explains that the report is important because the defendants claim that one of the victims saw plaintiff come out of a green car. According to plaintiff, evidence will show that his car was far from green in appearance, and Mr. Anderson's report rebuts defendants' claim. (*Plaintiff's Response to Defendants' Motion to Bar,* at 6). But the report does not indicate how Mr. Anderson will testify about the car in question. It does not identify the "particular result" Mr. Anderson reached, let alone the "how" or the "why." It is hardly more informative than if it had said, "sometimes a car's finish will fade, sometimes it won't." It certainly meets the definition of "sketchy, vague and preliminary in nature," and ought to be excluded as such. Even if it had been provided in a timely manner, it does not meet the requirements of Rule 26(a)(2)(B). Because of the tardiness and incompleteness of his report, Mr. Anderson's testimony must be barred under Rule 37(c)(1). [FN6]

[10] Finally, there is the earliest of the reports, that of Dr. Mundt, produced about two weeks before the discovery deadline. In its original form, it failed to include a *curriculum vitae,* a prior case list, or a fee schedule-- all required under Rule 26(a)(2)(B). About one week before discovery closed, on January 6th, plaintiff provided the *CV* and the fee schedule, and has recently indicated that Dr. Mundt has not been an expert witness in the preceding four years. So, the report was not complete for the purposes of Fed.R.Civ.P. 26(a)(2)(B) until just five business days before the close of discovery. *See Benedetti v. Soo Line R. Co,* No. 03-6975, 2004 WL 2222281, * 4 (N.D.Ill. Sept.29, 2004)(striking report that failed to include resumé, fee schedule, and list of cases); *Expeditors International of Washington, Inc. v. Vastera, Inc.,* No. 04-0321, 2004 WL 406999, *2 (N.D.Ill. Feb.26, 2004)* (discussing significance of qualifications and prior experiences as an expert witness).

*8 In the case of Dr. Mundt, unlike the other three witnesses, the defendants at least had an incomplete report in hand about two weeks before the close of discovery. The question becomes whether that would have been sufficient time to conduct a notice and conduct a deposition of Dr. Mundt, and to hire a

rebuttal expert if need be. *See In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. at 327(discussing reasonable notice for depositions under Rule 30(b)(6)). While there is nothing to condone in plaintiff's insouciant attitude towards their discovery obligations and Judge Manning's schedule, it is at least arguable that defendants could have deposed Mundt within the final two weeks of discovery.

But it is exceedingly unlikely that if Dr. Mundt's deposition warranted it, they could have obtained their own expert and provided plaintiff with adequate and timely disclosure before discovery was to close on January 15, 2006. The two weeks between December 28th, when the disclosures were served, and January 15th, were really not two weeks at all. The reality was that it was Christmas and the New Year and allowances had to be made. As discussed earlier, acquiescence in the late disclosures would simply have extended the discovery schedule without judicial approval and in violation of the fundamental principle that "[d]isclosures must not be used as a means to extend a discovery deadline." *See Salgado,* 150 F.3d at 742 n. 6. *See also Carter v. Finely Hosp.,* No. 01-50468, 2003 WL 22232844, *2 (N.D.Ill. Sept.22, 2003)*.

The plaintiff--who has the burden of showing his failure to timely provide the report was harmless or substantially justified, *Keach,* 419 F.3d at 639; *Salgado,* 150 F.3d at 742--offers nothing convincing to demonstrate that discovery could have been completed on time. He relies entirely on the lack of a phone call from defendants--a phone call which would have accomplished nothing beyond signaling the success of the plaintiff's unilateral and illicit attempt to extend the discovery schedule.

It is well to recall that the claim for emotional distress had been in play since July 15, 2004. Yet, the plaintiff's counsel did not have Dr. Mundt examine Mr. Finwall until a year and a half later, on December 10, 2005. (*Memorandum of Law in Support of Defendants' Joint Motion to Bar,* Ex. D, at 1). No excuse or justification for the lateness of the examination which resulted in the untimely disclosure of Dr. Mundt's report is offered. There is simply the intractable and unacceptable "so what" argument. In the end, although the timing of Dr. Mundt's report was not as untimely as those of the plaintiff's other experts, it was untimely enough to require exclusion.

## CONCLUSION

Deadlines such as those envisioned by Rule

2006 WL 1491316                                                                                    Page 8
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
**(Cite as: 2006 WL 1491316 (N.D.Ill.))**

26(a)(2)(B) and 37(c)(1) are essential to the maintenance of a smooth and orderly flow of cases. *Harris,* 102 F.3d at 1433; *Golden Elevator,* 27 F.3d at 302. In the instant case, the plaintiff's counsel "knew of the deadlines established by the court but chose to ignore them." *Castro v. Board of Education of the City of Chicago,* 214 F.3d 932, 934 (7th Cir.2000). If litigants are allowed to disregard deadlines, as has the plaintiff's counsel in this case, the necessary advantages that deadlines secure will cease to exist, and court scheduling orders will become meaningless. *Spears v. City of Indianapolis,* 74 F.3d 153, 158 (7th Cir.1996). Procrastinators (to say nothing of those seeking some illicit tactical advantage) will simply be motivated not to comply with schedules carefully set by courts and announced with a kind of unambiguous finality Judge Manning expressed in this case. *Compare, High Country Home Health, Inc. v. Thompson,* 359 F.3d 1307, 1311 (10th Cir.2004)(McConnell, J.). "Judges must be able to enforce deadlines." *Parker v. Freightliner Corp.,* 940 F.2d 1019, 1024 (7th Cir.1991).

**\*9** What the Seventh Circuit said in *Spears v. City of Indianapolis, supra.,* bears repeating:

Deadlines, in the law business, serve a useful purpose and reasonable adherence to them is to be encouraged. As the Fifth Circuit noted in *Geiserman v. MacDonald,* 893 F.2d 787, 791 (1990): '[D]elays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings. 74 F.3d at 158.

It is no answer to say that the plaintiff may be disadvantaged by his counsel's conduct. That is true in every case where exclusion is warranted under Rule 37 or any other rule specifying the consequences of acts or omissions by a party's lawyer. Those rules properly recognize that clients are properly responsible for their counsel's conduct and it is to them that they must look in the event of omissions. Even more importantly, they recognize that there are societal interests in the functioning of the judicial system that transcend the immediate interests of a party in a particular case. Justice Cardozo perhaps said it best:

Our jurisprudence has held fast to Kant's categorical imperative, 'Act on a maxim which

thou canst will to be law universal.' It has refused to sacrifice the larger and more inclusive good to the narrower and smaller. A contract is made. Performance is burdensome and perhaps oppressive. If we were to consider only the individual instance, we might be ready to release the promisor. We look beyond the particular to the universal, and shape our judgment in obedience to the fundamental interest of society that contracts shall be fulfilled.

Cardozo, The Nature of the Judicial Process, 139-140 (1921).

For the foregoing reasons, the defendants' joint motion to bar the opinions of plaintiff's experts

[57] is GRANTED.

FN1. Concerns about delays are nothing new either in law or life. *See Mallory v. Kirwan,* 2 U.S. 192, 193, 2 Dall. 192, 1 L.Ed. 344 (1792); The *Key City,* 14 Wall. 653, 81 U.S. 653, 655, 20 L.Ed. 896 (1871); *Curtner v. United States,* 149 U .S. 662, 676 (1893); *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 269, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982)(encouragement of delay is fatal to the vindication of the criminal law); *In re Sulfuric Acid Antitrust Litigation,* 230 F.R.D. 527, 533 (N.D.Ill.2005)(collecting cases); *United States ex rel. Tyson v. Amerigroup Illinois,* 230 F.R.D. 538, 545 (N.D.Ill.2005). Shakespeare warned of the dangers of delay: "Defer no time delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33. The Seventh Circuit is partial to Twelfth Night. *Saunders v. Venture Stores, Inc.,* 56 F.3d 771, 775 (7th Cir.1995)("in delays there lies no plenty."). No matter. The point is the same.

FN2. Local Rule 16.1, Standing Order Establishing Pretrial Procedure, provides:
4. Discovery Closing Date.
In cases subject to this *Standing Order,* the court will, at an appropriate point, set a discovery closing date. Except to the extent specified by the court on motion of either party, discovery must be *completed* before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order. (emphasis in original).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1491316
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
**(Cite as: 2006 WL 1491316 (N.D.Ill.))**

Page 9

FN3. *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353 (7th Cir.1996) is not to the contrary. There, the court was concerned with a supplemental report, and there was no timing issue with the initial export report. In fact, the opposing party had more than enough time to secure a rebuttal expert and did so. Even the supplemental expert report was provided well before the expert's scheduled deposition. *Id.* at 1363.

FN4. Local Rule 37.2 provides:
To curtail undue delay and expense in the administration of justice, this court shall hereafter refuse to hear any and all *motions for discovery and production of documents* under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's. Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation.
(Emphasis supplied).

FN5. Rule 37 would seem to impose a greater burden on a party than the excusable neglect standard under Rule 6(b), which allows a court to enlarge the time to do an act required to be done within a specified time where, after the expiration of the specified period, the court is satisfied that the failure to act was the result of "excusable neglect." Here, there is a precise standard woven into Rule 37(c)(1) which would trump Rule 6. Moreover, Rule 6(b) only applies when there has been a motion made to permit the act to be done after the expiration of the prescribed time period. The plaintiff insists he has done nothing wrong and thus offers no excuse for his conduct and has filed no motion for enlargement of time.

FN6. The touchstone of admissibility under Rule 702 is whether the evidence will be helpful to the jury. It is difficult to see how testimony that car paint fades in the sun will help the jury. This would seem to be explication of the obvious and the jury would hardly need an "expert" to tell them that which is a matter of common knowledge. But this is not the basis on which Mr. Anderson's report is being excluded.

--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 3054055 (Trial Motion, Memorandum and Affidavit) Plaintiff's Fourth Motion to Compel (Sep. 13, 2006)Original Image of this Document (PDF)

• 2006 WL 2445360 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Support of His Objections to Magistrate Judge Cole's Order Barring Plaintiff's four Experts from Testifying (Jul. 19, 2006)Original Image of this Document (PDF)

• 2006 WL 2174528 (Trial Motion, Memorandum and Affidavit) Plaintiff's Third Motion to Compel Production of Documents and/or Depositions (Jun. 8, 2006)Original Image of this Document (PDF)

• 2006 WL 2174527 (Trial Motion, Memorandum and Affidavit) Plaintiff's Objections to Magistrate Judge Cole'S Order Barring Plaintiff's Four Experts From Testifying (Jun. 5, 2006)Original Image of this Document (PDF)

• 2006 WL 740381 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Motion to Compel Production of Documents and/or Depositions (Feb. 15, 2006)Original Image of this Document (PDF)

• 2006 WL 740380 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants' Motion to Bar (Feb. 13, 2006)Original Image of this Document (PDF)

• 2006 WL 4006725 (Expert Report and Affidavit) (Report or Affidavit of Paul A. Palumbo) (Jan. 12, 2006)Original Image of this Document (PDF)

• 2006 WL 4006724 (Expert Report and Affidavit) (Report or Affidavit of Solomon M. Fulero, Ph.D.,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1491316
--- F.R.D. ----, 2006 WL 1491316 (N.D.Ill.)
**(Cite as: 2006 WL 1491316 (N.D.Ill.))**

J.D.) (Jan. 9, 2006)Original Image of this Document (PDF)

• 2004 WL 2817731 (Trial Pleading) Defendant Mary Boswell's Answer and Affirmative Defenses to Plaintiff's Complaint (Oct. 25, 2004)Original Image of this Document (PDF)

• 2004 WL 2817721 (Trial Pleading) Complaint (Jul. 15, 2004)Original Image of this Document with Appendix (PDF)

• 2004 WL 3743217 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Joint Motion to Bar the Opinions of Plaintiff's Experts Pursuant to Federal Rule of Civil Procedure 26(a)(2) (2004)Original Image of this Document (PDF)

• 2004 WL 4909104 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Opposition to Plaintiff's Objection to Magistrate Judge Cole's Order on Defendants' Motion to Bar the Opinions of Plaintiff's Experts Pursuant to Federal Rule of Civil Procedure 26(a)(2) (2004)Original Image of this Document (PDF)

• 2004 WL 5167620 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Renewed Motion to Compel (2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.