**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
(Civil Division)

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as subrogee of Gallaudet University, : : : : | |
| Plaintiff, : | |
| v. : | Case No. 1:05CV02115 |
| CAPITOL SPRINKLER INSPECTION, INC: : | |
| Defendant/Third-Party Plaintiff, : | |
| v. : : | |
| GUEST SERVICES, INC., : : | |
| Third-Party Defendant. : | |

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR LEAVE TO SUPPLEMENT
DEFENDANT'S RULE 26(a)(2)(B) DISCLOSURE**

Defendant, Capitol Sprinkler Inspection, Inc., ("Capitol") by and through the undersigned counsel, hereby replies to opposing counsels' memoranda in opposition to Defendant's Motion for Leave to Supplement its Rule 26(a)(2)(B) Disclosure and in support, states as follows:

1. There is little disagreement among the parties that water in a sprinkler pipe at the center of this litigation froze, expanded and caused the pipe to fracture, thereby releasing thousands of gallons of water that eventually resulted in damage to the Kelloff Conference Center.

2. The questions framed for trial focus on the duties associated with maintaining and inspecting that system, and the actions or omissions that contributed to the system failure..

3. Capitol contends that when it performed its routine service on January 9, 2003, Guest Services Inc, ("Guest"), required that its employee, Terrance Hubbard, accompany Capitol's

DE076679.1

employees as they performed the service of draining the low points, on "drum drips". Moreover, Mr. Hubbard's presence was *required* because he provided them access to the drum drips throughout the conference center. Capitol's employees testified that they were given access to all of the drum drips, save one. Capitol's employees were not given access to one particular drum drip, which was situated in a guest room on the fifth floor. It is undisputed that the drum drip to which Capitol's employees was given no access, controlled water that collected, (by means of condensation and other processes), in the very pipe that later froze and fractured.

4. Capitol's theory of liability was made known to the other parties very early in the case, through its Answer to the Complaint as well as its Third-Party Complaint.

5. It is well accepted in this jurisdiction that "expert testimony is required . . . when the subject matter at issue is 'so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.' " Columbus Properties v. O'Connell, 644 A.2d 444, 447 (D.C. App. 1994); *citing* Washington Metro. Area Transit Auth. v. Davis, 606 A.2d 165, 170 (D.C. 1992); *additional citations omitted.*

6. In this matter, the care due by Capitol and Guest Services under their respective contracts is just the kind of issue on which expert testimony is required. *See e.g.* Levy v. Schnabel Foundation Co., 584 A.2d 1251, 1255 (D.C. App. 1991); *see also* District of Columbia v. Arnold & Porter, 756 A.2d 427 (D.C. App. 2000).

7. It is undisputed that all experts whom a party expects to testify at trial must be disclosed in a timely manner to all other parties as directed by the Court. Fed. R. Civ. P. 26(a).

8. "The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing

party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial." Minebea Company, Ltd., et al. v. George Papst, et al., 231 F.R.D. 3 (D.D.C. 2005), *citing* Coles v. Perry, 217 FRD 1, 4 (D.D.C. 2003).

9. And, a failure to comply with the Rule could result in extreme sanctions, including the complete exclusion of the expert testimony and opinions from trial. *See e.g.* Minebea.supra.

10. However, the sanction of exclusion is usually reserved for truly egregious conduct that places opposing parties at a genuine disadvantage or knowingly or intentionally contravenes the Court's orders. *See e.g.* Handy v. Shaw, Bransford, Veilleux & Roth, 2006 U.S. Dist. LEXIS 92715. (Attached as Exhibit A).

11. When considering, as here, permitting a party to bypass the timelines set forth in the Court's Scheduling Order, the Court will focus on the diligence of the party seeking leave to do so. *See e.g.* DAG Enterprises, Inc. v. Exxon Mobile Corporation, 226 F.R.D. 95, 105 (D.D.C. 2005).

12. The following history compels the conclusion that Capitol has been diligent in its efforts to secure a factual basis to support its expert opinion.

13. Cognisant of the purpose of the Rule, Capitol placed all parties on notice of Mr. Davidson's identity, credentials, and the opinions to which he would testify through its Rule 26(a)(2)(B) Disclosure, served on opposing counsel on October 16, 2006.

14. Defendant's Disclosure put the parties on reasonable notice, perhaps minimally, that Mr. Davidson's testimony was to be directed at the required access that was not provided as well as the slow response to alarm.

15. Neither Plaintiff nor Guest Services sought to depose Mr. Davidson with regard the those

opinions that were timely attributed to him, although he remains available for deposition.

16. Given the substance of Mr. Davidson's opinions, Capitol has been trying ever since the time Guest filed its Answer on April 4, 2006, to schedule the depositions of the former Guest Services employees. Attached as Exhibit B is an e-mail tending to show Capitol's diligence in seeking the depositions. As early as May 1, 2006, Captiol's counsel requested Guests' counsel's position on whether its former employees could be contacted directly by Capitol's counsel. By e-mail dated July 7, 2006, (Exhibit C), Captiol's counsel proposed taking Mr. Hubbard's deposition on August 14, 2006. However, by e-mail dated July 13, 2006 (Exhibit C), Capitol's counsel was advised that Mr. Hubbard's deposition was "on hold for the time being" because he had not yet responded to the inquires of Guests' counsel. Whereas the Hubbard deposition remained "on hold" one month later, Capitol's counsel, by e-mail dated August 11, 2006 (Attached as Exhibit D), renewed its request for Mr. Hubbard's last known address.

17. Similarity, Capitol's counsel sought to depose David Hams, who was the building engineer, and Guest's person most knowledgeable about the contracts between Plaintiff & Guest, and Guest and Guest & Capitol. Also attached as Exhibit D is a copy of Capitol counsel July 17, 2006, e-mail requesting Mr. Hamm's deposition. On July 26 Guest counsel replied by offering an address in California, but no telephone number. Capitol was unable to contact Mr. Hamm through the information and therefore, by e-mail dated August 11, 2006, (Exhibit D), Capitol renewed its request for Mr. Hamm's telephone number.

19. Whereas Guest was unable or unwilling to provide these witnesses by October 9, counsel for Capitol Noticed the depositions of not only Mr Hamm and Mr. Hubbard, but also that of

Guest's "30(b)(6) witness concerning access to the Conference Center provided to Defendant by Third-Party Defendant on January 9, 2003".. **To date, Guest has not provided a 30(b)(6) witness on this issue or any witness of any kind. (Exhibit E)**

20. By letter of October 11, 2006 (Attached as Exhibit F), the undersigned was advised that depositions scheduled to be held on the Gallaudet campus could not go forward on October 16 because of campus unrest. See Also: Capitol's October 16 e-mail (Exhibit G), regarding rescheduling the campus unrest delaying Capitol's site inspections.

21. Both opposing counsel clearly understood at that time that Mr. Davidson was serving as Capitols' expert, and would be offering his opinions concerning duty and causation. Even so, Capitol had to argue that Mr. Davidson should be permitted to inspect all areas associated the performance of Capitol's duty. (See e-mail string, dated October 16, 2003 - October 20, 2006, attached hereto as Exhibit H.)

22. As of October 20, 2006 (Exhibit I), Capitol's counsel renewed its request for Guest to: 1) identify or produet its 30(b)(6) witness, and 2) provide the contact information for Mr. Hubbard and Mr. Hamm. As of the middle of October '06, Capitol was still unable to contact Hubbard or Hamm, and Guest took the position that it could not disclose their social security numbers. Consequently, Guest was required to serve a formal interrogatory requesting the social security numbers and telephone numbers of both.

23. Attached as Exhibit I is a copy of the interrogatory that Capitol was required to propound in order to learn the telephone numbers and social security numbers of Mr. Hamm and Mr. Hubbard.

24. Guest wrongly refused to respond to the interrogatory by providing its employee's social

security numbers and telephone numbers. Guest wrongful objection to identifying the employees' social security numbers. Only served to unfairly prejudice Capitols' pursuit of factual discovery tending to support the defense.

25. Upon receipt of the interrogatory, Guest inappropriately delayed the litigation by serving its "non-response" to the interrogatory attached as Exhibit J. In its response, Capitol objected to its disclosure of its former employees social security numbers. Moreover, Capital simply refuses to identify the telephone number and other identifying information responsive to the interrogatory.

26. This untimable response resulted in more delay, as it required Capitol to serve a letter demanding the information as satisfactory of Fed. R. Civil, 37. Therefore, by letter of December 8, 2006 (Exhibit K), Capitol's counsel forwarded a Rule 37 letter to Guest and untimely received a response.

27. Only then did counsel for Guest provide the requested information (Guest counsel's December 17, 2006 e-mail attached as Exhibit L.) This information untimely proved unhelpful an contacting either Mr. Hubbard or Mr. Hamms.

28. It is clear that Capitol attempted to comply with the Court's Scheduling Orders in this matter

29. Opposing counsel contend that Defendant's submission of Mr. Davidson's letter opinion will harm them because they did not depose him. This argument has no merit. As shown above they clearly knew he would act as Defendant's expert with sufficient time to depose him and "[w]here a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to plead prejudice resulting from his own inaction." <u>DAG Enterprises, Inc., et. al. v. Exxon Mobile Corporation</u>, 226 F.R.D. 95, 105-106 (D.D.C 2005).

Moreover, Mr. Davidson remains available for deposition.

30. As the record demonstrates, opposing counsel never filed a challenge to Defendant's Disclosure, did not attempt to have it stricken, and never attempted to depose Mr. Davidson, notwithstanding the fact that they clearly knew who he was, what he intended to say, and that he was available for deposition.

31. Moreover, as shown above, Defendant made repeated attempts to secure the depositions of not only Mr. Hamm and Mr. Hubbard, but Guests' 30(b)(6) witness despite months of repeated requests, Guest has failed to provide one single witness for deposition.

32. Faced with continued resistance from opposing counsel, (see e-mail of Otober 20, 2006, attached as exhibit M). Counsel for Capitol had no recourse but to hire a private investigator in an effort to locate them (Exhibit N).

33. Whereas Defendant Capitol Sprinkler made diligent efforts to comply with the Court's scheduling order and produce its Rule 26(a)(2)(B) in a timely fashion, and whereas permitting Defendant to supplement its Disclosure is harmless to both Plaintiff and Guest Services in that they were fairly oppressed of Mr. Davidson and his opinions in sufficient time to depose him or to propound other discovery requests on Defendant with regard to his opinions, Defendant should be granted leave to supplement its Rule 26(a)(2)(B) Disclosure initially served , October 16, 2006.

WHEREFORE, Defendant, Capitol Sprinkler Inspection, Inc., respectfully requests that Honorable Court GRANT its motion and permit it to supplement its Rule 26(a)(2)(B) Expert Disclosure with the formal letter executed by Jim Davidson,, on January 12, 2007, and produced to opposing counsel the same day.

                                          **MARKS, O'NEILL,**
                                        **O'BRIEN & COURTNEY, P.C.**

                                         \s\ *Norman H. Brooks, Jr.*
                                    Donald R. Kinsley, Esquire (Bar ID No. 432998)
                                    Michael T. Hamilton, Esquire (Bar ID No. 474233)
                                    Norman H. Brooks, Jr., Esquire (PHV)
                                    913 N. Market Street, Ste. 800
                                    Wilmington, DE  19801
                                    *Attorneys for Defendant/Third-Party Plaintiff*
                                    Capitol Sprinkler Inspection, Inc.

DATE:  February 22, 2007

DE076679.1