UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, <br><br>    Plaintiff, <br><br>      v. <br><br> CAPITOL SPRINKLER INSPECTION, INC. <br><br>    Defendant/Third-Party Plaintiff, <br><br>      v. <br><br> GUEST SERVICES, INC. <br><br>    Third-Party Defendant. | Civil Action No. 05–2115 (CKK) |

**MEMORANDUM OPINION**
(June 1, 2007)

Presently before the Court are two discovery-related motions filed by Defendant/Third-Party Plaintiff Capitol Sprinkler Inspection, Inc. (hereinafter "Defendant" or "Capitol Sprinkler"): Defendant's [29] Motion for Leave to Supplement Defendant's Rule 26(a)(2)(B) Disclosures, and Defendant's [39] Motion in Limine or in the Alternative to Extend Time for Expert Discovery. Both Motions are fully briefed. Based on the filings, the history of the case, and the relevant statutes and case law, the Court shall deny Defendant's [29] Motion for Leave to Supplement Defendant's Rule 26(a)(2)(B) Disclosures, and deny in part and require further briefing in part with respect to Defendant's [39] Motion in Limine or in the Alternative to Extend Time for Expert Discovery.

**I: BACKGROUND**

Plaintiff, St. Paul Mercury Insurance Company (hereinafter, "Plaintiff" or "St. Paul Insurance"), filed a Complaint on October 31, 2005 as Subrogee of Gallaudet University against Defendant. Defendant had entered into a contract on or about April 22, 2002, whereby Defendant would perform a semi-annual inspection of the fire suppression system in the Kellogg Conference Center at Gallaudet University. Compl. ¶ 8; Third-Party Compl. ¶ 2. On or about January 25, 2003, a pipe fitting in the dry fire protection sprinkler system in the Conference Center froze, thawed, and ruptured, causing substantial damage. Compl. ¶¶ 7, 11; Def.'s Answer ¶ 11. No Party disputes that on January 9, 2003, Defendant had inspected at least part of the sprinkler system. Compl ¶¶ 9, 10; Third-Party Compl. ¶ 3. Defendant had certified that it had protected the valves in the sprinkler system from freezing. Compl. ¶ 19; Third-Party Def.'s Opp'n, Ex. 2. However, on January 30, 2006, Defendant filed a Third-Party Complaint against Guest Services, Inc. (hereinafter "Third-Party Defendant" or "Guest Services"), alleging that Guest Services (who performs maintenance and management at the Conference Center) "failed to provide Capitol Sprinkler access to all drum drips located on the fifth floor as requested," failed to "reasonably monitor the system and react to alarms and warnings," and failed to stop the flow of water upon notification from the water flow alarm. Third-Party Compl. ¶¶ 11, 12, 13.

On April 5, 2006, an Initial Scheduling Conference was held in this case, after which the Court issued a [18] Scheduling and Procedures Order ordering that the Proponent's Rule 26(a)(2)(B) statement was due by August 15, 2006, the Opponent's Rule 26(a)(2)(B) statement was due by October 15, 2006, and Replies were due by November 6, 2006, with Discovery closing on December 15, 2006. The Court's Scheduling and Procedures Order further indicated that "Scheduled Dates Are Firm," and that "counsel are required, under both Federal Rule of

Civil Procedure 26(f) and Local Rule LCvR 7.1(m), to confer in good faith in an effort to resolve

any discovery dispute before bringing it to the court's attention. . . . **Counsel shall not file a**

**discovery motion without prior consultation with opposing counsel.** Counsel are advised that

if the court is called upon to resolve such a motion, the losing **attorney** (not the principal) will be

sanctioned pursuant to Fed. R. Civ. P. 37(a)(4)." [18] Order at 3.

On October 16, 2006,[1] Defendant filed an [23] Unopposed Motion for Extension of Time

to Serve its Rule 26(a)(2)(B) disclosures, which the Court granted via the following Minute Entry

Order on October 24, 2006:

> MINUTE ENTRY ORDER (paperless) granting [23] Motion for Extension of Time as to
> Rule 26(a)(2)(B) Disclosures.  Accordingly, Capitol Sprinkler shall serve its expert
> reports on or before November 6, 2006; Opponent's expert reports shall be served on or
> before November 27, 2006; and replies, if any, shall be filed on or before December 8,
> 2006.  All discovery shall be completed by January 5, 2007.  The status hearing shall
> remain set for January 31, 2007, at 9:00 a.m.

Dkt. Entry (10/24/06).  On January 10, 2007, all Parties appeared before Magistrate Judge Alan

Kay for a settlement conference.

On January 31, 2007, the Parties appeared before this Court for a status conference,

raising the discovery dispute later articulated in Defendant's [29] Motion for Leave to

Supplement Defendant's Rule 26(a)(2)(B) Disclosures,[2] filed on February 5, 2007, and the

---

[1]  October 16, 2006 is a Monday, and as such is the business day following October 15, 2006.

[2]  As Plaintiff articulates in its Opposition to Defendant's Motion, "[w]hen counsel for defendant Capitol Sprinkler asked the Court what the motion should be titled, the Court's response was 'Motion to Conduct Discovery Out of Time.'  Instead, defendant Capitol Sprinkler has filed this Motion for Leave to Supplement Defendant's Rule 26(a)(2)(B) Disclosures."  Pl.'s Opp'n at 2.  Plaintiff describes Defendant's motion as "a complete misnomer, since a party can only supplement its expert disclosures if a timely prior expert disclosure was, in fact, served upon the opposing parties."  *Id.*

related Oppositions (from both Plaintiff and Third-Party Defendant) and Reply.  The paper trail

attached to the Parties' filings reveals the following chronology of events:

On October 9, 2006, Defendant had noticed the depositions of two former employees of

Third-Party Defendant (Terrence Hubbard and David Hamm) and corporate designees for both

Gallaudet and Third-Party Defendant for October 16, 2006.  Def.'s Reply, Ex. E.  Both Plaintiff

(on October 11, 2006) and Third-Party Defendant (on October 12, 2006), indicated that they

could not produce said witnesses in such a short time-frame.  Def.'s Mot., Ex. 1 (D & E).  On

October 16, 2006, Defendant served its "Rule 26(a)(2)(B) Disclosure of Expert Testimony" on

Plaintiff and Third-Party Defendant.  Def.'s Mot. ¶ 10, Ex. 3.  The entirety of this "Disclosure" is

as follows:

1.    <u>Liability Expert</u>

James S. Davidson, Jr., P.E.
P.O. Box 4010
Greenville, DE 19807

Mr. Davidson will testify to the following:

(1) Gallaudet University ("Gallaudet") and Guest Services, Inc. ("Guest") failed to

grant Capital [sic] access to the drum drip in the guest suite during the January 9, 2003

inspection to allow it to drain any water that may have existed in the sprinkler pipe.

(2) Upon the alarm being set off, Gallaudet and Guest failed to re-transmit the

alarm to the appropriate fire service.

(3) Because Gallaudet failed to immediately notify the water service of the alarm,

inordinate amounts of water was [sic] discharged throughout the building which caused

damages well in excess of the foreseeable damages proximately resulting from a system

failure of a water discharge.

Mr. Davidson's qualifications, the compensation to be paid for the study and testimony and a listing of any other cases in which he has testified as an expert at trial within the proceeding four years are attached hereto and incorporated by reference herein. A complete statement of all opinions to be expressed and the basis and reasons therefore [sic], a listing of any cases in which he has testified as an expert by deposition within the last four years, the data or other information considered by Mr. Davidson and any exhibits to be used as a summary of or support for the opinion *will be forthcoming in a supplementary disclosure*. Capital [sic] filed a motion for extension of time to provide this information in a supplementary disclosure.

Def.'s Mot., Ex. 3 (October 16, 2006 Disclosure) (emphasis added). This "Disclosure" was signed by Defendant's counsel, not by Mr. Davidson. Attached to this "Disclosure," Defendant only provided the *curriculum vitae* of Mr. Davidson, which included his usual rate of $150 per hour for pretrial review of documents, depositions, and trial testimony. *Id*. On October 24, 2006, this Court issued a Minute Order granting Defendant an extension until November 6, 2006, to serve its "expert reports." However, the referenced "forthcoming . . . supplementary disclosure" was never provided by Defendant prior to the close of discovery.

On October 31, 2006, Defendant served Interrogatories on Third-Party Defendant seeking in part discovery of location and contact information for former employees Mr. Hubbard and Mr. Hamm. Def.'s Reply, Ex. I. On November 9, 2006, Plaintiff's counsel sent a letter to Defendant's counsel confirming that Plaintiff's counsel had not received Defendant's expert disclosures, and stating that "Capitol Sprinkler's purported disclosure of expert testimony under

5

Rule 26(a)(2)(B), which you served on or about October 16, 2006, is wholly inadequate under the provisions of that Rule to constitute any expert disclosure whatsoever." Pl.'s Opp'n, Ex. A at Ex. 4 at 2 (November 9, 2006 letter to Brooks from Groth). On December 8, 2006, Defendant's counsel wrote a letter to Third-Party Defendant's counsel titled a Rule 37 request with respect to Mr. Hubbard and Mr. Hamm. Def.'s Reply, Ex. K (December 8, 2006 letter to Horvath from Segletes). On December 13, 2006, Mr. Hubbard's and Mr. Hamm's addresses and other identifying information were provided by Guest Services' counsel to Defendant's counsel. *Id.*, Ex. L (December 13, 2006 e-mail to Segletes from Walsh). However, Defendant's counsel never noticed the deposition of Mr. Hubbard or Mr. Hamm after its original notice of deposition for October 16, 2006, which it had retracted pursuant to discussions with opposing counsel due in part to inadequate notice. *See supra* at 4; Def.'s Mot., Ex. 1(E) at 1 ("[W]e have agreed that the depositions will not be going forward on Monday [October 16, 2006].").

On January 5, 2007, the final day of discovery, during the deposition of Plaintiff's expert Kenneth McClaughlan, an exchange between counsel took place with respect to Defendant's October 16, 2006 expert "Designation." Def.'s Mot. ¶ 16, Ex. 5 (Deposition transcript). Counsel for Guest Services stated that he had "not seen a report from any engineering [sic] expressing any opinion. I have seen a subject designation, but never an opinion designation. If you have got an opinion designation, I would love to see it. I have seen subject matter only." *Id.*, Ex. 5, Tr. at 23. Counsel for Defendant responded, "We can look at that at the break, if you would like, if you remind me." *Id.* According to Guest Services, and not refuted by Defendant,

> [a]t the conclusion of the deposition, the undersigned showed Mr. Brooks, counsel for Capitol Sprinkler, a copy of the "Designation". [sic] Mr. Brooks indicated that he did not consider this a Designation, that it was inadequate, and stated that there was some other

> "document" that was available with the Designation. A request was made for that
> document on January 8, 2007. *See* Exhibit 4. No such document or report was produced,
> and it was not until after the Mediation Conference in this case [on January 10, 2007] that
> the report was created. Mr. Brooks did not give an excuse for the failure to provide the
> information on the basis that he was waiting for information from Guest Services.

Third-Party Def. Opp'n at 5, Ex. 4 (January 8, 2007 letter to Brooks from Horvath).

On January 12, 2007, after the deposition of Mr. McClaughlan, after the close of

discovery, and after the mediation conference, Mr. Davidson sent a two-page letter (dated

January 12, 2007) to counsel for Defendant "to supplement the opinions [Mr. Davidson]

expressed earlier, as set forth in Capitol Sprinkler Inspection, Inc. disclosure dated October 16,

2006." Def.'s Mot.,Ex. 6 (January 12, 2007 letter to Brooks from Davidson). This two-page

letter, which purports to be Defendant's Supplemental Disclosure, states that Davidson

Associates reviewed "available depositions, reports, shop drawings, contracts and experts report

[sic]," "inspected pertinent portions of the facility," and "sat in on the deposition of Gary Aller,"

in making the following "findings" with respect to "event[s]":

1.    Gallaudet University ("Gallaudet") and Guest Services, Inc. ("Guest") failed to

       grant Capital [sic] access to the drum drip in the guest suite during the January 9,

       2003 inspection to allow it to drain any water that may have existed in the

       sprinkler pipe, in violation of NFPA 25.

. . .

1.    Upon the alarm being set off, Gallaudet and Guest failed to re-transmit the

       Kellogg Conference Center facility's sprinkler system water flow alarm to the

       municipal fire service, in violation of NFPA 72.

2.    Because Gallaudet failed to immediately notify the fire service of the alarm,

7

inordinate amounts of water were discharged throughout the building which

caused damages well in excess of the foreseeable damages proximately resulting

from a system failure with water discharge.

3.      Because Gallaudet and Guest on-site personal [sic] could not turn off the

appropriate sprinkler system control valve in a timely fashion (per Capt Tate's

incident report it took nearly two hours to turn off the water) inordinate amounts

of water was [sic] discharged throughout the building which caused damages well

in excess of foreseeable damages proximately resulting from a system failure with

water discharge.

. . .

*Id.* at 1-2.  Finally, the "opinion" stated in the report is as follows:

It is Davidson Associates' engineering opinion at this date with a high degree of

professional engineering certainty that the Gallaudet and Guest's personal [sic]:

1.      Did not grant Capital [sic] access to the drum drip located in the ceiling of Suite

5200 during the January 9, 2003 inspection.

2.      Did not notify or retransmit to the municipal fire department the Kellogg

Conference Center's sprinkler system water flow alarm.

3.      Were not familiar with the Kellogg Conference Center sprinkler systems and

related system control valves and did not know the appropriate sprinkler system

control valve to turn off in order to prevent additional water discharge from the

system.

*Id.* at 2.  Furthermore, the "Supplemental Report" states that "[i]t is industry practice, in

8

accordance with the fire, building and property maintenance codes requirements, that semi-annual inspections are not sufficient and the property owner or his representative is required to conduct weekly, monthly, quarterly, semi-annual, annual, three year interval and five year interval inspections, testing and maintenance procedures for water-based fire protection systems." *Id.* at 1. There are no attachments to this "Supplement." In an e-mail dated January 12, 2007, responding to Plaintiff's counsel's e-mail assessment that the "Supplemental Report" did not meet the requirements of discovery rules, Defendant's counsel indicates that "Mr. Davidson is available for deposition," presumably ignoring the fact that discovery had already closed. Pl.'s Opp'n, Ex. C (January 12, 2007 e-mail to Horvath from Brooks).

On January 15, 2007, Plaintiff's counsel wrote a letter to Defendant's counsel detailing the discovery history set out above, which stated that "[i]t was not until Magistrate Judge Kay agreed that, without any expert testimony, defendant Capitol Sprinkler had large gaps in the proof of any of its alleged defenses, did it apparently sink in that [Defendant's counsel] would have to bring this issue before the Court during our January 31, 2007 pretrial conference with Judge Kollar-Kotelly." Pl.'s Opp'n, Ex. A (January 15, 2007 Letter to Brooks from Groth).

With respect to the other pending motion, on February 26, 2007, Defendant also filed Defendant's [39] Motion in Limine or in the Alternative to Extend Time for Expert Discovery, to which Plaintiff filed an Opposition and Defendant filed a Reply. In this Motion, Defendant argues that the Court should exclude the testimony and opinions of two of Plaintiff's witnesses–James Dunaway and Charles Murray–for Plaintiff's failure to comply with Rule 26(a)(2)(B) by producing an incomplete disclosure with respect to said "Damages Experts." Def.'s Mot. in Limine ¶ 9 ("Plaintiff's disclosure was largely a list of estimated or paid costs for

9

repair, the contracts of engagement to prepare the same, and a few short letters authored by

Plaintiff's 'experts.'  Notably, Mr. Dunaway doesn't even provide a letter in this Disclosure.").

The Court understands that Mr. Dunaway is a now-retired employee of Plaintiff, while Mr.

Murray is a present employee of Plaintiff.  While Plaintiff had initially produced Mr. Dunaway as

a "damages expert," Plaintiff served a "Supplemental Disclosure" on Defendant to substitute Mr.

Murray for Mr. Dunaway because "Mr. Dunaway has retired, moved to Florida and is reportedly

in failing health."  Def.'s Mot. in Limine, Ex. B at 1 (Supplemental Disclosure).  This

Supplemental Disclosure states that "Mr. Murray will testify, consistent with the facts and

information contained in those reports and estimates [attached to Plaintiff's Initial Disclosure],

that the fair, reasonable and necessary cost to repair the property damaged by the subject water

leakage incident was $800,022.85."  *Id.* at 2.  The Supplemental Disclosure also attached two

additional documents allegedly prepared by Mr. Murray "which state the building replacement

cost value and actual cash value, as well as the business personal property replacement cost value

and actual cash value."  *Id.*  However, there is nothing on the face of these attached documents

that indicates that they were prepared by Mr. Murray.

## II: DISCUSSION

    A.    *The Court shall deny Defendant's [29] Motion for Leave to Supplement Defendant's Rule 26(a)(2)(B) Disclosures because Defendant has not demonstrated "good cause" in its failure to abide by the Court's Scheduling Order*

A Scheduling Order is "intended to serve 'as the unalterable road map (absent good

cause) for the remainder of the case.'"  *Olgyay v. Soc'y for Envtl. Graphic Design, Inc.*, 169

F.R.D. 219, 220 (D.D.C. 1996) (quoting *Final Report of the Civil Justice Reform Act Advisory*

*Group of the United States District Court for the District of Columbia* at 39 (Aug. 1993)). "A

scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly

disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

610 (9th Cir. 1992) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me.

1985)). Indeed, "[d]isregard of the order would undermine the court's ability to control its

docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the

cavalier." *Id.* As such, Rule 16 of the Federal Rules of Civil Procedure makes plain that a

scheduling order entered by a district judge "shall not be modified except upon a showing of

good cause and by leave of the district judge . . . ." Fed. R. Civ. P. 16(b); *see also* LCvR 16.4

("The court may modify the scheduling order at any time upon a showing of good cause.").

Filing an expert disclosure or a supplement thereto after the close of discovery requires

leave of the Court pursuant to Federal Rule of Civil Procedure 16(b). *AMTRAK v. ExpressTrak,*

*LLC*, No. 02-1773, 2006 U.S. Dist. LEXIS 67642 (D.D.C. Sept. 21, 2006); *Olgyay*, 169 F.R.D. at

220. Defendant in this case is obligated to seek a modification of the Scheduling Order by

demonstrating "good cause" before serving its "Supplemental Disclosure." Fed. R. Civ. P. 16(b);

LCvR 16.4; *Olgyay*, 169 F.R.D. at 219-20. "Rule 16(b)'s 'good cause' standard primarily

considers the diligence of the party seeking the amendment. The district court may modify the

pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the

extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's note

(1983 amendment)); *see also* 3 *Moore's Federal Practice* § 16.14[b] (2003) ("[I]t seems clear

that the factor on which courts are most likely to focus when making this determination is the

relative diligence of the lawyer or lawyers who seek the change."). Importantly, "carelessness is

not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609; *see also Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559-60 (S.D. Cal. 1999) (if a party that seeks to extend the scheduling order to take untimely discovery "was not diligent, the inquiry should end"); 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1522.1, at 231 (2d ed. 1990) ("Good cause" "require[s] the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."); 3 *Moore's Federal Practice* § 16.14[b] (2003) ("'[G]ood cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party.").  "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause." *Olgyay*, 169 F.R.D. at 220 (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia* at 41 (Aug. 1993)).  In sum, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citing *Gestetner Corp.*, 108 F.R.D. at 141).  "If that party was not diligent, the inquiry should end." *Id.*

        Courts in this District have routinely denied requests for discovery beyond a cut-off date where a party has shown a lack of diligence during the allowed time period. *See, e.g.*, *Smith Wilson Co. v. Trading & Dev. Establ.*, No. 90-1125, 1991 WL 171689, at *1 (D.D.C. Aug. 20, 1991) ("As counsel well knows, this Court established a firm discovery cut-off after consulting with counsel for both sides in open court."); *Secord v. Cockburn*, 747 F. Supp. 779, 786 (D.D.C.

1990) ("where a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to plead prejudice resulting from his own inaction") (citation omitted); *Senkow v. Herrington*, No. 86-2220, 1989 WL 46747, at *1 (D.D.C. Apr. 25, 1989) (denying more time for discovery where court had allowed 120 days and had notified parties in its scheduling order that it was "not inclined to grant further continuance of discovery").

In the instant case, Defendant has not demonstrated "good cause" for its failure to abide by the Court's Scheduling Order. "'[T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: . . . that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding the [movant's] diligent efforts to comply, because of matters which *could not have been reasonably foreseen or anticipated* at the time of the Rule 16 scheduling conference, . . . and [] that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with that order . . . .'" *DAG Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 106 (D.D.C. 2005) (quoting *Jackson v. Laureate, Inc.,* 186 F.R.D. 605, 607-08 (E.D. Cal. 1999) (internal citations omitted) (emphasis added)).[3]  Defendant clearly could foresee that both the source of liability and amount of damages were at issue in this case; in fact, presumably that is why Mr. Davidson was "designated" as an expert in the first place.  Defendant was keenly aware of the existence of Mr. Hamm and Mr. Hubbard prior to the close of discovery, yet in spite of Defendant's alleged difficulties in tracking down these former employees of Third-Party

---

[3]  Despite Defendant's reliance on *AMTRAK v. ExpressTrak, L.L.C.*, No. 02-1773, 2006 U.S. Dist. LEXIS 67642 (D.D.C. Sept. 21, 2006), see Def.'s Mot. ¶ 23, the present case is distinguishable in that in *ExpressTrak*, an expert report was timely filed in accordance with the court's scheduling order and serious issues were later discovered with respect to that witness's credibility.

Defendant, Defendant did not move the Court for a further extension of the deadline for its Rule 26(a)(2)(B) disclosure or an extension of the close of discovery on this basis.   Furthermore, even though Defendant argues that because it was "unable" to depose Guest Services' former employees, Capitol's expert rendered his signed opinion without the benefit of their testimony after the close of discovery, Def.'s Mot ¶ 18, the Court notes that Defendant had initially noticed the deposition of said individuals on the date that Defendant's Expert Designation was due such that said Expert Report could not practically have incorporated any information from said depositions at any rate.  *See* Third-Party Def.'s Opp'n at 4.  Defendant never made a follow-up or additional request for a deposition of the former Guest Services employees.  *Id.*  Ultimately, the Court agrees that "Defendant's references in its motion to difficulties in obtaining the depositions of some former employees of third-party defendant Guest Services do not provide any justification for defendant ignoring the discovery deadlines set by this Court and failing to seek an additional extension, if necessary."  Pl.'s Opp'n at 6.

Defendant's additional two arguments pertain to prejudice to Defendant and the alleged lack thereof to Plaintiff and Third-Party Defendant, concepts not traditionally assessed under Rule 16.  Specifically, Defendant suggests that because the opinions expressed in the January 12, 2007 Supplement "are essentially the same opinions expressed by in [sic] Capitol's Rule 26(a)(2)(B) Disclosure of October 16, 2006," Def.'s Mot. ¶ 19, such that Defendant "herein timely placed all parties on notice of the substance of its expert's opinions in October of 2006," *id.* ¶ 27, Defendant should be allowed to supplement its Rule 26(a)(2)(B) Expert Disclosure with Mr. Davidson's January 12, 2007 letter.  The Court need not include in its assessment of Defendant's demonstration of "good cause" whether or not prior notice mitigates prejudice to

14

Plaintiff or Third-Party Defendant.  "'The existence or degree of prejudice to the party opposing

modification may supply an additional reason to deny a motion to modify a scheduling order, but

it is irrelevant to the moving party's exercise of diligence and does not show good cause.'" *DAG*

*Enters.*, 226 F.R.D. at 110 (quoting 3 *Moore's Federal Practice* § 16.14[b] (2003)).  However,

the Court notes that both Plaintiff and Third-Party Defendant would be significantly prejudiced if

the Court modified its scheduling order such that Defendant's "Supplement" would be admitted.

First of all, neither Plaintiff nor Third-Party Defendant identified any rebuttal expert (and

presumably have created their theory of the case without any such expert), relying on

Defendant's failure to properly designate Mr. Davidson or any other individual as an expert.  *See*

Pl.'s Opp'n at 5; Third-Party Def.'s Opp'n at 3, 8.  Additionally, neither the October 16, 2006

"Disclosure" nor the January 12, 2007 "Supplement," actually meet the requirements of Rule

26(a)(2)(B), providing Mr. Davidson's view of contested facts rather than any specific

professional opinion relevant to the case at hand.  For example, Mr. Davidson's January 12, 2007

"Supplement" includes factual statements by Mr. Davidson, who was not present at the time of

the incident, regarding the actions of Gallaudet University and Guest Services during the

incident.  The only statement resembling an "opinion," regarding the frequency of inspections

required as a matter of "industry practice," does not specify what industry practice, nor what

"fire, building and property maintenance code requirements" require such inspections, nor

attaches any documents to further illuminate this statement.  *See supra* at 7-9.  In order to provide

sufficient information regarding Mr. Davidson's opinions such that Plaintiff and Third-Party

Defendant could make an informed decision as to whether deposing Mr. Davidson would be

necessary (and could adequately prepare for such a deposition), the Court would have to permit

Defendant a third try at filing a proper expert disclosure and reopen discovery such that Plaintiff and Third-Party Defendant could depose Mr. Davidson if they so chose, designate their own rebuttal experts, and provide expert reports to Defendant, all at significant cost to Plaintiff and Third-Party Defendant and in further delay of discovery, which the Court had already previously extended at Defendant's request.

Defendant further argues that "[n]either Plaintiff nor Third-Party Defendant has sought to strike Capitol's Rule 26(a)(2)(B) disclosure as filed," and that only Defendant would be harmed by the exclusion of such a supplementation, *id.* ¶¶ 30, 31. However, because of the automatic exclusion provision in Rule 37(c)(1), Plaintiff and/or Third-Party Defendant may strategically have chosen to wait until after discovery closed to move to exclude said "Disclosure" or the testimony of Mr. Davidson. *See Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503-05 (D. Md. 1997) ("A party who receives incomplete or evasive Rule 26(a)(2) disclosures consequently faces a dilemma of sorts. . . . Attorneys who wish to exclude the expert's testimony at trial, then, may be disinclined to file the motion to compel, because, if granted, the party which supplied the defective disclosures may be given another opportunity to get them right, and the expert will then be permitted to testify at trial."); *but see Harvey v. District of Columbia*, 949 F. Supp. 874, 877 (D.D.C. 1996) (where defendants did not promptly put plaintiff on notice of their view of expert report as being inadequate, defendant's expert's testimony would not be precluded). The Court notes, however, that Defendant was promptly put on notice of Plaintiff's view of the inadequacy of Defendant's October 16, 2006 disclosure prior to the close of discovery via Plaintiff's November 9, 2006 letter to Defendant's counsel, see Pl.'s Opp'n, Ex. A at Ex. 4 at 2. Furthermore, while potential prejudice to Defendant is "not a traditional factor that a court must

16

consider in evaluating an attempt to extend discovery and modify a Scheduling Order under

Federal Rule of Civil Procedure 16(b) . . . ," *DAG Enters.*, 226 F.R.D. at 111, the Court notes

that Defendant is not required to use an expert to litigate its case, as a jury could believe its

version of the facts (that Defendant was not allowed to access certain areas of the Conference

Center in making its inspection) as set forth by non-expert witnesses.

　　However, at this juncture, based on the two motions presently before the Court, it would

be inappropriate for the Court to strike Defendant's October 16, 2006 "Disclosure," despite the

Court's initial reaction that said filing falls far short of the requirements of a Rule 26(a)(2)(B)

expert designation in drawing three factual conclusions, see *supra* at 4-5, as opposed to offering

expert opinion.  In their Oppositions, both Plaintiff and Third-Party Defendant argue that neither

Defendant's October 16, 2006 "Disclosure" nor Defendant's January 12, 2007 "Supplement"

meet the requirements of a Rule 26(a)(2)(B) expert disclosure.  As explained above, Defendant

has not demonstrated "good cause" to file a Supplement after the close of discovery such that the

Court need not consider the content of Defendant's January 12, 2007 "Supplement."  With

respect to this "Supplement," the Court emphasizes, as it did in *DAG Enterprises,* that "[t]he

Court is not sanctioning [Defendant].  Rather, the Court is concluding that [Defendant's] failure

to show "good cause" and excuse [its] lack of diligence entails that (1) [Defendant] cannot

extend discovery and (2) may not attempt to circumvent the Court's Scheduling Order through

various means."  *DAG Enters.*, 226 F.R.D. at 109.  However, with respect to Defendant's

October 16, 2006 Disclosure, if Plaintiff and/or Third-Party Defendant want to exclude Mr.

Davidson from testifying or want to contest the sufficiency of said "Disclosure," they need to file

an appropriate motion in limine to this effect for the Court to consider their request.

Finally, to dispel any confusion created by Defendant's Motion, the Court notes that in Defendant's motion, Defendant both "seeks leave to supplement its Rule 26(a)(2)(B) disclosure pursuant to Federal Rule of Civil Procedure 26(e)," Def.'s Mot. ¶ 20, and recognizes that "[f]iling a supplement to a party's previously-filed Rule 26(a)(2)(B) disclosure after the expiration of the discovery deadline [] typically requires leave to extend the underlying Scheduling Order issued pursuant to Federal Rule of Civil Procedure 16(b)," *id.* ¶ 23.  However, the Court has appropriately assessed Defendant's request pursuant to the "good cause" standard applied to Rule 16, as Defendant's "Supplement" was submitted after the close of discovery and was not based on new information:

> "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report *based upon information that was not available* at the time of the initial disclosure."  *Keener v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998) (emphasis added). . . .   Importantly, although Rule 26(e) of the Federal Rules of Civil Procedure imposes a duty to supplement incorrect or incomplete information, it "does not, however, bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline, even if the rule's pretrial time limit is satisfied." *Reid v. Lockheed Martin Aeronautics Co.,* 205 F.R.D. 655, 662 (N.D. Ga. 2001).  "In short, Rule 26 imposes a *duty* on [Defendant]; it grants [it] no *right* to produce information in a belated fashion."  *Id.* (emphasis in original).

*DAG Enters.*, 226 F.R.D. at 109-110.  "Rule 26 provides no safe harbor for [Defendant's] lack of diligence and failure to show 'good cause.'  [Defendant's] obligation to supplement [its] expert reports does not give [it] the right to ignore the Court's deadlines, reopen discovery, find 'new facts,' generate new expert reports, and then claim different damages."  *Id.* at 110.

> **B.**     ***The Court shall deny in part and require further briefing in part with respect to Defendant's [39] Motion in Limine to exclude the testimony and opinions of James Dunaway and Charles Murray or in the Alternative to Extend Time for Expert Discovery***

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), "a party shall disclose to other

parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Pursuant to Federal Rule of Civil Procedure 26 (a)(2)(B), a party is required to submit a disclosure of an expert witness's identity, which

> shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). Furthermore, "[t]hese disclosures shall be made at the times and in the sequence directed by the court. . . . The parties shall supplement these disclosures when required under subdivision (e)(1)." Fed. R. Civ. P. 26(a)(2)(C). The duty to supplement such disclosures is set forth in Rule 26(e) as follows:

> A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

> With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e) & (e)(1).

However, "[i]n light of the purposes of Rule 26(a), Rule 37(c)(1) provides for the exclusion at trial of any information not disclosed pursuant to Rule 26(a), unless the failure to disclose is harmless, or if there was substantial justification for such a failure." *Minebea Co. v.*

*Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).  Pursuant to Federal Rule of Civil Procedure 37,

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1).  Rule 37 "generally provides for exclusion of a party's experts unless

[it] had 'substantial justification' for disclosing them late or unless [its] late disclosure was

'harmless.'" *Alves v. Mazda Motor of Am., Inc.*, 448 F. Supp. 2d 285, 293 (D. Mass. 2006).

Furthermore, an expert report that is too "sketchy and vague" to meet the requirements of Rule

26(a)(2)(B), rather than "detailed and complete," may be stricken:

> [Rule 26(a)] requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor.  The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness.  Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed.  Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.
>
> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. . . .
>
> The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or

whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report. By local rule, order, or written stipulation, the requirement of a written report may be waived for particular experts or imposed upon additional persons who will provide opinions under Rule 702.

Fed. R. Civ. P. 26(a), advisory committee's note. *See also Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996), *cert. denied*, 519 U.S. 811, 117 S. Ct. 57, 136 L. Ed. 2d. 20 (1996). Furthermore, the Local Civil Rules state that a "party that without substantial justification fails to disclose information required . . . by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." LCvR 26.2(a).

In its Motion in Limine, Defendant argues that Plaintiff did not include in its Rule 26(a)(2) disclosure materials with respect to Plaintiff's damages experts information required under Rule 26(a)(2)(B), including "*curricula vitae* or other statements of qualifications for its damages experts; anything even remotely resembling a comprehensive written report prepared and signed by any damages expert expressing opinions held by the expert and the basis and reasons therefore [sic]; a list of publications authored by any of the experts; or any list of trials or depositions in which any of the experts testified as such." Def.'s Mot. in Limine ¶ 24. Defendant's Reply further states that only Mr. Dunaway (and not Mr. Murray) was an employee of Plaintiff at the time of the incident, and that neither Mr. Dunaway nor Mr. Murray personally observed the damage caused during the incident to make their damages assessments. Def.'s Reply ¶¶ 19-22. Plaintiff, in response, argues that both Mr. Dunaway and Mr. Murray are

21

insurance adjusters employed by Plaintiff, and as such are "hybrid fact/expert witnesses under Rule 26(a)(2)(A), who may provide opinion testimony at trial" without generating a signed, written report pursuant to Rule 26(a)(2)(B) because they were actual participants prior to litigation in the aftermath of the water leak generating this claim, they do not receive any additional compensation for their testimony at trial, their opinions regarding the costs of repair and replacement are part of the "normal insurance adjustment process" and were not given at the request of counsel, and "their opinions are not based upon any facts, information or documents generated by the subsequent litigation." Pl.'s Opp'n to Def.'s Mot. In Limine at 2, 6 (citing *Sullivan*, 175 F.R.D. at 98-99; *Kirkham v. Societe Air Fr.*, 236 F.R.D. 9 (D.D.C. 2006)).

Pursuant to Rule 26(a)(2)(B), not all witnesses need provide a detailed report, rather only those who are "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Courts have most frequently dealt with the issue of whether a witness is a fact witness or a true expert witness subject to the expert report requirements of Rule 26(a)(2)(B) or some hybrid thereof in the context of treating physicians. *See Kirkham*, 236 F.R.D. at 11 ("the applicability of the written report requirement to treating physicians who provide expert testimony is unclear because, in practice, the testimony of treating physicians often departs from its traditional scope–the physician's personal observations, diagnosis, and treatment of a plaintiff–and addresses causation and predictions about the permanency of a plaintiff's injuries, matters that cross over into classic expert testimony."); *Riddick v. Washington Hosp. Ctr.*, 183 F.R.D. 327, 330 (D.D.C. 1998) (opinions reached by a treating physician during the course of diagnosis and treatment of plaintiff may be testified about at trial even in the absence of a Rule

26(a)(2)(B) report).  In *Sullivan v. Glock*, the Court noted that a party is only required to disclose

the identity of such a "hybrid witness" rather than producing a report.  *Sullivan*, 175 F.R.D. at

500.  "The written report required by Rule 26(a)(2)(B) is inapplicable to hybrid witnesses, and

counsel must be prepared to obtain information about the opinions and bases of their testimony

by interrogatories and/or depositions.  The failure to pursue these alternative means of

discovering the expected opinion testimony of hybrid witnesses is not a basis for excluding that

testimony at trial."  *Id.* at 506.

       While the Court notes that "Plaintiff's Disclosure of Expert Testimony Under Rule

26(a)(2)(B)," does list Mr. Dunaway as a "Damage Expert," it is clear from the attachments to

both Defendant's Motion in Limine and Plaintiff's Opposition that Mr. Dunaway, an employee

of Plaintiff, is at least in part a fact witness, as he was the recipient of damage assessments and

estimates related to the water damage while acting as an employee of Plaintiff in order to assess

proper compensation to Gallaudet University (which is not a party to this case).  *See* Def.'s Mot.

in Limine, Ex. A.  In *Bynum v. MVM, Inc.*, 241 F.R.D. 52 (D.D.C. 2007), wherein no expert

report was provided with respect to a treating physician, Judge Paul L. Friedman of this court

concluded that

> in the absence of a timely Rule 26(a)(2)(B) expert report having been filed for Dr.
> Chelton, Dr. Chelton will be allowed to testify solely as to information learned from his
> actual treatment, examination, or analysis of Mr. Bynum's condition in August
> 2003–including matters contained in his August 2003 report.  Dr. Chelton will not be
> allowed to testify about plaintiff's current condition, prognosis, causation or permanency,
> and any other such forward-looking speculation, or other conclusion reached with the
> benefit of hindsight and after the underlying events that gave rise to this lawsuit . . . .

*Id.* at 54.  Adopting the approach taken in *Bynum v. MVM*, the Court would permit Mr. Dunaway

to testify to the information he learned from his pre-litigation inquiries and receipt of information

and materials, including typical insurance adjuster inquiries made of third-parties to secure

damages assessments relevant to the insurance claim made by Gallaudet University, and

calculations he made with respect to Gallaudet's claim in order to properly compensate

Gallaudet.  However, Mr. Dunaway may not offer his independent opinions regarding causation,

or damages assessments made either after litigation commenced or independent of his assessment

of damages as a function of his job as an insurance adjuster.  *See Sullivan*, 175 F.R.D. at 500 ("A

witness can be a hybrid witness as to certain opinions, but a retained expert as to others . . .").  In

other words, Mr. Dunaway may testify as a fact witness as to his role in performing the damages

calculation that was part of his job as an insurance adjuster for Plaintiff with respect to the

incident at issue.  As the Court notes that Defendant never scheduled the deposition of Mr.

Dunaway prior to the close of discovery, see Pl.'s Opp'n to Def.'s Mot. in Limine at 7,

Defendant certainly has not demonstrated good cause to reopen discovery for the purposes of

doing so at this juncture.

  While the Court has concluded that Mr. Dunaway may testify as a fact witness based on

his role as an insurance adjuster with respect to the incident in question, the Court shall

separately deal with the question of whether Mr. Murray may testify in lieu of Mr. Dunaway as a

fact witness.  Defendant argues in its Motion in Limine that in substituting Mr. Murray for Mr.

Dunaway, Plaintiff attempted to assign to Mr. Murray opinions that he never expressed, and did

not adequately explain why Plaintiff chose to designate Mr. Dunaway in the first instance in light

of his retirement and failing health.  Def.'s Mot. in Limine ¶¶ 25, 26.  Defendant argues that in

light of the delay in this substitution, which occurred three days prior to the close of discovery,

Defendant was not given a reasonable opportunity to depose Mr. Murray.  *Id.* ¶ 28.  Finally,

Defendant argues that "the additional documents Plaintiff asserts were authored by Mr. Murray appear to be redundant with the contents of Plaintiff's earlier Disclosure and are not signed or otherwise marked as Mr. Murray's work product." *Id.* ¶ 30.  Plaintiff, however, notes that "[p]rior to the January 5, 2007 discovery deadline, defendant Capitol Sprinkler never discussed with counsel nor scheduled a Rule 30(b)(6) deposition of any representative of plaintiff St. Paul with regard to any damage issue; nor requested or attempted to schedule the deposition of any of the five damage witnesses identified in plaintiff's April 21, 2006 initial disclosures; nor did defendant name any expert damage witness of its own."  Pl.'s Opp'n to Def.'s Mot. in Limine at 4, 5-6.

Based on the record presently before the Court, and the two attachments to the Supplemental Disclosure that were allegedly created by Mr. Murray, it is not clear to the Court what Mr. Murray's specific role is either as an employee of Plaintiff or with respect to the incident in question.  As noted above, while the two documents attached to Plaintiff's January 2, 2007 Supplement are described as having been created by Mr. Murray, nothing on their face attributes the documents to Mr. Murray.  The Court requires more information from Plaintiff in order to determine if Mr. Murray may be considered a hybrid witness in this case such that in the absence of a Rule 26(a)(2)(B) Report, Mr. Murray may testify as a fact witness as to the assessment insurance-related damages for the incident in question in lieu of Mr. Dunaway. Additionally, in light of Plaintiff's filing the notice of substitution on January 2, 2007, three days prior to the close of discovery, based on Mr. Dunaway's having "retired, moved to Florida," and being "reportedly in failing health," the Court requires that Plaintiff indicate to the Court when it discovered that Mr. Dunaway would presumably not be available as a witness and whether he is

in fact unavailable.

Finally, the Court must deal with the issue of Defendant's counsel's unrefuted misrepresentation to the Court. In Defendant's Motion in Limine, Defendant's counsel certifies pursuant to Local Civil Rule 7(m) that "Counsel for Capitol has, in good faith, attempted to confer with opposing counsel in order to resolve this discovery dispute without judicial intervention, but has been unable to reach a compromise. Counsel for Capitol Sprinkler Inspection, Inc. believes that the Plaintiff will oppose this motion." Def.'s Mot. in Limine, Ex. 3 (Certification). Plaintiff notes that despite Defendant's representation to the contrary, Defendant never conferred with Plaintiff's counsel pursuant to Local Rule 7(m), and further that Defendant's counsel did not inform the Court of its misrepresentation even after Plaintiff brought the misrepresentation to Defendant's counsel's attention via letter dated February 23, 2007. Pl.'s Opp'n to Def.'s Mot. in Limine at 5, Ex. I (February 23, 2007 Letter). Defendant never refutes Plaintiff's allegations in its Reply, and as such, the Court accepts Plaintiff's version of the facts on this issue.

This Court considers it a serious matter that Defense counsel, as an officer of the court, has made misrepresentations to the Court in his filings. The Court reminds Norman H. Brooks, Jr., signing counsel on Defendant's Motion in Limine, that he appears before this Court having been admitted *pro hac vice*, which can be rescinded by this Court. In light of Mr. Brooks' misrepresentation to this Court regarding his underlying failure to comply with the Local Rules, which was brought to his attention by Plaintiff's counsel with an opportunity to cure said misrepresentation, the Court shall require Donald R. Kinsley, a member of Mr. Brooks' law firm who moved for his admission *pro hac vice*, to appear in Court with Mr. Brooks and to co-sign

26

any future filings with Mr. Brooks for the remainder of the proceedings in this case.

### III:  CONCLUSION

Based on the reasons set forth above, the Court shall DENY Defendant's [29] Motion for Leave to Supplement Defendant's Rule 26(a)(2)(B) Disclosures, and DENY IN PART Defendant's [39] Motion in Limine or in the Alternative to Extend Time for Expert Discovery.  If Plaintiff still wishes to substitute Mr. Murray for Mr. Dunaway as a damages witness, Plaintiff shall submit additional materials with respect to Mr. Murray's role as an employee of Plaintiff and his involvement with the incident in question by June 15, 2007.  Plaintiff shall also indicate when Plaintiff learned of Mr. Dunaway's unavailability (and if in fact Mr. Dunaway is unavailable) by June 15, 2007.  Defendant may file a response by June 29, 2007.  The Court also orders that Norman H. Brooks, who the Court admitted *pro hac vice* for purposes of this case, must be accompanied by Donald R. Kinsley for any future court appearances and must have any and all court submissions co-signed by Mr. Kinsley.  An Order accompanies this Memorandum Opinion.

Date:   June 1, 2007

                                              /s/
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge