UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as Subrogee of Gallaudet University | CASE NUMBER: 1:05CV02115(CKK) |
| Plaintiff | |
| vs. | |
| CAPITOL SPRINKLER INSPECTION, INC | |
| Defendant | |
| vs. | |
| GUEST SERVICES, INC. | |
| Third-Party Defendant | |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO
DEFENDANT'S MOTION TO EXTEND TIME FOR EXPERT DISCOVERY
AS DIRECTED BY THE ORDER OF THE COURT DATED JUNE 1, 2007**

Plaintiff St. Paul Mercury Insurance Company hereby supplements its response to defendant's motion, as directed by the court, with the following information about St. Paul's adjusters, James Dunaway and Charles Murray.

**I.   FACTS**

1. At the time of the adjustment of the subject loss by St. Paul in 2003, St. Paul assigned as its lead general adjuster James Dunaway. Mr. Dunaway's supervisor at that time was Executive General Adjuster Charles Murray. Both were direct, full-time employees of St. Paul. Mr. Murray is still employed by St. Paul (subsequently, by merger, St. Paul/Travelers, and now Travelers). However, Mr. Dunaway went on full-time disability in January 2004 due to complications from diabetes and rheumatoid

arthritis which prevented him from performing his duties as an adjuster. Mr. Dunaway eventually retired from St. Paul in January, 2006 and now lives in Pensacola, Florida.

    2.    During the adjustment of the loss, Mr. Dunaway reported to Mr. Murray and, at times, Mr. Murray got directly involved in the adjustment process, including the concluding of the claim when Mr. Dunaway became unable to do so. Consequently, Mr. Murray not only reviewed and approved Mr. Dunaway's reports, calculations and conclusions regarding the repair cost for the property damaged by the sprinkler leak, Mr. Murray also had first hand knowledge of the loss through his own direct involvement and observation of the property damaged by the sprinkler system leak.

    3.    Plaintiff's counsel, David J. Groth, recently contacted Mr. Dunaway to determine his present condition and was told by him that he is 68 years old, still suffers from diabetes and rheumatoid arthritis, is recovering from prostate cancer, and is on medication to address his medical issues. He also has poor eyesight and has had a toe amputated due to the diabetes. However, Mr. Dunaway stated that last year he testified in a case involving his former employer, St. Paul, and that although his medical condition is limiting in some respects, he might be able to testify if required to do so.

    4.    Plaintiff's counsel first learned of Mr. Dunaway's situation in late Fall of 2006, upon contacting St. Paul to determine Mr. Dunaway's availability to testify, <u>in anticipation</u> that defendant Capitol Sprinkler would want to depose him before the discovery deadline of January 5, 2007. However, defendant Capitol Sprinkler's counsel <u>never</u> made any request to depose Mr. Dunaway, <u>nor</u> any other representative of St. Paul (i.e., Rule 30(b)(6) witness, etc.) prior to the discovery deadline. Because of the possible unavailability of Mr. Dunaway to testify at trial, and the fact that St. Paul no

longer had direct control over Mr. Dunaway who resides out of state, plaintiff substituted Mr. Murray's name for Mr. Dunaway's as a damage witness <u>prior</u> to the January 5, 2007 discovery deadline. See Exhibit B to Defendant's Motion In Limine. Even then, counsel for defendant Capitol Sprinkler made <u>no</u> request to depose Mr. Murray, through the mediation date with Magistrate Kay on January 10, 2007 and up to the date of the status conference on January 31, 2007. Counsel for defendant offers no explanation as to why Mr. Murray's deposition was not requested immediately after the defendant was advised of Mr. Murray's identity and expected testimony. It was only at the status conference, almost one month after being supplied with Mr. Murray's name, that counsel for defendant Capitol Sprinkler first expressed any desire to take Mr. Murray's deposition.

     5.    Plaintiff's disclosure of Mr. Murray as a damage witness on January 2, 2007, included only two documents prepared by Mr. Murray not previously supplied to defendant Capitol Sprinkler with plaintiff's initial disclosures which consisted of over 400 documents. The two documents set out Mr. Murray's previous calculations of the actual repair cost of $800,022.85 (replacement cost), as well as his calculation of a depreciated repair cost of $732,802.11 (ACV – actual cash value). Mr. Murray performed this calculation (the application of appropriate depreciation based upon his initial repair cost calculations) at the request of plaintiff's counsel in anticipation that the defendant might argue that the correct legal measure of damages is actual cash value instead of replacement cost. Although it is plaintiff's position that under applicable District of Columbia Law it is entitled to claim the actual repair cost, in an abundance of caution, Mr. Murray was requested to perform an actual cash value calculation based upon his original adjustment calculations in 2003. Mr. Murray did not have to perform

any other investigation or review any documents generated during this litigation (there were none) in order to perform this depreciation calculation. He did so strictly based upon his own observations of the property damage and initial evaluation of this claim in 2003. Also, Mr. Murray's depreciation calculations actually resulted in a damage figure which is less than the amount originally claimed by the plaintiff in this lawsuit. If defense counsel would have requested and taken Mr. Murray's deposition in a timely fashion, he would have been informed of all of the above.

I. **ARGUMENT**

Plaintiff designated Messrs. Dunaway and Murray as "expert" witnesses only because, in addition to being fact witnesses, their testimony at trial would involve opinion testimony. Neither one was a witness retained or specially employed to provide expert testimony in this case. None of the plaintiff's disclosed damage experts were retained or especially employed to provide expert testimony in this case as described in Rule 26(a)(2)(B). All of plaintiff's damage witnesses were either employees of the plaintiff, such as Messrs. Dunaway and Murray, or employees of companies retained by plaintiff in the normal and customary loss adjustment process following the property damage claim, years before any litigation was commenced. These witnesses (i.e. contractors, salvors, etc.), would have been retained by St. Paul even if no subrogation litigation ever arose relating to this loss. Consequently, all of plaintiff's damage witnesses are hybrid fact/expert witnesses under Rule 26(a)(2)(A), which requires only that they be identified by the plaintiff and their documents provided to the opposing side during discovery. Plaintiff fully complied with the discovery rules with respect to all of its

damage witnesses prior to the discovery deadline, even if plaintiff mistakenly misidentified these damage witnesses as Rule 26(a)(2)(B) witnesses.

Finally, as pointed out by plaintiff in its initial response to defendant's Motion, the defendant never made a single verbal or written request for the deposition of any of plaintiff's disclosed damage witnesses prior to the January 5, 2007 discovery deadline, nor prior to the January 31, 2007 status conference with the Court. Actually, that is totally consistent with the defendant's approach to discovery throughout this entire case. If the defendant never considered it important enough to try to depose Mr. Dunaway, whose identity was known from the date of plaintiff's initial disclosures, why would the defendant think it necessary to depose Mr. Murray, whose identity was not disclosed until January 2, 2007 after plaintiff learned that Mr. Dunaway might not be available to testify at trial?

When defendant Capitol Sprinkler requested the deposition of a Rule 30(b)(6) witness from Gallaudet University, plaintiff's insured, plaintiff promptly arranged for the deposition. When defendant Capitol Sprinkler requested the deposition of plaintiff's liability expert, Mr. McLauchlan, plaintiff promptly arranged it. If defendant Capitol Sprinkler had ever made a request for the deposition of any of plaintiff's disclosed damage witnesses, including Mr. Murray, plaintiff would have promptly arranged it. Defendant Capitol Sprinkler should not now be permitted to do what it clearly had the opportunity to do, but failed or neglected to do before the close of discovery on January 5, 2007. To do so without a showing of good cause by the defendant would be to reward the defendant's lack of diligence and inattention to this case, which has already substantially delayed the scheduling of a trial due to the filing of these untimely

discovery motions by the defendant after the discovery deadline. If defendant Capitol Sprinkler wanted to know more about the observations of the Gallaudet property damage by plaintiff's damage witnesses, or their calculation of the repair costs, the defendant had more than ample opportunity to depose the witnesses, regardless of their designation as fact, expert, hybrid, Rule 26(a)(2)(A) or Rule 26(a)(2)(B) witnesses. Defendant should be compelled to explain exactly why it conducted literally <u>no</u> discovery with regard to plaintiff's damage witnesses before the Court considers defendant's untimely request for additional time to do so now. Plaintiff was certainly justified in believing that damages in the case was not really an issue since the defendant conducted no discovery with regard to damages, nor named its own damage expert before the end of discovery.

     Absent a showing of good cause by defendant Capitol Sprinkler, this motion must be denied.

                                      Respectfully submitted,

                                      COZEN O'CONNOR

                                      BY: s/ David J. Groth
                                            DAVID J. GROTH, ESQUIRE (phv)
                                            DANIEL J. LUCCARO, ESQUIRE (phv)
                                            1900 Market Street
                                            Philadelphia, PA 19103
                                            (215) 665-2000

                                      MESIROW & STRAVITZ
                                      Eric N. Stravitz, Esquire (D.C. Bar #438093)
                                      1307 New Hampshire Avenue, N.W.
                                      Suite 400
                                      Washington, DC 20036
                                      (202) 463-0303
                                      *Attorneys for Plaintiff*

Dated: June 15, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as Subrogee of Gallaudet University<br><br>Plaintiff<br>vs.<br><br>CAPITOL SPRINKLER INSPECTION, INC<br><br>Defendant<br>vs.<br><br>GUEST SERVICES, INC.<br><br>Third-Party Defendant | CASE NUMBER: 1:05CV02115(CKK) |

## **CERTIFICATION OF COUNSEL**

I hereby certify that I am counsel for plaintiff, St. Paul Mercury Insurance Company, with respect to the above captioned case; and that all of the facts, information and statements made in the foregoing Supplemental Response are true and correct to the best of my knowledge, information and belief.

                                    COZEN O'CONNOR

                                    BY: s/ David J. Groth
                                          DAVID J. GROTH, ESQUIRE (phv)
                                          DANIEL J. LUCCARO, ESQUIRE (phv)

PHILADELPHIA\3218923\1  134164.000