IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

St. Paul Mercury Insurance Company
As Subrogee of Gallaudet University,

    Plaintiff,

    v.                                          Civil Action No. 1:5cv-2115-CKK
                                                    Judge Colleen Kollar-Kotelly

CAPITOL SPRINKLER INSPECTION, P.C.,

    Defendant/Third-Party Plaintiff,

    v.

GUEST SERVICES, INC.,

    Third-Party Defendant.
_____/

### THIRD-PARTY DEFENDANT GUEST SERVICES, INC.'S REPLY TO DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Third Party Defendant, Guest Services, Inc., by counsel, in response to Defendant Capitol Sprinkler Inspection, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment.[1]

**I.    INTRODUCTION**

In its Opposition to Plaintiff's Motion for Summary Judgment, Capitol Sprinkler makes a number of factual statements, which are either inaccurate, or not supported by evidence. In its Opposition, Capitol Sprinkler erroneously asserts that "Terrance Hubbard" was an employee of Guest Services who agreed to drain the drum drip and complete the tasks under Capitol's contract. In support of this, Capitol relies on Exhibit

---

[1] Guest Services, Inc. has also filed a Motion for Summary Judgment against Capitol Sprinkler.

A, a portion of the deposition of Michael Bowlin.  As will be shown below, Michael Boulin never identified Mr. Hubbard, and no witness has come forward to state the it was Hubbard who allegedly made the statements.  In fact, the descriptions of this unknown individual are contrary to the evidence.  Mr. Hubbard was in his fifties and the unknown individual was in his thirties.  To conclude, as Capitol has done in its memorandum that Terrance Hubbard agreed to complete Capitol's contractual duties is to make a conclusion that is not supported by the record.  Included as part of these erroneous statements are that: 1. Capitol was relieved of any obligation to drain the drum drip above conference room 5200 in the Kellogg Conference Center at Gallaudet University, and that the task should have been performed by building maintenance personnel employed by Gallaudet and/or Guest Services, Inc. (*See* Defendant Capitol Sprinkler Inspection, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment [hereinafter "Opposition"], ¶ 10); 2. Guest Services employees, including Terrance Hubbard, escorted Capitol Sprinkler inspectors through the Kellogg Conference Center, unlocking and providing access to the areas necessary for Capitol's inspectors to inspect, test, drain (reset) the subject sprinkler system (*See* Opposition, ¶ 22); 3. Terrance Hubbard agreed on behalf of the owner of the building, Gallaudet University, to drain a single drum drip in compliance with the owners' obligation under NFPA 25 because access to the drum drip was not available to Capitol Sprinkler inspectors on that day at the time of their inspection (*See* Opposition, ¶ 25); and 4. it was not unusual for Mr. Hubbard to offer to drain the drum drip, because building personnel had assisted Capitol Sprinkler in draining drum drips in the past.

II.     **Building Maintenance Personnel Are Not Required To Drain Drum Drips In the Sprinkler System at Gallaudet University**

Contrary to Capitol Sprinkler's assertion, Guest Services was not obligated to drain the drum drips at Gallaudet University. Guest Services entered into a contract with Gallaudet University to manage the Kellogg Conference Center, under which Guest Services was responsible for negotiating and entering into service contracts for the operation and management of the property. (*See* Gallaudet University Kellogg Conference Center Management Agreement, 3.1(e), Exhibit 1). Guest Services fulfilled that duty when it entered into the contract for automatic sprinkler equipment inspection service with Capitol Sprinkler. (*See* Contract For Automatic Sprinkler Equipment Inspection Service, Exhibit 2). Guest Services had no additional obligations to perform the work that Capitol Sprinkler was contractually bound to perform.

**III.    No Witness has Supported Capitol Sprinkler's Assertion That Guest Services employee Terrance Hubbard escorted Capitol Sprinkler inspectors through the Kellogg Conference Center and Agreed to Drain the Drum Drip**

In it's Opposition, Capitol Sprinkler indicates that, contrary to the certification, it did not perform all services and inspections set forth in the contract because Guest Services employee, Terrance Hubbard, agreed to drain a single drum drip. In support of this assertion, Capitol Sprinkler references page 45 of Vernon Vane's deposition, and pages 54, 58 of Michael Bowlin's deposition, however, none of the referenced testimony indicates that Terrance Hubbard was the person who escorted Capitol Sprinkler employees through the Kellogg Conference Center. The deposition testimony of Vernon Vane and Michael Bowlin directly contradict that assertion.

In his deposition, Michael Bowlin maintained that he did not recall the identity of the person who was responsible for unlocking certain doors to give the Capitol Sprinkler

inspectors access to the areas in which work was to be performed. (*See* Bowlin Deposition, pp. 33:6-22; 40:17-22, Exhibit 3). When asked to describe the man responsible for giving Capitol Sprinkler inspectors access to those areas, Bowlin testified, "a colored gentleman, probably around [5'10"]...around I'm guessing like thirty years old or could be younger, could be older, but around that." Bowlin Deposition, p. 34:1-10, Exhibit 3. Furthermore, Bowlin communicated that the man who accompanied the Capitol Sprinkler inspectors in January 2003 was the same man who accompanied the Capitol Sprinkler inspectors in July 2002. (*See* Bowlin Deposition, pp. 41:18-22; 42:1-6, Exhibit 3). Vernon Vane also testified during his deposition that he did not know the identity of the man who accompanied him during inspections. (*See* Vane Deposition, pp. 40:10-22; 41:1-3) However, like Bowlin, Vane described the "mystery man" as a tall slender black man in his thirties. (*See* Vane Deposition, p. 41:4-9).

Capitol Sprinkler also attached a Death Notice to its Opposition, which indicated Terrance Hubbard was 51 when he died in September 2005. Terrance Hubbard, who was around 20 years older than the man described by Bowlin and Vane, clearly was not the "mystery man" who escorted Capitol Sprinkler inspectors throughout the Kellogg Conference Center during the January 2003 inspection. Capitol Sprinkler's assertion that Hubbard agreed to drain the drum drip is unsupported and contradictory to the evidence. Furthermore, Capitol Sprinkler's assertion that the misidentified escort had the authority to orally modify the Contract For Automatic Sprinkler Equipment Inspection Service is also baseless.

**IV.    It Was Not Common for Building Personnel To Drain Drum Drips Without Supervision**

Capitol Services maintains that it was not unusual for building personnel to drain

drum drips, because building personnel had assisted in draining drum drips in the past. This assertion is contradicted by the deposition testimony of Michael Bowlin:

> Q. I'm asking you whether or not there were occasions when you would permit a building owner's representative to go to a drum drip somewhere in the building and actually do the draining by him or herself?
>
> A. I was always supervising the drainage or – they wouldn't go off on their own without me knowing about it.

Bowlin Deposition, p. 21:14-21.

> Q. Was there ever any situation where you either were a helper or where Mr. Vane went and told a building maintenance person to go drain a drum drip themselves without you checking on them or supervising what happened or checking to see if it was done properly?
>
> A. No.

Bowlin Deposition, p. 26: 9-15.

There is no evidence that supports Capitol Sprinkler's position that it is not responsible for failing to either drain or check the drum drip before providing an Inspection Report certifying that the work had been completed.

**V.   Conclusion**

Based on the foregoing, Third-Party Defendant, Guest Services, Inc. respectfully requests that this Honorable Court not accept Defendant Capitol Sprinkler's factual assertions, which are unsupported and contradicted by the evidence.

Respectfully submitted,

**GUEST SERVICES, INC.**
By Counsel

Trichilo, Bancroft, McGavin, Horvath & Judkins, PC

/s/
Stephen A. Horvath, Esquire
D.C. Bar No. 417137
3920 University Drive
Fairfax, Virginia 22030
Phone: (703) 385-1000; Fax: (703) 385-1555
*Counsel for Guest Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **REPLY TO DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served electronically on the 24th day of January, 2008 to:

Eric Neil Stravitz, Esquire
Mesirow & Stravitz, P.L.L.C.
1307 New Hampshire Avenue, NW, Suite 400
Washington, D.C. 20036
*Counsel for Plaintiff*
E-mail: strav@erols.com

Of Counsel:

David J. Groth, Esquire
Daniel J. Luccaro, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
*Counsel for Plaintiff*

Michelle Murphy, Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
 913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Defendant Capitol Sprinkler, Inc.*
E-mail: nbrooks@mooclaw.com

Wayne F. Johnson, Jr., Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Capitol Sprinkler, Inc.*
E-mail: fjohnson@mooclaw.com

                                             /s/
                                             Stephen A. Horvath