**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as Subrogee of Gallaudet University<br><br>Plaintiff<br>vs.<br><br>CAPITOL SPRINKLER INSPECTION, INC<br><br>Defendant<br>vs.<br><br>GUEST SERVICES, INC.<br><br>Third-Party Defendant | Case No.: 1:05cv02115(CKK) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, St. Paul Mercury Insurance Company, as Subrogee of Gallaudet University, hereby provides the following Reply Memorandum in support of its Motion For Partial Summary Judgment.

**I.   INTRODUCTION**

In its Opposition, defendant Capitol Sprinkler Inspection, Inc. ("Capitol Sprinkler") admits that: (1) it was contractually obligated to drain all of the drum drips; (2) its inspectors failed to drain the drum drip above conference room 5200 ("the Drum Drip"); and (3) a tee fitting in the sprinkler line froze and burst as a result of the Drum Drip not being drained.  These admissions establish that Capitol Sprinkler breached its contract and the water leak and resulting damage were the result of this breach.  Accordingly, the Court should grant summary judgment on plaintiff's breach of contract claim.

Despite the fact that Capitol Sprinkler admits all of the underlying facts that establish plaintiff's breach of contract claim, Capitol Sprinkler argues in its Opposition that there are legal

defenses which excuse its breach. Capitol Sprinkler bases its entire Opposition on the uncorroborated allegation that during the January 9, 2003 sprinkler system inspection, Terrence Hubbard, an employee of third-party Guest Services, Inc. ("Guest Services"), failed to provide Capitol Sprinkler's inspectors with access to the Drum Drip and that Hubbard agreed he would go back and drain the Drum Drip himself.

Based on this uncorroborated and totally unreliable hearsay offered by the Capitol Sprinkler employee who admittedly failed to drain the Drum Drip, defendant raises several legal defenses. First, defendant argues that the sprinkler inspection contract was orally modified when the unidentified Guest Services employee agreed to drain the Drum Drip. Second, defendant argues there was a material breach of the contract based on Guest Service's employee failing to provide access to the sprinkler system, which relieved defendant of its express contractual obligation to drain the Drum Drip. Third, defendant argues that it was impossible or commercially impracticable for defendant to comply with its contractual obligations because defendant was not provided access to the Drum Drip.

Plaintiff asserts that there is no admissible evidence regarding the alleged agreement by the unidentified Guest Services representative to drain the Drum Drip. Even *assuming arguendo* there is any admissible evidence to support this allegation, this did not relieve Capitol Sprinkler of its express contractual obligations and defendant's legal arguments still fail.

Defendant devotes much of its opposition to establishing the correct version of NFPA 25 that governed its duties under the inspection contract. However, for purposes of plaintiff's breach of contract claim, the particular version of NFPA 25 is irrelevant. In its own inspection contract, defendant expressly agreed to "drain all drum drips." Plaintiff alleges that defendant breached this specific unambiguous express contractual obligation. For purposes of establishing this breach, the standard of care in the industry is irrelevant.

## II. TESTIMONY OF CAPITOL SPRINKLER'S EMPLOYEES REGARDING THE GUEST SERVICES ESCORT DURING THE JULY 2002 AND JANUARY 2003 INSPECTIONS

Capitol Sprinkler's entire Opposition is based on the allegation that a representative of third party defendant Guest Services agreed to drain the Drum Drip, which was located behind a locked door. In defendant's Opposition, it represents to the Court that its representatives are certain that Terrence Hubbard was the Guest Services employee who accompanied the Capitol Sprinkler inspectors during the January 9, 2003 inspection. However, this is totally inconsistent with the deposition testimony of Capitol Sprinkler's own employees in this case. For purposes of clarifying the factual misrepresentations made by defendant in its Opposition and rebutting its legal arguments, it is necessary to provide the Court with the actual testimony from Capitol Sprinkler's employees regarding the inspection and the so called "identification" of Hubbard.

The only testimony regarding the alleged agreement by a Guest Services employee to go back and drain the Drum Drip was provided by Michael Bowlin, the Capitol Sprinkler inspector. (See Exhibit A, excerpts of deposition of Michael Bowlin). Bowlin was at the Conference Center for inspections in July 2002 and January 2003. (Id. at p. 30-31). He does not know the name of the person who escorted him in January 2003. (Id. at p. 40). He believes it was the same person from the July 2002 inspection. (Id. at p. 41-42). He described the escort as a colored gentlemen who was 5' 10" and approximately thirty years old. (Id. at p. 34)[1] Bowlin did not recall any distinguishing marks or an accent. (Id. at p. 34).

According to Bowlin, when they reached the room where the Drum Drip was located, the escort said "I don't have a card. I have to go down stairs and get the card for the access." (Id. at p. 52). Bowlin estimates it would have taken 5 – 10 minutes to go downstairs and get the card. (Id. at p. 52). The Drum Drip was the last one that had to be drained that day. (Id. at p. 53).

---

[1] Based on the information in the Affidavit of Louis R. Dempsey, which was attached as Exhibit E to defendant's Opposition, Terrence Hubbard would have been almost 50 years old at the time of the 2003 inspection.

3

Bowlin testified, "we asked if he was going to get a card and he just kind of looked at us like, you know, he really didn't want to – he would take care of it.  He said he would take care of the drum drip, and I asked him, I said 'Are you going to take care of this' – I said, 'You know what? I can't get in the room.  Are you going to take care of this drum drip?'" (Id. at p. 54).  Bowlin admitted that he did not specifically ask the person to go get the card. (Id. at p. 54, 76).  He also admitted that the unknown Guest Services escort never refused to get the card. (Id. at p. 56).  He had no idea about the escort's background, experience, reliability or competency to drain the Drum Drip and he did not ask the escort anything about this. (Id. at p. 57).  He was never asked by anyone at Capitol Sprinkler to go back to try to identify the escort. (Id. at p. 67-68, 108).  He admitted that Capitol Sprinkler's interrogatory answer stating the escort was "unwilling" to provide access was not accurate. (Id. at p. 76).

Vernon Vane, Capitol Sprinkler's Supervisor of Inspections, also testified regarding the "identification" of Terrence Hubbard and verified the defendant's answers to interrogatories, even though he was not present during the January 2003 inspection. (See Exhibit B, excerpts of deposition of Vernon Vane).[2]  Vane testified that Bowlin was the least experienced inspector. (Id. at p. 19).  Vane admitted that in his 15 years as a supervisor for Capitol Sprinkler, he never permitted a customer to do any aspect of the work that Capitol Sprinkler was contracted to do. (Id. at 32-33).  Vane participated in the July 2002 inspection along with Bowlin and testified that someone from Guest Services provided access to the rooms. (Id. at p. 39-40).  He does not know

---

[2] Vane provided an Affidavit, which was attached as Exhibit H of defendant's Opposition. In the Affidavit, Vane expresses certain opinions regarding the appropriate NFPA standards.  Plaintiff does not need to remind the Court that it previously issued a ruling precluding defendant from offering expert testimony in this matter based on its failure to comply with the expert disclosure requirements under the Federal Rules of Civil Procedure.  Plaintiff asserts that defendant is attempting to circumvent this ruling by offering expert opinions through Vane.  Plaintiff asserts that any such opinions by Vane are inadmissible.  However, as discussed above, the opinions expressed by Vane regarding NFPA 25 are irrelevant in terms of plaintiff's summary judgment motion on the breach of contract claim.

the person's name who accompanied them, but described the escort as a tall slender black man in his thirties. (Id. at p. 41). The only thing the escort did was unlock things, he did not drain any drum drips, nor was there any discussion of how to do this. (Id. at p. 44-54). He admitted that if Capitol Sprinkler could not do all of the work it was contracted to do, then there should be a notation under the deficiencies section on the inspection report. (Id. at p. 53). There were no deficiencies listed on the January 9, 2003 inspection report. Vane admitted that Capitol Sprinkler has no records indicating that someone else agree to drain any drum drips during the January 9, 2003 inspection. (Id. at p. 67).

After the incident, Vane discussed with Bowlin the inspection on January 9, 2003 and Bowlin told him for the first time that the escort did not have the key with him and said he would take care of it. (Id. at p 87-88). They did not discuss trying to identify the guy and Vane himself made no attempt to do so. (Id. at 91-92). Vane admitted that they did not know the name of the escort and testified "nobody could come up with a name. I mean, we just didn't know." (Id. at p. 93-94). The only reason that Capitol Sprinkler identified Mr. Hubbard's in the interrogatory answers was because he signed the receipt for the return of the evidence by Capitol Sprinkler a week after the incident. (Id. at p. 94).[3] This is the only "evidence" Capitol Sprinkler has that Hubbard was the person who escorted them during the last inspection. (Id. at p. 110-111). Vane does not know if the guy who accompanied him on the July 2002 inspection was the person who signed for the evidence. (Id. at p. 143). He assumed the escort was Hubbard because he signed the evidence receipt and admitted that he "wouldn't know him if he fell on him." (Id at p. 153-154). Vane also stated, "we're surmising that possibly he was the gentlemen" who accompanied Bowlin during Bowlin's January 2003 inspection." (Id. at p. 94-95). The identification of Hubbard is patently pure speculation on the part of Capitol Sprinkler.

---

[3] A copy of the evidence receipt dated January 23, 2003 was attached as Exhibit G of defendant's Opposition.

### III.    LEGAL ARGUMENT

#### A.    THERE IS NO ADMISSIBLE EVIDENCE THAT TERRENCE HUBBARD OR ANY OTHER REPRESENTATIVE OF GUEST SERVICES AGREED TO DRAIN THE DRUM DRIP

In order to defeat a summary judgment motion and demonstrate that there is a dispute in material facts, the non-moving party's opposition must be supported by sufficiently admissible evidence such that the trier of fact could find for the non-moving party. Laningham v. United States, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Defendant's entire Opposition is based on the allegation that Terrence Hubbard, a representative of Guest Services, failed to provide Capitol Sprinkler's inspectors with access to the Drum Drip and agreed to go back and drain the Drum Drip. Any such statements are clearly out of court statements offered for the truth of the matter asserted and, therefore, inadmissible hearsay.[4]

Plaintiff anticipates that defendant will argue that Hubbard's alleged statements were made in his capacity as an employee of third-party defendant Guest Services and are therefore non-hearsay party admissions under Fed R. Evid. 801(d)(2).[5] As the party attempting to offer this out of court statement, the defendant has the burden of establishing the evidentiary foundation for admissibility under Rule 801(d)(2). Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1002 (3d Cir. 1988). While the federal courts in the D.C. Circuit have not addressed this particular issue, other Circuits have considered the issue and held that a statement by an

---

[4] Plaintiff recognizes that the Court is unlikely to make a final determination on the admissibility of this particular evidence at this stage of the litigation. Plaintiff asserts that summary judgment on its contract claim is appropriate regardless of whether or not this evidence is admissible. For purposes of this motion, plaintiff is providing only a brief summary of the evidence in this case which contradicts the alleged statements attributed to Hubbard and demonstrates that any such evidence is inadmissible. However, should the Court determine that resolution of the summary judgment motion is dependent upon the admissibility of this evidence, plaintiff would be happy to provide a more detailed brief on this issue.

[5] Third party defendant Guest Services filed its own summary judgment motion to dismiss Capitol Sprinkler's Third Party Complaint. If the Court grants this motion, then third party defendant Guest Services will no longer be a party to the litigation and any statements by its employees would clearly not be admissible under Rule 801(d)(2).

unidentified declarant usually will not meet the evidentiary foundation required in order for an out of court statement to be admissible under Rule 801(d)(2). See Carden, 850 F.2d at 1002; Zaken v. Boerer, 964 F.2d 1319, 1324 (2d Cir. 1992).

It is clear from the discovery in this case that the Capitol Sprinkler representatives have no idea if Terrence Hubbard was actually the person who provided Capitol Sprinkler access to the building during the January 9, 2003 inspection. In fact, the only reason Capitol Services even came up with Hubbard's name is because he signed the receipt for the sprinkler heads returned by Capitol Sprinkler to Gallaudet a week after the incident. There is literally no testimony from anyone from Capitol Sprinkler that the person who signed for the returned sprinkler heads is actually the person who provided access to the building on January 9, 2003. Absent some actual corroborating evidence regarding the identity of the Guest Services employee who allegedly agreed to drain the Drum Drip, defendant cannot establish the evidentiary foundation necessary to make these hearsay statements admissible under Rule 801(d)(2).

Defendant also suggests in its Opposition that the alleged statement by the unidentified representative of Guest Services orally modified the written sprinkler inspection contract and therefore is not hearsay. As discussed in greater detail below, there was no oral modification of the contract. Defendant has failed to establish any evidence that the unidentified maintenance person from Guest Services who allegedly agreed to drain the Drum Drips had any authority to bind Guest Services and/or Gallaudet to any contract or to modify the existing contract.

### B. THERE WAS NO ORAL MODIFICATION OF THE INSPECTION CONTRACT

The defendant correctly points out that under D.C. law, a written contract may be modified orally. Puma v. Sullivan, 746 A.2d 871 (D.C. 2000); Landow v. Georgetown-Inland West Corp., 454 A.2d 310 (D.C. 1982); Gagnon v. Wright, 200 A.2d 196 (D.C. 1964). However, defendant seems to suggest that oral modification of a contract is automatically accomplished if any employee of one of the parties to the contract agrees to something. The parties to a contract are free to modify the contract by mutual assent. However, in order to be valid the modification must possess the same elements of consideration as necessary for normal contract formation. Rinck v. Assoc. of Reserve City Bankers, 676 A.2d 12, 17 (D.C. 1996); Hershon v. The Hellman Co., 565 A.2d 282, 283 (D.C. 1989). In addition, the person orally modifying the contract must also have the authority to bind the party to a contract. See National Railroad Passenger Corp. v. Expresstrak, LLC, 2006 WL 2947555 at * 13(D.D.C. 2006)(holding low level employees did not have authority to enter into or orally modify contract between their respective employers).

The burden is on the party arguing that the contract has been modified to establish the modification by a preponderance of the evidence. Puma, 746 A.2d at 875; Gagnon, 200 A.2d at 198. Accordingly, the burden is on defendant Capitol Sprinkler to establish that: (1) there was mutual assent to modify the contract; (2) there was consideration supporting the modification of the contract; and (3) the unidentified maintenance person allegedly agreeing to the modification had authority to bind Guest Services and/or Gallaudet to a modification of the existing written contract. In this case, the defendant has not cited any admissible evidence whatsoever to establish a modification of the contract.

The only evidence defendant has of the alleged oral modification is the uncorroborated testimony by Michael Bowlin that an unidentified maintenance person agreed to drain the Drum

8

Drip. There is nothing in Capitol Sprinkler's own inspection report for January 9, 2003 to confirm that there was any agreement by the unidentified employee of Guest Services to drain the Drum Drip or to modify the inspection contract. Nor is there any other documentation whatsoever confirming the alleged modification of the contract. In addition, Capitol Sprinkler did not provide any notice to Guest Services or Gallaudet that there had been a modification of the inspection contract. In fact, the first time that Capitol Sprinkler ever even raised the issue of modification of the contract was in its Opposition.

The testimony of Capitol Sprinkler's own employees proves that it cannot identify the person who allegedly agreed to drain the Drum Drip and the oral modification of the contract. Capitol Sprinkler cannot possibly meet its burden of establishing there was an oral modification of a contract when it cannot even identify the person who allegedly agreed to the modification.

Even if the Court credits the testimony of Bowlin for purposes of deciding this motion, Capitol Sprinkler still cannot establish that there was a modification for the contract. In order for a written contract to be orally modified, there must be consideration. In this case there was no consideration provided to Guest Services and/or Gallaudet to modify the written inspection contract. There was mutual consideration for the original inspection contract, wherein Capitol Sprinkler agreed to perform a service for Guest Services and Gallaudet in exchange for a fee. If the services to be provided by Capitol Sprinkler were going to be changed, then there should have been a change in consideration to account for the reduced services to be provided. Absent some consideration, there can be no modification.

In addition, Capitol Sprinkler cannot establish that the unidentified maintenance person who escorted them throughout the building had any authority whatsoever to bind Guest Services and/or Gallaudet to a modified contract. There is no evidence provided by defendant that a maintenance person for Guest Services had any authority whatsoever to enter into a contract on

behalf of Guest Services or Gallaudet, nor would the maintenance person have had any authority to modify the existing contract.

### C. THERE WAS NO MATERIAL BREACH OF THE CONTRACT

Defendant argues that it was excused from its express contractual obligation to drain all drum drips by virtue of the fact that plaintiff's building management company, Guest Services, failed to provide defendant's inspectors with access to the sprinkler system. Defendant relies on NFPA 25 § 1-4.1, which requires the owner to provide "ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." Plaintiff does not agree that failure of Gallaudet or Guest Services to comply with this NFPA 25 provision would constitute a material breach of the contract. However, Capitol Sprinkler cannot even establish that either Gallaudet or Guest Services failed to provide ready accessibility to the system. Rather Capitol Sprinkler's employee's own testimony establishes that a representative of Guest Services accompanied them throughout the building and provided them access to the entire system, with the exception of the room containing the Drum Drip. The Guest Services employee did not have the key on his person to the room where the Drip Drum was and advised the Capitol Sprinkler inspectors that he needed to go get it. Capitol Sprinkler readily admits that its employees did not ask him to go get the key and that the Guest Services employee did not refuse to provide them access or to go get the key.

Even if the Court fully credits Bowlin's testimony, it only establishes that defendant's inspectors made the decision to rely on the Guest Services employee to go back and drain the Drum Drip rather than just asking him to go get the key so they could go in and drain the Drum Drip themselves in accordance with defendant's express contractual obligation. The fact that the Guest Services employee did not have the key on his person to provide them access to the last

room when they arrived there certainly does not establish that Guest Services or Gallaudet materially breached the contract.

> D.  **IT WAS NOT IMPOSSIBLE OR COMMERCIALLY IMPRACTICABLE FOR DEFENDANT TO PERFORM ITS CONTRACTUAL OBLIGATIONS**

Defendant also argues that it would have been impossible or commercially impracticable to complete its contractual obligations because it was not provided immediate access to the room where the Drum Drip was. When circumstances beyond a parties control make performance of a contract impossible or commercially impracticable, the party failing to perform is exonerated. Island Dev. Corp. v. District of Columbia, 933 A.2d 340, 350 (D.C. 2007). Impossibility is not limited to absolute or legal impossibility, it includes impracticability due to extreme or unreasonable difficulty or expense. Id. However, it must be real impossibility and not a mere inconvenience or unexpected difficulty. Id. A party is expected to use reasonable efforts to surmount obstacles to performance and performance is impracticable only in spite of such efforts. Id.

The testimony of Bowlin, Capitol Sprinkler's own inspector, demonstrates that it was neither impossible nor commercially impracticable for Capitol Sprinkler to perform its contractual obligations. The fact that the Guest Services representatives did not have the key with him and could not provide immediate access to the room with the Drum Drip was at most an inconvenience. Bowlin admitted that he did not ask the Guest Services representative to go get the key. Nor did the Guest Services representative ever refuse to go get the key. Bowlin made no attempt whatsoever to get access to the room once he found out the Guest Services representative did not have the key. Instead, Bowlin requested that the Guest Services escort drain the Drum Drip himself. Accordingly, Bowlin made no reasonable effort to surmount the minor obstacle to the performance of Capitol Sprinkler's own express contractual duties. In

addition, there was no unreasonable expense or undue hardship associated with getting the key and draining the Drum Drip. Consequently, there is no evidence whatsoever supporting the argument that it was impossible or commercially impracticable for Capitol Sprinkler to perform its express contractual duties and Capitol Sprinkler cannot be exonerated for its failure to perform.

## IV.   CONCLUSION

Defendant Capitol Sprinkler did not take one deposition of a Guest Services representative, not even a Rule 30(b)(6) corporate designee, to try to identify the escort who Capitol Sprinkler alleges agreed to drain the Drum Drip. Consequently, Capitol Sprinkler has attempted to mischaracterize the evidence and testimony in this case and mislead the Court regarding the "identification " of Mr. Hubbard. The attached excerpts from the deposition testimony of defendant's own employees establishes that Capitol Sprinkler never knew the identity of the building maintenance man, did nothing immediately after the incident in 2003 to determine his actual identity, and still does not have any idea of who the maintenance man actually was. Of course, this presumes that Mr. Bowlin actually had a conversation with a building maintenance man concerning the draining of the last Drum Drip, a conversation which is, at best, conveniently self-serving, and at worst, completely fabricated.

However, the Court does not need to delve into the credibility of Mr. Bowlin to resolve this motion. If the Court concludes that there is no evidence to establish that Mr. Hubbard was, in fact, the Guest Services employee with whom Mr. Bowlin allegedly had a conversation about draining the Drum Drip, then Capitol Sprinkler cannot possibly prove that Mr. Hubbard had any authority to bind Guest Services to a contract modification. Nor can the defendant prove by any admissible evidence that it was denied access to the Drum Drip or that it was impossible for Mr. Bowlin to drain the Drum Drip. The undisputed testimony of Mr. Bowlin is that he never

requested his building escort to go and get a key to open the locked door, that the building escort never refused or was unwilling to go and get the key, and that it was Bowlin himself who requested that the building escort drain the Drum Drip.  This testimony by Capitol Sprinkler's own employee directly contradicts and defeats the legal arguments of material breach of contract, impossibility and commercial impracticability, which were raised by Capitol Sprinkler in its Opposition.

     Since Bowlin's testimony is the only factual foundation for all of these defenses, even if the Court accepts his testimony as true for the purposes of deciding this motion, there is no issue of material fact raised by the evidence and the Court can decide this motion simply as a matter of law.  Based on the legal argument and authorities cited in this Reply Memorandum and in plaintiff's prior Memorandum of Points and Authorities, plaintiff respectfully requests that the Court grant its motion for summary judgment on its contract claim against defendant.

                                                Respectfully submitted,

                                                COZEN O'CONNOR

                                                BY:  s/ David J. Groth
                                                DAVID J. GROTH, ESQUIRE (phv)
                                                DANIEL J. LUCCARO, ESQUIRE (phv)
                                                1900 Market Street
                                                Philadelphia, PA  19103
                                                (215) 665-2000

                                                MESIROW & STRAVITZ, PLLC


                                                BY:  s/Eric N. Stravitz
                                                Eric N. Stravitz, Esquire (D.C. Bar #438093)
                                                1307 New Hampshire Avenue, N.W., Suite 400
                                                Washington, DC 20036
                                                (202) 463-0303
                                                Attorneys for Plaintiff