**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————— :
                                                                    :
ST. PAUL MERCURY INSURANCE COMPANY,:
as Subrogee of Gallaudet University                    :
                                                                    :
        Plaintiff                                               :
                                                                    :
        vs.                                                       :
                                                                    :
CAPITOL SPRINKLER INSPECTION, INC    : CASE NUMBER:  1:05CV02115 (CKK)
                                                                    :
        Defendant                                           :
                                                                    :
        vs.                                                       :
                                                                    :
GUEST SERVICES, INC.                                   :
                                                                    :
        Third-Party Defendant                         :
—————————————————————— :

**DEFENDANT CAPITOL SPRINKLER INSPECTION, INC'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF**

Pursuant to Rules 7(h) and 56.1 of Local Rules of the United States District Court for the

District of Columbia, Defendant Capitol Sprinkler Inspection, Inc. hereby submits the following

Memorandum of Points and Authorities in Support of its Motion for Summary Judgment against

Plaintiff.

**I.    INTRODUCTION**

In the mid-to-late 1990's, Gallaudet University ("Gallaudet") engaged Capitol Sprinkler

Inspection, Inc. ("Capitol Sprinkler") to install a dry-pipe fire protection system at its Kellogg

Conference Center, and to perform subsequent semi-annual inspections and trip tests on the

system.  Capitol Sprinkler's first inspection contracts were executed with Gallaudet through its

property management agent at the time, Aramark (See Exhibit D).  The record is devoid of any

suggestion of problems with access for Capitol Sprinkler's inspectors to perform their work, or freeze-related failures during this period.

On April 22, 2002, Guest Services, Inc. ("Guest Services"), acting as Gallaudet's new property management agent, secured Capitol Sprinkler's services to perform semi-annual inspections and trip tests on the system. (See Gen'ly Exhibits E, F, & G). Capitol Sprinkler's inspectors had no independent access to the Kellogg Conference Center. Instead, an employee of Guest Services escorted the Capitol Sprinkler inspectors through the building while inspections were performed. (See Gen'ly Exhibits D, H, & I). This escort's role was to unlock the applicable valves and open the appropriate rooms so Mr. Bowlin could successfully complete his inspection. (See Gen'ly Exhibits D, H, & I).

During the inspection on January 9, 2003, in addition to other areas, Mr. Bowlin was to drain a drum drip located in the ceiling of conference room 5200. When Mr. Bowlin reached conference room 5200, his Guest Services escort said that he did not have the card key for this room and could not grant Mr. Bowlin access to the room or the drum drip within. (See Gen'ly Exhibits H & I). The escort made no effort to get the card key to access to the room, instead offering to take care of draining the drum drip himself. (See Exhibit H). Mr. Bowlin asked if the escort would take care of that particular drum drip, and the escort said he would do so. (See Exhibit H). It was not unusual for this employee to make such an offer since the building engineer's responsibility is to keep the drum drips or low points drained (see Exhibit B), building maintenance personnel are required to know how to perform this function, and, in the past, employees of property management agents had assisted Capitol Sprinkler in draining drum drips while acting at the direction or with the knowledge of the inspector. (See Exhibit H). It appears

{DE101489.1}

that the Guest Services escort was Terrance Hubbard, although his name was not known at the time of the inspection.

On or about January 25, 2003, a pipe fitting failed as the result of a "freeze event," meaning that water in the pipe froze and expanded, bursting the fitting, and subsequently melted, which allowed air and then water to escape the system through the failed fitting. The water discharged into the interior of the Conference Center. This subrogation action ensued.

For the reasons stated herein, Capitol Sprinkler submits that it is not liable for the damages sustained by Plaintiff in this case, and that Plaintiff's own negligence and breach of contract bars any recovery from Capitol Sprinkler, and accordingly, that the Court should GRANT Capitol Sprinkler's Motion.

## II.    SUMMARY OF THE APPLICABLE LAW

### A.    STANDARD OF REVIEW

Summary judgment shall be entered where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cobell v. Norton*, 260 F.Supp. 110, 116 (D.D.C. 2003); see also *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Through this analysis, the Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In other words, the Court is trying to determine whether trial is necessary. *Id.* This standard essentially "mirrors" the standard used when considering a motion for a Directed Verdict. *Celotex,* 477 U.S. at 323.

"[T]he substantive law will identify which facts are material." *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006). "To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Communications Workers Of America, AFL-CIO, v. Verizon Services, Inc.*, 404 F. Supp. 2d 62, 66 (D.D.C. 2005) (citations omitted). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Arrington,* 473 F.3d at 333 (citing *Liberty Lobby,* 477 U.S. at 249).

The moving party bears the initial burden of establishing that no "genuine issue of material fact" exists and that judgment in its favor should be entered by citing to credible evidence of the type discussed in Rule 56. *Celotex,* 477 U.S. at 322-24. Should the moving party carry its burden, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); See also *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Summary judgment is available where, as here, the evidence in support of the Third-Party Plaintiff's motion is "so one-sided that [it] must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 259.

### B.    CHOICE OF LAW

"In a diversity case a federal court follows the choice-of-law rules of the jurisdiction in which it sits." *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 193 (D.C. Cir. 1999) (citations omitted). In the absence of a contractual choice-of-law provision, this Court "uses 'a constructive blending' of the 'governmental interest analysis' and the 'most significant

{DE101489.1}

relationship test,' the latter as expressed in the *Restatement (Second) of Conflict of Laws* § 188 (1988)." *Id.* at 194 (citations omitted). Where, as here, there is no choice of laws provision in the subject contract, the contract itself was partially negotiated and performed in the District of Columbia, no other jurisdiction appears to have an obvious interest in determining the issues arising under the contract, and the Plaintiff and all other parties have chosen this venue to adjudicate the matter, the Court should properly apply the laws of the District of Columbia to determine whether a breach of contract occurred. *Id.*

C.    **D.C. LAW OF AGENCY**

1.    **Under agency theory, a principal is liable for the acts of its agent.**

It is well settled that a principal is responsible for the acts of its agent who, acting within the scope of its authority, performs or withholds performance of the principal's legal or contractual responsibilities. "Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other consents to do so." *Judah v. Burton, Reinder & Morris Management, Inc.,* 744 A.2d 1037, 1040 (D.C. App. 2000) (citing *Smith v. Jenkins,* 452 A.2d 333, 335 (D.C. 1982)). "In deciding this question, courts will look both to the terms of any contract that may exist and to the actual course of dealings between the parties . . . [noting that] . . the parties' actual relationship, in spite of contractual language, may be the conclusive factor" *Id.* "With the authority to manage [a] property, to care for it, to protect it, and to maintain it, goes the incidental and reasonably necessary authority to contract for repairs and upkeep which in themselves are reasonable and necessary." *Medico v. Simkowitz,* 158 A.2d 681, 682 (D.C. App. 1960) (citing 2 Am. Jur. *Agency* § 195 (1936)).

2.    **A principal cannot delegate its duty to an independent contractor.**

Whether one performs work on behalf of another as an employee/servant, or on behalf of himself as an independent contractor, depends on the particular facts of the case. *Schecter v. Merchants Home Delivery*, 892 A.2d 415 (D.C. 2006) (citing *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856 (D.C. 1982)). "[T]he decisive test…is whether the employer has a right to control and direct the servant in the performance of his work and manner in which the work is to be done." *Id.* The right to control means "the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision." *Id.* In determining the employer's right to control, courts look to the relationship between the parties, including the language of any agreement between them. *Id.*

The liability of an employer for harm caused by the negligence of an independent contractor depends on whether the employer had a duty to the person injured, which duty the independent contractor failed to perform on the employer's behalf. If such a breach of duty actually resulted from the work of the independent contractor, the landlord may not escape liability since liability for non-performance of a duty may not be shifted to another. *Bailey v. Zlotnick*, 80 U.S. App. D.C. 117 (D.C. Cir. 1945). "[W]hen the negligence of the [independent] contractor is the proximate cause of the injury, the [owner] as well as the contractor may be found liable if the injury is not due to the negligence of the contractor in the actual performance of the details of the work but is due to the condition of the premises which results from the negligence." *Hanna v. Fletcher*, 97 U.S. App. D.C. 310 (D.C. Cir. 1956) (citing *Bailey*, 80 U.S. App. D.C. 117).

{DE101489.1}

### D.    D.C. LAW OF CONTRACTS

#### 1.    The Court must look to the face of the contract first.

"This jurisdiction adheres to an 'objective' law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties unless the written language is not susceptible of a clear and definite undertaking." *Island Development Corporation v. District of Columbia*, 933 A.2d 340, 347 (D.C. App 2007) (quoting *Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007)). "The law requires contracts to be read as a whole, with meaning given to every provision contained therein." *KiSKA Construction Corporation-USA v. Washington Metropolitan Area Transit Authority*, 321 F.3d 1151, 1163 (D.C. Cir. 2003) (cert denied at 540 U.S. 939 (2003)). "When the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties." *Farmland Industries, Inc. v. Grain Board of Iraq*, 904 F.2d 732, 736 (D.C. Cir. 1990) (citing *Sundown, Inc. v. Canal Square Associates*, 390 A.2d 421, 432 (D.C. 1978)).

#### 2.    Oral modifications to contracts are allowed.

In the District of Columbia, "it is well-established that a written contract may be modified or rescinded by a subsequent oral agreement . . . but the oral modification must be established by a preponderance of the evidence." *Puma v. Sullivan*, 746 A.2d 871, 875 (D.C. App. 2000) (citing *Nickel v. Scott,* 59 A.2d 206, 207 (D.C. 1948)); see also *Gagnon v. Wright*, 200 A.2d 196, 198 (D.C. 1964). Because such statements are inherently against the pecuniary interests of the party making them at the time they are made, "[i]t is direct evidence, not hearsay, when a party to a dispute over a contract testifies to the offer or the acceptance made by the other

contracting party" *Id.* at 876 (citing *Hydrite Chemical Company v. Calumet Lubricants Company*, 47 F.3d 887, 892 (7th Cir. 1995)). "Accordingly, [a party's] recitation of [another's] out-of-court offer is admissible for consideration on summary judgment . . . ." *Id.* Further, such oral modifications will be enforced where the party charged with performance or non-performance of an orally modified term changes his position so materially that fraud would result were the modified term *not* enforced. See e.g. *Landow v. Georgetown-Inland West Corp.*, 454 A.2d 310 (D.C. App. 1982).

### 3. One party's performance of a contract is excused in light of material breach by the other party to the contract.

The *Restatement (Second) of Contracts* § 237 states that a "party's continuing obligations under a contract are conditioned on there being no 'uncured material failure by the other party to render any such performance due at an earlier time.'" *Ashcraft & Gerel v. Coady*, 244 F. 3d 948, 950 (D.C. Cir. 2001) (citing *Restatement (Second) of Contracts* § 237 (1981)). "'[O]ne party's material failure of performance has the effect of the non-occurrence of a condition of the other party's remaining duties … even though the other party does not know of the failure.' " *Id.* This is true whether there is defective performance or a complete absence of performance by the breaching party and operates to discharge "the [other party's corresponding] duty when the condition can no longer occur." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 25 (2000) (citations omitted).

### 4. Performance under a contract is excused by impossibility, commercial impracticability, or frustration of purpose.

"Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are

discharged, unless the language or the circumstances indicate the contrary." *Island Development Corporation,* 933 A.2d at 349 (quoting *Restatement (Second) Of Contracts: Discharge By Supervening Frustration* § 265 (1981)). "[W]hen, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible [or commercially impracticable], the party failing to perform is exonerated. *Id.* at 348-349 (citing *Whelan v. Griffith Consumers Company,* 170 A.2d 229, 230 (D.C. 1961)). "Under frustration analysis the court is concerned with the impact of the event upon the failure of consideration, while under impracticability, the concern is more with the nature of the event and its effect upon performance." *Id.* at 349 (citing *Seaboard Lumber Company v. United States,* 308 F.3d 1283, 1296 (Fed. Cir. 2002)).

E.    **D.C. LAW OF NEGLIGENCE**

In the District of Columbia, "[t]o establish negligence a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001). "[T]he plaintiff has the burden of establishing a standard of care and that defendant's deviation from that standard proximately caused plaintiff's injuries." I*d.* at 90 (citing *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988)) (other citation omitted). A Plaintiff may establish the duty owed him by demonstrating a duty imposed on the defendant by statute or law and that "plaintiff's interests are entitled to legal protection against the defendant's conduct." *District of Columbia v. Beretta, USA Corporation*, 872 A.2d 633, n.3 (D.C. App. 2005). "Proximate cause is 'that cause, which in natural and continued sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred.' " *Harris*, 770 A.2d at 92 (quoting *Lacy v. District of Columbia*, 424 A.2d 317, 320 (D.C. 1980)). "The 'defendant need not have foreseen the precise injury, nor should [he] have

9

had notice of the particular method in which a harm would occur, if the possibility of harm was clear to the ordinary prudent eye.'" *Harris*, 770 A.2d at 92 (quoting *Spar v. Obwoya*, 369 A.2d 173, 177 (D.C. 1977)).

In *Jarrett v. Woodward Bros.*, 751 A.2d 972 (D.C. 2000), the District of Columbia Court of Appeals found that contributory negligence can completely bar plaintiff's recovery:

> The District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense to the defendant's liability for negligence. See *Felton v. Wagner*, 512 A.2d 291, 296 (D.C. 1986). The common law defense of contributory negligence is not available, however, to defeat liability for negligent conduct that contravenes a statutory mandate because "statutes and regulations should not be overborne by the common law." See *Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 68-69 (D.C. 1978). *Jarrett v. Woodward Bros.*, 751 A.2d 972 (D.C. 2000).

The District of Columbia Court of Appeals has recently cited that contributory negligence bars plaintiff's recovery in D.C. *Dennis v. Jones*, 928 A.2d 672 (D.C. 2007).

To assert contributory negligence as a defense, a party must "establish, by a preponderance of the evidence, that a plaintiff failed to exercise reasonable care," *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997), and that this failure was a substantial factor causing damage or injury. *Massengale v. Marteal Pitts*, 737 A.2d 1029 (D.C. 2006) (citing *Durphy v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 698 A.2d 459 (D.C. 1997).

## F.    D.C. CONSTRUCTION CODES AND NFPA STANDARDS

NFPA Standard 25 ("NFPA 25") governs inspections, testing and maintenance of the fire protection systems in Washington D.C. The District of Columbia has expressly adopted the ICC International Fire Code. See *D.C. Code § 6-1403.01; CDCR § 12A-101.4.6.* The Code of D.C. Municipal Regulations states that "the ICC International Fire Code/2000 as amended by the D.C. Fire Prevention Code Supplement/2003 shall constitute the D.C. Fire Prevention Code/2003 ... ."

*CDCR 12A-101.4.6.* The ICC International Fire Code in turn, adopts NFPA 25 as the required standard for inspections, testing and maintenance of water based fire protection systems. See *ICC IFC, Chap. 5,* (2000) ("Fire Protection Systems"). NFPA 25 therefore carries the force of law in Washington D.C. and governs inspections, testing and maintenance of the system present in the Kellogg Conference Center.

Under NFPA 25, as the Owner of the Kellogg Conference Center, Gallaudet had a continuing obligation to provide access to the fire protection system in the building, and to ensure that all inspections, tests, and maintenance were performed on the system since it was first installed. This is true under all editions of NFPA 25. The 1998 edition of NFPA 25 was the most recent edition preceding the 2000 edition of the ICC International Fire Code. The 1998 edition of NFPA 25 provides that:

> The responsibility for properly maintaining a water-based fire protection system shall be that of the owner(s) of the property. By means of periodic inspections, tests, and maintenance, the equipment shall be shown to be in good operating condition, or any defects or impairments shall be revealed.

> .    .    .

> *Exception:  Where the owner is not the occupant, the owner shall be permitted to pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract.*

*NFPA 25, § 1-4.2* (1998) (emphasis in original). "The owner or occupant shall provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." *NFPA 25, § 1-4.1* (1998).

The 2002 edition of NFPA 25 was used for the inspections, testing and maintenance of the system in the Kellogg Conference Center and imposes substantially the same obligation on

the owner as the 1998 edition.  (See gen'ly Exhibit B; see also Exhibit N).  The 2002 edition of

NFPA 25 provides that:

> The responsibility for properly maintaining a water-based fire protection system shall be that of the owner of the property.  *NFPA 25, § 4.1.2* (2002).

> The property owner or occupant shall provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.  *NFPA 25, § 4.1.1* (2002).

> Where the property owner is not the occupant, the property owner shall be permitted to pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract.  *NFPA 25 § 4.1.2.3* (2002).

> Where an occupant, management firm, or managing individual has received the authority for inspection, testing, and maintenance, the occupant, management firm, or managing individual shall comply with the requirements identified for the owner or occupant throughout this standard.  *NFPA 25 § 4.1.2.4* (2002).

Thus, the Owner's obligations under NFPA 25 remained substantively unchanged from

the period when Aramark acted as Gallaudet's property management agent through the period

when Guest Services acted in the same capacity.  As such, there can be no doubt that Guest

Services, as the Owner's property management agent, was legally responsible for carrying out

the Owner's obligations under NFPA 25.  Concurrently, Gallaudet, as the Owner, retained the

responsibility for ensuring that its obligations were carried out in their entirety.

### III.  ARGUMENT

Guest Services breached the contract and negligently failed to perform its statutory duties

under NFPA 25.  The inspection contract provides that Capitol Sprinkler would conduct its

inspections and tests pursuant to the applicable provisions of NFPA, which requires the

inspectors be provided with access to the necessary components of the sprinkler system.  Further,

as either the Gallaudet's property management agent or an independent contractor, Guest

{DE101489.1}

Services had a statutory obligation to provide Capitol Sprinkler inspectors with access to all portions of the subject sprinkler system necessary for them to complete their NFPA 25 inspection.

Guest Services failed to provide the required access, agreed to drain the subject drum drip, and subsequently failed to drain it. As shown below, these acts constitute a breach of contract, a frustration of the principal purpose of the contract, an oral modification of the contract, and a subsequent breach of the orally modified contract by Guest Services. Capitol Sprinkler employees, thus, were relieved of their contractual obligation to drain the subject drum drip and resulting damages from Guest Services' failure to do so. Furthermore, Guest Services had an independent statutory duty to comply with NFPA 25, which it negligently breached.

Serving as either an agent or independent contractor to Gallaudet, Capitol Services was neither in breach of contract or negligent. Rather, Guest Services was both in breach of contact and negligent, and consequently liable for any damages. That liability is also imputed to Gallaudet regardless if Guest Services was an agent or independent contractor.

A.   **GUEST SERVICES WAS AN AGENT OF PLAINTIFF AND COULD BIND GALLAUDET BY ITS ACTIONS**

A principal is responsible for the acts of its agent who performs or withholds performance of the principal's duties while acting within the scope of its authority. An agency relationship exists when one party authorizes another to act on its behalf subject to its control, and the other party consents. Guest Services was an agent of Gallaudet because Gallaudet authorized Guest Services to act on its behalf for maintaining the sprinkler system or contracting with a third party to do so. In addition to its duties regarding the sprinkler system, Guest Services was also required to report to Gallaudet's Executive Director of Business and Support Services, Gary Aller, on the operation and maintenance of the Conference Center, and Mr. Aller

{DE101489.1}

exercised sufficient control over Guest Services to recommend and control its termination following this incident.

The parties entered into a property management agreement whereby Guest Services became an agent to act in accordance with their contract. In line with this agency relationship, Guest Services secured Capitol Sprinkler's services to perform semi-annual inspections and trip tests on the sprinkler system. Additionally, a Guest Services employee accompanied Capitol Sprinkler inspectors on multiple occasions to give the inspectors access to the system components. Those actions were done in accordance with Guest Services' authority to act as an agent to maintain the sprinkler system on behalf of Gallaudet. An agency relationship is indicated by both the terms of the contract between Gallaudet and Guest Services and the actual course of dealings between them.

As Guest Services was authorized to act on behalf of Gallaudet as its agent, and did so, Gallaudet is bound by any action or inaction by Guest Services. If, as in this case, Guest Services caused damage to the conference center, the liability for the damage will rest with both Guest Services and be imputed to Gallaudet.

## B.    GUEST SERVICES BREACHED ITS CONTRACT WITH CAPITOL SPRINKLER

Guest Services materially breached the contract by failing to provide Capitol Sprinkler with access to all components of the subject sprinkler system, including the subject drum drip, as required by NFPA Standard 25. The failure to provide access to the subject drum drip was a violation of the Owner's Obligations under NFPA 25, and relieved Mr. Bowlin of any obligation to inspect the same. See *NFPA 25, § 4.1.1* (2002).

Gallaudet, Guest Services, and Capitol Sprinkler were all bound by the applicable provisions of NFPA Standard 25. As noted above, in both the 1998 and the 2002 editions of

14

NFPA 25, the applicable standard requires the Owner to provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.

Where, as here, the Owner contracts with a property management company to fulfill these obligations, then the property management company stands in the shoes of the Owner with respect to the Owner's NFPA 25 obligations.   Guest Services had the duty to provide Capitol Sprinkler 'ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.'  Guest Services failed to do this because the Guest Services' employee did not grant the Capitol Sprinkler inspector access to all drum drips that required inspection.   When, as here, the performance obligations of one party to a contract can only feasibly be fulfilled upon successful performance by another party to the contract, failure of that party's performance constitutes a material breach that forgives the other's performance.  (See gen'ly *Restatement (Second) of Contracts* § 237; See also *Ashcraft and Gerel v. Coady*, 244 F.3d 948 (D.C. Cir. 2001).  By failing to comply with NFPA 25, Guest Services breached its contract with Capitol Sprinkler, thereby relieving Capitol Sprinkler of its obligation to perform under that contract.

**C.    CAPITOL SPRINKLER'S PERFORMANCE IS EXCUSED BECAUSE GUEST SERVICES FRUSTRATED THE PRINCIPAL PURPOSE OF THE CONTRACT**

Guest Services' failure to provide Capitol Sprinkler's inspector appropriate access to the subject drum drip frustrated the principal purpose of the contract between Guest Services and Capitol Sprinkler.  It is undisputed that Guest Services exclusively controlled access to those areas at the Kellogg Conference Center for which Capitol Sprinkler's inspector required access to perform his inspection.  It is likewise undisputed that Capitol Sprinkler's inspector inspected

all portions of the subject sprinkler system to which he was given access on January 9, 2003. Capitol Sprinkler's employees have consistently and repeatedly testified as to Terrance Hubbard's inability to provide access to the subject drum drip on that date. Neither Plaintiff nor Guest Services have sought to elicit testimony to contradict this position and Mr. Hubbard, deceased, will not be able to do so himself. As neither Plaintiff nor Guest Services has presented affirmative testimony or other offers of proof to contradict this position, they cannot now dispute it. On the representations of the Guest Services employee, Capitol Sprinkler's inspector reasonably believed that access to the subject drum drip was unavailable. As such, an inspection of the same was impossible, relieving the inspector of any obligation to inspect it and relieving Capitol Sprinkler for performance of the contract regarding the subject drum drip.

### D.    GUEST SERVICES MODIFIED ITS CONTRACT WITH CAPITOL SPRINKLER

The inspection contract executed by Capitol Sprinkler and Guest Services states that the contract is to be performed in a workmanlike manner in accordance with the requirements of the National Fire Protection Association (NFPA) (see Gen'ly Exhibits B, D, & N). As noted, pursuant to the applicable provisions of NFPA Standard 25, it is the owner's obligation to inspect and test a dry pipe fire protection system installed in a building owned by the owner, unless the owner contracts out for that service. (*NFPA 25, § 4.1.2* (2002). In this case, the owner engaged Guest Services Inc., by way of a property management contract, dated February 2000, to perform these duties properly. Thus, it became Guest Services' duty to fulfill the Owner's Obligations under NFPA 25. (*NFPA 25, § 1-4.2* (1998); *NFPA 25 § 4.1.2.4* (2002). It is undisputed that Guest Services, on Gallaudet's behalf, negotiated a contract with Capitol Sprinkler for the performance of the required sprinkler inspections. Even Plaintiff admits, and Capitol Sprinkler agrees, that Guest Services had full authority to bind Gallaudet University (the owner) in the

16

performance of its contract with Capitol Sprinkler. Neither Plaintiff nor Guest Services produced affirmative evidence to show that Guest Services' employee, Terrance Hubbard, did not agree to ensure that the subject drum drip was drained within a reasonable time after Capitol Sprinkler's inspector was not given access to it.

Gallaudet, as owner of the Kellog Conference Center, had the duty to perform the required inspections or contract the work out. Guest Services, as an agent of the owner, had both the duty and authority to either perform the inspections or to contract with a third-party for the performance of the same. In this case, Guest Services chose to contract with a third-party, Capitol Sprinkler, for the performance of sprinkler inspections. As Guest Services had the authority to contract for these services, it also had the authority to modify any such contract whether in writing, orally, or through the course of its dealings with Capitol Sprinkler. That is what happened in this case.

The individual appointed by Guest Services to control Capitol Sprinkler's access to the subject sprinkler system, including its component parts (and drum drips), agreed to undertake the performance of a specific aspect of the Guest Services/Capitol Sprinkler Contact - the draining of the drum drip at issue in this case. In reliance on that representation, Capitol Sprinkler's inspector left the building under the reasonable impression that his work there was complete and that the subject drum drip would be properly drained. Guest Services modified the contract by assuming the duty to drain the drum drip. Guest Services cannot dispute this modification now as such an oral modification of the Guest Services/Capitol Sprinkler written contract is enforceable under District of Columbia *juris prudence*. See *Puma,* 746 A.2d 871.

E.    **GUEST SERVICES BREACHED THE MODIFIED CONTRACT, WHICH IT CREATED ON THE DAY OF THE INSPECTION**

Further, when Capitol Sprinkler's inspector left the Conference Center, he was under the reasonable understanding that Guest Services would ensure that the subject drum drip was properly drained in a reasonable time following his inspection, per the modified contract between the two parties.  As a party to the underlying contract with the Owner, it was within Guest Services' authority to modify its contract with Capitol Sprinkler and to reassume its duty to inspect and maintain the sprinkler system.  Clearly, the Guest Services employee never drained the drum drip.  The subsequent failure by the Guest Services employee to ensure that the drum drip was properly drained constitutes a material breach of the Guest Services/Capitol Sprinkler modified contract, is clearly inconsistent with Guest Services' obligations as the Owner's property management agent under NFPA 25, and provides Capitol Sprinkler with a complete defense to Plaintiffs allegations of breach of contract.

F.    **EVEN IF GUEST SERVICES WAS AN INDEPENDENT CONTRACTOR, PLAINTIFF IS LIABLE FOR ITS NEGLIGENCE AND THE RESULTING DAMAGES**

Pursuant to NFPA 25, as adopted by Washington D.C. through its use of the ICC International Fire Code, Guest Services had the duty to either maintain the sprinkler system or provide Capitol Sprinkler with the access for doing so.  This duty is completely independent of its agreement with Capitol Sprinkler for inspection and testing services.  Guest Services breached this duty first, by failing to give Capitol Sprinkler access to the subject drum drip, and second, by subsequently not draining the drum drip itself.  This breach by Guest Services caused the sprinkler system failure and the consequential water damage to the conference center.  But for Guest Services' breach the damage would not have occurred - the drum drip would have been drained either by Capitol Sprinkler or Guest Services.  Although Guest Services may claim not to

have appreciated the nature and extent of the damages that resulted, certainly, Guest Services had an understanding that damage could result from a failure to complete the required act of draining the drum drip.

Even if Guest Services is an independent contractor, and not an agent, Plaintiff is liable for Guest Services' negligence and any damages that result. Plaintiff cannot delegate its statutory duty to comply with NFPA 25, which is separate from its contractual duty, and may not shift liability for non-performance of that duty. Plaintiff is still liable for the condition of the premises which results from the negligence of Guest Services. Capitol Sprinkler is not claiming that negligence in the manner that the work, or absence of work, is at issue, but rather that the resulting condition of the premises was caused by that negligence. When Guest Services did not drain the drum drip as it agreed to, its negligence caused the resulting sprinkler system failure and damage to the conference center.

Both Plaintiff and Guest Services had to the duty to either maintain the sprinkler system or provide Capitol Sprinkler with the access for doing so. Guest Services breached both of those duties by not giving Capitol Sprinkler access to the drum drip and by not draining the drum drip themselves after the inspection by Capitol Sprinkler. That breach by Guest Services caused the sprinkler system failure and the consequential water damage to the conference center.

## IV.    <u>CONCLUSION</u>

Plaintiff is responsible for any actions of its agent, Guest Services. Any conduct by Guest Services resulting in damages is also attributable to Plaintiff. Plaintiff cannot bring a claim against Capitol Sprinkler for damages that are actually attributable to Plaintiff, through the actions of its agent Guest Services.

{DE101489.1}

Guest Services caused Plaintiff's damages by breach and by modifying its contract with Capitol Sprinkler. First, Guest Services breached its contract with Capitol Sprinkler because it failed to provide Capitol Sprinkler access to all sections of the sprinkler system as required by NFPA 25 and the parties' contract. Furthermore, when Guest Services denied this required access, it frustrated the purpose of the contract, thereby relieving Capitol Sprinkler of the duty to perform under the contract. The record also demonstrates that an employee of Guest Services agreed to perform Guest Services' NFPA 25 obligations on behalf of Gallaudet, thereby modifying the underlying inspection contract and relieving Capitol Sprinkler of any obligation to inspect the subject drum drip. Finally, the record is clear that, as an agent of Gallaudet, Guest Services failed to perform its NFPA 25 obligations, and thus, breached the modified inspection contract to which it was a party.

Accordingly, Guest Services caused the damages suffered by Plaintiff. The liability for those damages is imputed to Plaintiff through agency theory. Therefore, Plaintiff is responsible for its own damages and cannot bring a viable claim against Capitol Sprinkler.

Based on the foregoing, Defendant Capitol Sprinkler Inspection, Inc. respectfully requests that this Honorable Court GRANT its Motion for Summary Judgment against Plaintiff and issue an order in its favor.

Respectfully submitted,

**MARKS, O'NEILL,
O'BRIEN & COURTNEY, P.C.**

_/s/Donald R. Kinsley_
Michael T. Hamilton, Esquire (Bar ID No. 474233)
Donald R. Kinsley, Esquire (Bar ID No. 432998)
Norman H. Brooks, Jr., Esquire (PHV)
913 N. Market Street, Ste. 800

{DE101489.1}

Wilmington, DE  19801
*Attorney for Defendant*
*Capitol Sprinkler Inspection, Inc.*

DATE: February 8, 2008