IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

St. Paul Mercury Insurance Company
As Subrogee of Gallaudet University

    Plaintiff,

v.                                                                          Civil Action No. 1:5cv-2115-CKK
                                                                                               Judge   Colleen   Kollar-Kotelly

CAPITOL SPRINKLER INSPECTION, P.C.

    Defendant/Third-Party Plaintiff,

v.

GUEST SERVICES, INC.

    Third-Party Defendant.
_____/

## THIRD PARTY DEFENDANT GUEST SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Third-Party Defendant, Guest Services, Inc., by and through counsel, respectfully submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment, and states as follows:

**I.   INTRODUCTION**

This matter arises out of damage that occurred to the Kellogg Conference Center at Gallaudet University on January 25, 2003, when a pipe fitting in the dry fire protection sprinkler system (hereinafter "sprinkler system") allegedly froze, thawed and ruptured allowing water to discharge throughout the Conference Center. St. Paul Mercury Insurance Company (hereinafter "Plaintiff"), the subrogee of Gallaudet

University, filed suit against the company that entered into a contract with Guest Services, Inc. on behalf of Gallaudet University to maintain and service the sprinkler system, Capitol Sprinkler Inspection, P.C., (hereinafter "Capitol Sprinkler") alleging negligence and breach of contract. (*See* Complaint). The Defendant, Capitol Sprinkler Inspection, P.C. filed a Third Party Complaint against Guest Services, Inc., the manager of the Kellogg Conference Center, for contribution and/or indemnification alleging negligence and breach of contract. (*See* Third-Party Complaint).

The only contract existing between Guest Services, Inc. and Capitol Sprinkler was the contract requiring Capitol Sprinkler to inspect the sprinkler system for Guest Services. (*See* Contract for Automatic Sprinkler Equipment Inspection Service, Exhibit 2). Under the terms of that contract, Capitol Sprinkler, not Guest Services, was obligated to perform the work on the sprinkler system at Gallaudet University. Furthermore, there is no allegation that Capitol Sprinkler is a third-party beneficiary of the contract entered into between Guest Services, Inc. and Gallaudet University. Plaintiff has not made a direct claim against Guest Services, Inc. Moreover, the Guest Services-Gallaudet University Contract contained a provision for the waiver of subrogation. Accordingly, Gallaudet University's insurer has no cause of action against Guest Services, Inc. Since Plaintiff has no direct cause of action against Guest Services, Inc., Capitol Sprinkler has no third-party claim for contribution or indemnification. There is no genuine dispute as to any of the material facts herein,

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

and Summary Judgment should be granted in favor of Guest Services, Inc.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. When a moving party has carried its burden under Super. Ct. Civ. R. 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Scott v. Harris, 127 S. Ct. 1769, 1776 (2007)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III. STATEMENT OF UNDISPUTED FACTS

1.  Gallaudet is the owner of the Kellogg Conference Center located at 800

Florida Avenue, N.E., Washington D.C. (*See Gary Aller Deposition p. 31:7-9*, Exhibit 8).

2. Prior to the incident, the Third-Party Defendant, Guest Services, Inc. had contracted with Gallaudet University to manage the Conference Center. (*See Gallaudet University Kellogg Conference Center Management Agreement*, Exhibit 1). "Guest Services" is defined in the contract as the "Operator". (*See Gallaudet University Kellogg Conference Center Management Agreement*, Exhibit 1).

3. Article 11.4 of that contract provides "All insurance policies shall contain an express waiver of subrogation against Owner or Operator to the extent that they are not an insured thereunder." (Hereinafter "Subrogation Waiver").

4. The contract with Gallaudet University does not require that Guest Services open and drain the sprinkler system. The contract only required that Guest Services contract with others, and these expenses are passed through to Gallaudet University. (*See Gallaudet University Kellogg Conference Center Management Agreement*, 3.1(e), Exhibit 1).

5. As one of the functions associated with the management of the property, on April 22, 2002, Guest Services, Inc. entered into a contract with Capitol Sprinkler Inspection, P.C., (hereinafter "Capitol Sprinkler") on behalf of Gallaudet University, to have Capitol Sprinkler maintain and service the sprinkler system. (*See* Contract For Automatic Sprinkler Equipment Inspection

4

Service, Exhibit 2).

6. Pursuant to the Scope of Services in the contract entered into with Capitol Sprinkler, Capitol Sprinkler expressly agreed to "open condensation drains on the drum drip connections and drain low points during fall and winter inspection." (*See* Scope of Services, Exhibit 3 ¶ 10). There is no other contract between Guest Services and Capitol Sprinkler. (*See Vane Deposition p. 35:11-21*, Exhibit 4).

7. Vernon Vane is the supervisor of inspections for Capitol Sprinkler. (See *Vane Deposition pp. 9:16-10:1*, Exhibit 4).

8. Vane assigned Michael Bowlin and Tom Scott from Capitol Sprinkler to do the inspection at the Kellogg Conference Center. (*Vane Deposition p. 60:18-60:20*, Exhibit 4; *Inspection Report*, Exhibit 5).

9. During his deposition, Vane testified that draining low points is supposed to be done by Capitol Sprinkler employees during the inspections of the sprinkler system at the Kellogg Conference Center. (*See Vane Deposition pp. 49:1-49:21, 52:12-52:16, 56:15-56:22*, Exhibit 4).

10. On January 9, 2003, Capitol Sprinkler's employees were on the property, and at the conclusion, certified that they had properly inspected the area, and that "dry valves protected from freezing". (*See* copy of Inspection Report of January 9, 2003, Exhibit 5).

11. In the same report it is indicated that "all areas and valves protected from

5

freezing". (*See* copy of Inspection Report of January 9, 2003, Exhibit 5).

12. Despite this certification, the pipes froze and burst, and on January 25, 2003 there was substantial damage to the property. (*See Vane Deposition, pp. 79:7-19; 82:7-16,* Exhibit 4).

13. Bowlin admitted that he and Scott did not drain all of the low points during the inspection on January 9, 2003, even though they were supposed to do so. The drum drip that was not drained was above conference room 5200. (*See Bowlin Deposition, pp. 50:10-51:4*, Exhibit 6).

14. Bowlin's only excuse for not draining the drum drip above conference room 5200 is the unsupported claim that an unidentified black male around 30 years of age, who escorted the Capitol Sprinkler inspectors throughout the building, indicated that he would take care of it. (*See* Bowlin Deposition, pp. 34:1-14; 41:18-22; 42:1; 54:10-17, Exhibit 6). Bowlin did not know this unidentified man's name or employer. (*See* Bowlin Deposition, pp. 40:17-22; 41:1-5; 92:2-7, Exhibit 6).

15. It is alleged that this person agreed to take over the duties of Capitol Sprinkler, and drain the drum drip above conference room 5200. (*See* Bowlin Deposition, pp. 54:10-17, Exhibit 6). These uncorroborated statements of an unknown declarant are inadmissible hearsay pursuant to Federal Rules of Evidence § 802 and may not be relied upon in response to a motion for

summary judgment pursuant to Federal Rules of Civil Procedure § 56(e)(2).[1]

16. There is no other evidence as to the identity of the individual who allegedly made the statement that he would drain the drum drip, or that it was within the scope of employment of Guest Services. (*See* Bowlin Deposition, pp. 40:17-22; 41:1-5; 92:2-7, Exhibit 6).

17. Vane admitted that it was necessary for Capitol Sprinkler to drain the low points during the January 9, 2003 inspection. (*See Bowlin Deposition, p. 56:15-56:22*, Exhibit 6).

18. On January 25, 2003, a pipe fitting in the sprinkler system froze, thawed and ruptured allowing water to discharge throughout the Conference Center. (*See Vane Deposition, p. 82:7-16*, Exhibit 4).

19. Both Vane and Craig Parham, the Vice President of Capitol Sprinkler, admit that the pipe fitting froze, thawed, and ruptured because the drum drip was not drained during the January 9, 2003 inspection. (*See Vane Deposition, p. 82:7-16*, Exhibit 4; *Parham Deposition, p. 44:2-44:17*, Exhibit 7).

IV. **LEGAL ARGUMENT**

    A. **Guest Services Is Not Liable to Capitol Sprinkler Because Guest Services Did Not Owe a Common Law Duty of Care to Capitol Sprinkler**

---

[1]Phillips v. Holladay Prop. Servs., 937 F. Supp. 32; 1996 U.S. Dist. LEXIS 12245 (D.D.C. 1996). Failure to identify declarant who is allegedly an agent or employee of the defendant constitutes inadmissible hearsay. "Inadmissible hearsay... cannot be used by Plaintiff to meet her burden on summary judgment."Id. at 36-37.

Defendant Capitol Sprinkler asserts that Guest Services was negligent by failing to provide access to all drum drips located on the fifth floor of the conference center, failing to reasonably monitor the system, and failing to stop the flow of water immediately upon notification from the water flow alarm that the integrity of the sprinkler system had been disturbed. (See Third-Party Complaint ¶¶ 11-14).

Tort law imposes a duty to exercise reasonable care to avoid injuring the person or property of another. Fletcher v. Baltimore & P. R. Co., 168 U.S. 135, 138 (1897). In order to maintain a cause of action for negligence in the District of Columbia, the plaintiff must allege that the defendant has violated a duty of care, imposed by statute or law, and that damage to the interests of the plaintiff were proximately caused by that violation. See District of Columbia v. Cooper, 483 A.2d 317, 321 (D.C. 1984); Col. L. Fletcher Prouty v. National Railroad Passenger Corp., 572 F.Supp. 200, 206 (D.D.C. 1983). In order to determine whether there is a duty owed, the issue of "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct" must be addressed. Id. Furthermore, the plaintiff must establish that the damage caused was to the person or property of the plaintiff. District of Columbia v. Beretta, U.S.A., Corp., 872 A.2d 633, n. 3 (D.C. App. 2005).

In the case at bar, Capitol Sprinkler had no legally recognized interest in being provided access to the drum drips, in having Guest Services reasonably monitor the sprinkler system, or in having Guest Services immediately stop the flow of water

upon notification from the water flow alarm. The interest, if any, was created by contract, not tort. Furthermore, Capitol Sprinkler, who was not the owner of the property, has not indicated that Guest Services was charged with any such specific duty, imposed by statute or law, that would give rise to a negligence action by Capitol Sprinkler against Guest Services. Guest Services did not owe a legal duty to Capitol Sprinkler. Guest Service contracted with Gallaudet University to manage the Kellogg Conference Center. Therefore, the only duties owed by Guest Services were contractual duties owed to Gallaudet University. Guest Services owed no additional duties to Capitol Sprinkler. (See Gallaudet University Kellogg Conference Center Management Agreement, Exhibit 1). Furthermore, Capitol Sprinkler did not suffer any damages to its property as a result of the alleged breach by Guest Services. The property that was damaged was owned by Gallaudet University.

Moreover, common law does not generally impose an affirmative duty to act.[2] Feirson v. District of Columbia, 362 F. Supp. 2d 244, 250 (D.D.C. 2005). Even if one were to assume that Guest Services agreed to drain the drum drip, which it did not, the duties arising therefrom would be based in contract because Guest Service's failure to act would be characterized as nonfeasance as opposed to misfeasance. Nonfeasance is "the failure to act when a duty to act existed." Black's Law Dictionary 1076 (7th ed. 1999). Misfeasance is "a lawful act performed in a

---

[2] The generally recognized special relationships that give rise to an affirmative duty to act are: common carrier-passenger; innkeeper-guest; landowner-invitee; one obligated by the law; or one who voluntarily takes custody of another and in doing so deprives that person of the ability to protect himself. Id.(Citing Restatement (Second) of Torts § 314A)

9

wrongful manner." Id. at 1015. Capitol Sprinkler has mischaracterized the alleged misconduct of Guest Services as common law duties in tort giving rise to a claim for negligence. If Capitol Sprinkler had a claim against Guest Services based on these allegations, which it does not, then that action would necessarily be based on contractual duties. In the United States District Court for the District of Columbia, it has been recognized that, "the omission to perform a contractual obligation does not ordinarily create a cause of action in tort as between the contracting parties. Rather the appropriate avenue for relief is an action for breach of contract. Accordingly, the mere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." RLI Insurance Co. v. POHL, Inc., 468 F.Supp.2d 91, 94 (D.D.C. 2006).

In Stewart-Veal v. District of Columbia, 896 A.2d 232, 235 (D.C. 2006), the District of Columbia Court of Appeals addressed the issue of a mischaracterized claim of negligence in the context of a claim arising from the November 12, 2002 arrest of an electrical contractor, who claimed she was cursed, yelled at, pushed and shoved by the owner of the club at which she was performing renovation work. On September 29, 2004, the electrical contractor filed a "Complaint for Negligence" against the District of Columbia. The District argued that the suit was barred by the one-year statute of limitations because the Complaint stated, in substance, claims for intentional torts, while characterizing them as negligence. The Court affirmed the

trial court's dismissal of the plaintiff's negligence claim in so far as it was based on the alleged false arrest, holding, "a trial court is not bound by a plaintiff's characterization of an action, and use of the terms 'carelessly and negligently,' without more, are conclusory and do not raise a cognizable claim of negligence." Id. at 235.

Likewise, in this case, Capitol Sprinkler's claims that Guest services owed a duty to provide access to a drum drip, reasonably monitor the sprinkler system, and immediately stop the flow of water upon notification from the water flow alarm are mischaracterized as common law duties in tort giving rise to a claim for negligence. Capitol Sprinkler's conclusory allegations that Guest Services breached a duty of care does not raise a cognizable claim of negligence. Accordingly, this Court should grant Guest Services' Motion for Summary Judgment and dismiss Capitol Sprinkler's claim for negligence.

> **B.   Guest Services Is Not Liable to Capitol Sprinkler Because No Contract Existed Between Guest Services and Capitol Sprinkler, and Capitol Sprinkler Was Not a Third-Party Beneficiary To the Contract Between Guest Services and Gallaudet University**

In the District of Columbia, summary judgment in a contract case is "appropriate when the agreement is unambiguous and where there is no question as to the parties' intent." National Trade Prods. v. Information Dev. Corp., 728 A.2d 106, 109 (1999). In this case, the only contract that existed between Guest Services and Capitol Sprinkler was a contract requiring Capitol Sprinkler to inspect the

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

sprinkler system at Gallaudet University. (*See* Contract for Automatic Sprinkler Equipment Inspection Service, Exhibit 2). Among other things, the agreement required Capitol Sprinkler to inspect, test, and service the sprinkler system, to open condensation drains on the drum drip connections and drain low points during fall and winter inspection, and to provide a report of inspection, test results, services performed, and desirable improvements to Guest Services. (*See* Scope of Services, Exhibit 3). On January 9, 2003, Capitol Sprinkler employees provided Guest Services with an Inspection Report, which certified that the work had been completed. Specifically, the report indicated that all areas and valves were protected from freezing. (*See* Inspection Report, Exhibit 5). At the time, Capitol Sprinkler knew that not all areas had been drained, and all areas and valves were not protected from freezing. Therefore, Capitol Sprinkler misrepresented that the work had been completed in breach of the contract.

To the extent that Capitol Sprinkler bases its breach of contract claim on the contract Guest Services entered into with Gallaudet University, this claim should be dismissed. (Gallaudet University Kellogg Conference Center Management Agreement, Exhibit 1). In the District of Columbia, a plaintiff who is not a party to the contract may sue to enforce its provisions "only if the contracting parties intended them to benefit directly thereunder." Frederick v. TPG Hospitality, Inc., 56 F. Supp. 2d 76, 80 (D.D.C. 1999)(*Citing* Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp., 886 F. Supp. 874, 879 (D.D.C. 1995); Fields v. Tillerson, 726

12

A.2d 670, 672 (D.C. 1999). In the present case, Capitol Services does not allege that it is a third party beneficiary under the Guest Services-Gallaudet University contract. Furthermore, Capitol Services would not qualify as a third-party beneficiary based on the standard articulated in <u>Frederick v. TPG Hospitality, Inc.</u> With regard to service contracts, such as the contract for automatic sprinkler equipment inspection service, entered into on behalf of Gallaudet University with Capitol Sprinklers, the Guest Services-Gallaudet University contract provides: "...Operator's engagement under this Agreement shall include the responsibility and authority, on behalf of Owner, to:...negotiate and enter into service contracts necessary or desirable in the ordinary course of business in operating the Property..." (Gallaudet University Kellogg Conference Center Management Agreement, 3.1(e), Exhibit 1). There is no provision providing for third-party beneficiaries under the Guest Services-Gallaudet University contract, nor is there that requires Guest Services to provide Capitol Sprinkler with access to all drum drips in the subject fire suppression system. Guest Services' contractual duty to Gallaudet University was to enter into service contracts for the operation and management of the property. Guest Services fulfilled that duty when it entered into the contract for automatic sprinkler equipment inspection service with Capitol Sprinkler. It was Capitol Sprinkler that breached its contractual duties when it failed to drain all of the drum drips, as indicated in the scope of services. (*See* Scope of Services, Exhibit 3).

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

As a result of Capitol Sprinkler's breach of its express contractual obligation to drain all of the drum drips, water accumulated inside the dry sprinkler system. The water accumulation eventually resulted in the freezing and bursting of the tee fitting in the sprinkler system on January 25, 2003. Capitol Sprinkler admits that the pipe burst was the result of the tee fitting freezing because the drip was not drained. (*See* Vane Deposition, p. 82:7-82:16, Exhibit 4; Parham Deposition, p. 44:2-44:17, Exhibit 7). The pipe bursting and resulting water damage to the Conference Center are direct damages resulting from Capitol Sprinkler's breach of its contractual obligations.

The only defense raised by Capitol Sprinkler with regard to its failure to comply with its express contractual obligation to drain the drum drips is that its inspectors allegedly could not gain access to the room where the un-drained drum drip was located. This defense requires that the Court disregard the written certification as a fraud and find that the written agreement was modified by an oral agreement made by an unknown individual.[3] Parol evidence is not admissible to alter or vary the terms of an unambiguous contract. See District-Realty Title Ins. Corp. v. Ensmann, 247 U.S. App. D.C. 228, 767 F.2d 1018 (D.C. Cir. 1985). In its discovery responses, Capitol Sprinkler indicated that some unidentified person from

---

[3]This effort to allege that the written certification by Capitol Sprinkler was at best a misrepresentation, but at worst, a fraud, sounds of recrimination. An effort to have the Court accept the improper act as a basis to obtain relief. *See e.g.* Sebold v. Sebold, 143 U.S. App. D.C. 406, 444 F.2d 864 (D.C. Cir. 1971)(recrimination in divorce proceeding), Vanderhuff v. Vanderhuff, 79 U.S. App. D.C. 153, 144 F.2d 509 (D.C. Cir 1944)(recrimination in divorce context).

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

Guest Services allegedly told the inspectors that he would go back and drain the drum drip at a later time. There is absolutely no evidence of this, other than the oral statement of the Capitol Sprinkler employee who failed to drain the drum drip. Capitol Sprinkler does not know the name of the person, his position, or that he definitely worked for Guest Services. (*See* Bowlin Deposition, pp. 33:6-22; 40:17-22; 92:2-7, Exhibit 6).

In Laningham v. United States Navy, 259 U.S. App. D.C. 115 (1987), the United States Court of Appeals for the District of Columbia provided, a non-movant cannot "defeat a...properly supported motion for summary judgment...without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could disbelieve the defendant's denial" but instead must provide evidence establishing the existence of a genuine issue regarding the defendant's state of mind." Id. at n.6. Accordingly, to demonstrate a genuine issue of fact, Capitol Sprinklers' defenses must be supported by sufficiently admissible evidence. In this case, the uncorroborated statements by an unidentified declarant are hearsay and will be inadmissible. Fed. R. Evid. 802. There is no admissible evidence to support Capitol Sprinkler's alleged defense and third-party claim. Id.

Moreover, a breach of contract claim cannot lie against Guest Services based on the Gallaudet University-Guest Services contract because of the waiver of subrogation provision in that contract. Neither Gallaudet University nor St. Paul

Mercury Insurance Company, as the subrogee of Gallaudet University has filed a claim against Guest Services for this alleged incident. The only action filed by the Plaintiff is against Capitol Sprinkler for negligence and breach of contract. On January 3, 2008, the Plaintiff filed a Motion for Partial Summary Judgment against Capitol Sprinkler Inspection, Inc. Guest Services incorporates and adopts Paragraph II, B of the Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment.

Based on the foregoing, this Court should grant Guest Services' Motion for Summary Judgment and dismiss Capitol Sprinkler's claim for breach of contract.

    **C.    The Third Party Defendant Cannot Be Liable to the Plaintiff Due to the Waiver of Subrogation Clause. As a Result, The Defendant Capitol Sprinkler Does not have a Contribution and/or Indemnification Action**

In the Third-Party Complaint, Capitol Sprinkler asserts that if it is held liable to the Plaintiff, then it is entitled to contribution and indemnification from Guest Services. (*See* Third-Party Complaint ¶ 21). In the District of Columbia, "a claim for contribution will lie only if a defendant is liable, concurrently with the original defendant, to the plaintiff in the original suit." *Hall v. Fuller*, 621 A.2d 848, 850 (D.C. App. 1993)(*citing Washington v. Washington Hospital Center*, 579 A.2d 177, 187 (D.C. 1990), *Group Health Ass'n v. District of Columbia General Hosp.*, 540 A.2d 1104, 1106 (D.C. 1988)). *Hall v. Fuller* notes that a claim for indemnification would likewise require a finding of liability of the defendant to the original plaintiff. *Hall*, 621

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

A.2d at n.5. In *Hall v. Fuller*, the plaintiff was injured when he fell into a hole, dug for the purpose of planting a tree at a construction site. The plaintiff filed suit against the general contractor and the subcontractor hired to perform the landscaping work. Both defendants filed cross-claims against one another, seeking indemnification or contribution for a pro-rata share of any sums which may be adjudged against them. Before the case went to trial, the plaintiff settled with both defendants independently. Both settlement agreements contained a complete release of liability, and the trial court subsequently dismissed both cross-claims on the grounds that each of the settling defendants had "bought its peace" by settling with the plaintiff. *Hall*, 621 A.2d at 849.

On appeal, the D.C. Court of Appeals affirmed the dismissal of a cross-claim for contribution, holding "the first prerequisite to the assertion of a cross-claim for contribution,[is] the existence of joint liability." *Id.* at 850. Because the liability of each defendant had been extinguished by their respective settlement agreements, there could be no finding of joint liability. Therefore, the Court held that the cross-claim was properly dismissed.

Similarly, in this case, there can be no finding of joint liability. Guest Services is not liable to Plaintiff, Gallaudet's insurer, because of the Subrogation Waiver contained in the Gallaudet University Kellogg Conference Center Management Agreement. (*See* Exhibit 1). In *American Motorist Insurance Company v. Morris Goldman Real Estate Corp.*, 277 F. Supp. 2d 304, the United States District Court

for the Southern District of New York explains that the effect of a subrogation waiver is to "[shield] a party from *any* liability when the injured party is fully insured. In cases where the injured party is only partially insured, the waiver of subrogation clause serves as a liability limiting clause, reducing the liability of the responsible party to only a portion of the damage caused...thus in almost all situations, a waiver of subrogation clause will either absolve a party of liability or substantially limit liability..." *Id.* at 308. Gallaudet University was fully insured and Guest Services, Inc. is thus absolved from liability. Thus, Gallaudet's insurer has no cause of action against Guest Services, Inc. Since Plaintiff has no direct cause of action against Guest Services, Inc., Capitol Sprinkler has no third-party claim for contribution or indemnification.

The Subrogation Waiver releases Guest Services, Inc. from any liability to Gallaudet University or its insurer. Furthermore, Capitol Sprinkler has no basis to assert that Guest Services, Inc. is directly liable to Capitol Sprinkler. Because there can be no finding of liability of Guest Services, Inc. to either Gallaudet University, its insurer, or Capitol Sprinkler, a claim for contribution or indemnification cannot lie. Therefore, this Court should dismiss Guest Services, Inc. from this matter, and grant summary judgment in favor of Guest Services, Inc. and against Capitol Sprinkler.

**V.   CONCLUSION**

18

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

Based on the foregoing, Third-Party Defendant, Guest Services, Inc. respectfully requests that this Honorable Court grant its Motion for Summary Judgment in its favor and against Capitol Services Inspection, Inc.

Respectfully submitted,

**GUEST SERVICES, INC.**
By Counsel

Trichilo, Bancroft, McGavin, Horvath & Judkins, PC

/s/
Stephen A. Horvath, Esquire
D.C. Bar No. 417137
3920 University Drive
Fairfax, Virginia 22030
Phone: (703) 385-1000; Fax: (703) 385-1555
*Counsel for Guest Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Motion for Summary Judgment** was served electronically on the 8th day of February, 2008 to:

Eric Neil Stravitz, Esquire
Mesirow & Stravitz, P.L.L.C.
1307 New Hampshire Avenue, NW, Suite 400
Washington, D.C. 20036
*Counsel for Plaintiff*

E-mail: strav@erols.com

Of Counsel:

David J. Groth, Esquire
Daniel J. Luccaro, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
*Counsel for Plaintiff*

Michelle Murphy, Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Defendant Capitol Sprinkler, Inc.*
E-mail: nbrooks@mooclaw.com

Wayne F. Johnson, Jr., Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Capitol Sprinkler, Inc.*
E-mail: fjohnson@mooclaw.com

/s/ _____
Stephen A. Horvath