# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as Subrogee of Gallaudet University | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| CAPITOL SPRINKLER INSPECTION, INC | : | CASE NUMBER: 1:05CV02115 (CKK) |
| | : | |
| Defendant | : | |
| | : | |
| vs. | : | |
| | : | |
| GUEST SERVICES, INC. | : | |
| | : | |
| Third-Party Defendant | : | |

## DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rules 7(h) and 56.1 of Local Rules of the United States District Court for the District of Columbia, Defendant Capitol Sprinkler Inspection, Inc. ("Capitol Sprinkler") hereby submits the following Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment:

## <u>Table of Contents</u>

<u>Page</u>

TABLE OF CITATIONS……………………………………………………………………iii

I.    INTRODUCTION………………………………………………………………...1

II.    LEGAL ARGUMENT………………………………………………………………2

    A.    SUMMARY JUDGMENT STANDARD…..……………………………3

    B.    PLAINTIFF DOES NOT PRESENT UNDISPUTED FACTS TO
        SUPPORT A CONCLUSION OF LAW THAT CAPITOL
        SPRINKLER BREACHED THE CONTRACT…..………………………5

    C.    GUEST SERVICES SERVED AS AN AGENT OF GALLAUDET,
        AND ACCORDINGLY, ITS ACTIONS ARE BINDING
        UPON GALLAUDET……………………………………………...……...7

        1.    Guest Services was an agent of Gallaudet based on the
                property management agreement and course of conduct…………………7

        2.    Guest Services is bound by the acts of its employee, who
                affected Capitol Sprinkler's contractual duties…………………………..9

        3.    Guest Services' employee altered both its duty and Capitol
                Sprinkler's duty to perform under the contract, which is
                imputed to Gallaudet…………………………………………………….10

    D.    GUEST SERVICES' BREACH OF THE CONTRACT RELIEVES
        CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER
        THAT CONTRACT…………………………………………………….…11

        1.    The Court first look to the face of the contract between
                Capitol Sprinkler and Guest Services, on behalf of Gallaudet…..……..11

        2.    The contract incorporates the duties imposed by the inspection,
                testing and maintenance standards of the NFPA through the
                contract as well as by regulation..……………………………………....12

        3.    Capitol Sprinkler's complete performance under the contract
                excused in light of the material breach of the contract by
                Guest Services.…………………………………………………………14

i

E.      GUEST SERVICES' ACTIONS FRUSTRATED THE PRINCIPAL
        PURPOSE OF THE CONTRACT, THEREBY RELIEVING
        CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER
        THAT CONTRACT…………………………………………………...…15

F.      GUEST SERVICES ORALLY MODIFIED THE CONTRACT,
        THEREBY ASSUMING THE DUTY TO DRAIN THE
        DRUM DRIP……………………………………………………...……...…16

IV.     CONCLUSION..………………………………………………………...……….18

ii

<u>**TABLE OF CITATIONS**</u>

<u>**Page**</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………….…………….3, 4, 5

*Arrington v. United States*, 473 F.3d 329 (D.C. Cir. 2006) …………………………………...3, 4

*Ashcraft & Gerel v. Coady*, 244 F. 3d 948 (D.C. Cir. 2001) ……………………….…..14, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ……………………………………………...3, 4, 5

*Cobell v. Norton*, 260 F.Supp. 110 (D.D.C. 2003) ………………………………………….3, 4

*Communications Workers Of America, AFL-CIO, v. Verizon Services, Inc.*,
      404 F. Supp. 2d 62 (D.D.C. 2005)………………………………………………………..4

*Dorsky Hodgon & Partners v. National Council of Senior Citizens*,
      766 A.2d 54 (2001)……………………………………………………………………..9

*Farmland Industries, Inc. v. Grain Board of Iraq*, 904 F.2d 732 (D.C. Cir. 1990) ……….…..11

*Gagnon v. Wright*, 200 A.2d 196 (D.C. 1964) ……………………………………………......16

*George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005)…………………………………….......4

*Hydrite Chemical Company v. Calumet Lubricants Company*,
      47 F.3d 887, 892 (7th Cir. 1995)……………………………………………………16

*Insurance Management, Inc. v. Eno Howard Plumbing Corp.*,
      348 A.2d 310, 312 (D.C. 1975)………………………………………………………..9

*Island Development Corporation v. District of Columbia*,
      933 A.2d 340 (D.C. App 2007)…………………………………………………....11, 15

*Judah v. Burton, Reinder & Morris Management, Inc.*,
      744 A.2d 1037 (D.C. App. 2000) …………………………………………………7

*KiSKA Construction Corporation-USA v. Washington Metropolitan Area Transit Authority*,
      321 F.3d 1151 (D.C. Cir. 2003) ……………………………………………………....11

*Landow v. Georgetown-Inland West Corp.*,
      454 A.2d 310 (D.C. App. 1982) ………………………………………………..…...17

*Makins v. District of Columbia*, 861 A.2d 590 (D.C. 2004)………………………………………9

iii

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)……………..……4

*Medico v. Simkowitz,* 158 A.2d 681 (D.C. App. 1960) …………………………………..……7

*Nickel v. Scott,* 59 A.2d 206, 207 (D.C. 1948)………………………………………………...15

*Penn Cent. Transp. Co. v. Reddick,* 398 A.2d 27, 29 (D.C. 1979)………………………….…..9

*Puma v. Sullivan*, 746 A.2d 871 (D.C. App. 2000) ……………………………………………16

*Safeway Stores, Inc. v. Kelly*, 448 A.2d 856 (D.C. 1982)……………………………………...7

*Schecter v. Merchants Home Delivery*, 892 A.2d 415 (D.C. 2006) ……………….............7, 8, 9

*Sidibe v. Traveler's Insurance Company*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006)……………4

*Smith v. Jenkins,* 452 A.2d 333, 335 (D.C. 1982)………………………………………………7

*Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007)……………...11

*Stanwood v. Welch*, 922 F. Supp. 635, 639 (D.D.C. 1995)………………………………………5

*Steele v. Isikoff*, 130 F. Supp. 2d 23 (2000)……………………………………………………14

*Sundown, Inc. v. Canal Square Associates*, 390 A.2d 421, 432 (D.C. 1978)…………………...11

**<u>Other</u>**

2 Am. Jur. *Agency* § 195 (1936)…………………………………………………………………7

FRCP 56(e)…………………………………………………………………………..………..4

*D.C. Code § 6-1403.01*…………………………………………………………………….…...12

*CDCR § 12A-101.4.6*…...…………………………………………………………….………...12

*ICC International Fire Code* (2000)……………………………………………………….…...12

*NFPA 25, § 1-4.1* (1998) …………………………………………………………………….....13

*NFPA 25, § 1-4.2* (1998)………………………………………………………………………13

*NFPA 25, § 4.1.1* (2002)……………………………………………………………..…………12

*NFPA 25, § 4.1.2* (2002)……………………………………………………………..…………12, 17

{DE102955.1}

*NFPA 25 § 4.1.2.3* (2002)……………………………………………………..……...13

*NFPA 25 § 4.1.2.4* (2002)……………………………………………..……....13, 17

*Restatement (Second) of Agency* § 8…………………………………………….9

*Restatement (Second) of Agency* § 228……………………………………...9

*Restatement (Second) of Contracts* § 237…………………………………14, 15

*Restatement (Second) Of Contracts: Discharge By Supervening*
    *Frustration* § 265 (1981)…………………………………………………...15

v

I.    **INTRODUCTION**

During the 1990's, Gallaudet University ("Gallaudet") engaged Capitol Sprinkler to install a dry-pipe fire protection system at its Kellogg Conference Center. Capitol Sprinkler subsequently performed semi-annual inspections and trip tests on the system. Capitol Sprinkler executed its initial inspection contract with Gallaudet through Aramark, Gallaudet's property management agent at the time. (Exhibit A at P.35, L.2 - P. 35, L.21). Capitol Sprinkler performed inspections, including trip-tests, pursuant to these contracts during the years 1996 through 1999. The record is devoid of any suggestion that during this period, Capitol Sprinkler's inspectors had problems gaining the access necessary to perform their inspections and related service.

On April 22, 2002, Guest Services, Inc. ("Guest Services"), acting as Gallaudet's new property management agent, secured Capitol Sprinkler's services to perform semi-annual inspections and trip tests on the system. (Exhibit B, Complaint ¶8; Exhibit C Answer ¶8; Exhibit L Contract for Automatic Sprinkler Equipment Inspection Service). Capitol Sprinkler contract). Capitol Sprinkler's inspectors had no independent access to the Kellogg Conference Center. Instead, an employee of Guest Services was required to escort Capitol Sprinkler's inspectors through the building while they performed their inspections. (Exhibit E, at P.34, L.19 - P.35, L.1) The escort was necessary to unlock the various valves and open the appropriate rooms so an inspector, such as Mr. Bowlin, could have access to system components situated behind those locked doors. (Exhibit E at P.33, L.10-22)

During the inspection on January 9, 2003, Mr. Bowlin was to drain a drum drip located in the ceiling of room 5200, among drum drips in other locations. When Mr. Bowlin reached room 5200, the Guest Services escort did not have the card key to open the room. Therefore, he could

1

not provide Mr. Bowlin access to the room or the drum drip within.  (Exhibit E at P.51, L.8 - P.52, L.3)  The escort made no effort to get the card key necessary to provide access to the room, instead offering to take care of draining the drum drip himself.  (Exhibit E at P.53, L.4-6)  Mr. Bowlin asked the escort whether he would take care of that particular drum drip, and the escort indicated that he would.  (Exhibit E at P.54, L.7-17)  It was not unusual for this employee to make such an offer since the building engineer's responsibilities include keeping the drum drips or low points drained (Exhibit E at P.21, L.14 - P. 22, L.8; Exhibit F at P.53, L.16 - P.54, L.3), Building maintenance personnel are required to know how to perform this function and in the past, employees of property management agents had assisted Capitol Sprinkler in draining drum drips while acting at the direction or with the knowledge of the inspector.  (Exhibit E at P.21, L.14 - P.22, L.8)

For the reasons stated herein, Capitol Sprinkler submits that it is not liable for the damages sustained by Plaintiff in this case, and that Gallaudet's own breach of contract bars any recovery from Capitol Sprinkler, and accordingly, that the Court should DENY Plaintiff's Motion.

## II.    <u>LEGAL ARGUMENT</u>

Plaintiff's insured, through its agent, Guest Services, breached the contract with Capitol Sprinkler so as to cause the damages claimed by Gallaudet.  The contract provided that Capitol Sprinkler would conduct its inspections and tests pursuant to the applicable provisions of National Fire Protection Association ("NFPA) standards.  The NFPA imposes a duty upon the property owner or its agent to provide the inspectors with access to the necessary components of the sprinkler system.  Guest Services, acting as Gallaudet's agent, did not do this.  Consequently,

Capitol Sprinkler was relieved of its duty to drain the subject drum drip because Guest Services breached the contract and because it frustrated the principal purpose of the contract.

Being unable or unwilling to provide the necessary access, Guest Services agreed to drain the subject drum drip, which it failed to do. Acting as Gallaudet's agent, Guest Services modified the contract with Capitol Sprinkler by reassuming its duty to maintain the sprinkler system. This modification relieved Capitol Sprinkler of the duty to drain this particular drum drip. Thereafter, Guest Services breached the modified contract and caused Plaintiff's insured's damages.

Guest Services acted as an agent for Gallaudet when it dealt with Capitol Sprinkler. Accordingly, Guest Services' action are imputed to Gallaudet. As Guest Services caused the damages to Gallaudet, Gallaudet is responsible for its own loss and cannot hold Capitol Sprinkler liable.

## A.    SUMMARY JUDGMENT STANDARD

Summary judgment shall only be entered where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cobell v. Norton*, 260 F.Supp. 110, 116 (D.D.C. 2003); see also *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Through this analysis, the Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"[T]he substantive law will identify which facts are material." *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006). "To be material, the factual assertion must be capable of

affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Communications Workers Of America, AFL-CIO v. Verizon Services, Inc.*, 404 F. Supp. 2d 62, 66 (D.D.C. 2005) (citations omitted).  At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Arrington*, 473 F.3d at 333 (citing *Liberty Lobby*, 477 U.S. at 249). Even if a jury might ultimately choose not to believe the version of events presented by a non-movant, this is not the basis on which the Court's decision may rest. *Id.* (citing *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005)).

The moving party bears the initial burden of establishing that no "genuine issue of material fact" exists and that judgment in its favor should be entered by citing to credible evidence of the type discussed in Rule 56. *Celotex*, 477 U.S. at 322-24.  Should the moving party carry its burden, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  See also *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  "[This does not] mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324 (emphasis added).  Rather, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make [its showing]." *Id.*

"In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party." *Sidibe v. Traveler's Insurance*

*Company*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006) (citations omitted).  In fact, "<u>the court must</u> <u>assess the factual record by assuming the truth of the non-movant's evidence and drawing all</u> <u>justifiable inferences in that party's favor</u>."  *Stanwood v. Welch*, 922 F. Supp. 635, 639 (D.D.C. 1995) (citations omitted) (emphasis added).  "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  *Liberty Lobby*, 477 U.S. at 259.  If the Court determines that there exists "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," which, when considered in the light most favorable to the non-moving party and with all reasonable inference resolved in favor of the non-moving party, demonstrates the existence of a question of material fact, it must deny a motion for summary judgment on that basis.  *Celotex*, 477 U.S. at 324.

### B.    PLAINTIFF DOES NOT PRESENT UNDISPUTED FACTS TO SUPPORT A CONCLUSION OF LAW THAT CAPITOL SPRINKLER BREACHED THE CONTRACT.

The facts set forth in Plaintiff's opening Memorandum of Point and Authorities fails to offer facts necessary to carry its burden of proving without dispute that Capitol Sprinkler breached its inspection contract with Gallaudet.  Plaintiff's Statement of Facts does not paint a complete picture of this case because it mischaracterizes the testimony of Capitol employees, fails to note contrary testimony by its insured's corporate designee, and fails to establish as a matter of law that Capitol Sprinkler either had an affirmative duty to drain the subject drum drip or otherwise failed to fulfill its obligation under the contract.

For instance, Capitol Sprinkler employee, Craig Parham, concluded that "*somebody* didn't drain the drum drip that drains this branch of the sprinkler system back on January 9, 2003." (Exhibit F at P.44).  Clearly, Mr. Parham acknowledged a need to drain the drum drip, but he never indicated that the final responsibility to do so rested with Capitol Sprinkler.  The

5

testimony of Parham, Vane, and Bowlin, all indicate that the Guest Services' escort, presumably Terrance Hubbard, did not permit Capitol Sprinkler access to the drum drip in exchange for his agreement to drain it himself. (Exhibit E at P.51, L.8-11; P.54, L.7-17; P.58, L.3-6; Exhibit A at P.97, L.1-12)

Further, the record is devoid of any evidence of the room's occupancy at the time of the inspection. The building is as a hotel, consisting of a lobby with a front desk area, which contains a long, front desk having three computer terminals, a "card keying machine" and safety deposit boxes. (Exhibit I, at P.24 L.7-15, P.49 L.15-22, P.63 L.20 - P.64 L.7, P.68 L.11-16). At the time of the incident, it housed meeting rooms, an auditorium, a ballroom and 93 guest rooms, among other things. (Exhibit I at P.49 L.15-22, P.52 L.3-10, P.53 L.9-13, P.55 L.2-7, P.68 L.11-16). The guest rooms were situated on the fourth and fifth floors, the top two floors of the hotel, and required key-card access. (Exhibit I at P.52 L.3-10, P.53 L.9-13, P.55 L.2-7, P.133 L.22 - P.134 L.6). Guest Services employees activated a guest's access card and then gave the card to the hotel guest. (Exhibit I at P.133 L.22 - P.134 L.6). The record is devoid of any indication as to whether this particular room was occupied or unoccupied at the time of the incident.

Given the fact that this was a hotel and that the room itself could have been occupied at the time of the inspection, it is not unreasonable that Capitol Sprinkler's inspector would have accepted that the subject drum drip was not accessible at the time of his inspection. Neither Plaintiff nor Guest Services elicited any affirmative evidence on this point of fact.

Although a Capitol Sprinkler employee did not drain the subject drum drip, this point alone does not carry Plaintiff's burden to establish that Capitol Sprinkler had such a duty as of the day and time of the subject inspection. Capitol Sprinkler submits that it was relieved of any

{DE102955.1}

such obligation by the actions and representations of the Guest Services' agent who escorted Mr.

Bowlin and Mr. Scott on the day in question.

### C.   GUEST SERVICES SERVED AS AN AGENT OF GALLAUDET, AND ACCORDINGLY, ITS ACTIONS ARE BINDING UPON GALLAUDET

#### 1.   Guest Services was an agent of Gallaudet based on the property management agreement and course of conduct.

It is well settled that a principal is responsible for the acts of its agent who, acting within

the scope of its authority, performs or withholds performance of the principal's legal or

contractual responsibilities.   "Generally an agency relationship results when one person

authorizes another to act on his behalf subject to his control, and the other consents to do so."

*Judah v. Burton, Reinder & Morris Management, Inc.,* 744 A.2d 1037, 1040 (D.C. App. 2000)

(citing *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C. 1982)).   "In deciding this question, courts will

look both to the terms of any contract that may exist and to the actual course of dealings between

the parties . . . [noting that] . . the parties' actual relationship, in spite of contractual language,

may be the conclusive factor."   *Id.*   "With the authority to manage [a] property, to care for it, to

protect it, and to maintain it, goes the incidental and reasonably necessary authority to contract

for repairs and upkeep which in themselves are reasonable and necessary."   *Medico v. Simkowitz,*

158 A.2d 681, 682 (D.C. App. 1960) (citing 2 Am. Jur. *Agency* § 195 (1936)).

Whether one performs work on behalf of another as an employee/servant, or on behalf of

himself as an independent contractor, depends on the particular facts of the case.   *Schecter v.*

*Merchants Home Delivery*, 892 A.2d 415 (D.C. 2006) (citing *Safeway Stores, Inc. v. Kelly*, 448

A.2d 856 (D.C. 1982)).   "[T]he decisive test…is whether the employer has a right to control and

direct the servant in the performance of his work and manner in which the work is to be done."

*Id.*   The right to control means "the right to control an employee in the performance of a task and

in its result, and not the actual exercise of control or supervision."   *Id.* (emphasis added).   In

determining the employer's right to control, courts look to the relationship between the parties, including the language of any agreement between them. *Id.*

That Guest Services served as Gallaudet's agent is evident by the fact that Gallaudet authorized Guest Services to act on its behalf in maintaining the sprinkler system, including contracting "on its behalf," with a third party to do so. An agency relationship is indicated by both the terms of the contract between Gallaudet and Guest Services, as well as the actual course of dealings between them. The parties entered into a property management agreement whereby Guest Services became an agent to act in accordance with their contract. The regulatory requirement to maintain the subject fire protection system imposed upon Gallaudet is identical to that of a hotel as the conference center is in fact, a hotel, among other things. Regulatory requirements imposed upon Gallaudet included the inspection, testing and maintaining of the building's sprinkler system. Consistent with this agency relationship, Guest Services secured Capitol Sprinkler's services to perform semi-annual inspections on the sprinkler system. Moreover, in order to meet the obligations under the property management agreement, a Guest Services employee accompanied Capitol Sprinkler inspectors on several occasions in order to provide the inspectors access to those system components requiring key or swipe access. Those actions were done pursuant to Guest Services' authority to act as an agent to maintain the sprinkler system on behalf of Gallaudet.

Gallaudet did not manage Guest Services on a daily basis, but it retained the right to control Guest Services' work. In addition to its duties regarding the sprinkler system, Guest Services was also required to report to Gallaudet's Executive Director of Business and Support Services, Gary Aller, on the operation and maintenance of the Conference Center. Mr. Aller

8

allowed Guest Services to fulfill its obligations under their agreement as it chose, but he continually had the right to control Guest Services' actions.

### 2. Guest Services is bound by the acts of its employee, who affected Capitol Sprinkler's contractual duties.

Respondent superior is a doctrine of vicarious liability that allows an employer to be held liable for acts of an employee/servant committed within the scope of employment. *Schecter v. Merchants Home Delivery*, 892 A.2d 415 (D.C. 2006) (citing *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979). An employer is not liable for acts of his employee committed outside the scope of employment. In assessing whether the conduct of an employee falls within the scope of employment, the District of Columbia Court of Appeals follows Section 228 of the *Restatement (Second) of Agency*, which provides that the conduct of a servant is within the scope of employment only if: "(a) it is of a kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; (d) if force is intentionally used by the servant against another, the use of force not unexpected by the master." *Schecter*, 892 A.2d 415 (citing *Restatement (Second) of Agency* § 228(1)(a)).

The District of Columbia Court of Appeals has defined apparent authority as being "the power to affect the legal relations of another person by transactions with third persons, professedly as an agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Makins v. District of Columbia*, 861 A.2d 590 (D.C. 2004) (citing *Restatement (Second) of Agency* § 8)). Apparent authority arises when the "principal places an agent in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold." *Insurance*

*Management Inc. v. Eno & Howard Plumbing Corp.*, 348 A.2d 310, 312 (D.C. 1975) (see also

*Dorsky Hodgon & Partners v. National Council of Senior Citizens*, 766 A.2d 54 (2001)).

The Guest Services' escort, believed by Capitol Sprinkler to be Terrance Hubbard, bound

Guest Services by his actions, regardless of his true name.  When performing their inspections

each time, Capitol Sprinkler inspectors reported to the hotel's front desk, which at all relevant

times, was manned by Guest Services personnel.  There, an employee of Guest Services greeted

the inspectors and escorted them throughout the hotel while they performed their work on the

sprinkler system.  Guest Services stationed this employee at the Conference Center desk and

designated him as the appropriate employee to escort the Capitol Sprinkler inspectors.  Guest

Services placed this employee in such a position that it was reasonable for Capitol Sprinkler

inspectors to accept that he was employed by Guest Services on behalf of Gallaudet, and as such,

had the authority to act on their behalf.

While Capitol Sprinkler employees believe that Terrance Hubbard was the name of the

Guest Services employee who escorted them on the day in question, the exact identity of that

employee is not consequential.  Regardless of the name of the Guest Services employee who

escorted Capitol Sprinkler's inspectors, that employee was stationed at the hotel front desk

manned by Guest Services' employees, and was instructed to attend to the Capitol Sprinkler

inspectors.  Guest Services' conduct led the inspectors to reasonably believe that the employee

could act on behalf of Guest Services.  The employee's actual identity does not impact the

reasonableness of the inspectors' belief.

> **3.    Guest Services' employee altered both its duty and Capitol Sprinkler's duty to perform under the contract, which is imputed to Gallaudet.**

A principal is responsible for the acts of its agent who performs or withholds

performance of the principal's duties while acting within the scope of its authority.  The Guest

Services employee acted with authority to bind Guest Services when he made representations to the Capitol Sprinkler inspectors. The inspectors reasonably relied upon his statements and actions, which bound Guest Services. In turn, as Guest Services was authorized to act on behalf of Gallaudet as its agent, and did so, Gallaudet is bound by any action or inaction by Guest Services. If, as in this case, Guest Services' actions caused damage to the conference center, the liability for the damage will rest with Guest Services and be imputed to Gallaudet.

**D.    GUEST SERVICES' BREACH OF THE CONTRACT RELIEVES CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER THAT CONTRACT.**

       **1.    The Court first looks to the face of the contract between Capitol Sprinkler and Guest Services, on behalf of Gallaudet.**

"This jurisdiction adheres to an 'objective' law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties unless the written language is not susceptible of a clear and definite undertaking." *Island Development Corporation v. District of Columbia*, 933 A.2d 340, 347 (D.C. App 2007) (quoting *Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007)). "The law requires contracts to be read as a whole, with meaning given to every provision contained therein." *KiSKA Construction Corporation-USA v. Washington Metropolitan Area Transit Authority*, 321 F.3d 1151, 1163 (D.C. Cir. 2003) (cert denied at 540 U.S. 939 (2003)). "When the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties." *Farmland Industries, Inc. v. Grain Board of Iraq*, 904 F.2d 732, 736 (D.C. Cir. 1990) (citing *Sundown, Inc. v. Canal Square Associates*, 390 A.2d 421, 432 (D.C. 1978)).

{DE102955.1}

**2.    Guest Services was bound by the duties imposed by the inspection, testing, and maintenance standards of the NFPA through the contract as well as by regulation.**

The duties imposed upon Gallaudet are set forth in the contract as well as regulation.  The contract incorporates the applicable inspection, testing, and maintenance standards of the National Fire Protection Association (NFPA) as the standard with which the parties must comply.  The parties generally agree that the 2002 edition of NFPA 25 applied to the inspections, testing, and maintenance of the system in this instance.  (Exhibit F, Parham Deposition; Exhibit G, Affidavit of Vernon Vane 1/17/08; Exhibit H, McLaughlin Report.

Moreover, the District of Columbia adopted NFPA 25 as the standard governing inspections, testing, and maintenance of the fire protection systems throughout the jurisdiction.  The District expressly adopted the ICC International Fire Code. See *D.C. Code § 6-1403.01; CDCR § 12A-101.4.6*.   NFPA 25 is the required standard for inspections, testing and maintenance of water based fire protection systems under the International Fire Code.  See *ICC International Fire Code, Chap. 5, (2000)* ("Fire Protection Systems").

Under NFPA 25 Gallaudet, as the owner of the hotel, had a continuing duty to provide access to the fire protection system, and to ensure that all inspections, tests, and maintenance were performed on the system.  This duty arose as of the day the hotel was built.  As Gallaudet's property management agent, Guest Services was obliged to ensure this duty was fulfilled.

The 2002 edition of NFPA 25 provides that:

The responsibility for properly maintaining a water-based fire protection system shall be that of the owner of the property.  *NFPA 25, § 4.1.2* (2002).

The property owner or occupant shall provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.  *NFPA 25, § 4.1.1* (2002).

12

Where the property owner is not the occupant, the property owner shall be permitted to pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract. *NFPA 25 § 4.1.2.3* (2002).

Where an occupant, management firm, or managing individual has received the authority for inspection, testing, and maintenance, the occupant, management firm, or managing individual shall comply with the requirements identified for the owner or occupant throughout this standard. *NFPA 25 § 4.1.2.4* (2002).

These duties remained substantively unchanged from the period when Aramark acted as Gallaudet's property management agent through the period when Guest Services assumed those responsibilities and acted in the same capacity. The edition that immediately preceded the edition applied in this instance was the 1998 edition of NFPA 25, which provides that:

The responsibility for properly maintaining a water-based fire protection system shall be that of the owner(s) of the property. By means of periodic inspections, tests, and maintenance, the equipment shall be shown to be in good operating condition, or any defects or impairments shall be revealed.

.    .    .

*Exception: Where the owner is not the occupant, the owner shall be permitted to pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract.*

*NFPA 25, § 1-4.2* (1998) (emphasis in original). "The owner or occupant shall provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." *NFPA 25, § 1-4.1* (1998).

Thus, there can be little doubt that Guest Services, as Gallaudet's property management agent, was legally and contractually responsible for carrying out the owner's duties under NFPA 25 and its failure to do so would breach the contract, notwithstanding any individual term of the contract calling for the drum drips to have been drained. Guest Services' failure to provide ready access to the sprinkler system, in violation of NFPA 25, constituted a breach of the contract.

13

{DE102955.1}

    **3.**    **Capitol Sprinkler's complete performance under the contract excused in light of the material breach of the contract by Guest Services.**

The *Restatement (Second) of Contracts* § 237 states that a "party's continuing obligations under a contract are conditioned on there being no 'uncured material failure by the other party to render any such performance due at an earlier time.'" *Ashcraft & Gerel v. Coady*, 244 F. 3d 948, 950 (D.C. Cir. 2001) (citing *Restatement (Second) of Contracts* § 237 (1981)). "'[O]ne party's material failure of performance has the effect of the non-occurrence of a condition of the other party's remaining duties …'." *Id.* This is true whether there is defective performance or a complete absence of performance by the breaching party and operates to discharge "the [other party's corresponding] duty when the condition can no longer occur." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 25 (2000) (citations omitted).

Guest Services materially breached the contract by failing to provide Capitol Sprinkler access to all components of the subject sprinkler system that required key access or swipe access, including the subject drum drip, as required under the contract and NFPA 25. Gallaudet as the owner, Guest Services as the owner's agent, and Capitol Sprinkler were all bound by the provisions of NFPA 25. That standard required the owner or its agent to provide ready accessibility to all components of the subject fire protection system that required inspection, testing, or maintenance.

Where, as here, the owner contracts with a property management agent to perform these duties, the agent stands in the shoes of the owner with respect to the owner's duties under NFPA 25. Guest Services contractually accepted the duty to provide Capitol Sprinkler 'ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.' Guest Services failed to do this because its employee who escorted Capitol's inspectors provide the inspector access to all drum drips that required inspection.

14

When, as here, the performance obligations of one party to a contract can only feasibly be fulfilled upon successful performance by another party to the contract, failure of that party's performance constitutes a material breach that forgives the other's performance. See *Restatement (Second) of Contracts* § 237; see also *Ashcraft and Gerel v. Coady*, 244 F.3d 948 (D.C. Cir. 2001). By failing to provide Capitol Sprinkler access to the subject drum drip, Guest Services failed to meet the requisites of NFPA 25 and consequently, breached the contract, thereby relieving Capitol Sprinkler of its obligation to perform under that contract. Capitol Sprinkler no longer had the duty to drain the drum drip.

### E. GUEST SERVICES' ACTIONS FRUSTRATED THE PRINCIPAL PURPOSE OF THE CONTRACT, THEREBY RELIEVING CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER THAT CONTRACT.

"Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." *Island Development Corporation,* 933 A.2d at 349 (quoting *Restatement (Second) Of Contracts: Discharge By Supervening Frustration* § 265 (1981)).

Guest Services' failure to provide Capitol Sprinkler's inspectors access to the subject drum drip frustrated the principal purpose of the contract. It is undisputed that Guest Services exclusively controlled access to those portions of the sprinkler system that required key or swipe access. It is likewise undisputed that Capitol Sprinkler's inspectors inspected, and drained the drum drips located in all portions of the subject sprinkler system to which they were given access. Capitol Sprinkler's employees have consistently and repeatedly testified as to the escort's inability to provide access to the subject drum drip. Neither Plaintiff nor Guest Services

15

offer any testimony to contradict this position.    Conversely, Capitol Sprinkler has made

considerable effort to depose Guest Services employees, David Ham and Terrance Hubbard, both

of whom could conceivably offer contradictory testimony.    Guest Services has produced neither

for deposition, nor any witness pursuant to Fed. R. Civ. P. 30(b)(6).    As neither Gallaudet nor

Guest Services has presented affirmative testimony or other offers of proof to contradict this

position, they cannot now dispute it.    As such, Capitol's inspectors' ability to inspect the drum

drip was frustrated by Guest Services' actions, thereby relieving the inspectors of the obligation

to inspect the subject drum drip and drain it so as to render complete performance under the

contract.

### F.    GUEST SERVICES ORALLY MODIFIED THE CONTRACT, THEREBY ASSUMING THE DUTY TO DRAIN THE DRUM DRIP.

It is well-established in the District that "a written contract may be modified or rescinded

by a subsequent oral agreement . . . but the oral modification must be established by a

preponderance of the evidence." *Puma v. Sullivan*, 746 A.2d 871, 875 (D.C. App. 2000) (citing

*Nickel v. Scott,* 59 A.2d 206, 207 (D.C. 1948)); see also *Gagnon v. Wright*, 200 A.2d 196, 198

(D.C. 1964).    Because such statements are inherently against the pecuniary interests of the party

making them at the time they are made, "[i]t is direct evidence, not hearsay, when a party to a

dispute over a contract testifies to the offer or the acceptance made by the other contracting

party." *Id.* at 876 (citing *Hydrite Chemical Company v. Calumet Lubricants Company*, 47 F.3d

887, 892 (7th Cir. 1995)).    "Accordingly, [a party's] recitation of [another's] out-of-court offer is

admissible for consideration on summary judgment . . . ." *Id.* (emphasis added).    Further, such

oral modifications will be enforced where the party charged with performance or non-

performance of an orally modified term changes his position so materially that fraud would result

{DE102955.1}

were the modified term *not* enforced.  See e.g. *Landow v. Georgetown-Inland West Corp.*, 454 A.2d 310 (D.C. App. 1982).

The inspection contract executed by Guest Services on behalf of Gallaudet provides that the contract is to be performed in a workmanlike manner in accordance with the requirements of the NFPA (see Contract for Automatic Sprinkler Equipment Inspection Service, attached to Plaintiff's Motion as Exhibit A).  Pursuant to the applicable provisions of NFPA 25, the owner is initially charged with the duty to inspect and test a dry pipe fire protection system it owns unless the owner contracts out for that service.  (*NFPA 25, § 4.1.2* (2002)).  In this case, the owner engaged Guest Services, by way of a property management contract, dated February 2000, to perform these duties properly.  Thus, it became Guest Services' duty to fulfill the owner's obligations under NFPA 25.  (*NFPA 25 § 4.1.2.4* (2002)).  It is undisputed that Guest Services, on Gallaudet's behalf, executed the a contract with Capitol Sprinkler for the performance of the required sprinkler inspections.  Plaintiff admits, and Capitol Sprinkler agrees, that Guest Services had full authority to bind Gallaudet (the owner) in the performance of its contract with Capitol Sprinkler.

As Guest Services had the authority to contract for these services, it also had the authority to modify any such contract whether in writing, orally, or through the course of its dealings with Capitol Sprinkler.  That is precisely what happened in this case.  The escort provided by Guest Services to control Capitol Sprinkler's access to the subject sprinkler system, including the necessary drum drips, agreed to undertake the performance of a very specific limited aspect of the contact - the draining of the one particular drum drip at issue in this loss.  In reliance on that representation, Capitol Sprinkler's inspector left the building under the reasonable impression that his duty there was complete and that the subject drum drip would be properly drained.

17

Guest Services modified the contract by assuming the duty to drain this particular drum drip on this one occasion.

It appears that the Guest Services employee did not drain the drum drip. This apparent failure is inconsistent with Guest Services' duty as the owner's property management agent under NFPA 25, constitutes a material breach of the modified contract, and provides Capitol Sprinkler with a complete defense to Plaintiff's allegation of breach of contract.

Neither Plaintiff nor Guest Services has produced any affirmative evidence to discredit the testimony of Mr. Parham, Mr. Vane, Mr. Bowlin or Mr. Scott. Plaintiff cannot dispute this modification now as such an oral modification of the written contract is enforceable under District of Columbia *juris prudence*.

## IV.    **CONCLUSION**

Guest Services breached the contract that it executed on behalf of Gallaudet so as to cause the damages suffered by Plaintiff's insured; the converse of Plaintiff's claim. The inspection contract provides for Capitol Sprinkler to conduct its inspections and tests pursuant to the applicable provisions of NFPA, which require the property owner or its agent to provide the inspectors with access to the necessary components of the sprinkler system. District of Columbia regulations, mandating compliance with the same provisions of the NFPA, require the property owner or its agent to provide the inspectors with access to the necessary components of the sprinkler system. Guest Services, acting as Gallaudet's agent, did not do this. Consequently, Capitol Sprinkler was relieved of its duty to drain the subject drum drip because Guest Services breached the contract and because Guest Services frustrated the principal purpose of the contract.

Moreover, Guest Services modified the contract by agreeing to drain the subject drum drip. This modification relieved Capitol Sprinkler of the duty to drain the drum drip during the

{DE102955.1}

January '03 inspection. Guest Services thereafter breached the modified contract and caused Gallaudet's damages.

Guest Services' actions are imputed to Gallaudet because Guest Services acted as its agent. Since Guest Services caused the damages to Gallaudet, Gallaudet is responsible for its own loss and cannot hold Capitol Sprinkler liable.

**WHEREFORE,** Capitol Sprinkler respectfully requests this Honorable Court DENY Plaintiff's Motion for Partial Summary Judgment and enter Judgment in favor of Capitol Sprinkler on its cross-motions for summary judgment.

Respectfully submitted,

**MARKS, O'NEILL,
O'BRIEN & COURTNEY, P.C.**

 */s/Donald R. Kinsley*
Michael T. Hamilton, Esquire (Bar ID No. 474233)
Donald R. Kinsley, Esquire (Bar ID No. 432998)
Norman H. Brooks, Jr., Esquire (PHV)
913 N. Market Street, Ste. 800
Wilmington, DE 19801
*Attorneys for Defendant*
*Capitol Sprinkler Inspection, Inc.*

DATE:  <u>February 15, 2008</u>

{DE102955.1}