**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        :
ST. PAUL MERCURY INSURANCE COMPANY,:
as Subrogee of Gallaudet University            :        Case No.:  1:05cv02115(CKK)
                                                        :
                        Plaintiff               :
            vs.                                 :
                                                        :
CAPITOL SPRINKLER INSPECTION, INC     :
                                                        :
                        Defendant             :
            vs.                                 :
                                                        :
GUEST SERVICES, INC.                          :
                                                        :
                Third-Party Defendant        :
_____:

## <u>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, St. Paul Mercury Insurance Company, as Subrogee of Gallaudet University,

hereby provides the following Memorandum of Points and Authorities in Opposition to

Defendant Capitol Sprinkler Inspection, Inc.'s Motion For Summary Judgment.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION .................................................................................................. 1

II.    LEGAL ARGUMENT ............................................................................................. 4

  A.    SUMMARY JUDGMENT STANDARD ........................................................ 4

  B.    THE AFFIDAVITS FROM VERNON VANE ARE "SHAM AFFIDAVITS"
        AND SHOULD NOT BE CONSIDERED BY THE COURT ........................ 5

  C.    DEFENDANT CANNOT CITE ANY ADMISSIBLE EVIDENCE THAT
        THE BUILDING ESCORT AGREED TO DRAIN THE DRUM DRIP ........ 7

  D.    SUMMARY JUDGMENT IN FAVOR OF DEFENDANT IS NOT
        APPROPRIATE ON PLAINTIFF'S CONTRACT CLAIM .......................... 9

     1.    THERE WAS NO ORAL MODIFICATION OF THE INSPECTION
           CONTRACT .......................................................................................... 10

     2.    THERE WAS NO MATERIAL BREACH OF THE CONTRACT ......... 12

     3.    THERE WAS NO FRUSTRATION OF THE PRINCIPAL PURPOSE OF
           THE CONTRACT NOR WAS IT IMPOSSIBLE OR COMMERCIALLY
           IMPRACTICABLE FOR DEFENDANT TO COMPLY WITH ITS
           CONTRACTUAL OBLIGATIONS ....................................................... 14

  E.    SUMMARY JUDGMENT IN FAVOR OF DEFENDANT IS NOT
        APPROPRIATE ON PLAINTIFF'S NEGLIGENCE CLAIM .................... 17

     1.    NEITHER GALLAUDET NOR GUEST SERVICES ARE
           CONTRIBUTORILY NEGLIGENT ...................................................... 17

     2.    GUEST SERVICES IS AN INDEPENDENT CONTACTOR,
           NOT AN AGENT OF GALLAUDET ..................................................... 18

     3.    NFPA 25 DOES NOT CREATE A NON-DELEGABLE STATUTORY
           DUTY TO MAINTAIN A BUILDING'S SPRINKLER SYSTEM ........ 23

III.   CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

Page

CASES

Carden v. Westinghouse Elec. Corp.,
    850 F.2d 996 (3d Cir. 1988)........................................................................................8

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...............................................................................................4

Dennis v. Jones,
    928 A.2d 672 (D.C. 2007) ...................................................................................17

Gagnon v. Wright,
    200 A.2d 196 (D.C. 1964) ...................................................................................10

Galvin v. Eli Lilly and Co.,
    488 F.3d 1026 (D.C. Cir. 2007)........................................................................ 5-7

Henderson v. Charles E. Smith Management, Inc.,
    567 A.2d 59 (D.C. 1989). ............................................................................... 19-20

Hershon v. The Hellman Co.,
    565 A.2d 282 (D.C. 1989) ...................................................................................10

Island Development Corp. v. District of Columbia,
    933 A.2d 340 (D.C. 2007) .............................................................................. 15-16

Judah v. Reiner,
    744 A.2d 1037 (D.C. 1990) ........................................................................... 18-19

Landow v. Georgetown-Inland West Corp.,
    454 A.2d 310 (D.C. 1982) ...................................................................................10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)...............................................................................................5

National Railroad Passenger Corp. v. Expresstrak, LLC,
    2006 WL 2947555 ...............................................................................................10

Phillips v. Holladay Property Services, Inc.,
    937 F.Supp. 32 (D.D.C. 1996)..............................................................................8

Poyner v. Loftus,
    694 A.2d 69 (D.C. 1997) .....................................................................................17

Puma v. Sullivan,
    746 A.2d 871 (D.C. 2000) ........................................................................................10

Rinck v. Assoc. of Reserve City Bankers,
    676 A.2d 12 (D.C. 1996) ..........................................................................................10

Thomas v. Stone Container Corp.,
    922 F.Supp. 950 (S.D.N.Y. 1996) ..............................................................................8

Tilghman v. Johnson,
    513 A.2d 1350 (D.C. 1986) ......................................................................................17

Zaken v. Boerer,
    964 F.2d 1319 (2d Cir. 1992) .....................................................................................8

## OTHER AUTHORITIES

Fed.R.Civ.P. 56(c) ...........................................................................................................4

Fed R. Evid. 801(d)(2) .................................................................................................. 8-9

NFPA 25 ...................................................................................................................12, 23

Rule 26(a)(2) of the Federal Rules of Civil Procedure ....................................................6

Rule 26(a)(2)(A) ...............................................................................................................7

Rule 801(d)(2)(D) .............................................................................................................8

I.     __INTRODUCTION__

It is clear that plaintiff can establish a prima facie case of both breach of contract and negligence against defendant Capitol Sprinkler Inspection, Inc. ("Capitol Sprinkler").  In its motion for summary judgment, defendant does not dispute that it breached its express contractual obligation to drain all of the drum drips at the facility.  Nor does defendant dispute that its conduct was negligent and that its negligence proximately caused the damages alleged.  Instead, defendant relies on a series of misplaced legal arguments that defendant asserts excuse both its breach of its contractual obligations and its tortious conduct.  Defendant devotes the majority of its memorandum to discussing the appropriate choice of law and then providing a summary on the general hornbook law of contracts and negligence in the District of Columbia.[1]  However, defendant does very little to demonstrate that the facts of this case actually support the legal defenses it raises.  In fact, defendant provides almost no discussion of the application of the actual facts of the case to its legal arguments.  Rather defendant simply raises a variety of potential legal defenses and then asserts that they are applicable to this case without any regard to the actual facts.  However, when the Court looks beyond the pages upon pages in the defendant's memorandum summarizing D.C. law, it will see that the defendant's arguments hold no merit and the legal arguments are not applicable to the specific facts of this case.

Every legal defense to plaintiff's claims raised by defendant in its motion for summary judgment (material breach of contract, oral modification of contract, frustration of the purpose of the contract, impossibility and contributory negligence) is based upon one single unsubstantiated and uncorroborated contention that during its January 2003 inspection of the sprinkler system, Terrance Hubbard, an employee of third party defendant Guest Services, denied Capitol Sprinkler's inspectors access to the drum drip above room conference room 5200 ("the Drum

---

[1] There is no dispute that the substantive law of the District of Columbia applies in this case.

Drip") and agreed he would go back and drain it later. The Drum Drip was never drained,

leading to the eventual sprinkler system freeze-up, rupture and leak.

However, any objective review of the deposition testimony of defendant Capitol

Sprinkler's own employees, Vernon Vane, Michael Bowlin and Craig Parham, even if deemed

credible (though it is certainly not), proves that Capitol Sprinkler's inspectors were never denied

access to the Drum Drip.  To the contrary, as demonstrated in *Plaintiff's Response to Defendant*

*Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts in Support of Its Summary*

*Judgment Motion* and the citations to the record therein, Capitol Sprinkler, at most, has alleged

facts showing that the building escort for the January 2003 inspection, identified by Capitol

Sprinkler throughout the record as Terrance Hubbard, did not initially have a key to that area on

his person during the inspection.  There is absolutely nothing in the record to suggest that the

building escort was unwilling, unable or refused to get the key in order to provide Capitol

Sprinkler's inspectors with access to the Drum Drip; or to suggest that Mr. Bowlin or his helper,

Mr. Scott, could not have gone to the main desk at the conference center to get the key

themselves.  In fact, Bowlin's testimony demonstrates that he did not even ask the escort to go

get the key.

More importantly, the Affidavit of Edwin Hubbard, the father of the now deceased

Terrance Hubbard, conclusively proves that his son, a 5'8", light complexioned Caucasian of

English/German descent, who was 49 years old at the time of the inspection, <u>could not</u> possibly

have been the building escort described by Capitol Sprinkler's employees.  The Capitol Sprinkler

employees have at varying points in the record described the escort as "black", "colored",

"African American" or "mixed race" and approximately 30 years old and 5'10".  Since Terrance

Hubbard of Guest Services was obviously <u>not</u> the building escort who accompanied Capitol

Sprinkler's inspectors during the January 2003 inspection, Capitol Sprinkler has no evidence

whatsoever to identify that individual, nor to identify the individual's employer. Absent such proof, any statements attributable to the unknown escort are classic hearsay and therefore inadmissible to support defendant's Motion for Summary Judgment. Without admissible evidence regarding these alleged statements, defendant has no basis for any of its legal arguments.

Throughout the post-discovery motion practice in this case, defendant Capitol Sprinkler has continuously manipulated, mischaracterized, misstated, and perhaps even manufactured evidence (such as the "sham affidavits" attached to its Motion), in an attempt to prove that Terrance Hubbard denied Capitol Sprinkler access to the Drum Drip and agreed to go back and drain it himself. After the January 28, 2008 Status Conference, in which the Court struck defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment due to defendant's failure to comply with the Local Rules, plaintiff's counsel specifically warned Capitol Sprinkler's counsel, Norman Brooks, about mischaracterizing, misstating, and misciting the testimony of Capitol Sprinkler's own employees in any subsequent filings. (See Exhibit 9, email dated 1/28/2008 from David J. Groth to Norman H. Brooks, and responsive email dated 1/29/2008). Despite receiving and acknowledging this warning, counsel for defendant Capitol Sprinkler continues to ignore the contradictory testimony and affidavits of his own witnesses while intentionally massaging, manipulating and mischaracterizing the actual record in this case to support defendant's Motion for Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment. Even if the mischaracterized and inaccurate facts alleged by defendant were accepted by the Court, defendant could not possibly meet the summary judgment standard as defendant cannot demonstrate that there are no genuine issues of material fact with regard to plaintiff's claims.

Even if Capitol Sprinkler had any admissible evidence regarding the alleged actions and statements of the unidentified escort, Capitol Sprinkler also needs to establish that Guest Services was the agent of Gallaudet and Gallaudet is therefore vicariously liable for the actions of the employees of Guest Services.  Defendant offers no factual analysis whatsoever to support its contention that Gallaudet is liable for the acts of its alleged agent, Guest Services.  Defendant asserts that because there is a management agreement between Gallaudet and Guest Services ("the Management Agreement"), Guest Services is automatically an agent of Gallaudet for all purposes.  As discussed at length below, the Management Agreement contains numerous provisions from which a jury could conclude that Guest Services was an independent contractor of Gallaudet's with regard to the matters at issue in this case.  If Capitol Sprinkler cannot establish the agency relationship, then there is no basis for its arguments that Gallaudet is vicariously liable for the actions of Guest Services.

The lack of admissible evidence to support Capitol Sprinkler's factual defenses and the lack of factual support and analysis to support is legal defenses are fatal flaws to its summary judgment motion.  Even if the Court considers all of the factual evidence alleged by defendant, there are genuine issues of material fact with regard to the identification and actions of the escort and with regard to whether the escort was acting as an agent of Gallaudet.  Therefore, the Court should deny defendant's Motion for Summary Judgment.

## II.      LEGAL ARGUMENT

### A.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of establishing that there are no genuine issues of material fact by identifying aspects of the record that

demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to produce specific facts establishing a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). If the record could not lead a rational trier of fact to find for the non-moving party, then summary judgment is appropriate. <u>Id.</u> at 587. All facts, as well as justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party. <u>Id.</u> at 587-88.

Defendant's legal arguments in support of its summary judgment motion relating to plaintiff's contract claim are the same as the arguments raised in defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment.[2] As the Court is well aware, in its present opposition, plaintiff gets the benefit of any factual inferences, whereas defendant gets the benefit of the factual inferences for the purposes of Plaintiff's Motion for Partial Summary Judgment. Plaintiff submits that there are no genuine issues of material fact with regard to its contract claim and even if defendant is given the benefit of any factual inferences, summary judgment in favor of plaintiff is still appropriate on its contract claim. However, for purposes of this opposition and defeating defendant's present motion for summary judgment, plaintiff asserts, in the alternative, that there are at the very least genuine issues of material fact which compel the denial of defendant's Motion for Summary Judgment.

**B.      THE AFFIDAVITS FROM VERNON VANE ARE "SHAM AFFIDAVITS" AND SHOULD NOT BE CONSIDERED BY THE COURT**

The "sham affidavit" rule precludes a party from creating an issue of material fact on summary judgment by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior

_____

[2] Plaintiff only moved for summary judgment on its contract claim and did not move for summary judgment on its negligence claim.

testimony. <u>Galvin v. Eli Lilly and Co.</u>, 488 F.3d 1026, 1030 (D.C. Cir. 2007). The District Court has broad discretion whether or not to consider a supplemental affidavit. <u>Id.</u> A supplemental affidavit filed by an interested party should not be deemed inadmissible solely because it was filed in response to a motion for summary judgment; the important considerations are whether the affidavit contradicts a prior sworn statement without justification or the filing party breached its obligations in discovery. <u>Id.</u> Parties should not be permitted to "recharacterize" their testimony. <u>Id.</u> The critical issue is whether the supplemental affidavits contradict or clarify the prior testimony. <u>Id.</u>

Defendant attached an affidavit of Vernon Vane dated February 7, 2008 to its Motion for Summary Judgment. (See Exhibit J of defendant's Statement of Material Facts). The affidavit addresses the identification of Terrance Hubbard. As discussed in detail in *Plaintiff's Response to Defendant Guest Services, Inc.'s Statement of Material Facts In Support of Its Summary Judgment Motion*, Vane's affidavit directly contradicts his prior deposition testimony. (See ¶21 of Plaintiff's Response to Defendant's Statement of Material Facts). The defendant fails to provide any persuasive reasons to suggest to the Court that the supplemental affidavit is more accurate than the prior testimony. Accordingly, the affidavit of Vernon Vane is a textbook example of a "sham affidavit" and therefore should not be considered by the Court in deciding this Motion.

Defendant also attached an affidavit of Vernon Vane dated January 17, 2008 to its Motion for Summary Judgment. (See Exhibit N of Defendant's Statement of Material Facts). This affidavit discusses NFPA 25 and includes opinions from Vane regarding the application and interpretation of NFPA 25. Plaintiff submits that this affidavit contains expert opinion which should not be considered by the Court. Defendant has not established the foundational requirements for Vane to provide opinion testimony. In addition, this Court has already ruled

that defendant cannot have an expert in this case because defendant failed to comply with the strict expert disclosure requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure. Even though Vane is a representative of the defendant and not an expert specifically retained to provide expert testimony, if he is going to offer opinion testimony, he should have been disclosed under Rule 26(a)(2)(A). Defendant failed to comply with its discovery obligations because it did not name Vane as someone who would be providing opinion testimony. The failure to comply with its discovery obligations is a sufficient basis for this Court not to consider a supplemental affidavit from a party representative. <u>Galvin</u>, 488 F.3d at 1030.

**C.     DEFENDANT CANNOT CITE ANY ADMISSIBLE EVIDENCE THAT THE BUILDING ESCORT AGREED TO DRAIN THE DRUM DRIP**

Capitol Sprinkler's entire summary judgment motion is based on the allegation that Terrance Hubbard, a representative of third party defendant Guest Services, agreed to drain the Drum Drip above conference room 5200, which was located behind a locked door. In defendant's summary judgment motion, it represents to the Court that its representatives are certain that Terrance Hubbard was the Guest Services employee who accompanied the Capitol Sprinkler inspectors during the January 9, 2003 inspection. However, this is totally inconsistent with the deposition testimony of Capitol Sprinkler's own employees in this case. In addition, the description of the escort provided by Capitol Sprinkler's employees is totally inconsistent with the description of Terrance Hubbard provided by his father in his affidavit. (See Exhibit 8). It is clear that Terrance Hubbard was not the escort and Capitol Sprinkler has no idea who the alleged escort was and did nothing during discovery to try to identify this person.

Any statements allegedly made by the unidentified escort are clearly out of court statements offered for the truth of the matter asserted and, therefore, inadmissible hearsay. Surprisingly, defendant does not even address the issue of the admissibility of these out of court

statements in its motion for summary judgment. Plaintiff anticipates that defendant may argue that the alleged statements were made in the declarant's capacity as an employee of third-party defendant Guest Services and are therefore non-hearsay party admissions under Fed R. Evid. 801(d)(2).[3] As the party attempting to offer these out of court statements, the defendant has the burden of establishing the evidentiary foundation for admissibility under Rule 801(d)(2). Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1002 (3d Cir. 1988).

The failure to identify a declarant who is allegedly an agent or employee of a party makes any statement by that declarant inadmissible hearsay. Phillips v. Holladay Property Services, Inc., 937 F.Supp. 32 (D.D.C. 1996). A statement made by an unidentified employee of a party is "classic hearsay." Thomas v. Stone Container Corp., 922 F.Supp. 950, 957 (S.D.N.Y. 1996). See also Zaken v. Boerer, 964 F.2d 1319, 1324 (2d Cir. 1992)(holding absent the identity of the declarant, there is an insufficient evidentiary foundation to establish the existence of agency relationship as required by Rule 801(d)(2)(D)); Carden, 850 F.2d at 1002 (holding that if the party offering the out of court statement fails to identify the declarant, then the party cannot meet the evidentiary foundation of rule 801(d)(2)(D)).

It is clear from the discovery in this case that the Capitol Sprinkler representatives have no idea if Terrance Hubbard was actually the person who provided Capitol Sprinkler access to the building during the January 9, 2003 inspection. In fact, the only reason Capitol Sprinkler even came up with Hubbard's name is because he signed the receipt for the evidence returned by Capitol Sprinkler to Gallaudet a week after the incident. There is literally no testimony from anyone from Capitol Sprinkler that the person who signed for the returned evidence is actually the person who provided access to the building on January 9, 2003. The description of Terrance

---

[3] Third party defendant Guest Services filed its own summary judgment motion to dismiss Capitol Sprinkler's Third Party Complaint. If the Court grants this motion, then third party defendant Guest Services will no longer be a party to the litigation and any statements by its employees would clearly not be admissible under Rule 801(d)(2).

Hubbard provided in his father's affidavit directly contradicts the description provided by all of the Capitol Sprinkler employees of the unidentified escort. Absent some actual corroborating evidence regarding the identity of the unidentified building escort who allegedly agreed to drain the Drum Drip, defendant cannot establish the evidentiary foundation necessary to make these hearsay statements admissible under Rule 801(d)(2).

Defendant also suggests in its summary judgment motion that the alleged statement by the unidentified building escort, whom defendant alleges is a representative of Guest Services, orally modified the written sprinkler inspection contract and therefore is not hearsay. As discussed in greater detail below, there was no oral modification of the contract. Defendant has failed to cite any admissible evidence in the record to support that the unidentified maintenance person who allegedly agreed to drain the Drum Drip had any authority to bind Guest Services and/or Gallaudet to any contract or to modify the existing contract. Likewise, there is no evidence in the record to support the contention that Capitol Sprinkler's inspector, Michael Bowlin, had any authority to agree to a modification of the contract on behalf of Capitol Sprinkler. If defendant cannot establish that there both the building escort and Bowlin had authority on behalf of their respective employers to modify the contract, then it cannot establish the statements modified the written contract and the alleged statements made by the unidentified building escort are inadmissible hearsay.

### D.     SUMMARY JUDGMENT IN FAVOR OF DEFENDANT IS NOT APPROPRIATE ON PLAINTIFF'S CONTRACT CLAIM

Defendant does not contest that plaintiff can establish a prima facie case of a breach of contract.[4] Rather, defendant argues that summary judgment should be granted because of a

---

[4] Because defendant has not raised this issue in its summary judgment motion, plaintiff will not address this in its Opposition. Plaintiff incorporates by reference its Motion for Partial Summary Judgment which demonstrates that plaintiff can establish a breach of contract claim against defendant.

variety of legal defenses which defendant claims excuse defendant from performing its express

contractual obligations.

## 1. THERE WAS NO ORAL MODIFICATION OF THE INSPECTION CONTRACT

In its Motion, defendant argues that the alleged statement by the unidentified building

escort orally modified the written sprinkler inspection contract and therefore relieved defendant

of its express contractual obligations under the contract.  The defendant correctly points out that

under D.C. law, a written contract may be modified orally.  Puma v. Sullivan, 746 A.2d 871

(D.C. 2000); Landow v. Georgetown-Inland West Corp., 454 A.2d 310 (D.C. 1982); Gagnon v.

Wright, 200 A.2d 196 (D.C. 1964).   However, defendant seems to suggest that oral modification

of a contract is automatically accomplished if any employee of one of the parties to the contract

agrees to something.  The parties to a contract are free to modify the contract by mutual assent.

However, in order to be valid the modification must possess the same elements of consideration

as necessary for normal contract formation.  Rinck v. Assoc. of Reserve City Bankers, 676 A.2d

12, 17 (D.C. 1996); Hershon v. The Hellman Co., 565 A.2d 282, 283 (D.C. 1989).  In addition,

the person orally modifying the contract must also have the authority to bind the party to a

contract.  See National Railroad Passenger Corp. v. Expresstrak, LLC, 2006 WL 2947555 at * 13

(D.D.C. 2006)(holding low level employees did not have authority to enter into or orally modify

contract between their respective employers).

The burden is on the party arguing that the contract has been modified to establish the

modification by a preponderance of the evidence.  Puma, 746 A.2d at 875; Gagnon, 200 A.2d at

198.  Accordingly, the burden is on defendant Capitol Sprinkler to establish that: (1) there was

mutual assent to modify the contract; (2) there was consideration supporting the modification of

the contract; (3) the unidentified maintenance person allegedly agreeing to the modification had

authority to bind Guest Services and/or Gallaudet to a modification of the existing written

contract; and (4) Michael Bowlin had authority to modify the contract on behalf of Capitol Sprinkler. In this case, the defendant has not cited any admissible evidence whatsoever to establish a modification of the contract.

The only evidence defendant has of the alleged oral modification is the uncorroborated testimony by Michael Bowlin that the unidentified building escort agreed to drain the Drum Drip. There is nothing in Capitol Sprinkler's own inspection report for January 9, 2003 to confirm that there was any agreement by the unidentified building escort to drain the Drum Drip or to modify the inspection contract. Nor is there any other documentation whatsoever confirming the alleged modification of the contract. In addition, Capitol Sprinkler did not provide any notice to Guest Services or Gallaudet that there had been a modification of the inspection contract. In fact, the first time that Capitol Sprinkler ever even raised the issue of modification of the contract was in its Motion for Summary Judgment.

The testimony of Capitol Sprinkler's own employees proves that it cannot identify the person who allegedly agreed to drain the Drum Drip and to the oral modification of the contract. Capitol Sprinkler cannot possibly meet its burden of establishing there was an oral modification of a contract when it cannot even identify the person who allegedly agreed to the modification.

Moreover, in order for a written contract to be orally modified, there must be consideration. In this case there was no consideration provided to Guest Services and/or Gallaudet to modify the written inspection contract. There was mutual consideration for the original inspection contract, wherein Capitol Sprinkler agreed to perform a service for Guest Services and Gallaudet in exchange for a fee. If the services to be provided by Capitol Sprinkler were going to be changed, then there should have been a change in consideration to account for the reduced services to be provided. Absent some consideration, there can be no modification.

In addition, Capitol Sprinkler cannot establish that the unidentified maintenance person who escorted them throughout the building had any authority whatsoever to bind Guest Services and/or Gallaudet to a modified contract. There is no evidence provided by defendant that the unidentified building escort had any authority whatsoever to enter into a contract on behalf of Guest Services or Gallaudet. Nor is there any evidence that the unidentified person had any authority to modify the existing contract. Moreover, defendant cannot even establish through the record that its own representative, Michael Bowlin, had any authority to modify the contract on behalf of defendant.

Plaintiff maintains that there is absolutely no evidence whatsoever to support the argument that the contract was orally modified. For purposes of this opposition, plaintiff gets the benefit of all factual inferences. At the very least, there is a genuine issue of material fact with regard to whether there was a modification of the contract, which requires the Court to deny defendant's summary judgment motion.

## 2.   THERE WAS NO MATERIAL BREACH OF THE CONTRACT

Defendant argues that it was excused from its express contractual obligation to drain all drum drips by virtue of the fact that Gallaudet's building management company, Guest Services, failed to provide defendant's inspectors with access to the sprinkler system. Defendant asserts that in doing so, Guest Services materially breached the contract, which excused defendant from complying with its express contractual obligations. Defendant relies on NFPA 25 § 1-4.1, which requires the owner to provide "ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." (See Exhibit 4). The Appendix to NFPA 25 for this section clarifies the responsibility of the building owner to provide access. "The components are not required to be open or exposed. Doors, removable panels, or valve pits may be permitted to satisfy the need for accessibility. Such equipment should not be obstructed

by features such as walls, ducts, columns, direct burial or stock storage." NFPA 25 §A-1-4.1 (See Exhibit 4). Therefore, the fact that a door may have initially been locked during the inspection does not violate NFPA 25.

However, even assuming that it did, Capitol Sprinkler still cannot establish that either Gallaudet or Guest Services failed to provide ready accessibility to the system. Capitol Sprinkler's employee's own testimony establishes that an unidentified building escort accompanied them throughout the building and provided them access to the entire system, with the exception of the room containing the Drum Drip. The building escort did not have the key on his person to the room where the Drip Drum was and advised the Capitol Sprinkler inspectors that he needed to go get it. Capitol Sprinkler readily admits that its employees did not ask him to go get the key and that the building escort did not refuse to provide them access or to go get the key. (See Exhibit 7, excerpts of Bowlin Deposition, at p. 52, 54, 56 & 76).

Even if the Court fully credits Bowlin's testimony, it only establishes that defendant's inspectors made the decision to rely on the building escort to go back and drain the Drum Drip rather than just asking him to go get the key so they could go in and drain the Drum Drip themselves in accordance with defendant's express contractual obligation. The fact that the building escort did not have the key on his person to provide them access to the last room when they arrived there certainly does not establish that Guest Services or Gallaudet materially breached the contract.

In addition, the failure to provide access was allegedly by Guest Services, not Gallaudet. Even *assuming arguendo* that Capitol Sprinkler could establish that the unidentified building escort was an employee of Guest Services, it must also establish that Guest Services was acting as an agent of Gallaudet as opposed to an independent contractor when the alleged failure to provide access occurred. As discussed at length below, there are genuine issues of material fact

with regard to whether Guest Services was the agent of Gallaudet for purposes of maintenance of the building including providing access to contractors inspecting the sprinkler system.

Plaintiff maintains that there is absolutely no evidence whatsoever to support the argument that the contract was materially breached. For purposes of this opposition, plaintiff gets the benefit of all factual inferences. At the very least, there is a genuine issue of material fact with regard to whether there was a material breach of the contract, which requires the Court to deny defendant's summary judgment motion.

**3.    THERE WAS NO FRUSTRATION OF THE PRINCIPAL PURPOSE OF THE CONTRACT NOR WAS IT IMPOSSIBLE OR COMMERCIALLY IMPRACTICABLE FOR DEFENDANT TO COMPLY WITH ITS CONTRACTUAL OBLIGATIONS**

It is unclear from defendant's Memorandum whether it is arguing frustration of purpose or impossibility/commercial impracticability as a defense to plaintiff's contract claim. In Section II(D)(4) of its memorandum, which is the "Summary of the Applicable Law" section, defendant discusses the law of both frustration and impossibility/commercial impracticability. Yet, in Section III(C), which is the "Argument" section, defendant indicates in its heading and in the opening sentence that it is making a frustration of purpose argument. Although defendant couches its argument in terms of frustration of purpose, it appears defendant is really making an impossibility argument. In fact the last sentence in the frustration section of defendant's Memorandum states, "As such an inspection of the same was **impossible**, relieving the inspector of any obligation to inspect it and relieving Capitol Sprinkler for performance of the contract regarding the subject drum drip." (See *Defendant's Memorandum of Points and Authorities in Support of its Summary Judgment Motion* at p. 16)(emphasis added). Because it is unclear which legal defense defendant is relying on, plaintiff will address both.

In <u>Island Development Corp. v. District of Columbia</u>, the D.C. Court of Appeals discussed the distinction between the doctrines of frustration of purpose and impossibility/commercial impracticability.  933 A.2d 340 (D.C. 2007).  Frustration of purpose is closely related to the doctrine of impossibility or commercial impracticability, however, they are distinct legal theories.  <u>Id.</u> at 349.  "Under the frustration defense, the promissor's performance is excused because changed conditions have rendered the performance bargained from the promisee worthless, not because the promissor's performance has become different or impracticable."  <u>Id.</u>  Under a frustration analysis the court is concerned with the impact of the event upon the failure of the consideration.  <u>Id.</u>

Defendant's only argument in support of a frustration of purpose defense is that Guest Services failed to provide access to the Drum Drip.  However, failure to provide access to the Drum Drip would not frustrate the purpose of the contract.  Under the contract, the only performance bargained from the promisee, Gallaudet and/or Guest Services, is to pay the promissor, Capitol Sprinkler, for doing the inspections.  Accordingly, in order for defendant to rely on a frustration defense to excuse its express contractual obligations, defendant needs to establish that some changed condition made the performance bargained from the promisee, payment for the inspection services, worthless to Capitol Sprinkler.  There has been no such showing.  In fact, this argument is directly contradicted by the facts of the case in which Guest Services still relied on Capitol Sprinkler to complete the inspection and paid Capitol Sprinkler for its inspection services.

Defendant cites impossibility of performance as the sole basis for its frustration of purpose argument.  In doing so, it is clear that defendant totally misunderstands the law on frustration of performance and ignores the clear distinction made by the D.C. Court of Appeals in <u>Island Development Corp.</u>, the very case which defendant cites to support its argument.  It

seems that defendant is really attempting to make an impossibility or commercial impracticability argument.

When circumstances beyond a party's control make performance of a contract impossible or commercially impracticable, the party failing to perform is exonerated.  Id. at 350. Impossibility is not limited to absolute or legal impossibility, it includes impracticability due to extreme or unreasonable difficulty or expense.  Id.  However, it must be real impossibility and not a mere inconvenience or unexpected difficulty.  Id.  A party is expected to use reasonable efforts to surmount obstacles to performance and performance is impracticable only in spite of such efforts.  Id.

The testimony of Bowlin, Capitol Sprinkler's own inspector, demonstrates that it was neither impossible nor commercially impracticable for Capitol Sprinkler to comply with its express contractual obligations to drain the Drum Drip.  The fact that the building escort did not have the key with him and could not provide immediate access to the room with the Drum Drip was at most an inconvenience.  Bowlin admitted that he did not ask the building escort to go get the key.  Nor did the building escort ever refuse to go get the key.  Bowlin and his helper made no attempt whatsoever to get access to the room once he found out the building escort did not have the key.  Instead, Bowlin allegedly requested that the building escort drain the Drum Drip himself.  (See Exhibit 7, excerpts of Bowlin Deposition at p. 52, 54, 56 & 76).  Accordingly, Bowlin made no reasonable effort to surmount the minor obstacle to the performance of Capitol Sprinkler's own express contractual duties.  In addition, there was no unreasonable expense or undue hardship associated with Capitol Sprinkler getting the key and draining the Drum Drip. Consequently, there is no evidence whatsoever supporting the argument that it was impossible or commercially impracticable for Capitol Sprinkler to perform its express contractual duties and Capitol Sprinkler cannot be exonerated for its failure to perform.

At the very least, there is a genuine issue of material fact regarding whether it was impossible or commercially impracticable for defendant to perform its contractual obligations and whether the failure to provide access frustrated the principal purpose of the contract.

### E.     SUMMARY JUDGMENT IN FAVOR OF DEFENDANT IS NOT APPROPRIATE ON PLAINTIFF'S NEGLIGENCE CLAIM

Defendant does not contest that plaintiff can establish a prima facie case of negligence.[5] Rather, defendant argues that summary judgment should be granted on plaintiff's negligence claim because of plaintiff's contributory negligence.

### 1.     NEITHER GALLAUDET NOR GUEST SERVICES ARE CONTRIBUTORILY NEGLIGENT

Under D.C. law, contributory negligence is a bar to a plaintiff's negligence claim. Dennis v. Jones, 928 A.2d 672 (D.C. 2007). The burden is on the defendant to establish contributory negligence. Poyner v. Loftus, 694 A.2d 69 (D.C. 1997). Ordinarily, questions of negligence and contributory negligence must be decided by the trier of fact. Id. at 71. "Only in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law." Id. quoting Tilghman v. Johnson, 513 A.2d 1350, 1351 (D.C. 1986).

There is no evidence whatsoever to support that plaintiff's insured, Gallaudet, was in any way contributorily negligent. In fact, defendant does not even allege that plaintiff's insured was directly negligent. Rather, defendant argues that plaintiff's insured is vicariously liable for the contributory negligence of the building management company, third party defendant Guest Services. Defendant's argument is that third party defendant Guest Services was contributorily

---

[5] Because defendant has not raised this issue in its summary judgment motion, plaintiff will not address this in its opposition. Plaintiff refers the Court to its expert report which was attached as Exhibit H of *Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment*. The expert report provides a basis for plaintiff's negligence claims against the defendant.

negligent in failing to provide Capitol Sprinkler access to the Drum Drip and in not draining the Drum Drip itself. Defendant further argues that Guest Services is the agent of Gallaudet and Gallaudet is therefore vicariously liable for the contributory negligence of Guest Services. Accordingly, in order to prove contributory negligence, defendant has the burden of proving that: (1) Guest Services was contributorily negligent; and (2) Guest Services was the agent of Gallaudet making Gallaudet vicariously liable for its conduct. Plaintiff submits that defendant cannot prove either

Defendant does not have any expert witnesses in the case. Accordingly, defendant will not be able to establish that Guest Services violated any standard of care in the industry. Even if defendant can establish through lay witnesses some factual basis on which a jury could make a finding of contributory negligence, this is certainly not the exceptional case in which evidence of contributory negligence is so clear and unambiguous that the Court can find there is contributory negligence as a mater of law. At the very least, there are certainly genuine issues of material fact as to whether Guest Services was contributorily negligent.

## 2.    GUEST SERVICES IS AN INDEPENDENT CONTACTOR, NOT AN AGENT OF GALLAUDET

Even *assuming arguendo* that defendant could establish that Guest Services was contributorily negligent, this negligence is not attributable to Gallaudet because Guest Services was an independent contractor, not an agent of Gallaudet. Therefore, Gallaudet is not vicariously liable for the actions or negligence of Guest Services.

The existence of an agency relationship, itself, is a question of fact, for which the person asserting the relationship has the burden of proof. Judah v. Reiner, 744 A.2d 1037, 1040 (D.C. 1990). In order to prevail on its summary judgment motion, the defendant has the burden of demonstrating the absence of material fact with the regard to the agency relationship. Id.

An agency relationship results when one person authorizes another to act on his behalf subject to his control and the other consents to do so.  Id.  In determining the existence of an agency relationship, the courts look to both the contract and the course of dealings.  Id.  There are a number of factors to be considered in determining agency, including (1) the selection and engagement of the servant; (2) the payment of wages; (3) the power to discharge; (4) the power to control his servant's conduct; and (5) whether the work is part of the regular business of the employer.  Id.  However, the determinative factor is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.  Id.

Despite the fact that the defendant has the burden of establishing agency in this case, the defendant does not reference one single provision of the Management Agreement between Gallaudet and Guest Services.  Nor does defendant cite any specific testimony in the record regarding the course of dealings between Guest Services and Gallaudet in order to establish the agency relationship it alleges.  Rather, defendant simply alleges that the contract and the course of dealing establish an agency relationship.  These unsupported allegations by defendant are not sufficient to meet its burden to establish that there is no genuine dispute of material facts that Guest Services was an agent of Gallaudet.

In addition to defendant's failure to cite any evidence in the record supporting its agency argument, the case law does not support defendant's argument.  In Henderson v. Charles E. Smith Management, Inc., the D.C. Court of Appeals examined the issue of whether a building management company was an agent of the building owner.  567 A.2d 59 (D.C. 1989).  The owner of the Brandywine apartments contracted CES, a management company, to manage the apartments.  Id at 60.  The trial court held that CES was an agent of Brandywine and the Court of

Appeals reversed and held there was a question of fact as to whether CES was an independent contractor or agent of Brandywine.  Id.

The court looked at both the contract and the course of dealings between the parties.  The contract between CES and Brandywine stated that all things done under the contract shall be done as Agent of the Owner.  Id. at 63.  However, this provision alone did not establish agency.  The Court found that the contract did not condition the actions of CES upon approval, supervision or control of Brandywine.  Id.  Nor did the management agreement specifically give Brandywine supervisory power over CES.  Id.  The Court found that the actual dealings between the parties demonstrated that CES acted as an agent for some matters, but not others.  Id. at 65.  The Court noted, "an entity, even though designated as an 'agent' may 'act as such in some matters but not in others'"  Id.

The relationship between Gallaudet and Guest Services is similar to the relationship between the parties in Henderson.  Guest Services was clearly an independent contractor for purposes of actual maintenance services in the building and providing contractors with access to the building.  Gallaudet did not have any control over the manner in which Guest Services carried out its services.  Guest Services maintained its own employees who it paid directly and had full authority to hire and fire.  Gallaudet did not provide any direct supervision of Guest Services' employees and did not have any control over who Guest Services employed.

Section 3.1 of the Management Agreement, which is entitled "Operational Services", states, "Owner [Gallaudet] hereby appoints, authorizes and engages Operator [Guest Services] to act as the operator and manager of the Property during the term of this Agreement, **with responsibility, control and discretion in the operation, management and supervision of the Property**."  (See Exhibit A to Defendant's Statement of Material Facts at p. 6)(emphasis added).  Section 3.2 provides that "Operator shall have the sole responsibility for and shall use reasonable

care in hiring, promotion, discharge and supervision of all Property Employees" (Id. at p. 8). The following provisions within the Management Agreement relate to the maintenance of the building's systems, including the sprinkler system, and provide Guest Services with the right to:

> §3.1(e) Negotiate and enter into service contracts necessary or desirable in the ordinary course of business in operating the Property, including without limitations, contracts for provision of telephone and other utility services, cleaning services, vermin extermination, trash removal, elevator and boiler maintenance, air conditioning maintenance, master television service, laundry and dry cleaning, entertainment, satellite systems and other services deems advisable. (Id. at p. 7).

> §3.1(j) Perform and supervise (or cause to be performed or supervised) such maintenance and repairs to the Property as shall be required by applicable law, or as shall be necessary to operate and maintain the Property in a professional manner suitable to the character of the Property. (Id.)

The provisions of the Management Agreement empower Guest Services to manage and operate the facility and make decisions without approval from Gallaudet. Section §3.3 specifies several specific activities which Guest Services has no authority to do without the owner's approval. (Id. at p. 9). None of these relate to the sprinkler system. Other than the handful of activities specifically listed in Section 3.3 that required specific approval, Guest Services was not subject to Gallaudet's control in its management of the building.

Section 12.1 of the Management Agreement provides that Guest Services will fully indemnify, defend and hold harmless Gallaudet from any liability, claim, loss, damage or expense resulting from "the negligent acts or willful misconduct of any Property Employee, or any of [Guest Services'] Home Office Management Employees or any other person directly or indirectly employed by [Guest Services] or any one for whose acts [Guest Services] may be liable." (Id. at p. 11). The fact that Guest Services agrees to fully indemnify Gallaudet against claims caused by the negligence of the building employees demonstrates that the parties intended for Guest Services to operate as an independent contractor who is directly responsible for controlling its employees, as opposed to an agent of Gallaudet, for whom Gallaudet would be

vicariously responsible.  The existence and scope of the indemnification agreement directly contradicts the argument that Gallaudet is vicariously responsible for the acts of Guest Services' employees working in the building.

In addition, the testimony of Gary Aller, Gallaudet's Director of Business Operations, who was the liaison between Gallaudet and Guest Services, demonstrates that Gallaudet did not control the actions of Guest Services.  Aller testified that Guest Services had total maintenance and fire control responsibility for the facility.  (See Exhibit 3, excerpts of deposition of Gary Aller at p. 30-31).  He testified that David Ham of Guest Services was responsible for the supervision of all maintenance of the facility.  (Id. at p. 61-62).

The only reference defendant makes to the record regarding the course of dealings between Gallaudet and Guest Services to support it argument that Guest Services was an agent is that Gary Aller had sufficient control over Guest Services to recommend and control its termination following the incident.  However, the fact that Aller and Gallaudet could terminate the contract with Guest Services is not the same as asserting control over its actual operations. Gallaudet did not have any authority to terminate individual employees of Guest Services who worked at the maintenance facility.  Pursuant to Section 3.2 of the management agreement, Guest Services had the "sole responsibility" for hiring, discharging and supervising the actual people who worked at the facility.  In addition, Aller was clear in his deposition that the decision to terminate the contract with Guest Services was based on the profitability of the facility and had nothing to do with the water damage incident.  (See Exhibit 3 at p. 41-42).

The Management Agreement and course of dealings between Gallaudet and Guest Services demonstrates that Guest Services is an independent contractor employed by Gallaudet to manage the building and not an agent of Gallaudet.  Therefore, Gallaudet is not vicariously

liable for the actions of Guest Services.  At the very least there is a genuine issue of fact with regard to whether Guest Services is an agent of Gallaudet.

**3.    NFPA 25 DOES NOT CREATE A NON-DELEGABLE STATUTORY DUTY TO MAINTAIN A BUILDING'S SPRINKLER SYSTEM**

Defendant also claims that even if Gallaudet is not vicariously responsible for the acts of Guest Services, is still contributorily negligent because as the property owner, it had a non-delegable statutory duty to comply with NFPA 25 and maintain the sprinkler system in the building.  However, the very regulation that defendant claims creates a non-delegable statutory duty, expressly permits the owner to delegate the maintenance of a sprinkler system to another company.  NFPA 25 Appendix 1-4.2 states, "inspection, testing and maintenance may be permitted to be contracted with an inspection, testing and maintenance service."  (See Exhibit 4). Not surprisingly, defendant fails to mention the Appendix section in its Motion.  Given that NFPA 25 expressly permits delegation of this maintenance of the sprinkler system, it is totally nonsensical for defendant to argue that it creates a non-delegable duty.

**III.    CONCLUSION**

Based on the foregoing Memorandum of Points and Authorities and the factual record in this case, plaintiff respectfully requests that this Honorable Court deny defendant's Summary Judgment Motion.

Respectfully submitted,

COZEN O'CONNOR

BY:  s/ David J. Groth
DAVID J. GROTH, ESQUIRE (phv)
DANIEL J. LUCCARO, ESQUIRE (phv)
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000

MESIROW & STRAVITZ, PLLC

BY:  s/Eric N. Stravitz
Eric N. Stravitz, Esquire (D.C. Bar #438093)
1307 New Hampshire Avenue, N.W., Suite 400
Washington, DC  20036
(202) 463-0303
Attorneys for Plaintiff