## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

:
ST. PAUL MERCURY INSURANCE COMPANY, :
as Subrogee of Gallaudet University           :        Case No.: 1:05cv02115(CKK)
:
            Plaintiff            :
      vs.                           :
:
CAPITOL SPRINKLER INSPECTION, INC      :
:
           Defendant             :
      vs.                           :
:
GUEST SERVICES, INC.                              :
:
          Third-Party Defendant        :
_____:

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

       Plaintiff, St. Paul Mercury Insurance Company, as Subrogee of Gallaudet University, hereby provides the following Reply Memorandum in response to defendant Capitol Sprinkler Inspection, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment and in further support of Plaintiff's Motion For Partial Summary Judgment.

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL ARGUMENT....................................................................................... 2

    A.  RESPONSE TO DEFENDANT'S STATEMENT OF GENUINE ISSUES IN
        POSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ................. 2

    B.  THERE IS NO ADMISSIBLE EVIDENCE THAT THE BUILDING ESCORT
        FAILED TO PROVIDE ACCESS TO THE DRUM DRIP OR AGREED TO
        DRAIN THE DRUM DRIP ......................................................................... 4

    C.  GALLAUDET IS AN INDEPENDENT CONTRACTOR NOT AN AGENT OF
        GUEST SERVICES ................................................................................. 7

    D.  THE AFFIDAVITS FROM VERNON VANE ARE "SHAM AFFIDAVITS" AND
        SHOULD NOT BE CONSIDERED BY THE COURT ................................. 12

    E  .THERE WAS NO MATERIAL BREACH OF THE CONTRACT............................ 13

    F.  THERE WAS NO FRUSTRATION OF THE PRINCIPAL PURPOSE OF THE
        CONTRACT ......................................................................................... 15

    G.  THERE WAS NO ORAL MODIFICATION OF THE INSPECTION CONTRACT.. 17

III. CONCLUSION................................................................................................. 19

## TABLE OF AUTHORITIES

CASES

Carden v. Westinghouse Elec. Corp.,
    850 F.2d 996 (3d Cir. 1988)................................................................................5

Gagnon v. Wright,
    200 A.2d 196 (D.C. 1964) ..............................................................................17

Galvin v. Eli Lilly and Co.,
    488 F.3d 1026 (D.C. Cir. 2007)................................................................. 12-13

Henderson v. Charles E. Smith Management, Inc.,
    567 A.2d 59 (D.C. 1989). ............................................................................ 8-9

Hershon v. The Hellman Co.,
    565 A.2d 282 (D.C. 1989) ..............................................................................17

Island Development Corp. v. District of Columbia,
    933 A.2d 340 (D.C. 2007) ......................................................................... 15-16

Judah v. Reiner,
    744 A.2d 1037 (D.C. 1990) ........................................................................... 7-8

Landow v. Georgetown-Inland West Corp.,
    454 A.2d 310 (D.C. 1982) ..............................................................................17

Laningham v. United States,
    813 F.2d 1236 (D.C. Cir. 1987)........................................................................4

National Railroad Passenger Corp. v. Expresstrak, LLC,
    2006 WL 2947555 ...........................................................................................17

Phillips v. Holladay Property Services, Inc.,
    937 F.Supp. 32 (D.D.C. 1996)..........................................................................5

Puma v. Sullivan,
    746 A.2d 871 (D.C. 2000) ..............................................................................17

Rinck v. Assoc. of Reserve City Bankers,
    676 A.2d 12 (D.C. 1996) ................................................................................17

Thomas v. Stone Container Corp.,
    922 F.Supp. 950 (S.D.N.Y. 1996) ....................................................................5

Zaken v. Boerer,
   964 F.2d 1319 (2d Cir. 1992)............................................................................................5


**OTHER AUTHORITIES**

Fed R. Evid. 801(d)(2).......................................................................................................5-6

NFPA 25 ...........................................................................................................................14

Local Rules 7(h) and 56.1 ..................................................................................................2

I.    **INTRODUCTION**

Defendant Capitol Sprinkler Inspection, Inc. ("Capitol Sprinkler") admits that: (1) it was contractually obligated to drain all of the drum drips at the conference center; (2) its inspectors failed to drain the drum drip above conference room 5200 ("the Drum Drip"); and (3) a tee fitting in the sprinkler line froze and burst as a result of the Drum Drip not being drained.  These admissions establish that Capitol Sprinkler breached its contract and the water leak and resulting damage were the result of this breach.

Despite the fact that Capitol Sprinkler admits all of the underlying facts that establish plaintiff's breach of contract claim, Capitol Sprinkler argues in its opposition that there are legal defenses which excuse its breach.  Capitol Sprinkler bases its entire opposition on the uncorroborated allegation that during the January 9, 2003 sprinkler system inspection, Terrance Hubbard, an employee of third-party Guest Services, Inc. ("Guest Services"), failed to provide Capitol Sprinkler's inspectors with access to the Drum Drip and that Hubbard agreed he would go back and drain the Drum Drip himself.

Based on this uncorroborated and totally unreliable hearsay testimony offered by the very Capitol Sprinkler employee who admittedly failed to drain the Drum Drip, defendant raises several legal defenses.  First, defendant argues there was a material breach of the contract based on the building escort, whom it alleges was an employee of Guest Services, failing to provide access to the sprinkler system, which relieved defendant of its express contractual obligation to drain the Drum Drip.  Second, defendant argues that the alleged failure to provide access to the Drum Drip frustrated the purpose of the contract, which relieved Capitol Sprinkler of its contractual obligations. Third, defendant claims that the building escort orally modified the inspection contract when the building escort agreed to drain the Drum Drip.  In addition to the

fact that all of Capitol Sprinkler's legal arguments are based on inadmissible hearsay, they are all also based on the assumption that Guest Services was acting as the agent of Gallaudet.

Plaintiff asserts that there is no admissible evidence regarding the alleged agreement by the building escort to drain the Drum Drip. Even *assuming arguendo* there is any admissible evidence to support this allegation, this did not relieve Capitol Sprinkler of its express contractual obligations and defendant's legal arguments still fail. Even if the Court fully credits the evidence proffered by defendant Capitol Sprinkler and provides it with the benefit of all factual inferences, there are no material facts in dispute with regard to defendant's breach of its express contractual obligations. Therefore, the Court should grant plaintiff's motion for summary judgment on the contract claim.

II.     **LEGAL ARGUMENT**

    A.     **RESPONSE TO DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant raises the same legal arguments in its opposition as it did in its own motion for summary judgment. Plaintiff incorporates in full by reference *Plaintiff's Response to Defendant Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts In Support of Its Summary Judgment Motion*, including all citations to the record and attached exhibits.[1]

Pursuant to Rules 7(h) and 56.1 of the Local Rules for the United States District Court for the District of Columbia, an opposition to a summary judgment motion shall be accompanied by a separate concise statement of genuine issues which shall include references to parts of the record relied on to support the statement. To the extent defendant denies a factual allegation made by plaintiff, defendant must cite something in the record to support the denial. In its

---

[1] Paragraphs 15 – 49 of *Defendant Capitol Sprinkler Inspection, Inc.'s Statement of Genuine Issues in Opposition to Plaintiff's Motion for Partial Summary Judgment* correspond and are identical to paragraphs 1-35 of *Defendant Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts In Support of Its Motion for Summary Judgment*.

*Statement of Genuine Issues In Opposition to Plaintiff's Motion for Partial Summary Judgment*, defendant fails to cite supporting testimony in the record, which supports its denials of plaintiff's properly supported factual allegations.

For instance, in paragraph 9, defendant states "denied as to the conclusion stated that Bowlin and Scott 'were supposed' to drain the drum drip above conference room 5200." Defendant does not cite any testimony to support this denial.  The only citation defendant provides is to the testimony by Michael Bowlin that all of the drains except for the one above room 5200 were drained.  In addition, defendant's unsupported denial directly contradicts the actual deposition testimony of Bowlin, who testified:

> Q:      As is listed in this interrogatory answer.  It says "One drum drip is located in the ceiling of conference room 5200."  That's the one that you did not drain.
>
> A:      Correct.
>
> Q:      Were you supposed to drain that drain?
>
> A:      Yes.

(See Exhibit F of Plaintiff's Statement of Material Facts, excerpts from Bowlin Deposition at p. 50).  There is absolutely no basis for defendant to deny the allegation that it was "supposed" to drain the drum drip when its own employee admitted to that during his deposition.  Accordingly, this factual allegation by plaintiff should be deemed fully admitted.

Similarly, in response to paragraph 10, defendant denies "that it was necessary for Capitol Sprinkler to drain the low points during the January 9, 2003 inspection."  Again Capitol Sprinkler does not provide any citations to the record to support this denial.  Capitol Sprinkler's denial directly contradicts the express wording of its own inspection contract, which specifically states that Capitol Sprinkler will "open condensation drains on drum drip connections and drain low points during fall and winter inspection." (See Exhibit A of Plaintiff's Statement of Material Facts).  Accordingly, this factual allegation by plaintiff should be deemed fully admitted.

Defendant does not provide any citations to the record which create a genuine issue of material facts with regard to the following: (1) defendant was contractually obligated to drain all of the drum drips at the facility, including the Drum Drip; (2) its inspectors failed to drain the Drum Drip; and (3) a tee fitting in the sprinkler line froze and burst as a result of the Drum Drip not being drained.  Accordingly, there is no dispute of material facts with regard to the elements necessary for plaintiff to prove its breach of contract claim and summary judgment is appropriate.

**B.    THERE IS NO ADMISSIBLE EVIDENCE THAT THE BUILDING ESCORT FAILED TO PROVIDE ACCESS TO THE DRUM DRIP OR AGREED TO DRAIN THE DRUM DRIP**

In order to defeat a summary judgment motion and demonstrate that there is a dispute in material facts, the non-moving party's opposition must be supported by sufficiently admissible evidence such that the trier of fact could find for the non-moving party. Laningham v. United States, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  Defendant's entire opposition is based on the allegation that Terrance Hubbard, a representative of Guest Services, failed to provide Capitol Sprinkler's inspectors with access to the Drum Drip and agreed to go back and drain the Drum Drip himself.  Any such statements are clearly out of court statements offered for the truth of the matter asserted and, therefore, inadmissible hearsay.

Although defendant represents throughout its opposition and its own summary judgment motion that its inspectors can identify Terrance Hubbard as the building escort who escorted them through the building during the January 2003 inspection and who allegedly agreed to drain the Drum Drip, there is absolutely nothing in the record to support this identification. In fact the description of the escort provided by Capitol Sprinkler's employees of the building escort is totally inconsistent with the description of Terrance Hubbard provided by his father in his

affidavit.[2]  It is clear that Terrance Hubbard was not the escort and Capitol Sprinkler has no idea who the alleged escort was and did nothing during discovery to try to identify this person.

Any statements allegedly made by the unidentified escort are clearly out of court statements offered for the truth of the matter asserted and, therefore, inadmissible hearsay. Surprisingly, defendant does not even address the issue of the admissibility of these out of court statements in its opposition.  Plaintiff anticipates that defendant may argue that the alleged statements were made in the declarant's capacity as an employee of third-party defendant Guest Services and are therefore non-hearsay party admissions under Fed R. Evid. 801(d)(2).[3]  As the party attempting to offer these out of court statements, the defendant has the burden of establishing the evidentiary foundation for admissibility under Rule 801(d)(2).  Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1002 (3d Cir. 1988).

The failure to identify a declarant who is allegedly an agent or employee of a party makes any statement by that declarant inadmissible hearsay.  Phillips v. Holladay Property Services, Inc., 937 F.Supp. 32 (D.D.C. 1996).  A statement made by an unidentified employee of a party is "classic hearsay."  Thomas v. Stone Container Corp., 922 F.Supp. 950, 957 (S.D.N.Y. 1996). See also Zaken v. Boerer, 964 F.2d 1319, 1324 (2d Cir. 1992)(holding absent the identity of the declarant, there is an insufficient evidentiary foundation to establish the existence of agency relationship as required by Rule 801(d)(2)(D)); Carden, 850 F.2d at 1002 (holding that if the party offering the out of court statement fails to identify the declarant, then the party cannot meet the evidentiary foundation of rule 801(d)(2)(D)).

---

[2] See paragraph 21 of *Plaintiff's Response to Defendant's Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts of Its Summary Judgment Motion*, in which plaintiff provides a very detailed denial including various citations to the record, which demonstrates that defendant cannot identify Terrance Hubbard.

[3] Third party defendant Guest Services filed its own summary judgment motion to dismiss Capitol Sprinkler's Third Party Complaint.  If the Court grants this motion, then third party defendant Guest Services will no longer be a party to the litigation and any statements by its employees would clearly not be admissible under Rule 801(d)(2).

It is clear from the discovery in this case that the Capitol Sprinkler representatives have no idea if Terrance Hubbard was actually the person who provided Capitol Sprinkler access to the building during the January 9, 2003 inspection.  In fact, the only reason Capitol Sprinkler even came up with Hubbard's name is because he signed the receipt for the evidence returned by Capitol Sprinkler to Gallaudet a week after the incident.  There is literally no testimony from anyone from Capitol Sprinkler that the person who signed for the returned evidence is actually the person who provided access to the building on January 9, 2003.  The description of Terrance Hubbard provided in his father's affidavit directly contradicts the description provided by all of the Capitol Sprinkler employees of the unidentified escort.  (See Exhibit 8 of Plaintiff's Response to Defendant Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts of Its Summary Judgment Motion).   Absent some actual corroborating evidence regarding the actual identity of the unidentified escort who allegedly agreed to drain the Drum Drip, defendant cannot establish the evidentiary foundation necessary to make these hearsay statements admissible under Rule 801(d)(2).

Defendant also suggests in its opposition that the alleged statement by the unidentified escort, whom defendant alleges is a representative of Guest Services, orally modified the written sprinkler inspection contract and therefore is not hearsay.  As discussed in greater detail below, there was no oral modification of the written contract.  Defendant has failed to establish any admissible evidence that the unidentified building escort who allegedly agreed to drain the Drum Drip had any authority to bind Guest Services and/or Gallaudet to any contract or to modify the existing contract.  If defendant cannot even identify the escort, it cannot possibly establish that the escort had any authority to modify the contract.  Likewise, there is no evidence in the record to support the contention that Capitol Sprinkler's inspector, Michael Bowlin, had any authority to agree to a modification of the contract on behalf of Capitol Sprinkler.  If defendant cannot

6

establish that both Bowlin and the building escort had authority to modify the contract on behalf of their respective employers, then it cannot establish the alleged oral statements by the building escort modified the written contract and the alleged statements made by the unidentified building escort are inadmissible hearsay.

### C.    GALLAUDET IS AN INDEPENDENT CONTRACTOR NOT AN AGENT OF GUEST SERVICES

In addition to the fact the all of defendant's legal defenses are based on inadmissible hearsay evidence, the defenses are all also based on Capitol Sprinkler establishing that Guest Services was an agent of Gallaudet for purposes of providing access to Capitol Sprinkler. Defendant does not allege that there were any acts by Gallaudet employees which materially breached the contract, modified the contract or frustrated the purpose of the contract. Rather defendant alleges Guest Services performed the acts supporting these legal defense and Gallaudet is vicariously liable for the actions of Guest Services as its agent. Plaintiff disputes that Guest Services was the agent of Gallaudet for purposes of the conduct in question. Plaintiff asserts that Guest Services was operating as an independent contractor and Gallaudet is not vicariously liable for Guest Services' actions. However, even if the defendant gets the benefit of any factual inferences and the Court assumes for purposes of this motion that Guest Services is the agent of Gallaudet, plaintiff is still entitled to summary judgment because Guest Services' status as an agent or independent contractor does not change the fact that defendant breached its express contractual obligations.

The existence of an agency relationship, itself, is a question of fact, for which the person asserting the relationship has the burden of proof. Judah v. Reiner, 744 A.2d 1037, 1040 (D.C. 1990). In order to prevail on its summary judgment motion, the defendant has the burden of demonstrating the absence of material fact with the regard to the agency relationship. Id.

An agency relationship results when one person authorizes another to act on his behalf subject to his control and the other consents to do so.  Id.  In determining the existence of an agency relationship, the courts look to both the contract and the course of dealings.  Id.  There are a number of factors to be considered in determining agency, including (1) the selection and engagement of the servant; (2) the payment of wages; (3) the power to discharge; (4) the power to control his servant's conduct; and (5) whether the work is part of the regular business of the employer.  Id.  However, the determinative factor is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.  Id.

Despite the fact that the defendant has the burden of establishing agency in this case, the defendant does not reference one single provision of the management agreement between Gallaudet and Guest Services ("the Management Agreement").  Nor does defendant cite any specific testimony in the record regarding the course of dealings between Guest Services and Gallaudet in order to establish the agency relationship it alleges.  Rather, defendant simply alleges that the contract and the course of dealing establish an agency relationship for all purposes.

In addition to defendant's failure to cite any evidence in the record supporting its agency argument, the case law does not support defendant's argument.  In Henderson v. Charles E. Smith Management, Inc., the D.C. Court of Appeals examined the issue of whether a building management company was an agent of the building owner.  567 A.2d 59 (D.C. 1989).  The owner of the Brandywine apartments contracted CES, a management company, to manage the apartments.  Id at 60.  The trial court held that CES was an agent of Brandywine and the Court of Appeals reversed and held there was a question of fact as to whether CES was an independent contractor or agent of Brandywine.  Id.

The court looked at both the contract and the course of dealings between the parties. The contract between CES and Brandywine stated that all things done under the contract shall be done as Agent of the Owner. Id. at 63. However, this provision alone did not establish agency. The Court found that the contract did not condition the actions of CES upon approval, supervision or control of Brandywine. Id. Nor did the management agreement specifically give Brandywine supervisory power over CES. Id. The Court found that the actual dealings between the parties demonstrated that CES acted as an agent for some matters, but not others. Id. at 65. The Court noted, "an entity, even though designated as an 'agent' may 'act as such in some matters but not in others'" Id.

The relationship between Gallaudet and Guest Services is similar to the relationship between the parties in Henderson. Guest Services was clearly an independent contractor for purposes of actual maintenance services in the building and providing contractors with access to the building. Gallaudet did not have any control over the manner in which Guest Services carried out its services. Guest Services maintained its own employees who it paid directly and had full authority to hire and fire. Gallaudet did not provide any direct supervision of Guest Services' employees and did not have any control over who Guest Services employed.

Section 3.1 of the Management Agreement, which is entitled "Operational Services", states, "Owner [Gallaudet] hereby appoints, authorizes and engages Operator [Guest Services] to act as the operator and manager of the Property during the term of this Agreement, **with responsibility, control and discretion in the operation, management and supervision of the Property**." (See Exhibit A to Defendant Capitol Sprinkler Inspection, Inc.'s Statement of Genuine Issues In Opposition to Plaintiff's Motion for Summary Judgment at p. 6)(emphasis added). Section 3.2 provides that "Operator shall have the sole responsibility for and shall use reasonable care in hiring, promotion, discharge and supervision of all Property Employees" (Id.

at p. 8).  The following provisions within the Management Agreement relate to the maintenance of the building's systems, including the sprinkler system, and provide Guest Services with the right to:

§3.1(e) Negotiate and enter into service contracts necessary or desirable in the ordinary course of business in operating the Property, including without limitations, contracts for provision of telephone and other utility services, cleaning services, vermin extermination, trash removal, elevator and boiler maintenance, air conditioning maintenance, master television service, laundry and dry cleaning, entertainment, satellite systems and other services deems advisable.  (Id. at p. 7).

§3.1(j) Perform and supervise (or cause to be performed or supervised) such maintenance and repairs to the Property as shall be required by applicable law, or as shall be necessary to operate and maintain the Property in a professional manner suitable to the character of the Property.  (Id.)

The provisions of the Management Agreement empower Guest Services to manage and operate the facility and make decisions without approval from Gallaudet.  Section §3.3 specifies several specific activities which Guest Services has no authority to do without the owner's approval. (Id. at p. 9).  None of these relate to the sprinkler system.  Other than the handful of activities specifically listed in Section 3.3 that required specific approval, Guest Services was not subject to Gallaudet's control in its management of the building.

Section 12.1 of the Management Agreement provides that Guest Services will fully indemnify, defend and hold harmless Gallaudet from any liability, claim, loss, damage or expense resulting from "the negligent acts or willful misconduct of any Property Employee, or any of [Guest Services] Home Office Management Employees or any other person directly or indirectly employed by [Guest Services] or any one for whose acts [Guest Services] may be liable." (Id. at p. 11).  The fact that Guest Services agrees to fully indemnify Gallaudet against claims caused by the negligence of the building employees demonstrates that the parties intended for Guest Services to operate as an independent contractor who is directly responsible for controlling its employees, as opposed to an agent of Gallaudet, for whom Gallaudet would be

vicariously responsible.  The existence and scope of the indemnification agreement directly contradicts the argument that Gallaudet is vicariously responsible for the acts of Guest Services' employees working in the building.

In addition, the testimony of Gary Aller, Gallaudet's Director of Business Operations, who was the liaison between Gallaudet and Guest Services, demonstrates that Gallaudet did not control the actions of Guest Services.  Aller testified that Guest Services had total maintenance and fire control responsibility for the facility.  (See Exhibit 3 of Plaintiff's Response to Defendant's Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts of Its Summary Judgment Motion, excerpts of deposition of Gary Aller at p. 30-31).  He testified that David Ham of Guest Services was responsible for the supervision of all maintenance of the facility.  (Id. at p. 61-62).

The only reference defendant makes to the record regarding the course of dealings between Gallaudet and Guest Services to support it argument that Guest Services was an agent is that Gary Aller had sufficient control over Guest Services to recommend and control its termination following the incident.  However, the fact that Aller and Gallaudet could terminate the contract with Guest Services is not the same as asserting control over its actual operations. Gallaudet did not have any authority to terminate individual employees of Guest Services who worked at the maintenance facility.  Pursuant to Section 3.2 of the management agreement, Guest Services had the "sole responsibility" for hiring, discharging and supervising the actual people who worked at the facility.  In addition, Aller was clear in his deposition that the decision to terminate the contract with Guest Services was based on the profitability of the facility and had nothing to do with the water damage incident.  (Id. at p. 41-42).

The Management Agreement and course of dealings between Gallaudet and Guest Services demonstrates that Guest Services is an independent contractor employed by Gallaudet

to manage the building and not an agent of Gallaudet. Therefore, Gallaudet is not vicariously liable for the actions of Guest Services. Even if Guest Services was the agent of Gallaudet, summary judgment is still appropriate because there is no material dispute of facts that Capitol Sprinkler breached its contractual obligations.

### D.   THE AFFIDAVITS FROM VERNON VANE ARE "SHAM AFFIDAVITS" AND SHOULD NOT BE CONSIDERED BY THE COURT

The "sham affidavit" rule precludes a party from creating an issue of material fact on summary judgment by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior testimony. Galvin v. Eli Lilly and Co., 488 F.3d 1026, 1030 (D.C. Cir. 2007). The District Court has broad discretion whether or not to consider a supplemental affidavit. Id. A supplemental affidavit filed by an interested party should not be deemed inadmissible solely because it was filed in response to a motion for summary judgment; the important considerations are whether the affidavit contradicts a prior sworn statement without justification or the filing party breached its obligations in discovery. Id. Parties should not be permitted to "recharacterize" their testimony. Id. The critical issue is whether the supplemental affidavits contradict or clarify the prior testimony. Id.

Defendant relies on an affidavit of Vernon Vane dated February 7, 2008 in support of its opposition. (See Exhibit J of Defendant's Statement of Genuine Issues In Opposition to Plaintiff's Motion For Partial Summary Judgment). The affidavit addresses the identification of Terrance Hubbard. As discussed in detail in *Plaintiff's Response to Defendant Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts In Support of Its Summary Judgment Motion*, Vane's affidavit directly contradicts his prior deposition testimony. (See ¶21 of Plaintiff's Response to Defendant's Statement of Material Facts). The defendant fails to provide any

persuasive reasons to suggest to the Court that the supplemental affidavit is more accurate than the prior testimony. Accordingly, the affidavit of Vernon Vane is a textbook example of a "sham affidavit" and therefore should not be considered by the Court in deciding this Motion.

Defendant also relies on an affidavit of Vernon Vane dated January 17, 2008 in its opposition. (See Exhibit G of Defendant's Statement of Genuine Issues In Opposition to Plaintiff's Motion For Partial Summary Judgment). This affidavit discusses NFPA 25 and includes opinions from Vane regarding the application and interpretation of NFPA 25. Plaintiff submits that this affidavit contains expert opinion which should not be considered by the Court. Defendant has not established the foundational requirements for Vane to provide opinion testimony. In addition, this Court has already ruled that defendant cannot have an expert in this case because defendant failed to comply with the strict expert disclosure requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure. Even though Vane is a representative of the defendant and not an expert specifically retained to provide expert testimony, if he is going to offer opinion testimony, he should have been disclosed under Rule 26(a)(2)(A). Defendant failed to comply with its discovery obligations because it did not name Vane as someone who would be providing opinion testimony. The failure to comply with its discovery obligations is a sufficient basis for this Court not to consider a supplemental affidavit from a party representative. Galvin, 488 F.3d at 1030. The Court should not consider either of the "sham affidavits" from Vane in ruling on plaintiff's summary judgment motion.

### E.    THERE WAS NO MATERIAL BREACH OF THE CONTRACT

Defendant argues that it was excused from its express contractual obligation to drain all drum drips by virtue of the fact that Gallaudet's building management company, Guest Services, failed to provide defendant's inspectors with access to the sprinkler system. Defendant asserts that in doing so, Guest Services materially breached the contract, which excused defendant from

complying with its express contractual obligations.  Defendant relies on NFPA 25 § 1-4.1, which requires the owner to provide "ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance."  The Appendix to NFPA 25 for this section clarifies the responsibility of the building owner to provide access.  "The components are not required to be open or exposed.  Doors, removable panels, or valve pits may be permitted to satisfy the need for accessibility.  Such equipment should not be obstructed by features such as walls, ducts, columns, direct burial or stock storage."  NFPA 25 §A-1-4.1 (See Exhibit 4 of Plaintiff's Response to Defendant's Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts of Its Summary Judgment Motion).  Therefore, the fact that a door may have initially been locked during the inspection does not violate NFPA 25.

However, even assuming that it did, Capitol Sprinkler still cannot establish that either Gallaudet or Guest Services failed to provide ready accessibility to the system.  Capitol Sprinkler's employee's own testimony establishes that an unidentified building escort accompanied them throughout the building and provided them access to the entire system, with the exception of the room containing the Drum Drip.  The building escort did not have the key on his person to the room where the Drip Drum was and advised the Capitol Sprinkler inspectors that he needed to go get it.  Capitol Sprinkler readily admits that its employees did not ask him to go get the key and that the building escort did not refuse to provide them access or to go get the key.  (See Exhibit 7 of Plaintiff's Response to Defendant's Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts of Its Summary Judgment Motion, excerpts of Bowlin deposition at p. 52, 54, 56 & 76).

Even if the Court fully credits Bowlin's testimony, it only establishes that defendant's inspectors made the decision to rely on the building escort to go back and drain the Drum Drip rather than just asking him to go get the key so they could go in and drain the Drum Drip

14

themselves in accordance with defendant's express contractual obligation. The fact that the building escort did not have the key on his person to provide them access to the last room when they arrived there certainly does not establish that Guest Services or Gallaudet materially breached the contract.

Even if the defendant is given the benefit of all factual inferences and can establish that Guest Services did not provide immediate access to the Drum Drip, and was acting as the agent of Gallaudet when it failed to do so, the alleged conduct of Guest Services does not constitute a material breach of the contract. Plaintiff maintains that there is absolutely no admissible evidence whatsoever to support the argument that the contract was materially breached by either Gallaudet or Guest Services.

### F.     THERE WAS NO FRUSTRATION OF THE PRINCIPAL PURPOSE OF THE CONTRACT

Defendant also argues that it was relieved of its contractual obligation because the alleged failure of the building escort to provide access to the Drum Drip frustrated the principal purpose of the contract. It appears that defendant confuses frustration of purpose and impossibility/commercial impracticability. In Island Development Corp. v. District of Columbia, the D.C. Court of Appeals discussed the distinction between the doctrines of frustration of purpose and impossibility/commercial impracticability. 933 A.2d 340 (D.C. 2007). Frustration of purpose is closely related to the doctrine of impossibility or commercial impracticability, however, they are distinct legal theories. Id. at 349. "Under the frustration defense, the promissor's performance is excused because changed conditions have rendered the performance bargained from the promisee worthless, **not because the promissor's performance has become different or impracticable**." Id. (emphasis added). Under a frustration analysis the court is concerned with the impact of the event upon the failure of the consideration. Id.

Defendant's only argument in support of a frustration of purpose defense is that Guest Services failed to provide access to the Drum Drip.  Defendant argues that the failure to provide access to the Drum Drip frustrated the purpose of the contract.[4]  However, failure to provide access to the Drum Drip would not frustrate the purpose of the contract.  Under the contract, the only performance bargained from the promisee, Gallaudet and/or Guest Services, is to pay the promissor, Capitol Sprinkler, for doing the inspections.  Accordingly, in order for defendant to rely on a frustration defense to excuse its express contractual obligations, defendant needs to establish that some changed condition made the performance bargained from the promisee, payment for the inspection services, worthless to Capitol Sprinkler.  There has been no such showing.  In fact, this argument is directly contradicted by the facts of the case in which Guest Services still relied on Capitol Sprinkler to complete the inspection and paid Capitol Sprinkler for its inspection services.

Although defendant couches its argument as one of frustration of purpose, defendant really seems to be attempting to make an impossibility or commercial impracticability argument because it alleges it was not provided access, which prevented defendant from carrying out its express contractual obligations.  An argument under that theory is similarly unavailing.[5]  It is

---

[4] Defendant raised a similar argument in its own motion for summary judgment.  However, defendant appears to have slightly changed the legal argument in its opposition.

[5] When circumstances beyond a party's control make performance of a contract impossible or commercially impracticable, the party failing to perform is exonerated.  933 A.2d at 350.  Impossibility is not limited to absolute or legal impossibility, it includes impracticability due to extreme or unreasonable difficulty or expense.  Id.  However, it must be real impossibility and not a mere inconvenience or unexpected difficulty.  Id.  A party is expected to use reasonable efforts to surmount obstacles to performance and performance is impracticable only in spite of such efforts.  Id.  The testimony of Bowlin, Capitol Sprinkler's own inspector, demonstrates that it was neither impossible nor commercially impracticable for Capitol Sprinkler to comply with its express contractual obligations to drain the Drum Drip.  The fact that the building escort did not have the key with him and could not provide immediate access to the room with the Drum Drip was at most an inconvenience.  Bowlin admitted that he did not ask the building escort to go get the key.  Nor did the building escort ever refuse to go get the key.  Bowlin and his helper made no attempt whatsoever to get access to the room once he found out the building escort did

irrelevant whether the argument is one of frustration or impossibility because there are no facts in the record to support either contractual defense.

### G.    THERE WAS NO ORAL MODIFICATION OF THE INSPECTION CONTRACT

In its Motion, defendant argues that the alleged statement by the unidentified building escort orally modified the written sprinkler inspection contract and therefore relieved defendant of its express contractual obligations under the contract.  The defendant correctly points out that under D.C. law, a written contract may be modified orally.  Puma v. Sullivan, 746 A.2d 871 (D.C. 2000); Landow v. Georgetown-Inland West Corp., 454 A.2d 310 (D.C. 1982); Gagnon v. Wright, 200 A.2d 196 (D.C. 1964).   However, defendant seems to suggest that oral modification of a contract is automatically accomplished if any employee of one of the parties to the contract agrees to something.  The parties to a contract are free to modify the contract by mutual assent. However, in order to be valid the modification must possess the same elements of consideration as necessary for normal contract formation.  Rinck v. Assoc. of Reserve City Bankers, 676 A.2d 12, 17 (D.C. 1996); Hershon v. The Hellman Co., 565 A.2d 282, 283 (D.C. 1989).  In addition, the person orally modifying the contract must also have the authority to bind the party to a contract.  See National Railroad Passenger Corp. v. Expresstrak, LLC, 2006 WL 2947555 at * 13 (D.D.C. 2006)(holding low level employees did not have authority to enter into or orally modify contract between their respective employers).

The burden is on the party arguing that the contract has been modified to establish the modification by a preponderance of the evidence.  Puma, 746 A.2d at 875; Gagnon, 200 A.2d at

---

not have the key.  Instead, Bowlin allegedly requested that the building escort drain the Drum Drip himself.  (See Exhibit 7 of Plaintiff's Response to Defendant's Capitol Sprinkler Inspection, Inc.'s Statement of Material Facts of Its Summary Judgment Motion at p. 52, 54, 56 & 76). Accordingly, Bowlin made no reasonable effort to surmount the minor obstacle to the performance of Capitol Sprinkler's own express contractual duties.  In addition, there was no unreasonable expense or undue hardship associated with Capitol Sprinkler getting the key and draining the Drum Drip.

198.  Accordingly, the burden is on defendant Capitol Sprinkler to establish that: (1) there was mutual assent to modify the contract; (2) there was consideration supporting the modification of the contract; (3) the unidentified building escort allegedly agreeing to the modification had authority to bind Guest Services and/or Gallaudet to a modification of the existing written contract; and (4) Michael Bowlin had authority to modify the contract on behalf of Capitol Sprinkler.  In this case, the defendant has not cited any admissible evidence whatsoever to establish a modification of the contract.

The only evidence defendant has of the alleged oral modification is the uncorroborated testimony by Michael Bowlin that an unidentified building escort agreed to drain the Drum Drip. There is nothing in Capitol Sprinkler's own inspection report for January 9, 2003 to confirm that there was any agreement by the unidentified building escort to drain the Drum Drip or to modify the inspection contract.  Nor is there any other documentation whatsoever confirming the alleged modification of the contract.  In addition, Capitol Sprinkler did not provide any notice to Guest Services or Gallaudet that there had been a modification of the inspection contract.  In fact, the first time that Capitol Sprinkler ever even raised the issue of modification of the contract was in its own motion for summary judgment.

The testimony of Capitol Sprinkler's own employees proves that it cannot identify the person who allegedly agreed to drain the Drum Drip and to the oral modification of the contract. Capitol Sprinkler cannot possibly meet its burden of establishing there was an oral modification of a contract when it cannot even identify the person who allegedly agreed to the modification.

Moreover, in order for a written contract to be orally modified, there must be consideration.  In this case there was no consideration provided to Guest Services and/or Gallaudet to modify the written inspection contract.  Although there was mutual consideration for the original inspection contract, wherein Capitol Sprinkler agreed to perform a service for

Guest Services and Gallaudet in exchange for a fee, if the services to be provided by Capitol Sprinkler were going to be changed, then there should have been a change in consideration to account for the reduced services to be provided. Absent some consideration, there can be no modification.

In addition, Capitol Sprinkler cannot establish that the unidentified building escort had any authority whatsoever to bind Guest Services and/or Gallaudet to a modified contract. There is no evidence provided by defendant that a the unidentified building escort had any authority whatsoever to enter into a contract on behalf of Guest Services or Gallaudet. Nor is there any evidence that the unidentified person had any authority to modify the existing contract. Moreover, defendant cannot even establish through the record that its own representative, Michael Bowlin, had any authority to modify the contract on behalf of defendant.

Plaintiff maintains that there is absolutely no evidence whatsoever to support the argument that the contract was orally modified.

### III.    <u>CONCLUSION</u>

There is no dispute that Capitol Sprinkler breached its express contractual obligation to drain the Drum Drip. Defendant admits as much in all of its motion papers. Defendant raises various legal defenses, which its alleges excuse its breach of its contractual obligations. However, even if defendant is given the benefit of all factual inferences, there are no facts in the record to support defendant's legal defenses. Therefore, there are no issues of material fact with regard to plaintiff's contract claim and the Court should grant plaintiff's Motion for Partial Summary Judgment.

Based on the factual record and the legal argument set forth in the foregoing memorandum as well as in *Plaintiff's Memorandum of Points and Authorities in Support of Its Motion For Partial Summary Judgment*, plaintiff respectfully requests that this Honorable Court

grant its motion for partial summary judgment and direct a verdict as a matter of law against

defendant Capitol Sprinkler on plaintiff's contract claim.

<div style="margin-left:40%">

Respectfully submitted,

COZEN O'CONNOR

BY:  s/ David J. Groth_____
DAVID J. GROTH, ESQUIRE (phv)
DANIEL J. LUCCARO, ESQUIRE (phv)
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000

MESIROW & STRAVITZ, PLLC

BY:  s/Eric N. Stravitz_____
Eric N. Stravitz, Esquire (D.C. Bar #438093)
1307 New Hampshire Avenue, N.W., Suite 400
Washington, DC 20036
(202) 463-0303

Attorneys for Plaintiff

</div>