**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, as Subrogee of Gallaudet University | : |
| | : |
| Plaintiff | : |
| | : |
| vs. | : |
| | : |
| CAPITOL SPRINKLER INSPECTION, INC | : CASE NUMBER:  1:05CV02115 (CKK) |
| | : |
| Defendant | : |
| | : |
| vs. | : |
| | : |
| GUEST SERVICES, INC. | : |
| | : |
| Third-Party Defendant | : |

**DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**GUEST SERVICES' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rules 7(h) and 56.1 of Local Rules of the United States District Court for the District of Columbia, Defendant Capitol Sprinkler Inspection, Inc. ("Capitol Sprinkler") hereby submits the following Memorandum of Points and Authorities in Opposition to Guest Services' Motion for Summary Judgment:

# Table of Contents

**Page**

TABLE OF CITATIONS………………………………………………………………iii

I.    INTRODUCTION……………………………………………………………...1

II.   LEGAL ARGUMENT……………………………………………………………2

    A.    SUMMARY JUDGMENT STANDARD...……………………………………3

    B.    GUEST SERVICES NEGLIGENTLY PERFORMED ITS DUTIES UNDER THE NATIONAL FIRE PROTECTION ASSOCIATION STANDARDS, WHICH ARE WASHINGTON D.C. LAW...……………………………………5

    C.    GUEST SERVICES IS BOUND BY THE ACTIONS OF ITS EMPLOYEE, WHICH VIOLATED A STATUTORY DUTY AND WHICH AFFECTED CAPITOL SPRINKLER'S CONTRACTUAL DUTIES ..………………...….…...8

    D.    GUEST SERVICES' BREACH OF THE CONTRACT RELIEVES CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER THAT CONTRACT…………………………………………………….…...11

        1.    The Court first look to the face of the contract between Capitol Sprinkler and Guest Services, on behalf of Gallaudet...………...11

        2.    The contract incorporates the duties imposed by the inspection, testing and maintenance standards of the NFPA through the contract as well as by regulation...……………………………….....11

        3.    Capitol Sprinkler's complete performance under the contract is excused in light of the material breach of the contract by Guest Services.……………………………………………………12

    E.    GUEST SERVICES' ACTIONS FRUSTRATED THE PRINCIPAL PURPOSE OF THE CONTRACT, THEREBY RELIEVING CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER THAT CONTRACT……………………………………………………...…14

    F.    GUEST SERVICES ORALLY MODIFIED THE CONTRACT, THEREBY ASSUMING THE DUTY TO DRAIN THE DRUM DRIP……………………………………………………...……...15

G.    GUEST SERVICES MAY STILL BE LIABLE TO CAPITOL
SPRINKLER FOR CONTRIBUTION OR INDEMNIFICATION
EVEN THROUGH THE WAIVER OF SUBROGATION CLAUSE
BARRED A CLAIM BY PLAINTIFF AGAINST
GUEST SERVICES …………………………………………………..…18

IV.    CONCLUSION...……………………………………………………...……….22

{DE103474.1}

<u>**TABLE OF CITATIONS**</u>

<u>**Page**</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………….…………….…. 4, 5

*Arrington v. United States*, 473 F.3d 329 (D.C. Cir. 2006) ……………………………..... 4

*Ashcraft & Gerel v. Coady*, 244 F. 3d 948 (D.C. Cir. 2001) …………………………..…12, 13

*Benz v. The Washington Newspaper Publishing Company,*
LLC, 2007 U.S. Dist LEXIS 44087 (D.D.C. 2007) ……………………………………..... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ……………………………………….....3, 4, 5

*Cobell v. Norton*, 260 F.Supp. 110 (D.D.C. 2003) ………………………………………… 3

*Communications Workers Of America, AFL-CIO, v. Verizon Services, Inc.,*
    404 F. Supp. 2d 62 (D.D.C. 2005)..…………………………………………………..4

*District of Columbia v. Washington Hospital Center*, 722 A.2d 332 (D.C. 1998) ……….. 19, 21

*Dorsky Hodgon & Partners v. National Council of Senior Citizens,*
    766 A.2d 54 (2001)…………………………………………………………………..9

*Farmland Industries, Inc. v. Grain Board of Iraq*, 904 F.2d 732 (D.C. Cir. 1990) ……….….11

*Gagnon v. Wright*, 200 A.2d 196 (D.C. 1964) ……………………………………………15, 16

*George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005)…………………………………….......4

*Hydrite Chemical Company v. Calumet Lubricants Company,*
    47 F.3d 887, 892 (7th Cir. 1995)…………………………………………………16

*Insurance Management, Inc. v. Eno Howard Plumbing Corp.,*
    348 A.2d 310, 312 (D.C. 1975)…………………………………………………...9

*Island Development Corporation v. District of Columbia,*
    933 A.2d 340 (D.C. App 2007)…………………………………………………...11, 14

*Judah v. Burton, Reinder & Morris Management, Inc.,*
    744 A.2d 1037 (D.C. App. 2000) …………………………………………………8

*KiSKA Construction Corporation-USA v. Washington Metropolitan Area Transit Authority,*
    321 F.3d 1151 (D.C. Cir. 2003) …………………………………………………...11

*Lamphier v. Washington Hospital Center*, 524 A.2d 729 (D.C. 1987) )…………………..…… 21

*Landow v. Georgetown-Inland West Corp.,*
    454 A.2d 310 (D.C. App. 1982) …………………………………………..……..16

*Makins v. District of Columbia*, 861 A.2d 590 (D.C. 2004)…………………………………….9

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)…………………..…4

*Nickel v. Scott,* 59 A.2d 206, 207 (D.C. 1948)………………………………………………..15

*Penn Cent. Transp. Co. v. Reddick,* 398 A.2d 27, 29 (D.C. 1979)………………………………..8

*Puma v. Sullivan*, 746 A.2d 871 (D.C. App. 2000) ………………………..…………. 15, 16, 17

*Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432 (D.C. 2000) ………………......... 19

*R & G Orthopedic Appliances v. Curtin*, 596 A.2d 530 (D.C. 1991) ………………….............19

*Schecter v. Merchants Home Delivery*, 892 A.2d 415 (D.C. 2006) ………………….............. 8

*Sidibe v. Traveler's Insurance Company*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006)……………….5

*Smith v. Jenkins,* 452 A.2d 333, 335 (D.C. 1982)…………………………………………………8

*Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007)……………...11

*Stanwood v. Welch*, 922 F. Supp. 635, 639 (D.D.C. 1995)………………………………………5

*Steele v. Isikoff*, 130 F. Supp. 2d 23 (2000)..……………………………………………………13

*Sundown, Inc. v. Canal Square Associates*, 390 A.2d 421, 432 (D.C. 1978)…………………...11

*Washington v. Washington Hospital Center*, 579 A.2d 177 (D.C. App. 1990) ……..…….…... 20

## **Other**

FRCP 56(e)..………………………………………………………………………..………...4

Fed. R. Evid. 801(c) ………..………………………………………………………….……... 16

*D.C. Code § 6-1403.01*………..………………………………………………….………... 6

*CDCR § 12A-101.4.6*…...…………..………………………………………….………... 6

*ICC International Fire Code* (2000)…..……………………………………………….……… 6

{DE103474.1}

*NFPA 25, § 1-4.1* (1998) ……………………………………………………………... 7

*NFPA 25, § 1-4.2* (1998)…………………………………………………………….. 7

*NFPA 25, § 4.1.1* (2002)……………………………………………..……….. 6

*NFPA 25, § 4.1.2* (2002)……………………………………………..…… 6, 17

*NFPA 25 § 4.1.2.3* (2002)……………………………………………….……… 6

*NFPA 25 § 4.1.2.4* (2002)……………………………………….………... 6, 17

*Restatement (Second) of Agency § 8*…………………………………………….9

*Restatement (Second) of Agency § 228*…………………………………………...8

*Restatement (Second) of Contracts § 237*…………………………………………12, 13

*Restatement (Second) Of Contracts: Discharge By Supervening
    Frustration § 265* (1981)……………………………………………………...14

v

## I.    __INTRODUCTION__

During the 1990's, Gallaudet University ("Gallaudet") engaged Capitol Sprinkler to install a dry-pipe fire protection system at its Kellogg Conference Center.  Capitol Sprinkler subsequently executed an inspection contract with Gallaudet through Aramark, Gallaudet's property management agent at the time and performed semi-annual inspections and trip tests on the system.  (Exhibit A at P.35, L.2 - P.35, L.21).  Capitol Sprinkler performed these inspections and trip-tests from 1996 to 1999.  The record is devoid of any suggestion that during this period, Capitol Sprinkler's inspectors had any problems gaining the access necessary to perform their inspections and related service or that any freeze failures occurred.

On April 22, 2002, Guest Services, Inc. ("Guest Services"), acting as Gallaudet's new property management agent, secured Capitol Sprinkler's services to perform semi-annual inspections and trip tests on the system. (Exhibit B, Complaint ¶8; Exhibit C, Answer ¶8; Exhibit L, Contract for Automatic Sprinkler Equipment Inspection Service).  Capitol Sprinkler's inspectors had no independent access to the Kellogg Conference Center.  Instead, an employee of Guest Services was required to escort Capitol Sprinkler's inspectors through the building while they performed their inspections.  (Exhibit E, at P.34, L.19 - P.35, L.1).  The escort was necessary to unlock the various valves and open the appropriate rooms so an inspector, such as Mr. Bowlin, could have access to system components situated behind those locked doors. (Exhibit E at P.33, L.10-22).

During the inspection on January 9, 2003, Mr. Bowlin was to drain a drum drip located in the ceiling of room 5200, among drum drips in other locations.  When Mr. Bowlin reached room 5200, the door to the room was locked and the Guest Services escort did not have the card key to open it and provide access to the drum drip.  (Exhibit E at P.51, L.8 - P.52, L.3)  The escort made

no effort to get the card key necessary to provide access to the room, instead offering to take care of draining the drum drip himself. (Exhibit E at P.53, L.4-6). Since the escort did not provide Mr. Bowlin access to the room, or the drum drip within, Mr. Bowlin asked the escort whether he would take care of that particular drum drip. (Exhibit E at P.54, L.7-17). The escort indicated that he would do so. (Id.) It was not unusual for this employee to make such an offer since the building engineer's responsibilities include keeping the drum drips or low points drained. (Exhibit E at P.21, L.14 - P. 22, L.8; Exhibit F at P.53, L.16 - P.54, L.3). Building maintenance personnel are required to know how to perform this function and, in the past, employees of property management agents had assisted Capitol Sprinkler in draining drum drips while acting at the direction or with the knowledge of the inspector. (Exhibit E at P.21, L.14 - P.22, L.8).

For the reasons stated herein, Capitol Sprinkler submits that it is not liable for the damages sustained by Plaintiff in this case, and that Guest Services' own negligence and breach of contract makes it liable for Plaintiff's damages, and accordingly, that the Court should DENY Guest Services' Motion.

## II.    LEGAL ARGUMENT

Guest Services is responsible for Gallaudet's damages under theories of negligence and breach of contract. The National Fire Protection Association ("NFPA") standards govern a property owner's duties for inspecting, testing, and maintaining fire suppression systems in buildings such as the Kellogg Conference Center. The NFPA imposes a duty upon the property owner and its agents to provide sprinkler system inspectors with access to the necessary components of the sprinkler system. The NFPA also imposes a duty upon the property owner and its agents to monitor the sprinkler system. Guest Services, acting as Gallaudet's agent, did not do this. Therefore, Guest Services was negligent in the performance of its duties under the

{DE103474.1}

NFPA. This negligence was independent of its contract with Capitol Sprinkler and caused Gallaudet's damages.

Additionally, Guest Services breached its contract with Capitol Sprinkler so as to cause the damages claimed by Gallaudet. The contract provided that Capitol Sprinkler would conduct its inspections and tests pursuant to the applicable provisions of the NFPA standards. The NFPA imposes a duty upon the property owner and its agents to provide the inspectors with access to the necessary components of the sprinkler system. Guest Services, acting as Gallaudet's agent, did not do this. Consequently, Capitol Sprinkler was relieved of its duty to drain the subject drum drip because Guest Services breached the contract and because it frustrated the principal purpose of the contract.

Being unable or unwilling to provide the necessary access, Guest Services agreed to drain the subject drum drip, which it failed to do. Guest Services modified the contract with Capitol Sprinkler by reassuming its duty to maintain the sprinkler system. This modification relieved Capitol Sprinkler of the duty to drain this particular drum drip. Thereafter, Guest Services breached the modified contract and caused Gallaudet's damages.

Guest Services acted as an agent for Gallaudet when it dealt with Capitol Sprinkler. As Guest Services caused the damages to Gallaudet, Guest Services is responsible for those damages and owes Capitol Sprinkler contribution and indemnification.

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment shall only be entered where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cobell v. Norton*, 260 F.Supp. 110, 116 (D.D.C. 2003); see also *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986). Through this analysis, the Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"[T]he substantive law will identify which facts are material." *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006). "To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Communications Workers Of America, AFL-CIO v. Verizon Services, Inc.*, 404 F. Supp. 2d 62, 66 (D.D.C. 2005) (citations omitted). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Arrington*, 473 F.3d at 333 (citing *Liberty Lobby*, 477 U.S. at 249). Even if a jury might ultimately choose not to believe the version of events presented by a non-movant, this is not the basis on which the Court's decision may rest. *Id.* (citing *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005)).

The moving party bears the initial burden of establishing that no "genuine issue of material fact" exists and that judgment in its favor should be entered by citing to credible evidence of the type discussed in Rule 56. *Celotex*, 477 U.S. at 322-24. Should the moving party carry its burden, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); See also *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[This does not] mean that the nonmoving party must produce evidence in a form that would be admissible at

trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324 (emphasis added). Rather, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make [its showing]." *Id.*

"In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party." *Sidibe v. Traveler's Insurance Company*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006) (citations omitted). In fact, "the court must assess the factual record by assuming the truth of the non-movant's evidence and drawing all justifiable inferences in that party's favor." *Stanwood v. Welch*, 922 F. Supp. 635, 639 (D.D.C. 1995) (citations omitted) (emphasis added). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 259. If the Court determines that there exists "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," which, when considered in the light most favorable to the non-moving party and with all reasonable inference resolved in favor of the non-moving party, demonstrates the existence of a question of material fact, it must deny a motion for summary judgment on that basis. *Celotex*, 477 U.S. at 324.

**B.    GUEST SERVICES NEGLIGENTLY PERFORMED ITS DUTIES UNDER THE NATIONAL FIRE PROTECTION ASSOCIATION STANDARDS, WHICH ARE WASHINGTON D.C. LAW.**

The statutory duties imposed upon Gallaudet and Guest Services are set forth by the National Fire Protection Association (NFPA) standard that applies to the inspection, testing, and maintenance of the Kellogg Conference Center sprinkler system. The District of Columbia adopted NFPA 25 as the standard governing inspections, testing, and maintenance of the fire protection systems throughout the jurisdiction. The District expressly adopted the ICC

5

International Fire Code. See *D.C. Code § 6-1403.01; CDCR § 12A-101.4.6.* NFPA 25 is the required standard for inspections, testing and maintenance of water based fire protection systems under the International Fire Code. See *ICC International Fire Code, Chap. 5, (2000)* ("Fire Protection Systems").

Under NFPA 25, Gallaudet, as the owner of the hotel, had a continuing duty to provide access to the fire protection system, and to ensure that all inspections, tests, and maintenance were performed on the system. This duty arose as of the day the hotel was built.

As Gallaudet's property management agent, Guest Services was obliged to ensure this duty was fulfilled. Where, as here, the owner contracts with a property management agent to perform these duties, the agent stands in the shoes of the owner with respect to the owner's duties under NFPA 25. Guest Services contractually accepted the duty to provide Capitol Sprinkler 'ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.'

The 2002 edition of NFPA 25 provides that:

> The responsibility for properly maintaining a water-based fire protection system shall be that of the owner of the property. *NFPA 25, § 4.1.2* (2002).

> The property owner or occupant shall provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance. *NFPA 25, § 4.1.1* (2002).

> Where the property owner is not the occupant, the property owner shall be permitted to pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract. *NFPA 25 § 4.1.2.3* (2002).

> Where an occupant, management firm, or managing individual has received the authority for inspection, testing, and maintenance, the occupant, management firm, or managing individual shall comply with the requirements identified for the owner or occupant throughout this standard. *NFPA 25 § 4.1.2.4* (2002).

6

These duties remained substantively unchanged from the period when Aramark acted as Gallaudet's property management agent through the period when Guest Services assumed those responsibilities and acted in the same capacity. The edition that immediately preceded the 2002 edition applied in this instance was the 1998 edition of NFPA 25, which provides that:

> The responsibility for properly maintaining a water-based fire protection system shall be that of the owner(s) of the property. By means of periodic inspections, tests, and maintenance, the equipment shall be shown to be in good operating condition, or any defects or impairments shall be revealed.
>
> .    .    .
>
> *Exception:  Where the owner is not the occupant, the owner shall be permitted to pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract.*

*NFPA 25, § 1-4.2* (1998) (emphasis in original). "The owner or occupant shall provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." *NFPA 25, § 1-4.1* (1998).

Thus, Guest Services, as Gallaudet's property management agent, was legally responsible for carrying out the owner's duties under NFPA 25. Guest Services failed to do this because its employee who escorted Capitol's inspectors failed to provide the inspectors access to all drum drips that required inspection. By failing to provide Capitol Sprinkler access to the subject drum drip, Guest Services failed to meet the requisites of NFPA 25. Guest Services also failed to meet the requisites of the NFPA by not maintaining the sprinkler system between inspections. Guest Services failed to reasonably monitor the sprinkler system and failed to stop the flow of water upon notification of the water flow alarm in a reasonable time. Guest Services' failure to provide ready access to the sprinkler system and to maintain the system on its own, in violation

7

of NFPA 25, constituted a negligent statutory violation.  This statutory violation is independent of the contract between Guest Services and Capitol Sprinkler.

### C.    GUEST SERVICES IS BOUND BY THE ACTIONS OF ITS EMPLOYEE, WHICH VIOLATED A STATUTORY DUTY AND WHICH AFFECTED CAPITOL SPRINKLER'S CONTRACTUAL DUTIES.

It is well settled that a principal is responsible for the acts of its agent who, acting within the scope of its authority, performs or withholds performance of the principal's legal or contractual responsibilities.   "Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other consents to do so." *Judah v. Burton, Reinder & Morris Management, Inc.,* 744 A.2d 1037, 1040 (D.C. App. 2000) (citing *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C. 1982)).

Respondent superior is a doctrine of vicarious liability that allows an employer to be held liable for acts of an employee/servant committed within the scope of employment.   *Schecter v. Merchants Home Delivery*, 892 A.2d 415 (D.C. 2006) (citing *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979).  In assessing whether the conduct of an employee falls within the scope of employment, the District of Columbia Court of Appeals follows Section 228 of the *Restatement (Second) of Agency*, which provides that the conduct of a servant is within the scope of employment only if: "(a) it is of a kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; (d) if force is intentionally used by the servant against another, the use of force not unexpected by the master." *Schecter*, 892 A.2d 415 (citing *Restatement (Second) of Agency § 228(1)(a)*).

The District of Columbia Court of Appeals has defined apparent authority as being "the power to affect the legal relations of another person by transactions with third persons, professedly as an agent for the other, arising from and in accordance with the other's

{DE103474.1}

manifestations to such third persons." *Makins v. District of Columbia*, 861 A.2d 590 (D.C. 2004) (citing *Restatement (Second) of Agency* § 8)).   Apparent authority arises when the "principal places an agent in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold." *Insurance Management Inc. v. Eno & Howard Plumbing Corp.*, 348 A.2d 310, 312 (D.C. 1975) (see also *Dorsky Hodgon & Partners v. National Council of Senior Citizens*, 766 A.2d 54 (2001)).

The Guest Services' escort, believed by Capitol Sprinkler to be Terrance Hubbard, bound Guest Services by his actions, regardless of his true name.   When performing their inspections each time, Capitol Sprinkler inspectors reported to the hotel's front desk, which at all relevant times, was manned by Guest Services personnel.   There, an employee of Guest Services greeted the inspectors and escorted them throughout the hotel while they performed their work on the sprinkler system.   Guest Services stationed this employee at the Conference Center desk and David Ham, Guest Services' Building Engineer/Chief of Maintenance, designated him as the appropriate employee to escort the Capitol Sprinkler inspectors.   Guest Services placed this employee in such a position that it was reasonable for Capitol Sprinkler inspectors to accept that he was employed by Guest Services on behalf of Gallaudet, and as such, had the authority to act on their behalf.

The contract between Gallaudet and Guest Services even provides that all employees working at the Kellogg Conference Center are to be Guest Services employees.   Section 3.2 of the contract provides that "[a]ll persons employed on-site at the [Conference Center] during the terms of this [contract] (including all Salaried Employees) shall be 'Property Employees.' [Guest Services] shall have the sole responsibility for and shall use reasonable care in the hiring, promotion, discharge and supervision of all Property Employees . . . "   (Exhibit D, Gallaudet

9

University Conference Center Management Agreement §3.2).  By the very terms of the contract governing Guest Services' management of the Conference Center, all employees on site were employees of Guest Services.  Guest Services cannot now claim that this was not the case with the escort who dealt directly with the Capitol Sprinkler inspectors.

While Capitol Sprinkler employees believe that Terrance Hubbard was the name of the Guest Services employee who escorted them on the day in question, the exact identity of that employee is not consequential.  Regardless of the name of the Guest Services employee who escorted Capitol Sprinkler's inspectors, that employee was stationed at the hotel front desk manned by Guest Services' employees, and was instructed to attend to the Capitol Sprinkler inspectors.  Guest Services' conduct led the inspectors to reasonably believe that the employee could act on behalf of Guest Services.  The employee's actual identity does not impact the reasonableness of the inspectors' belief.

A principal is responsible for the acts of its agent who performs or withholds performance of the principal's duties while acting within the scope of its authority.  The Guest Services employee/escort acted with authority to bind Guest Services when he made representations to the Capitol Sprinkler inspectors that he would take care of the subject drum drip.  The inspectors reasonably relied upon his statements and actions to their detriment, which binds Guest Services.  If, as in this case, Guest Services' actions breached a statutory duty or altered the parties contractual duties, which then caused damage to the conference center, the liability for the damage will rest with Guest Services.

{DE103474.1}

### D.    GUEST SERVICES' BREACH OF THE CONTRACT RELIEVES CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER THAT CONTRACT.

#### 1.    The Court first looks to the face of the contract between Capitol Sprinkler and Guest Services.

"This jurisdiction adheres to an 'objective' law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties unless the written language is not susceptible of a clear and definite undertaking." *Island Development Corporation v. District of Columbia*, 933 A.2d 340, 347 (D.C. App 2007) (quoting *Sobelsohn v. American Rental Management Co.*, 926 A.2d 713, 718 (D.C. 2007)). "The law requires contracts to be read as a whole, with meaning given to every provision contained therein." *KiSKA Construction Corporation-USA v. Washington Metropolitan Area Transit Authority*, 321 F.3d 1151, 1163 (D.C. Cir. 2003) (cert denied at 540 U.S. 939 (2003)). "When the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties." *Farmland Industries, Inc. v. Grain Board of Iraq*, 904 F.2d 732, 736 (D.C. Cir. 1990) (citing *Sundown, Inc. v. Canal Square Associates*, 390 A.2d 421, 432 (D.C. 1978)).

Here, the contract expressly states that the inspection, testing, and maintenance standards of the National Fire Protection Association (NFPA) apply to inspections of the subject sprinkler system. Although the contract cites NFPA-13A (the predecessor of the current NFPA 25), it is clear that NFPA 25 applies here.

#### 2.    Guest Services was bound by the duties imposed by the inspection, testing, and maintenance standards of the NFPA through the contract as well as by regulation.

11

The duties imposed upon Gallaudet are set forth in the contract as well as regulation. The contract incorporates the applicable inspection, testing, and maintenance standards of the National Fire Protection Association (NFPA) as the standard with which the parties must comply. The parties generally agree that the 2002 edition of NFPA 25 applied to the inspections, testing, and maintenance of the system in this instance. (Exhibit F, Parham Deposition; Exhibit G, Affidavit of Vernon Vane 1/17/08; Exhibit H, McLaughlin Report). Moreover, the District of Columbia adopted NFPA 25 as the standard governing inspections, testing, and maintenance of the fire protection systems throughout the jurisdiction.

Under NFPA 25, Gallaudet, as the owner of the hotel, had a continuing duty to provide access to the fire protection system, and to ensure that all inspections, tests, and maintenance were performed on the system, as discussed in Section B, *infra*.

Thus, Guest Services, as Gallaudet's property management agent, was legally and contractually responsible for carrying out the owner's duties under NFPA 25 and its failure to do so would breach the contract, notwithstanding any individual term of the contract calling for the drum drips to have been drained. Guest Services' failure to provide ready access to the sprinkler system, in violation of NFPA 25, constituted a breach of the contract.

### 3. Capitol Sprinkler's complete performance under the contract is excused in light of the material breach of the contract by Guest Services.

The *Restatement (Second) of Contracts* § 237 states that a "party's continuing obligations under a contract are conditioned on there being no 'uncured material failure by the other party to render any such performance due at an earlier time.'" *Ashcraft & Gerel v. Coady*, 244 F. 3d 948, 950 (D.C. Cir. 2001) (citing *Restatement (Second) of Contracts* § 237 (1981)). "'[O]ne party's material failure of performance has the effect of the non-occurrence of a condition of the other party's remaining duties …'." *Id.* This is true whether there is defective performance or a

complete absence of performance by the breaching party and operates to discharge "the [other party's corresponding] duty when the condition can no longer occur." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 25 (2000) (citations omitted).

Guest Services materially breached the contract by failing to provide Capitol Sprinkler access to all components of the subject sprinkler system that required key access or swipe access, including the subject drum drip, as required under the contract and NFPA 25. Gallaudet as the owner, Guest Services as the owner's agent, and Capitol Sprinkler were all bound by the provisions of NFPA 25. That standard required the owner or its agent to provide ready accessibility to all components of the subject fire protection system that required inspection, testing, or maintenance.

Where, as here, the owner contracts with a property management agent to perform these duties, the agent stands in the shoes of the owner with respect to the owner's duties under NFPA 25. Guest Services contractually accepted the duty to provide Capitol Sprinkler 'ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance.' Guest Services failed to do this because its employee who escorted Capitol's inspectors did not provide the inspectors access to all drum drips that required inspection. When, as here, the performance obligations of one party to a contract can only feasibly be fulfilled upon successful performance by another party to the contract, failure of that party's performance constitutes a material breach that forgives the other's performance. See *Restatement (Second) of Contracts* § 237; see also *Ashcraft and Gerel v. Coady*, 244 F.3d 948 (D.C. Cir. 2001). By failing to provide Capitol Sprinkler access to the subject drum drip, Guest Services failed to meet the requisites of NFPA 25 and consequently, breached the contract,

13

thereby relieving Capitol Sprinkler of its obligation to perform under that contract. Capitol Sprinkler no longer had the duty to drain the drum drip.

### E.    GUEST SERVICES' ACTIONS FRUSTRATED THE PRINCIPAL PURPOSE OF THE CONTRACT, THEREBY RELIEVING CAPITOL SPRINKLER OF ITS DUTY TO PERFORM UNDER THAT CONTRACT.

"Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." *Island Development Corporation,* 933 A.2d at 349 (quoting *Restatement (Second) Of Contracts: Discharge By Supervening Frustration* § 265 (1981)).

Guest Services' failure to provide Capitol Sprinkler's inspectors access to the subject drum drip frustrated the principal purpose of the contract. It is undisputed that Guest Services exclusively controlled access to those portions of the sprinkler system that required key or swipe access. It is likewise undisputed that Capitol Sprinkler's inspectors inspected, and drained the drum drips located in all portions of the subject sprinkler system to which they were given access. Capitol Sprinkler's employees have consistently and repeatedly testified as to the escort's inability to provide access to the subject drum drip. Neither Plaintiff nor Guest Services offer any testimony to contradict this position. Conversely, Capitol Sprinkler has made considerable effort to depose Guest Services employees, David Ham and Terrance Hubbard, both of whom could conceivably offer contradictory testimony. Guest Services has produced neither for deposition, nor any witness pursuant to Fed. R. Civ. P. 30(b)(6). Nor did Guest Services serve any discovery aimed at contraverting this testimony or developing its own defenses. As neither Gallaudet nor Guest Services has presented affirmative testimony or other offers of proof

to contradict this position, they cannot now dispute it.  As such, Capitol's inspectors' ability to inspect the drum drip was frustrated by Guest Services' actions, thereby relieving the inspectors of the obligation to inspect the subject drum drip and drain it so as to render complete performance under the contract.

Further, the record is devoid of any evidence of the room's occupancy at the time of the inspection.  The building is as a hotel, consisting of a lobby with a front desk area, which contains a long, front desk having three computer terminals, a "card keying machine" and safety deposit boxes. (Exhibit I, at P.24 L.7-15, P.49 L.15-22, P.63 L.20 - P.64 L.7, P.68 L.11-16).  At the time of the incident, it housed meeting rooms, an auditorium, a ballroom and 93 guest rooms, among other things.  (Exhibit I at P.49 L.15-22, P.52 L.3-10, P.53 L.9-13, P.55 L.2-7, P.68 L.11-16).  The guest rooms were situated on the fourth and fifth floors, the top two floors of the hotel, and required key-card access.  (Exhibit I at P.52 L.3-10, P.53 L.9-13, P.55 L.2-7, P.133 L.22 - P.134 L.6).  Guest Services employees activated a guest's access card and then gave the card to the hotel guest.  (Exhibit I at P.133 L.22 - P.134 L.6).  Given the fact that this was a hotel and that the room itself could have been occupied at the time of the inspection, it is not unreasonable that Capitol Sprinkler's inspector would have accepted that the subject drum drip was not accessible at the time of his inspection.  Neither Plaintiff nor Guest Services elicited any affirmative evidence on this point.

### F.     GUEST SERVICES ORALLY MODIFIED THE CONTRACT, THEREBY ASSUMING THE DUTY TO DRAIN THE DRUM DRIP.

It is well-established in the District that "a written contract may be modified or rescinded by a subsequent oral agreement . . . but the oral modification must be established by a preponderance of the evidence." *Puma v. Sullivan*, 746 A.2d 871, 875 (D.C. App. 2000) (citing *Nickel v. Scott,* 59 A.2d 206, 207 (D.C. 1948)); see also *Gagnon v. Wright*, 200 A.2d 196, 198

15

(D.C. 1964). Because such statements are inherently against the pecuniary interests of the party making them at the time they are made, "[i]t is direct evidence, not hearsay, when a party to a dispute over a contract testifies to the offer or the acceptance made by the other contracting party." *Id.* at 876 (citing *Hydrite Chemical Company v. Calumet Lubricants Company*, 47 F.3d 887, 892 (7th Cir. 1995)). "Accordingly, <u>[a party's] recitation of [another's] out-of-court offer is admissible for consideration on summary judgment</u> . . . ." *Id.* (emphasis added). Further, such oral modifications will be enforced where the party charged with performance or non-performance of an orally modified term changes his position so materially that fraud would result were the modified term *not* enforced. See e.g. *Landow v. Georgetown-Inland West Corp.*, 454 A.2d 310 (D.C. App. 1982).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Although the Federal Rules of Evidence do not apply in the District of Columbia, "the definition of hearsay in Rule 801(c) is consistent with well-settled law in the District of Columbia and elsewhere." *Puma v. Sullivan*, 746 A.2d at 875 (citations omitted). "From this definition it logically follows that if a statement is not offered to prove the truth of the matter asserted, it is not hearsay." *Id.* (citations omitted).

In *Puma*, an alleged hearsay statement was offered to show that a party modified a contract. The Court stated that "although the statement was made by an out-of-court declarant, it is not hearsay, because [the oral modification] is not an assertion; it is a verbal act. In other words, the [oral modification] is non-hearsay under the general definition, because it is not being used for the truth of the matter it asserts; it simply is being used to prove [a party] spoke the words of [a modification]." Accordingly, the Court deemed the out-of-court statement as

admissible for consideration on summary judgment. *Id.* at 876.  Likewise, in this case, the Guest

Services' employee's statement is admissible to prove that the words of an oral modification

were spoken.

The inspection contract executed by Guest Services on behalf of Gallaudet provides that

the contract is to be performed in a workmanlike manner in accordance with the requirements of

the NFPA.  (Exhibit L).  Pursuant to the applicable provisions of NFPA 25, the owner is initially

charged with the duty to inspect and test a dry pipe fire protection system it owns unless the

owner contracts out for that service.  (*NFPA 25, § 4.1.2* (2002)).  In this case, the owner engaged

Guest Services, by way of a property management contract, dated February 2000, to perform

these duties properly.  Thus, it became Guest Services' duty to fulfill the owner's obligations

under NFPA 25.  (*NFPA 25 § 4.1.2.4* (2002)).  It is undisputed that Guest Services, on

Gallaudet's behalf, executed the contract with Capitol Sprinkler for the performance of the

required sprinkler inspections.  Plaintiff admits, and Capitol Sprinkler agrees, that Guest Services

had full authority to bind Gallaudet (the owner) in the performance of its contract with Capitol

Sprinkler.

As Guest Services had the authority to contract for these services, it also had the authority

to modify any such contract whether in writing, orally, or through the course of its dealings with

Capitol Sprinkler.  That is precisely what happened in this case.  The escort provided by Guest

Services to control Capitol Sprinkler's access to the subject sprinkler system, including the

necessary drum drips, agreed to undertake the performance of a very specific limited aspect of

the contact - the draining of the one particular drum drip at issue in this loss.  In reliance on that

representation, Capitol Sprinkler's inspector left the building under the reasonable impression

that his duty there was complete and that the subject drum drip would be properly drained.

Guest Services modified the contract by assuming the duty to drain this particular drum drip on this one occasion.

It appears that the Guest Services employee did not drain the drum drip. This apparent failure is inconsistent with Guest Services' duty as the owner's property management agent under NFPA 25, constitutes a material breach of the modified contract, and provides Capitol Sprinkler with a complete defense to Plaintiff's allegation of breach of contract.

Neither Plaintiff nor Guest Services has produced any affirmative evidence to discredit the testimony of Mr. Parham, Mr. Vane, Mr. Bowlin, or Mr. Scott. Guest Services cannot dispute this modification now as such an oral modification of the written contract is enforceable under District of Columbia *juris prudence*.

### G.    GUEST SERVICES MAY STILL BE LIABLE TO CAPITOL SPRINKLER FOR CONTRIBUTION OR INDEMNIFICATION EVEN THOUGH THE WAIVER OF SUBROGATION CLAUSE BARRED A CLAIM BY PLAINTIFF AGAINST GUEST SERVICES.

Guest Services claims it is not liable to Capitol Sprinkler for contribution or indemnification because it cannot be liable to Plaintiff. The contract between Gallaudet and Guest Services contains a waiver of subrogation clause. Therefore, Plaintiff cannot 'step in Gallaudet's shoes' and bring a claim against Guest Services. Accordingly, Guest Services argues that if Plaintiff cannot bring a claim against it, it cannot be liable for any damages suffered by Gallaudet and Plaintiff, and therefore, cannot be liable for contribution or indemnification as a third-party defendant. This is incorrect. Upon the authority below, Capitol Sprinkler submits that while Plaintiff may not bring a direct claim against Guest Services, and Guest Services may not be responsible for paying Plaintiff's damages directly, Plaintiff's inability to be a subrogee against Guest Services does not prevent Guest Services from being fully responsible for the damages through contribution or indemnity.

18

First, regardless of the respective claims for liability, Guest Services should be required to indemnify Capitol Sprinkler for any damages that may be assessed against it, liability for which Capitol Sprinkler expressly denies. "Indemnity is [available] where the indemnitee's conduct was not as blameworthy as that of the indemnitor when based upon equitable principles." *Benz v. The Washington Newspaper Publishing Company*, LLC, 2007 U.S. Dist LEXIS 44087, *11 (D.D.C. 2007) (citations and internal quotes omitted*)* (attached as Exhibit R). "Indemnity has been granted to prevent unjust enrichment in situations where '[t]he indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied.'" *Id.* at *11 (quoting *District of Columbia v. Washington Hospital Center*, 722 A.2d 332, 340 (D.C. 1998)). "[T]he obligation to indemnify may be implied in fact (on an implied contract theory) or implied in law in order to achieve an equitable result." *Id.* (quoting *R & G Orthopedic Appliances v. Curtin*, 596 A.2d 530, 544 (D.C. 1991)). If there is no contractual indemnification provision, there may still be an obligation to indemnify . . . in order to achieve equitable results. *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. 2000) (citation omitted).

In this case, Guest Services agreed to drain the subject drum drip after it failed to provide ready access to the same, in violation of its own contractual and legal duties. Relying on the statement of Guest Services' employee/escort to this effect, Capitol Sprinkler's inspectors left the building under the reasonable impression that the job there was done because Guest Services was re-assuming this duty. Based on prior experience, Capitol Sprinkler's inspectors were justified in relying on this statement. This statement turned out to be a misrepresentation when Guest Services failed to drain the drum drip. While the contract between Guest Services and Capitol Sprinkler did not contain an indemnification provision, one must be implied to achieve

19

equitable results. If one is not, Guest Services will be allowed to have been the overriding cause of Plaintiff's damages, but bear no liability. It would be inequitable to force Capitol Sprinkler to assume total liability for the damages caused by Guest Services. Accordingly, under these circumstances, Guest Services is more blameworthy than Capitol Sprinkler and should thus be required to indemnify Capitol Sprinkler for any damages which may be assessed against it.

Second, a third-party defendant may be liable to a third-party plaintiff even if plaintiff is barred from bringing a claim against the third-party defendant. Just because a plaintiff cannot bring a claim against a party does not mean that the party cannot be liable for the plaintiff's harm. For example, where one defendant settles with a plaintiff prior to trial, the non-settling defendant may seek a credit reducing its share of damages if the jury awards the plaintiff damages. *Washington v. Washington Hospital Center*, 579 A.2d 177 (D.C. App. 1990). Moreover, as Plaintiff has noted in the present case, Guest Services has a contractual obligation to indemnify Plaintiff's insured in the event of a loss at the Kellogg Conference Center.[1]

Guest Services never settled with Plaintiff or paid any amount to Plaintiff's insured in connection with this loss, nor was it released from liability by Plaintiff or Plaintiff's insured at any time prior to or during this litigation. Simply, the waiver of subrogation provision bars plaintiff from bringing a direct claim against Guest Services; it does not absolve Guest Services of responsibility for causing Plaintiff's harm.

Finally, regardless of the respective claims for liability, Guest Services should be required to contribute at least 50% of the value of any damages that may be assessed against

---

[1] In Plaintiffs Reply Memorandum in Opposition to Capitol Sprinkler's Motion for Summary Judgment (D.I. 63), Plaintiff notes that section 12.1 of Gallaudet's contract with Guest Services provides that "Guest Services will fully indemnify, defend and hold harmless Gallaudet from any liability, claim, loss, damage or expense resulting from 'the negligent acts or willful misconduct of any Property Employee, or any of [Guest Services] Home Office Management Employees or any other person directly or indirectly employed by [Guest Services] or any one for whose acts [{Guest Services] may be liable" (D.I. 63, P. 10).

Capitol Sprinkler, liability for which Capitol Sprinkler expressly denies. "Contribution is one of several theories used to apportion damages among tortfeasors to an injured party." *District of Columbia v. Washington Hospital Center*, 722 A.2d 332, 336 (D.C. 1998). "In this jurisdiction, the law pertaining to the right of contribution among joint tortfeasors has been established by case precedent rather than by statute." *Id.* (citing *Lamphier v. Washington Hospital Center*, 524 A.2d 729, 733 (D.C. 1987)). Two parties can be joint tortfeasors even if their liability is based on different theories; "[a] single, concerted action by the joint tortfeasors is not required." *Benz*, 2007 U.S. Dist. LEXIS at *12 (citing *Washington Hospital Center*, 722 A.2d at 337). "Parties can be joint tortfeasors if their independent acts combine to cause a single injury." *Id*.

In this case, Guest Services is at least responsible for the same harm that Plaintiff attaches to Capitol Sprinkler, notwithstanding Capitol Sprinkler's continues denial of any such liability. Guest Services had complete control over the maintenance systems and emergency response systems at the Kellogg Conference Center. Gallaudet, as the owner of the building, had a statutory responsibility to know how those systems operated and where the appropriate shut off locations for the sprinkler system water were located. Notwithstanding their combined efforts, Gallaudet and Guest Services allowed water to continue flowing from the sprinkler system for several hours, causing the damages suffered and claimed in this action. *If* Capitol Sprinler is found to be liable for any part of these damages, liability for which Capitol Sprinkler expressly denies, Guest Services clearly committed negligent acts which significantly contributed to the same. Under District of Columbia *juris prudence*, Guest Services must be required to contribute to any damages assessed.

IV.    **CONCLUSION**

Guest Services is responsible for Gallaudet's damages under theories of negligence and breach of contract. Guest Services did not meet its duty under the NFPA for inspecting, testing, and maintaining fire suppression systems the Kellogg Conference Center. The NFPA imposes a duty upon the property owner or its agent to provide sprinkler system inspectors with access to the necessary components of the sprinkler system. The NFPA also imposes a duty upon the property owner or its agent to monitor the sprinkler system. Guest Services, acting as Gallaudet's agent, did neither. Therefore, Guest Services was negligent in the performance of its duties under the NFPA, independent of its contract with Capitol Sprinkler, and caused Gallaudet's damages.

Additionally, Guest Services breached its contract with Capitol Sprinkler so as to cause the damages claimed by Gallaudet. The contract provided that Capitol Sprinkler would conduct its inspections and tests pursuant to the applicable provisions of the NFPA standards, which Guest Services did not do. Consequently, Capitol Sprinkler was relieved of its duty to drain the subject drum drip because Guest Services breached the contract and because it frustrated the principal purpose of the contract.

Furthermore, being unable or unwilling to provide the necessary access, Guest Services agreed to drain the subject drum drip, which it also failed to do. Guest Services modified the contract with Capitol Sprinkler by reassuming its duty to maintain the sprinkler system. This modification relieved Capitol Sprinkler of the duty to drain this particular drum drip. Thereafter, Guest Services breached the modified contract and caused Gallaudet's damages.

Finally, Guest Services acted as an agent for Gallaudet when it dealt with Capitol Sprinkler and was contractually obligated to pay for any damages suffered by Gallaudet. As

{DE103474.1}

Guest Services caused the damages to Gallaudet, Guest Services is responsible for those damages and owes Capitol Sprinkler contribution and indemnification.

**WHEREFORE,** Capitol Sprinkler respectfully requests that this Honorable Court DENY Guest Services' Motion for Summary Judgment and enter Judgment in favor of Capitol Sprinkler on its cross-claims for indemnification and contribution.

Respectfully submitted,

**MARKS, O'NEILL,
O'BRIEN & COURTNEY, P.C.**

 /s/Donald R. Kinsley
Michael T. Hamilton, Esquire (Bar ID No. 474233)
Donald R. Kinsley, Esquire (Bar ID No. 432998)
Norman H. Brooks, Jr., Esquire (PHV)
913 N. Market Street, Ste. 800
Wilmington, DE  19801
*Attorneys for Defendant
Capitol Sprinkler Inspection, Inc.*

DATE:  February 29, 2008

23