IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

St. Paul Mercury Insurance Company
As Subrogee of Gallaudet University,

        Plaintiff,

    v.

                                  Civil Action No. 1:5cv-2115-CKK
                                  Judge Colleen Kollar-Kotelly

CAPITOL SPRINKLER INSPECTION, P.C.,

        Defendant/Third-Party Plaintiff,

    v.

GUEST SERVICES, INC.,

        Third-Party Defendant.
_____/

### THIRD-PARTY DEFENDANT GUEST SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S MOTION FOR SUMMARY JUDGMENT

Third Party Defendant, Guest Services, Inc., by counsel, respectfully submits this Memorandum of Points and Authorities in opposition to Defendant Capitol Sprinkler Inspection, Inc.'s Motion for Summary Judgment and in support thereof states as follows:

I.    **STATEMENT OF MATERIAL FACTS WHICH ARE DISPUTED**

In response to the statements of material fact contained in Defendant's Statement of Material Facts in Support for Summary Judgment Against Third-Party Defendant, Guest Services states the following:

1-9.   The statements contained in paragraph no. 1-9 are admitted.

10.    The statements contained in paragraph no. 10 are denied.  Capitol Sprinkler inaccurately states the testimony of Gary Aller.  When asked about the process whereby a desk clerk would create a card that would provide someone access to a particular guest room on a given day, Gary Aller responded, "I'm not intimately involved with that."  *See* Aller Deposition, p. 133, lines 13-17, Exhibit 8.  Gary Aller never indicates that employees of Guest Services were the only ones who controlled key cards for access to the guest rooms.

11.    The statements contained in paragraph no. 11 are admitted.

12.    The statements contained in paragraph no. 12 are denied.  Capitol Sprinkler's contention that Capitol Sprinkler was required to perform the maintenance and inspections required by NFPA 25 is inaccurate.  The contract provides, Capitol Sprinkler will inspect, test, and service the fixed fire protection equipment...in accordance with this contract, and the requirements in the National Fire Protection Association (NFPA) Care and Maintenance of Sprinkler Systems (No. 13-A)..." *See* Scope of Services, Exhibit 9.

13.    The statements contained in paragraph no. 13 are admitted.

14.    The statements contained in paragraph no. 14 are denied.  Capitol Sprinkler was required to perform inspections and maintenance under NFPA 13-A, not NFPA 25.  *See* Scope of Services, Exhibit 9.

15.    The statements contained in paragraph no. 15 are admitted.

16.    The statements contained in paragraph no. 16 are denied.  There is no evidence of the direct employer, the title, or the duties of the gentleman who escorted Capitol Sprinkler employees throughout the Kellogg Conference Center.  *See* Bowlin

2

Deposition, Exhibit 5, pp. 33:6-22; 40:17-22; Vane Deposition, Exhibit 2, pp. 40:10-22;

41:1-3. Guest Services does not have any information regarding the identity of the

escort.

17.    The statements contained in paragraph no. 17 are denied. Captiol

Sprinkler's assertion that property maintenance personnel that maintain buildings are

supposed to drain drum drips themselves is not accurate. This contention is

contradictory to Stephen Logue's Affidavit, Exhibit 1, which states, "Guest Services, Inc.

employees were not authorized to drain the dry sprinkler system, and the inspection of

the dry sprinkler system was the subject of the contract with Capitol." Guest Services

was not responsible for the sprinkler system and only had the authority to retain third

party licensed professionals to perform this work. *See* Stephen Logue Affidavit, exhibit

1.

18-20.    The statements contained in paragraph no. 18-20 are admitted but are

not relevant because the July 2002 inspections are not the subject matter of this

litigation.

21-23.    The statements contained in paragraph no. 21-23 are denied. Capitol

Sprinkler asserts as fact that an "agent" of Guest Services was the escort. This is a

legal conclusion, not a statement of fact. No facts have been provided to establish

agency. Furthermore, Capitol Sprinkler maintains that the gentleman who escorted

Capitol Sprinkler employees throughout the Kellogg Conference Center in January

2003 had access to all areas of the building, except one guest room on the fifth floor. If

the escort was an agent of Guest Services, he would have had a set of keys, including

a "full master". Stephen Logue's Affidavit provides that engineers had a set of keys,

3

including an electronic type key card that was a "full master". As a result, there was no need to get a special key to enter any guest room or suite. Further, even if the engineer was unable to use the master key to get into any guest room or suite, a special key could be obtained by simply making a radio call to the front desk. See Stephen Logue Affidavit, exhibit 1. Accordingly, Guest Services disputes that the escort was an agent of Guest Services.

24.    Guest Services has no basis to dispute the statements contained in paragraph no. 24.

25.    The statements contained in paragraph no. 25 are denied. Capitol Sprinkler contends that the drum drip located in room number 5200 was the only room that required computerized card or swipe access. In his deposition, Gary Aller indicated that all of the guest rooms on the fifth floor and some or the rooms on the third and fourth floors required card access. See Aller Deposition, p. 133, lines 4-12.

26.    Guest Services has no basis to dispute the statements contained in paragraph no.26.

27-28.  The statements contained in paragraph no. 27-28 are denied. Again, Guest Services denies the legal conclusion that the escort was an agent of Guest Services and asserts that any Guest Services escort would have had a set of keys, which would have included a full master key. See Stephen Logue Affidavit, exhibit 1.

29.    The statements contained in paragraph no. 29 are denied. There is no admissible evidence on the record that reflects that anyone from Guest Services or Gallaudet University agreed to take care of the drum. Furthermore, Capitol Sprinkler employees certified in writing that the inspection had been completed. There is no

4

indication on that certification of inspection that all of the drums were not drained or that an employee of Guest Services agreed to complete the work. The certification is evidence that no escort stated that he would "take care of the drum."

30.   The statements contained in paragraph no. 30 are admitted.

31.   The statements contained in paragraph no. 31 are denied. Capitol Sprinkler's references an Affidavit provided by Vernon Vane, which describes the escort as, "about 5'10" tall" with a "medium build. He appeared in his 30s or 40s. The color of his skin was dark for a Caucasian, and light for an African American such that Mr. Vane would describe him of being of mixed race." During his deposition, however, Vernon Vane testified that the man was "a tall, slender black man" in his thirties. See Vernon Vane Deposition, Exhibit 2, p. 41, lines 7-9.

These contentions by Capitol Sprinkler are controverted by the Affidavit of Stephen Logue, the Managing Director of the Kellogg Conference Center at Gallaudet University. In his Affidavit, Stephen Logue indicates that Terrance Hubbard was the Room Division Manager at the Kellogg Center and describes Terrance Hubbard as "a white male, with light or sandy colored hair. He was very thin. I do not expect that one would think Mr. Hubbard would be described as of black or mixed-race." Stephen Logue's Affidavit also provides that Terrance Hubbard's role as the Room Division Manager meant that he would not be the individual who would have escorted Capitol Sprinkler personnel to conduct the inspection of the sprinkler system or drain the sprinkler system. See Stephen Logue Affidavit, exhibit 1.

32.   The statements contained in paragraph no. 32 are denied. Capitol Sprinkler inaccurately indicates that Counsel for Guest Services failed to produce Mr.

5

Hamm and Mr. Hubbard for depositions.  There was no way that Counsel for Guest Services could have produced Mr. Hamm or Mr. Hubbard for depositions, but Counsel for Guest Services did provide the last known address for each of these individuals.

33.     The statements contained in paragraph no. 33 are admitted.

34-35.  The statements contained in paragraph no. 34-35 are denied.  There was no way that Counsel for Guest Services could have produced Mr. Hamm or Mr. Hbbard for depositions.  The last known addresses of these individuals were provided to Counsel for Capitol Sprinkler, however, there is no indication that either of them were served with the Notice of Deposition or subpoenaed to appear.  *See*, Notice of Oral Deposition, Exhibit 10.

## II.     INTRODUCTION

Capitol Sprinkler opposed the Plaintiff's motion for summary judgment on the basis that an agent of Gallaudet University modified the contract and agreed to do the work, and further failed to provide access.  These same arguments are made for imposing liability on Guest Services.  If the Court grants the motion for summary judgment as to the Plaintiff, then it must find that the argument made by Capitol Sprinkler is  without merit.  If the Court finds that the argument made Capitol Sprinkler is without merit, then no liability can be imposed on Guest Services for the exact same argument.  If the Court agrees with Capitol Sprinkler, then there is no argument that can be entered in favor of the Plaintiff and against Guest Services.  Accordingly, in either event, no liability can be imposed on Guest Services.

Capitol Sprinkler's motion for summary judgment should also be denied because if the Court looks to the issue of whether there is a statement by an unknown,

6

unidentified person, which modified the contract, there is a genuine issue of material fact regarding whether that statement occurred.  Capitol Sprinkler certified that they had fully performed the contract.  Capitol Sprinkler certified that it performed the contract and at the same time says that it is relieved from its obligation to perform under the contract because of frustration or impossibility of purpose or that the contract was modified.  These issues at a bare minimum create an issue of fact sufficient to defeat Capitol Sprinkler's motion for summary judgment.

Capitol Sprinkler does not present any facts to support a claim of agency of the escort.  Further, Capitol Sprinkler's claim that the contract was orally modified is not supported with any admissible evidence of consideration or the individual's authority.  There is no evidence of the unknown individual's name, title, job duties or responsibilities, or direct employer.  Contrary to Capitol Sprinkler's assertion that an agent of Guest Services escorted Capitol Sprinkler employees throughout the Kellogg Conference Center, evidence demonstrates that an agent of Guest Services would have had a set of keys, which would have included a full master key.  This is a genuine issue of material fact that is sufficient to defeat Capitol Sprinkler's motion for summary judgment.

## III.    LEGAL ARGUMENT

Summary Judgment is appropriate where"the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party.  The moving party bears the initial burden of establishing that there

7

are no genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party has met its burden, the burden shifts to the non-moving party to show that there are genuine issues for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The multitude of inaccurate and disputed statements provided in Capitol Sprinkler's statement of material facts creates genuine issues of material facts, sufficient to defeat Capitol Sprinkler's motion for summary judgment.

### A.   Guest Services Is Not Liable For the Damages At the Kellogg Conference Center

In its Opposition to St. Paul's motion for summary judgment, Capitol Sprinkler asserted that Guest Services is an agent of Gallaudet University. Capitol Sprinkler further maintains that the unknown agent acted within the scope of his authority when he modified the contract by representing that he would drain the final drum drip and that Guest Services materially breached the contract by failing to provide Capitol Sprinkler access to all components of the subject sprinkler system that required key access or swipe access.

Likewise, in its motion for summary judgment, Capitol Sprinkler asserts that Guest Services should be liable for the damages at Gallaudet University, Kellogg Conference Center due to Guest Service's failure to perform under the modified contract and failure to provide access to the drum drip located in room 5200. Capitol Sprinkler cannot have it both ways. Even if the Court finds for Capitol Sprinkler with regard to St. Paul's motion for summary judgment, then there can be no liability imposed against Guest Services.

8

Further, if the Court grants St. Paul's motion for summary judgment, then it must find that the argument made by Capitol Sprinkler is without merit. Because the same argument is advanced against Guest Services, it follows that such a finding would also preclude judgment against Guest Services.

**B.    No Witness Supported Capitol Sprinkler's Assertion That Guest Services Employee Terrance Hubbard or an Agent of Guest Services Escorted Capitol Sprinkler Inspectors Throughout the Kellogg Conference Center**

In it's Motion for Summary Judgment, Capitol Sprinkler indicates that, contrary to the certification, it did not perform all services and inspections set forth in the contract because Guest Services employee, Terrance Hubbard, or alternatively an "agent" of Guest Services, agreed to drain a single drum drip. In support of this assertion, Capitol Sprinkler references the deposition of Michael Bowlin and the Affidavits of Thomas Scott and Vernon Vane. None of the referenced testimony indicates that Terrance Hubbard was the person who escorted Capitol Sprinkler employees through the Kellogg Conference Center. The deposition testimony of Vernon Vane and Michael Bowlin directly contradict that assertion.

In his deposition, Michael Bowlin maintained that he did not recall the identity of the person who was responsible for unlocking certain doors to give the Capitol Sprinkler inspectors access to the areas in which work was to be performed. *See* Bowlin Deposition, Exhibit 5, pp. 33:6-22; 40:17-22. When asked to describe the man responsible for giving Capitol Sprinkler inspectors access to those areas, Bowlin testified, "a colored gentleman, probably around [5'10"]...around I'm guessing like thirty

9

years old or could be younger, could be older, but around that." Bowlin Deposition,

Exhibit 5, p. 34:1-10. Furthermore, Bowlin communicated that the man who

accompanied the Capitol Sprinkler inspectors in January 2003 was the same man who

accompanied the Capitol Sprinkler inspectors in July 2002. *See* Bowlin Deposition,

Exhibit 5, pp. 41:18-22; 42:1-6. Vernon Vane also testified during his deposition that he

did not know the identity of the man who accompanied him during inspections. *See*

Vane Deposition, Exhibit 2, pp. 40:10-22; 41:1-3. However, like Bowlin, Vane described

the "mystery man" as a tall slender black man in his thirties. *See* Vane Deposition,

Exhibit 2, p. 41:4-9. In an Affidavit, Vane provides subsequent inconsistent statements

with regard to the description of the escort. Guest Services hereby incorporates and

adopts Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant

Capitol Sprinkler Inspection, Inc.'s Motion for Summary Judgment, Legal Argument II, B

(The Affidavits from Vernon Vane are Sham Affidavits and Should Not be Considered

by the Court). Capitol Sprinkler also attached a Death Notice to its Opposition, which

indicated Terrance Hubbard was 51 when he died in September 2005. *See* Exhibit 6,

Death Notice. Terrance Hubbard, who was around 20 years older than the man

described by Bowlin and Vane, clearly was not the "mystery man" who escorted Capitol

Sprinkler inspectors throughout the Kellogg Conference Center during the January

2003 inspection. Furthermore, Terrance Hubbard would not have agreed to drain a

drum drip, nor would he have been the individual to escort the Capitol Sprinkler

employees throughout the building. *See*, Logue Affidavit, Exhibit 1. Moreover, as per

the contract with Gallaudet University, no Guest Services employee would not have

10

drained drum drips in the sprinkler system nor were they authorized to do so.  *See,*

Logue Affidavit, Exhibit 1.

### C.    No Evidence Supports Capitol Sprinkler's Assertion That Guest Services Employee Terrance Hubbard or an "Agent" of Guest Services Agreed to Drain the Drum Drip

Capitol Sprinkler's assertion that Terrance Hubbard or an unidentified "agent" of

Guest Services agreed to drain the drum drip is unsupported and contradictory to the

evidence.  Any statements allegedly made by the unidentified escort constitute out of

court statements offered for the truth of the matter asserted and are therefore

inadmissible hearsay.  As the party attempting to offer these out of court statements,

Capitol Sprinkler has the burden of establishing the evidentiary foundation for

admissibility under Rule 801(d)(2). Carden v. Westinghouse Elec. Corp., 850 F.2d 996,

1002 (3d cir. 1988).

The failure to identify a declarant who is allegedly an "agent" or employee of a

party makes any statement by that declarant inadmissible hearsay. Phillips v. Holladay

Property Services, Inc., 937 F.Supp. 32 (D.D.C. 1996). A statement made by an

unidentified employee of a party is "classic hearsay." Thomas v. Stone Container Corp.,

922 F.Supp. 950, 957 (S.D.N.Y. 1996). See also Zaken v. Boerer, 964 F.2d 1319, 1324

(2d Cir. 1992)(holding absent the identity of the declarant, there is an insufficient

evidentiary foundation to establish the existence of agency relationship as required by

Rule 801(d)(2)(D)); Carden v. Westinghouse Elec. Corp., 850 F.2d at 1002 (holding that

if the party offering the out of court statement fails to identify the declarant, then the

party cannot meet the evidentiary foundation of rule 801(d)(2)(D)).

11

Capitol Sprinkler suggests in its summary judgment motion that the alleged statement by the unidentified building escort, whom Capitol Sprinkler alleges is a representative of Guest Services, orally modified the written sprinkler inspection contract and therefore is not hearsay. There was no oral modification of the contract. As indicated in Stephen Logue's Affidavit, "none of the engineering staff was authorized to modify any contracts, and, in particular, any contract with Capitol Sprinkler.  Terrance Hubbard would not have been authorized to modify any contracts with Capitol Sprinkler. The contracts with third parties would all be signed by the President of Guest Services, Inc."  Capitol Sprinkler has failed to cite any admissible evidence in the record to support that the unidentified maintenance person who allegedly agreed to drain the drum drip had any authority to bind Guest Services and/or Gallaudet to any contract or to modify the existing contract.  Nor is there any basis for asserting Capitol Sprinkler employees would have any reasonable basis for believing someone from the engineering staff would have the authority to do so.  Furthermore, there is no evidence in the record to support the contention that Capitol Sprinkler's inspector, Michael Bowlin, had any authority to agree to a modification of the contract on behalf of Capitol Sprinkler. If Capitol Sprinkler cannot establish that there both the building escort and Bowlin had authority on behalf of their respective employers to modify the contract, then it cannot establish the statements modified the written contract and the alleged statements made by the unidentified building escort are inadmissible hearsay.  In fact, evidence is to the contrary.

Furthermore, assuming Terrance Hubbard was the Guest Services employee who escorted the Capitol Sprinkler inspectors throughout the Kellogg Conference

12

Center, his statements would be barred by the application of the District of Columbia's "dead man's statute." Under the dead man's statute, a judgment or decree may not be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff or of the agent, servant, or employee of the plaintiff as to any transaction with, or action, declaration or admission of, the deceased. D.C. Code § 14-302 (2001). The purpose of the dead man's statute is to protect against potentially fraudulent suits based only on a claimant's word that the deceased was somehow obligated to the claimant. Gray v. Gray, 412 A.2d 1208, 1212 (D.C. 1980). In this case, Capitol Sprinkler can escape from the statute only by providing evidence that would corroborate its position, rendering it substantially more credible. Bldg. Servs. Unlimited v. Riley, 238 F. Supp. 2d 255, 257 (2002).

### D.    There Was No Oral Modification of the Contract

Capitol Sprinkler argues that the alleged statement by Terrance Hubbard, or an "agent" of Guest Services, orally modified Capitol Sprinkler's contract with Guest Services. Accordingly, Capitol Sprinkler asserts that it was relieved express contractual duties under the contract.

Under D.C. law, a written contract may be modified orally by the mutual assent of the parties. Gagnon v. Wright, 200 A.2d 196 (D.C. 1964). However, modification requires the same elements of consideration that are necessary for normal contract formation. Rinck v. Assoc. of Reserve City Bankers, 676 A.2d 12, 17 (D.C. 1996); Hershon v. The Hellman Co., 565 A.2d 282, 283 (D.C. 1989). Consideration is "something of value received by a promisor from a promisee." Black's Law Dictionary, 7th ed., 300. In this case, Capitol Sprinkler asserts that a Guest Services agent's

TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
3920 UNIVERSITY DRIVE  •  FAIRFAX, VIRGINIA 22030  •  (703) 385-1000  •  FAX (703) 385-1555

promise to Capitol Sprinkler to drain a drum drip that Capitol Sprinkler was obligated to drain constituted sufficient consideration. Clearly, it does not. Capitol Sprinkler never offered any consideration, including any a refund of any portion of the payment made for services that were not rendered, in exchange for modifying the contract.

In addition, the contract was not modified because the person who escorted the Capitol Sprinkler employees throughout the Kellogg Conference Center would not have had the authority to modify the contract. In the District of Columbia, the person orally modifying the contract must also have the authority to bind the party to a contract. See National Railroad Passenger Corp. v. Expresstrak, LLC, 2006 WL 2947555 at * 13 (D.D.C. 2006)(holding low level employees did not have authority to enter into or orally modify contract between their respective employers).

The burden is on the party arguing that the contract has been modified to establish the modification by a preponderance of the evidence. Puma v. Sullivan, 746 A.2d at 875; Gagnon v. Wright, 200 A.2d at 198. Accordingly, the burden is on defendant Capitol Sprinkler to establish that: (1) there was mutual assent to modify the contract; (2) there was consideration supporting the modification of the contract; (3) the unidentified maintenance person allegedly agreeing to the modification had authority to bind Guest Services and/or Gallaudet to a modification of the existing written contract; and (4) Michael Bowlin had authority to modify the contract on behalf of Capitol Sprinkler. In this case, the Capitol Sprinkler has not cited any admissible evidence whatsoever to establish any of these elements to support a finding that the contract was modified.

The only evidence Capitol Sprinkler has of the alleged oral modification is the

14

uncorroborated testimony by Michael Bowlin that the unidentified building escort agreed to drain the drum drip. There is nothing in Capitol Sprinkler's own inspection report for January 9, 2003 to confirm that there was any agreement by the unidentified building escort to drain the drum drip or to modify the inspection contract. Nor is there any other documentation whatsoever confirming the alleged modification of the contract. In addition, Capitol Sprinkler did not provide any notice to Guest Services or Gallaudet that there had been a modification of the inspection contract. In fact, the first time that Capitol Sprinkler ever even raised the issue of modification of the contract was in its Motion for Summary Judgment.

The testimony of Capitol Sprinkler's own employees proves that it cannot identify the person who allegedly agreed to drain the drum drip and to the oral modification of the contract. Capitol Sprinkler cannot possibly meet its burden of establishing there was an oral modification of a contract when it cannot even identify the person who allegedly agreed to the modification. This issue of fact alone is sufficient to defeat Capitol Sprinkler's motion for summary judgment. Moreover, in order for a written contract to be orally modified, there must be consideration. In this case there was no consideration provided to Guest Services and/or Gallaudet to modify the written inspection contract. There was mutual consideration for the original inspection contract, wherein Capitol Sprinkler agreed to perform a service for Guest Services and Gallaudet in exchange for a fee. If the services to be provided by Capitol Sprinkler were going to be changed, then there should have been a change in consideration to account for the reduced services to be provided. Absent some consideration, there can be no modification. In addition, Capitol Sprinkler cannot establish that the unidentified maintenance person who

15

escorted them throughout the building had any authority whatsoever to bind Guest Services and/or Gallaudet to a modified contract. There is no evidence provided by Capitol Sprinkler that the unidentified building escort had any authority whatsoever to enter into a contract on behalf of Guest Services or Gallaudet.  Nor is there any evidence that the unidentified person had any authority to modify the existing contract. The only person authorized to modify third-party contracts was the President of Guest Services.  *See* Stephen Logue Affidavit, Exhibit 1.  Moreover, Capitol Sprinkler cannot even establish through the record that its own representative, Michael Bowlin, had any authority to modify the contract on behalf of Capitol Sprinkler.

Guest Services maintains that there is absolutely no evidence whatsoever to support the argument that the contract was orally modified. For purposes of this opposition, Guest Services gets the benefit of all factual inferences. At the very least, there is a genuine issue of material fact with regard to whether there was a modification of the contract, which requires the Court to deny Capitol Sprinkler's summary judgment motion.

### E.    There Was No Material Breach of Contract

Capitol Sprinkler argues that it was excused from its express contractual obligation to drain all drum drips by virtue of the fact that Gallaudet's building management company, Guest Services, failed to provide Capitol Sprinkler's inspectors with access to the sprinkler system. Capitol Sprinkler asserts that in doing so, Guest Services materially breached the contract, which excused Capitol Sprinkler from complying with its express contractual obligations.

Capitol Sprinkler relies on NFPA 25 § 1-4.1, which requires the owner to provide

16

"ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." See NFPA, Exhibit 7. NFPA does not impose a duty on the manager of a building with regard to the sprinkler system. Guest Services was not the owner or an occupier of the building.

Furthermore, even if Guest Services did have any duties under NFPA, it delegated those duties to Capitol Sprinkler pursuant to the inspection contract. NFPA expressly permits the owner to delegate the maintenance of a sprinkler system to another company. NFPA 25 Appendix 1-4.2 states, "inspection, testing and maintenance may be permitted to be contracted with an inspection, testing and maintenance service." See Exhibit 7.

Moreover, to the extent that Gallaudet or Guest Services was required to provide access to the sprinkler system, the Appendix to NFPA 25 for this section clarifies the responsibility of the building owner. "The components are not required to be open or exposed. Doors, removable panels, or valve pits may be permitted to satisfy the need for accessibility. Such equipment should not be obstructed by features such as walls, ducts, columns, direct burial or stock storage." NFPA 25 §A-1-4.1. See NFPA, Exhibit 7. NFPA does not create a duty that would require Guest Services to get the key to access the room in which the drum drip was located. Accordingly, any such duty would have to be expressly provided in the contract.

The fact that a door may have initially been locked during the inspection does not violate NFPA 25. Even assuming that it did, Capitol Sprinkler still cannot establish that Guest Services failed to provide ready accessibility to the system. Capitol Sprinkler's employee's own testimony establishes that an unidentified building escort

17

accompanied them throughout the building and provided them access to the entire system, with the exception of the room containing the drum drip. The building escort did not have the key on his person to the room where the Drip Drum was and advised the Capitol Sprinkler inspectors that he needed to go get it. Capitol Sprinkler readily admits that its employees did not ask him to go get the key and that the building escort did not refuse to provide them access or to go get the key. See Bowlin Deposition, Exhibit 5, pp. 52, 54, 56, 76. In his deposition, Mr. Bowlin was asked, "well did you ask him to go get the card," to which Mr. Bowlin answered, "No, I didn't ask him to go get the card." See Bowlin Deposition, Exhibit 5, p. 54, lines 18-21.

Even if the Court fully credits Bowlin's testimony, it only establishes that Capitol Sprinkler's inspectors made the decision to rely on the building escort to go back and drain the drum drip rather than just asking him to go get the key so they could go in and drain the drum drip themselves in accordance with Capitol Sprinkler's express contractual obligation. The fact that the building escort did not have the key on his person to provide them access to the last room when they arrived there certainly does not establish that Guest Services or Gallaudet materially breached the contract, but it does evidence the fact that the building escort was not an agent of Guest Services, who would have had a master key. *See* Stephen Logue Affidavit, Exhibit 1. For purposes of this opposition, plaintiff gets the benefit of all factual inferences. At the very least, there is a genuine issue of material fact with regard to whether there was a material breach of the contract, which requires the Court to deny Capitol Sprinkler's summary judgment motion.

### F.    NFPA Does Not Create a Duty Owed to Capitol Sprinkler

18

NFPA does not create a duty owed to Capitol Sprinkler in tort. The purpose of NFPA is to promote public safety and for the benefit of owners and occupiers, not third-party contractors. *See* NFPA, Exhibit 7. In order to demonstrate that a violation of statute constitutes negligence, Capitol Sprinkler must demonstrate a "violation of a statutory or regulatory standard that was erected or promulgated "to protect persons in the plaintiff's position or to prevent the type of accident that occurred." Bowman v. Redding & Co., 449 F.2d 956, 963 (D.C. App 1971). Capitol Sprinkler is not within the protected class of persons NFPA intends to protect. It was not the owner or occupier of the property, but an independent contractor. Accordingly, Capitol Sprinkler cannot maintain a cause of action for any alleged breach of NFPA on the part of Guest Services.

### G.    The Doctrine of Frustration of Purpose Does Not Apply to Relieve Capitol Sprinkler of its Obligations Under the Inspection Contract

Under the doctrine of frustration of purpose, "the promissor's performance is excused because changed conditions have rendered the performance bargained from the promisee worthless, not because the promissor's performance has become different or impracticable." Island Development Corp. v. District of Columbia, 933 A.2d 340 (D.C. 2007). Under a frustration analysis the court is concerned with the impact of the event upon the failure of the consideration. Id.

Defendant's only argument in support of a frustration of purpose defense is that Guest Services failed to provide access to the drum drip. In his deposition, Mr. Bowlin was asked, "well did you ask him to go get the card," to which Mr. Bowlin answered, "No, I didn't ask him to go get the card." See Bowlin Deposition, Exhibit 5, p. 54, lines

19

18-21.   There is no evidence that Capitol Sprinkler failed to drain the drum drip that is

the subject matter of this litigation because of any failure on the part of Guest Services.

To the contrary, the Affidavit of Stephen Logue demonstrates that if the escort

had access to every other area, he would have had access to this drum drip as well.

*See* Logue Affidavit, Exhibit 1.  If the master key did not provide access to that area for

some reason, the escort could have easily radioed to the front desk to request a key.

*See* Logue Affidavit, Exhibit 1.  Moreover, the only performance bargained from the

promisee, Gallaudet and/or Guest Services, is for payment.  Accordingly, even if Guest

Services did fail to provide access to the drum drip, such would not constitute frustration

of the purpose of the contract.

### H.    The Doctrine of Impossibility of Performance Does Not Apply to Relieve Capitol Sprinkler of its Obligations Under the Inspection Contract

Capitol Sprinkler also asserts that the failure of Guest Services to provide access

to the drum drip rendered its performance impossible.  Under the doctrine of

impossibility of performance, the contract is rendered a nullity where a contingency

(something unexpected) occurs, the risk of which has not been allocated either by

agreement or by custom, and which rendered performance commercially impracticable.

Transatlantic Financing Corp. v. United States, 124 U.S. App. D.C. 183 (1966).

Further, performance must be real impossibility and not a mere inconvenience or

unexpected difficulty. Island Development Corp. v. District of Columbia, 933 at 350.  A

party is expected to use reasonable efforts to surmount obstacles to performance and

performance is impracticable only in spite of such efforts. Id. The testimony of Bowlin,

20

Capitol Sprinkler's own inspector, demonstrates that it was neither impossible nor commercially impracticable for Capitol Sprinkler to comply with its express contractual obligations to drain the drum drip. The alleged fact that the building escort did not have the key with him and could not provide immediate access to the room with the drum drip was at most an inconvenience. Further, that the building escort did not have a key is evidence that the building escort was not an agent of Guest Services.  Stephen Logue's Affidavit provides that engineers had a set of keys, including an electronic type key card that was a "full master".  *See* Stephen Logue Affidavit, Exhibit 1.  Bowlin admitted that he did not ask the building escort to go get the key. Nor did the building escort ever refuse to go get the key. Bowlin and his helper made no attempt whatsoever to get access to the room once he found out the building escort did not have the key. Instead, Bowlin allegedly requested that the building escort drain the drum drip himself. (See Bowlin Deposition, Exhibit 5, p. 52, 54, 56 & 76). Accordingly, Bowlin made no reasonable effort to surmount the minor obstacle to the performance of Capitol Sprinkler's own express contractual duties. In addition, there was no unreasonable expense or undue hardship associated with Capitol Sprinkler getting the key and draining the drum drip. Consequently, there is no evidence whatsoever supporting the argument that it was impossible or commercially impracticable for Capitol Sprinkler to perform its express contractual duties and Capitol Sprinkler cannot be exonerated for its failure to perform. At the very least, there is a genuine issue of material fact regarding whether it was impossible or commercially impracticable for defendant to perform its contractual obligations and whether the failure to provide access frustrated the principal purpose of the contract.

21

## IV.    CONCLUSION

Based on the foregoing, Third-Party Defendant, Guest Services, Inc. respectfully requests that this Honorable Court not accept Defendant Capitol Sprinkler's factual assertions, which are unsupported and contradicted by the evidence and deny Capitol Sprinkler's Motion for Summary Judgment.

Respectfully submitted,

**GUEST SERVICES, INC.**
By Counsel

Trichilo, Bancroft, McGavin, Horvath & Judkins, PC

/s/_____
Stephen A. Horvath, Esquire
D.C. Bar No. 417137
3920 University Drive
Fairfax, Virginia 22030
Phone: (703) 385-1000; Fax: (703) 385-1555
*Counsel for Guest Services, Inc.*

22

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S MOTION FOR SUMMARY JUDGMENT** was served electronically on the 7th day of March, 2008 to:

Eric Neil Stravitz, Esquire
Mesirow & Stravitz, P.L.L.C.
1307 New Hampshire Avenue, NW, Suite 400
Washington, D.C.  20036
*Counsel for Plaintiff*
E-mail: strav@erols.com

Of Counsel:

David J. Groth, Esquire
Daniel J. Luccaro, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
*Counsel for Plaintiff*

Michelle Murphy, Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
 913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Defendant Capitol Sprinkler, Inc.*
E-mail: nbrooks@mooclaw.com

Wayne F. Johnson, Jr., Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Capitol Sprinkler, Inc.*
E-mail: fjohnson@mooclaw.com

/s/_____
Stephen A. Horvath

23