IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

St. Paul Mercury Insurance Company
As Subrogee of Gallaudet University,

      Plaintiff,

      v.                                        Civil Action No. 1:5cv-2115-CKK
                                                   Judge Colleen Kollar-Kotelly

CAPITOL SPRINKLER INSPECTION, P.C.,

      Defendant/Third-Party Plaintiff,

      v.

GUEST SERVICES, INC.,

      Third-Party Defendant.
_____/

**THIRD-PARTY DEFENDANT GUEST SERVICES, INC.'S REPLY TO
DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S OPPOSITION
TO GUEST SERVICE'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Third Party Defendant, Guest Services, Inc., by counsel, in

response to Defendant Capitol Sprinkler Inspection, Inc.'s Opposition to Guest

Service's Motion for Summary Judgment.

**I.    INTRODUCTION**

Capitol Sprinkler's opposition to Guest Services is based on the premise that an

agent of Gallaudet University modified the contract and agreed to do the work, and

further failed to provide access.  Capitol Sprinkler makes these same arguments in

opposition to St. Paul's motion for summary judgment.  If the Court grants the motion

for summary judgment as to St. Paul, then it must find that the argument made by

Capitol Sprinkler is  without merit.  If the Court finds that the argument made Capitol

Sprinkler is without merit, then no liability can be imposed on Guest Services for the

exact same argument.  If the Court agrees with Capitol Sprinkler, then there is no

argument that can be entered in favor of the Plaintiff and against Guest Services.

Accordingly, in either event, no liability can be imposed on Guest Services.

In its Opposition, Capitol Sprinkler erroneously asserts that a Guest Services

employee escorted the Capitol Sprinkler employees throughout the Kellogg Conference

Center during the January 2003 inspection, but the Affidavit of Stephen Logue

demonstrates that if the escort was a Guest Services employee, he would have had

access to all of the rooms in the building.  In his Affidavit, Stephen Logue provides,

engineers had a set of keys, including an electronic type key card that was a "full

master".  As a result, there was no need to get a special key to enter any guest room or

suite.  Further, even if the engineer was unable to use the master key to get into any

guest room or suite, a special key could be obtained by simply making a radio call to

the front desk.  See Stephen Logue Affidavit, exhibit 1.

Capitol Sprinkler also incorrectly asserts that Guest Services was obligated to

drain the drum drips at Gallaudet University.  Guest Services, Inc. employees were not

authorized to drain the dry sprinkler system. Guest Services only had the authority to

retain third party licensed professionals to perform this work.  *See* Stephen Logue

Affidavit, exhibit 1.  Guest Services fulfilled its contractual obligations to Gallaudet

University when it entered into the contract for automatic sprinkler equipment inspection

service with Capitol Sprinkler.  (*See* Contract For Automatic Sprinkler Equipment

Inspection Service, Exhibit 2).  Guest Services had no additional obligations to perform

2

the work that Capitol Sprinkler was contractually bound to perform.

II.     **LEGAL ARGUMENT**

    A.     **Guest Services Did Not Owe Any Duties Under the National Fire Protection Association (NFPA), And Any Duties Owed Were Delegated to Capitol Sprinkler**

    Capitol Sprinkler relies on NFPA 25 § 1-4.1, which requires the owner to provide "ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance." to assert that Guest Services had a duty to provide sprinkler system inspectes with access to the necessary components of the sprinkler system.  See NFPA, Exhibit 3.  NFPA does not impose a duty on the manager of a building with regard to the sprinkler system.  Guest Services was not the owner or an occupier of the building.  The contract between the parties does not reference NFPA 25, but rather NFPA 13-A.  *See* Scope of Services, Exhibit 4.  As a result NFPA 25 does not apply.  Furthermore, Capitol Sprinkler asserts that the contract is between Gallaudet University and Capitol Sprinkler, and Guest Services is merely the agent. Capitol Sprinkler as no claim against an agent of a disclosed principal.  *See*, <u>Henderson v. Phillips</u>, 195 A.2d 400, 401 (1963).  Moreover, even if Guest Services did have any duties under NFPA, it delegated those duties to Capitol Sprinkler pursuant to the inspection contract. NFPA expressly permits the owner to delegate the maintenance of a sprinkler system to another company. NFPA 25 Appendix 1-4.2 states, "inspection, testing and maintenance may be permitted to be contracted with an inspection, testing and maintenance service." See NFPA, Exhibit 3.     To the extent that Gallaudet or Guest Services was required to provide access to the sprinkler system, the Appendix to

NFPA 25 for this section clarifies the responsibility of the building owner. "The components are not required to be open or exposed. Doors, removable panels, or valve pits may be permitted to satisfy the need for accessibility. Such equipment should not be obstructed by features such as walls, ducts, columns, direct burial or stock storage." NFPA 25 §A-1-4.1.  See NFPA, Exhibit 3. NFPA does not create a duty that would require Guest Services to get the key to access the room in which the drum drip was located.  Accordingly, any such duty would have to be expressly provided in the contract.

      **C.**      **NFPA Does Not Create a Duty Owed to Capitol Sprinkler**

NFPA does not create a duty owed to Capitol Sprinkler in tort.  The purpose of NFPA is to promote public safety and for the benefit of owners and occupiers, not third-party contractors. *See* NFPA, Exhibit 3.  In order to demonstrate that a violation of statute constitutes negligence, Capitol Sprinkler must demonstrate a "violation of a statutory or regulatory standard that was erected or promulgated "to protect persons in the plaintiff's position or to prevent the type of accident that occurred." Bowman v. Redding & Co., 449 F.2d 956, 963 (D.C. App 1971).  Capitol Sprinkler is not within the protected class of persons NFPA intends to protect.  It was not the owner or occupier of the property, but an independent contractor.  Accordingly, Capitol Sprinkler cannot maintain a cause of action for an alleged breach of NFPA by Guest Services.

      **D.**      **No Witness Supported Capitol Sprinkler's Assertion That Guest Services Employee Terrance Hubbard or an Agent of Guest Services Escorted Capitol Sprinkler Inspectors Throughout the Kellogg Conference Center**

In it's Opposition, Capitol Sprinkler indicates that, contrary to the certification, it

did not perform all services and inspections set forth in the contract because Guest Services employee, Terrance Hubbard, or an unknown employee of Guest Services, agreed to drain a single drum drip. *See* Inspection Certification, Exhibit 7.

Evidence indicates that Terrance Hubbard was not the gentleman who escorted the Capitol Sprinkler employees throughout the Kellogg Conference Center in January 2003. Capitol Sprinkler's basis for asserting Terrance Hubbard was the building escort is the description of the individual, which was provided by Capitol Sprinkler employees. For example, an Affidavit provided by Vernon Vane describes the escort as, "about 5'10" tall" with a "medium build. He appeared in his 30s or 40s. The color of his skin was dark for a Caucasian, and light for an African American such that Mr. Vane would describe him of being of mixed race." During his deposition, however, Vernon Vane testified that the man was "a tall, slender black man" in his thirties. See Vernon Vane Deposition, Exhibit 5, p. 41, lines 7-9.

In his Affidavit, Stephen Logue indicates that he knew Terrance Hubbard and that Terrance Hubbard was the Room Division Manager at the Kellogg Center. See Stephen Logue Affidavit, exhibit 1. Stephen Logue's Affidavit describes Terrance Hubbard as "a white male, with light or sandy colored hair. He was very thin. I do not expect that one would think Mr. Hubbard would be described as of black or mixed-race." Stephen Logue's Affidavit also provides that Terrance Hubbard's role as the Room Division Manager meant that he would not be the individual who would have escorted Capitol Sprinkler personnel to conduct the inspection of the sprinkler system or drain the sprinkler system. See Stephen Logue Affidavit, exhibit 1.

Terrance Hubbard would not have agreed to drain a drum drip, nor would he

5

have been the individual to escort the Capitol Sprinkler employees throughout the

building.  *See*, Logue Affidavit, Exhibit 1.  Moreover, as per the contract with Gallaudet

University, no Guest Services employee would not have drained drum drips in the

sprinkler system nor were they authorized to do so.  *See*, Logue Affidavit, Exhibit 1.

> **E.    No Evidence Supports Capitol Sprinkler's Assertion That Guest
> Services Employee Terrance Hubbard or an "Agent" of Guest
> Services Agreed to Drain the Drum Drip**

Capitol Sprinkler's assertion that Terrance Hubbard or an unidentified "agent" of

Guest Services agreed to drain the drum drip is unsupported and contradictory to the

evidence.  Any statements allegedly made by the unidentified escort constitute out of

court statements offered for the truth of the matter asserted and are therefore

inadmissible hearsay.  As the party attempting to offer these out of court statements,

Capitol Sprinkler has the burden of establishing the evidentiary foundation for

admissibility under Rule 801(d)(2). Carden v. Westinghouse Elec. Corp., 850 F.2d 996,

1002 (3d cir. 1988).

The failure to identify a declarant who is allegedly an "agent" or employee of a

party makes any statement by that declarant inadmissible hearsay. Phillips v. Holladay

Property Services, Inc., 937 F.Supp. 32 (D.D.C. 1996). A statement made by an

unidentified employee of a party is "classic hearsay." Thomas v. Stone Container Corp.,

922 F.Supp. 950, 957 (S.D.N.Y. 1996). See also Zaken v. Boerer, 964 F.2d 1319, 1324

(2d Cir. 1992)(holding absent the identity of the declarant, there is an insufficient

evidentiary foundation to establish the existence of agency relationship as required by

Rule 801(d)(2)(D)); Carden v. Westinghouse Elec. Corp., 850 F.2d at 1002 (holding that

if the party offering the out of court statement fails to identify the declarant, then the party cannot meet the evidentiary foundation of rule 801(d)(2)(D)).

Capitol Sprinkler suggests in its opposition that the alleged statement by the unidentified building escort, whom Capitol Sprinkler alleges is a representative of Guest Services, orally modified the written sprinkler inspection contract and therefore is not hearsay. There was no oral modification of the contract. As indicated in Stephen Logue's Affidavit, "none of the engineering staff was authorized to modify any contracts, and, in particular, any contract with Capitol Sprinkler. Terrance Hubbard would not have been authorized to modify any contracts with Capitol Sprinkler. The contracts with third parties would all be signed by the President of Guest Services, Inc." Capitol Sprinkler has failed to cite any admissible evidence in the record to support that the unidentified maintenance person who allegedly agreed to drain the drum drip had any authority to bind Guest Services and/or Gallaudet to any contract or to modify the existing contract. Nor is there any basis for asserting Capitol Sprinkler employees would have any reasonable basis for believing someone from the engineering staff would have the authority to do so. Furthermore, there is no evidence in the record to support the contention that Capitol Sprinkler's inspector, Michael Bowlin, had any authority to agree to a modification of the contract on behalf of Capitol Sprinkler. If Capitol Sprinkler cannot establish that there both the building escort and Bowlin had authority on behalf of their respective employers to modify the contract, then it cannot establish the statements modified the contract and the alleged statements made by the unidentified building escort are inadmissible hearsay. In fact, evidence is to the contrary

Furthermore, assuming Terrance Hubbard was the Guest Services employee

7

who escorted the Capitol Sprinkler inspectors throughout the Kellogg Conference Center, his statements would be barred by the application of the District of Columbia's "dead man's statute."  Under the dead man's statute, a judgment or decree may not be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff or of the agent, servant, or employee of the plaintiff as to any transaction with, or action, declaration or admission of, the deceased. D.C. Code § 14-302 (2001).  The purpose of the dead man's statute is to protect against potentially fraudulent suits based only on a claimant's word that the deceased was somehow obligated to the claimant. Gray v. Gray, 412 A.2d 1208, 1212 (D.C. 1980).  Capitol Sprinkler can escape from the statute only by providing evidence that would corroborate its position, rendering it substantially more credible. Bldg. Servs. Unlimited v. Riley, 238 F. Supp. 2d 255, 257 (2002)

### F.    There Was No Material Breach of Contract by Guest Services

Capitol Sprinkler argues that it was excused from its express contractual obligation to drain all drum drips by virtue of the fact that Gallaudet's building management company, Guest Services, failed to provide Capitol Sprinkler's inspectors with access to the sprinkler system. Capitol Sprinkler asserts that in doing so, Guest Services materially breached the contract, which excused Capitol Sprinkler from complying with its express contractual obligations.  Capitol Sprinkler also argues that the contract was with Gallaudet University, and Guest Services was the agent.

To the extent that Gallaudet or Guest Services was required to provide access to the sprinkler system, the contract only references NFPA 13-A, not NFPA 25.  If NFPA 25 is part of the contract, which is a disputed issue, the Appendix to NFPA 25 provides, "The components are not required to be open or exposed. Doors, removable panels, or

valve pits may be permitted to satisfy the need for accessibility. Such equipment should not be obstructed by features such as walls, ducts, columns, direct burial or stock storage." NFPA 25 §A-1-4.1 The fact that a door may have initially been locked during the inspection does not violate NFPA 25. Even assuming that it did, Capitol Sprinkler still cannot establish that Guest Services failed to provide ready accessibility to the system. Capitol Sprinkler's employee's own testimony establishes that an unidentified building escort accompanied them throughout the building and provided them access to the entire system, with the exception of the room containing the drum drip. The building escort did not have the key on his person to the room where the Drip Drum was and advised the Capitol Sprinkler inspectors that he needed to go get it. Capitol Sprinkler readily admits that its employees did not ask him to go get the key and that the building escort did not refuse to provide them access or to go get the key. See Bowlin Deposition, Exhibit 6, pp. 52, 54, 56, 76.  In his deposition, Mr. Bowlin was asked, "well did you ask him to go get the card," to which Mr. Bowlin answered, "No, I didn't ask him to go get the card."  See Bowlin Deposition, Exhibit 6, p. 54, lines 18-21.

Even if the Court fully credits Bowlin's testimony, it only establishes that Capitol Sprinkler's inspectors made the decision to rely on the building escort to go back and drain the drum drip rather than just asking him to go get the key so they could go in and drain the drum drip themselves in accordance with Capitol Sprinkler's express contractual obligation. The fact that the building escort did not have the key on his person to provide them access to the last room when they arrived there certainly does not establish that Guest Services or Gallaudet materially breached the contract, but it does evidence the fact that the building escort was not an agent of Guest Services, who

would have had a master key.  *See* Stephen Logue Affidavit, Exhibit 1.

### G. The Doctrine of Frustration of Purpose Does Not Apply to Relieve Capitol Sprinkler of its Obligations Under the Inspection Contract

The doctrine of frustration of purpose does not relieve Capitol Sprinkler of its obligations under the inspection contract.  Capitol Sprinkler certified that they had fully performed the contract.  Capitol Sprinkler now asserts that it is relieved from its obligation to perform under the contract because of frustration or impossibility of purpose.  Under the doctrine of frustration of purpose, "the promissor's performance is excused because changed conditions have rendered the performance bargained from the promisee worthless, not because the promissor's performance has become different or impracticable." Island Development Corp. v. District of Columbia, 933 A.2d 340 (D.C. 2007). Under a frustration analysis the court is concerned with the impact of the event upon the failure of the consideration. Id.

Defendant's only argument in support of a frustration of purpose defense is that Guest Services failed to provide access to the drum drip. In his deposition, Mr. Bowlin was asked, "well did you ask him to go get the card," to which Mr. Bowlin answered, "No, I didn't ask him to go get the card."  See Bowlin Deposition, Exhibit 6, p. 54, lines 18-21.   There is no evidence that Capitol Sprinkler failed to drain the drum drip that is the subject matter of this litigation because of any failure on the part of Guest Services.

To the contrary, the Affidavit of Stephen Logue demonstrates that if the escort had access to every other area, he would have had access to this drum drip as well. *See* Logue Affidavit, Exhibit 1.  If the master key did not provide access to that area for some reason, the escort could have easily radioed to the front desk to request a key.

10

*See* Logue Affidavit, Exhibit 1.  Moreover, the only performance bargained from the promisee, Gallaudet and/or Guest Services, is for payment.  Accordingly, even if Guest Services did fail to provide access to the drum drip, such would not constitute frustration of the purpose of the contract.

### H.    Guest Services Did Not Orally Modify the Contract

Capitol Sprinkler argues that the alleged statement by Terrance Hubbard, or an unidentified Guest Services employee orally modified Capitol Sprinkler's contract with Guest Services.  Accordingly, Capitol Sprinkler asserts that it was relieved express contractual duties under the contract.

Under D.C. law, a written contract may be modified orally by the mutual assent of the parties. Gagnon v. Wright, 200 A.2d 196 (D.C. 1964). However, modification requires the same elements of consideration that are necessary for normal contract formation. Rinck v. Assoc. of Reserve City Bankers, 676 A.2d 12, 17 (D.C. 1996); Hershon v. The Hellman Co., 565 A.2d 282, 283 (D.C. 1989).  Consideration is "something of value received by a promisor from a promisee."  Black's Law Dictionary, 7th ed., 300.  In this case, Capitol Sprinkler asserts that a Guest Services agent's promise to Capitol Sprinkler to drain a drum drip that Capitol Sprinkler was obligated to drain constituted sufficient consideration.  Clearly, it does not.  Capitol Sprinkler never offered any consideration, including any a refund of any portion of the payment made for services that were not rendered, in exchange for modifying the contract.

In addition, the contract was not modified because the person who escorted the Capitol Sprinkler employees throughout the Kellogg Conference Center would not have

had the authority to modify the contract.  In the District of Columbia, the person orally modifying the contract must also have the authority to bind the party to a contract. See National Railroad Passenger Corp. v. Expresstrak, LLC, 2006 WL 2947555 at * 13 (D.D.C. 2006)(holding low level employees did not have authority to enter into or orally modify contract between their respective employers).

The burden is on the party arguing that the contract has been modified to establish the modification by a preponderance of the evidence. Puma v. Sullivan, 746 A.2d at 875; Gagnon v. Wright, 200 A.2d at 198. Accordingly, the burden is on defendant Capitol Sprinkler to establish that: (1) there was mutual assent to modify the contract; (2) there was consideration supporting the modification of the contract; (3) the unidentified maintenance person allegedly agreeing to the modification had authority to bind Guest Services and/or Gallaudet to a modification of the existing written contract; and (4) Michael Bowlin had authority to modify the contract on behalf of Capitol Sprinkler. In this case, the Capitol has not cited any admissible evidence whatsoever to establish any of these elements to support a finding that the contract was modified.

The only evidence Capitol Sprinkler has of the alleged oral modification is the uncorroborated testimony by Michael Bowlin that the unidentified building escort agreed to drain the drum drip. There is nothing in Capitol Sprinkler's own inspection report for January 9, 2003 to confirm that there was any agreement by the unidentified building escort to drain the drum drip or to modify the inspection contract. Nor is there any other documentation whatsoever confirming the alleged modification of the contract. In addition, Capitol Sprinkler did not provide any notice to Guest Services or Gallaudet that there had been a modification of the inspection contract. In fact, the first time that

Capitol Sprinkler ever even raised the issue of modification of the contract was in its Motion for Summary Judgment.

The testimony of Capitol Sprinkler's own employees proves that it cannot identify the person who allegedly agreed to drain the drum drip and to the oral modification of the contract. Capitol Sprinkler cannot possibly meet its burden of establishing there was an oral modification of a contract when it cannot even identify the person who allegedly agreed to the modification.  This issue of fact alone is sufficient to defeat Capitol Sprinkler's motion for summary judgment.  Moreover, in order for a written contract to be orally modified, there must be consideration. In this case there was no consideration provided to Guest Services and/or Gallaudet to modify the written inspection contract. There was mutual consideration for the original inspection contract, wherein Capitol Sprinkler agreed to perform a service for Guest Services and Gallaudet in exchange for a fee. If the services to be provided by Capitol Sprinkler were going to be changed, then there should have been a change in consideration to account for the reduced services to be provided. Absent some consideration, there can be no modification. In addition, Capitol Sprinkler cannot establish that the unidentified maintenance person who escorted them throughout the building had any authority whatsoever to bind Guest Services and/or Gallaudet to a modified contract. There is no evidence provided by Capitol Sprinkler that the unidentified building escort had any authority whatsoever to enter into a contract on behalf of Guest Services or Gallaudet.  Nor is there any evidence that the unidentified person had any authority to modify the existing contract. The only person authorized to modify third-party contracts was the President of Guest Services.  *See* Stephen Logue Affidavit, Exhibit 1.  Moreover, Capitol Sprinkler cannot

13

even establish through the record that its own representative, Michael Bowlin, had any

authority to modify the contract on behalf of Capitol Sprinkler.

## I.    Guest Services Cannot Be Liable Because the Waiver of Subrogation Clause Bars Plaintiff's Action Against Guest Services

Capitol Sprinkler asserts that if it is held liable to the Plaintiff, then it is

entitled to contribution and indemnification from Guest Services.  (*See* Third-

Party Complaint ¶ 21).  In the District of Columbia, "a claim for contribution will lie

only if a defendant is liable, concurrently with the original defendant, to the

plaintiff in the original suit."  Hall v. Fuller, 621 A.2d 848, 850 (D.C. App. 1993)

In Hall v. Fuller, the D.C. Court of Appeals affirmed the dismissal of a

cross-claim for contribution, holding "the first prerequisite to the assertion of a

cross-claim for contribution, [is] the existence of joint liability."  *Id.* at 850.

Because the liability of each defendant had been extinguished by their respective

settlement agreements, there could be no finding of joint liability.  Therefore, the

Court held that the cross-claim was properly dismissed.

Similarly, in this case, there can be no finding of joint liability.  Guest

Services is not liable to plaintiff, Gallaudet's insurer, because of the Subrogation

Waiver contained in the Gallaudet University Kellogg Conference Center

Management Agreement.  *See* Contract for Automatic Sprinkler Equipment

Inspection Services, Exhibit 2.  In American Motorist Insurance Company v.

Morris Goldman Real Estate Corp., 277 F.Supp.2d 304, the United States District

Court for the Southern District of New York explains that the effect of a

subrogation waiver is to "[shield] a party from *any* liability when the injured party is fully insured. In cases where the injured party is only partially insured, the waiver of subrogation clause serves as a liability limiting clause, reducing the liability of the responsible party to only a portion of the damage cause . . . thus in almost all situations, a waiver of subrogation clause will either absolve a party of liability or substantially limit liability . . .". *Id.* at 308. Gallaudet University was fully insured and Guest Services, Inc. is thus absolved from liability. Thus, Gallaudet's insurer has no cause of action against Guest Services, Inc. Since plaintiff has no direct cause of action against Guest Services, Inc., Capitol Sprinkler has no third-party claim for contribution or indemnification.

The Subrogation Waiver releases Guest Services, Inc. from any liability to Gallaudet University or its insurer. Furthermore, Capitol Sprinkler has no basis to assert that Guest Services, Inc. is directly liable to Capitol Sprinkler. Because there can be no finding of liability of Guest Services, Inc. to either Gallaudet University, its insurer, or Capitol Sprinkler, a claim for contribution or indemnification cannot lie.

## III.    Conclusion

Based on the foregoing, Third-Party Defendant, Guest Services, Inc. respectfully requests that this Honorable Court not accept Defendant Capitol Sprinkler's factual assertions, which are unsupported and contradicted by the evidence and grant summary judgment in favor of Guest Services.

Respectfully submitted,

**GUEST SERVICES, INC.**
By Counsel

Trichilo, Bancroft, McGavin, Horvath & Judkins, PC

_____

/s/_____

Stephen A. Horvath, Esquire
D.C. Bar No. 417137
3920 University Drive
Fairfax, Virginia 22030
Phone: (703) 385-1000; Fax: (703) 385-1555
*Counsel for Guest Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **REPLY TO DEFENDANT CAPITOL SPRINKLER INSPECTION, INC.'S OPPOSITION TO GUEST SERVICE'S MOTION FOR SUMMARY JUDGMENT** was  served electronically on the 7th day of March, 2008 to:

Eric Neil Stravitz, Esquire
Mesirow & Stravitz, P.L.L.C.
1307 New Hampshire Avenue, NW, Suite 400
Washington, D.C.  20036
*Counsel for Plaintiff*
E-mail: strav@erols.com

Of Counsel:

David J. Groth, Esquire
Daniel J. Luccaro, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania 19103
*Counsel for Plaintiff*

Michelle Murphy, Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
 913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Defendant Capitol Sprinkler, Inc.*
E-mail: nbrooks@mooclaw.com

Wayne F. Johnson, Jr., Esquire
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street
Suite 800
Wilmington, Delaware 19801
*Counsel for Capitol Sprinkler, Inc.*
E-mail: fjohnson@mooclaw.com

/s/
Stephen A. Horvath